Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Laura V. Herrera (SBN 343929)
laura.herrera@sidley.com
SIDLEY AUSTIN LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars
17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9662
Facsimile: +1 310 595 9501

*Attorneys for Defendant*
*Higher Education Loan Authority of the*
*State of Missouri*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| JAIME MALDONADO, ANNA VARELA, ALMA GARY and JEFF PLAMONDON, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,<br><br>     Defendants. | Case No.  3:24-CV-07850 VC<br><br>Assigned to Hon. Vince Chhabria<br><br>**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION**<br><br>Date:  March 6, 2025<br>Time:  10:00 a.m.<br>Location:  Courtroom 4, 17th Floor<br><br>Case Removed:  November 8, 2024<br><br>(Superior Court of California for the County of Alameda, Case No. 24CV090146) |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2025 at 10:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the above entitled Court, located at 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA") will and hereby does move the Court for an order dismissing with prejudice the Complaint filed by Jaime Maldonado, Anna Varela, Alma Gary, and Jeff Plamondon (collectively, the "Plaintiffs") (Dkt. No. 1-25).

Defendant moves to dismiss all causes of action: Count One, for alleged violations of the California Fair Debt Collections Practices Act (the "Rosenthal Act"), Civil Code § 1788 *et seq*.; Count Two, for alleged violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Civil Code § 1785.1 *et seq*.; Count Three, for alleged violations of the California Student Borrower Bill of Rights ("SBBR"), Civil Code §§ 1788.100 *et seq*.; and Count Four, for alleged violations of the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq*. MOHELA makes this motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).

This motion is based on this Notice of Motion and Motion to Dismiss Complaint and Strike Class Definition, the accompanying Memorandum of Points and Authorities, the Declaration of Jennifer Farmer and attached exhibits, the record in this action, and any oral argument permitted by the Court.

Respectfully submitted,

Date:  December 20, 2024

SIDLEY AUSTIN LLP

By: */s/ Sheila A.G. Armbrust*
Sheila A.G. Armbrust (SBN 265998)

*Attorneys for Defendant*
*Higher Education Loan Authority of the*
*State of Missouri*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 2

II.   BACKGROUND AND PROCEDURAL HISTORY ............................................... 3

    A.    MOHELA Is an Arm of the State of Missouri and a Federal Contractor. ................... 3

    B.    Plaintiffs' Complaint Only Names MOHELA as a Defendant. ................................... 4

    C.    The *Sweet* Settlement Covers Part of the Putative Class. ........................................... 6

III.  ARGUMENT ....................................................................................................... 7

    A.    The Action Should Be Dismissed under Rule 12(b)(1) Because MOHELA Is Immune from Suit. ....................................................................................................... 7

        1.    MOHELA Shares Missouri's Sovereign Immunity as an Arm of the State. .......... 7

            a.  Missouri Created MOHELA as a Public Instrumentality Performing Essential Public Functions. .......................................................... 8

            b.  Missouri Supervises and Controls MOHELA. ........................................... 9

            c.  MOHELA Affects the Missouri State Treasury in Multiple Respects. ..... 10

        2.    MOHELA Enjoys Derivative Sovereign Immunity As a Federal Contractor. ..... 11

    B.    Plaintiffs Fail to State a Claim Under the CCRAA Because They Do Not Allege an Actual Harm. ........................................................................................................ 13

    C.    The Proposed Class Definition Should be Stricken under Rule 12(f) Because it is Clearly Overbroad. .................................................................................................. 14

IV.   CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................13

*Baton v. Ledger SAS,*
    2024 WL 3447511 (N.D. Cal. July 16, 2024) ...........................................................14

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................................13

*Berman v. PA Higher Educ. Assistance Agency*,
    No. 23-1414, 2024 WL 1615016 (4th Cir. Apr. 15, 2024),
    *cert. denied sub nom. Berman v. PA Higher Educ. Assistance*,
    No. 24-117, 2024 WL 4427231 (U.S. Oct. 7, 2024) ............................................13

*Biden v. Nebraksa*,
    143 S. Ct. 2355 (2023) ........................................................................8, 9, 10, 11

*Biden v. Nebraksa*,
    No. 22-506, 2024 WL 1481073 (U.S. Jan. 27, 2023) ...........................................9

*Fierro v. Cap. One, N.A.*,
    620 F. Supp. 3d 1105 (S.D. Cal. 2022) .....................................................................14

*Franchise Tax Bd. of California v. Hyatt*,
    587 U.S. 230 (2019) ............................................................................................................7

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009) ......................................................................................14

*Jeong v. Nexo Cap. Inc.*,
    2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) .........................................................14

*Kohn v. State Bar of California*,
    87 F.4th 1021 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1465 (2024),
    *aff'd*, 2024 WL 4533446 (9th Cir. 2024) ...............................................7, 8, 9, 10

*Levinson v. Transunion LLC*,
    No. CV1600837-RSWL-PLAX, 2016 WL 3135642 (C.D. Cal. June 2, 2016) ................13, 14

*Nebraska v. Biden*,
    52 F.4th 1044 (8th Cir. 2022) ......................................................................................11

ii

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION,
CASE NO. 3:24-CV-07850 VC

*P.R. Ports Auth. v. Fed. Mar. Comm'n*,
   531 F.3d 868 (D.C. Cir. 2008) ....................................................................................7, 8, 11

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) ...................................................................................14

*Sato v. Orange Cnty. Dep't of Educ.*,
   861 F.3d 923 (9th Cir. 2017) .................................................................................................7

*Sliger v. Prospect Mortg., LLC*,
   789 F. Supp. 2d 1212 (E.D. Cal. 2011).............................................................................14, 15

*Sweet v. Cardona*,
   No. 23-15049, 2024 WL 4675573 (9th Cir. Nov. 5, 2024) .....................................................5

*Sweet v. Cardona*,
   No. 3:19-cv-3674-WHA (N.D. Cal.) ............................................................................. *passim*

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................................14

*Walker v. Higher Educ. Loan Auth. of the State of Missouri*,
   No. 1:21-CV-00879-KES-SAB, 2024 WL 3568576 (E.D. Cal. July 26, 2024).....................10

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ................................................................................................7

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................................................7

*Yearsley v. W.A. Ross Constr. Co.*,
   309 U.S. 18 (1940).............................................................................................................11, 12

**Statutes**

20 U.S.C § 1083 ..............................................................................................................................12

20 U.S.C. § 1087e(p) ......................................................................................................................12

20 U.S.C. § 1088(c) ..........................................................................................................................3

28 U.S.C. § 1441 ............................................................................................................................10

28 U.S.C. § 1442 ............................................................................................................................10

Cal. Bus. & Prof. Code § 6001(b)(1)–(7) ......................................................................................10

Cal. Bus. & Prof. Code § 17200 (California Unfair Competition Law ("UCL")).............................2

Cal. Civ. Code § 1785.1 (California Consumer Credit Reporting Agencies Act
("CCRAA")) ........................................................................................................2, 3, 13, 14

Cal. Civ. Code § 1785.31(a) ....................................................................................................13

Cal. Civ. Code § 1788 (Rosenthal Act). ....................................................................................2

Cal. Civ. Code § 1788.100 (California Student Borrower Bill of Rights ("SBBR")). ..................2

Mo. Rev. Stat. § 173.095 ..........................................................................................................10

Mo. Rev. Stat. § 173.360 ................................................................................................3, 8, 9, 10

Mo. Rev. Stat. § 173.365 ........................................................................................................8, 9

Mo. Rev. Stat. § 173.385.1 ..............................................................................................3, 8, 9, 10

Mo. Rev. Stat. § 173.385.2 ........................................................................................................11

Mo. Rev. Stat. § 173.387 ............................................................................................................9

Mo. Rev. Stat. § 173.390 ............................................................................................................9

Mo. Rev. Stat. § 173.392 ..........................................................................................................11

Mo. Rev. Stat. § 173.415 ............................................................................................................8

Mo. Rev. Stat. § 173.445 ......................................................................................................8, 10

**Other Authorities**

34 C.F.R. § 668.2 ......................................................................................................................3

34 CFR § 682.205(a)(1), (2) ....................................................................................................12

34 CFR § 682.208 ....................................................................................................................12

Fed. R. Civ. Proc. 12 ......................................................................................................... *passim*

iv

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION,
CASE NO. 3:24-CV-07850 VC

## I.    INTRODUCTION

The Higher Education Loan Authority of the State of Missouri ("MOHELA") is being squeezed. As Plaintiffs allege, in 2022 and 2023, the United States Department of Education (the "Department") announced that it would discharge federal student loans taken out for attendance at certain colleges during a specified time period. Putative Class Action Complaint (the "Complaint"), Dkt. No. 1-25 ("Compl.") ¶ 2. Plaintiffs allege they took out loans for attendance at those colleges and received notice from the Department that their federal student loans would be discharged, but that the discharges "would 'take the Department some time' to process[.]" Compl. ¶ 4.

True to its word, the Department has taken "some time." Nearly two years ago, the Department and borrowers of federal student loans entered into a class action settlement in this District arising from allegations that the Department unreasonably and unlawfully delayed processing discharge applications (the "*Sweet* Settlement"). *Sweet v. Cardona*, No. 3:19-cv-3674-WHA (N.D. Cal.). However, *Sweet* members, some of whom are included in this putative class, still in some cases await decisions from the Department on their discharge applications. The Department's contracted loan servicers—including MOHELA—were not named parties in that case.

Now, unsatisfied with the Department's pace of processing discharge applications, Plaintiffs, individually and on behalf of a putative class, seek to hold MOHELA liable under four California Statutes: (1) the Rosenthal Act, Civil Code § 1788 *et seq.*; (2) the California Consumer Credit Reporting Agencies Act ("CCRAA"), Civil Code § 1785.1 *et seq.*; (3) the California Student Borrower Bill of Rights ("SBBR"), Civil Code §§ 1788.100 *et seq.*; and (4) the California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq*.

Plaintiffs may be frustrated by the Department's pace of action, but there are at least three defects in Plaintiffs' Complaint, one of which is incurable.

First, MOHELA is immune from suit because, under Federal Rule of Civil Procedure ("Rule") 12(b)(1), this Court lacks subject-matter jurisdiction over claims that infringe upon MOHELA's sovereign immunity as an arm of the State of Missouri. Even if the Court determines that MOHELA is not an arm of the state, MOHELA is entitled to derivative sovereign immunity as a federal contractor administering federal student loans subject to the Department's express direction.

2

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION,
CASE NO. 3:24-CV-07850 VC

Second, three putative class representatives, Jaime Maldonado, Anna Varela, and Jeff Plamondon, fail to state a CCRAA claim because they have not alleged they suffered an actual harm as a result of Defendant's purported conduct. Instead, they assert generalized and conclusory allegations which are insufficient in this context. Accordingly, these plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).

Third, the Court should exercise its authority to strike portions of the proposed class definition under Rule 12(f) because it is facially overbroad. Specifically, the proposed definition includes certain *Sweet* class members which carries the potential risk of relitigating the issues in that case and allowing class members to recover for the same alleged harm twice.

These errors warrant dismissal of Plaintiffs' Complaint with prejudice.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A.    MOHELA Is an Arm of the State of Missouri and a Federal Contractor.

The State of Missouri established MOHELA in 1981 as a "public instrumentality" intended to finance higher education and "support the efforts of public colleges and universities to create and fund capital projects." Mo. Rev. Stat. § 173.360. Missouri law authorizes MOHELA to "service student loans for any owner thereof" and to "create, acquire, contribute to, or invest in any type of financial aid program that provides grants and scholarships to students." *Id.* § 173.385.1(18)-(19). MOHELA's exercise "of the powers conferred" on it by Missouri statutes "shall be deemed to be the performance of an essential public function." *Id.* § 173.360.

In September 2011, the Department awarded MOHELA the "Direct Loan" contract ("DL Contract"), to service federal Direct Loans nationally. Declaration of Jennifer Farmer ("Farmer Decl.") ¶ 5. In 2023, the Department awarded MOHELA the Unified Servicing and Data Solution contract ("USDS Contract"), a second federal Direct Loan servicing contract. *Id.*; *see* Compl. ¶ 35. As a Department-contracted loan servicer, MOHELA is not a party to federal student loans. Farmer Decl. ¶ 4. Nor does it originate loans. *Id.* Rather, once the Department funds loans, MOHELA administers certain aspects of those loan accounts, sends billing statements, and provides certain information to borrowers. 20 U.S.C. § 1088(c); 34 C.F.R. § 668.2. From 2011 to April 1, 2024, MOHELA serviced federal student loans entirely pursuant to the DL Contract. Farmer Decl. ¶¶ 5, 6,

3

8, 11. From April 1, 2024 to October 2024, MOHELA serviced loans pursuant to both the DL Contract and USDS Contract pending completion of a contractually required system migration. *Id.* ¶¶ 11, 12.

Under both contracts, MOHELA was contractually obligated to service federal student loans consistent with highly detailed Department terms, some which required the Department's active control. *Id.* ¶¶ 11, 13–15. For instance, pursuant to the DL Contract, MOHELA must "process discharge transactions after receiving and reviewing required supporting documentation meeting the required regulatory guidelines *and receiving FSA approval*." *Id.* ¶ 5, Ex. A at 36 (emphasis added); *id.* ¶ 15. Consequently, MOHELA is contractually unable to issue refunds or report tradeline changes to credit reporting agencies ("CRAs") at any earlier time.

### B.    Plaintiffs' Complaint Only Names MOHELA as a Defendant.

Plaintiffs are individuals who obtained federal student loans from the Department for attendance at four colleges. Compl. ¶¶ 17–20, 56, 69, 84, 96. MOHELA services Plaintiffs' federal student loans pursuant to contractual agreements with the Department. *Id.* at ¶ 5. The Department is not a defendant in this action.

Plaintiffs allege that, after the Department announced it would discharge federal student loans for students who attended certain educational institutions, the Department sent each Plaintiff a letter notifying them that: their loans would be discharged without further action on their part; any remaining loan balance would be forgiven; borrowers need not make further payments on the loans; and borrowers may be eligible for a refund on previous loan payments. *Id.* at ¶ 4. The letter also stated that it would "take the Department some time to process the discharge . . . ." *Id.* During this time, the COVID-19 student loan payment pause was in effect. *Id.* at ¶ 7. Shortly before the pause expired, Plaintiffs received notice that their loans were to reenter repayment status. *Id.*

Plaintiffs allege on information and belief that the Department instructed loan servicers like MOHELA to discharge, cease loan reporting and servicing, and issue payment refunds for loans taken out to attend certain schools, including Plaintiffs' loans. *Id.* at ¶¶ 44–45. Plaintiffs do not allege any basis for their purported information and belief. *See generally id.* While Plaintiffs allege a procedure by which the Department "identifies eligible loans" and "notifies the loan servicer with

instructions to discharge the loans," ¶¶ 41–43, nowhere do Plaintiffs allege a basis for the belief that the Department has completed this process and directed MOHELA to discharge federal student loans for affected borrowers wholesale. *See generally id*. Indeed, in *Sweet*, Plaintiffs' counsel complained as recently as a few months ago that the Department had not completed processing loan discharges. *See infra* Section III(A)(2). And, as noted above, Plaintiffs acknowledge that the Department advised that processing Plaintiffs' discharges would take "some time." *Id*. at ¶ 4.

Plaintiffs also allege MOHELA had actual or constructive notice that the loans were discharged through the Department's public announcements, the Department's private letters to Plaintiffs, Plaintiffs' communications with MOHELA, and MOHELA's access to the National Student Loan Data System, which contains student loan details. *Id*. at ¶¶ 7, 46, 47. But these allegations ignore the contractual relationship between the Department and MOHELA. Plaintiffs explicitly refer to the USDS Contract in their Complaint, ¶¶ 5, 35, but nowhere do Plaintiffs allege the USDS Contract permits MOHELA to issue discharges in the absence of the Department's express direction. *See generally id*.

On the assumption that the public announcements and private letters immediately and automatically extinguished Plaintiffs' loan obligations, despite being contrary to statements by the Department, Plaintiffs allege MOHELA violated California law because MOHELA continued to service the loans, failed to discharge the loans, and failed to issue refunds.[1] *See generally id*. Specifically, Plaintiffs allege MOHELA's conduct was unlawful because it represented Plaintiffs' loans had outstanding balances, sent notices to that effect, and reported (or failed to correct) loan information to CRAs. *Id*. at ¶¶ 130, 140, 158, 159. Plaintiffs assert MOHELA's conduct was negligent or, in the alternative, intentional, entitling them to enhanced damages under California law. *E.g.*, *id*. at ¶¶ 147, 148. Plaintiffs bring this action individually and on behalf of persons allegedly similarly situated. *Id*. at ¶ 115. The putative class is defined to include:

---

[1] It should be noted that the loan servicing role of loan servicers like MOHELA does not typically include having contact with the borrowers' money. That is, loan servicers do not receive loan payments from borrowers and do not refund moneys to borrowers. Loan borrowers make payments to a lockbox controlled by different federal contractors and any refunds are made by the U.S. Treasury. *See* Compl. ¶ 42 (alleging that refunds issue through the U.S. Treasury).

> All California residents who took out federal student loans (including Direct and/or FFEL loans) to pay educational expenses at Marinello Schools of Beauty, Corinthian Colleges, Inc., ITT Technical Institute, Westwood College, Colorado-based locations of CollegeAmerica, and the Art Institute ("Group Discharge Loans"); who are included in the Department of Education's Group Discharges for these schools; whose Group Discharge Loans are, at the time of filing of this Complaint, being serviced by MOHELA; and who, since the Department of Education's public announcements of their discharges, (i) have received communications from MOHELA that a balance or payment is due and owing on their discharged loans, (ii) have not received a refund of qualifying payments made on their Group Discharge Loans, and/or (iii) have Group Discharge Loans reported by MOHELA on their credit reports with an outstanding balance or payment due.

*Id.* Plaintiffs seek injunctive, monetary, and declaratory relief. Compl., Prayer for Relief at ⁋ 3.

**C.    The *Sweet* Settlement Covers Part of the Putative Class.**

In June 2019, representatives of a class of federal student loan borrowers with then-pending borrower defense applications[2] brought a putative class action against the Department[3] and alleged that the Department failed to timely adjudicate applications to discharge federal student loans. *Sweet v. Cardona*, No. 3:19-cv-3674-WHA (N.D. Cal. June 25, 2019), ECF No. 1. The parties reached a court-approved settlement on November 16, 2022. No. 3:19-cv-3674-WHA, ECF No. 345. Pursuant to the settlement, borrowers of federal student loans who filed borrower defense applications on or before November 15, 2022 relating to attendance at any of 151 specified schools were entitled to an "automatic" discharge of their federal student loans. No. 3:19-cv-3674-WHA, at *36 (N.D. Cal. June 22, 2022), ECF No. 246. *Sweet*-eligible schools include Westwood College, ITT Technical Institute, and the Art Institute, for which Plaintiffs Varela, Plamondon, and Gary took out federal student loans. *Id.*, Ex. C; Compl. ⁋⁋ 69, 84, 96. On March 29, 2024, the *Sweet* Plaintiffs filed a Motion to Enforce the Settlement Agreement, alleging in part that the Department violated the deadline for affording relief—including federal student discharges, refunds, and credit repair—to members of the automatic relief group. No. 3:19-cv-3674-WHA, at *6 (N.D. Cal. Mar. 19, 2024), ECF No. 397.

As of this filing, *Sweet* remains in active, ongoing settlement administration.

---

[2] The borrower defense program arose out of the Student Loan Reform Act of 1993, which authorized the Secretary of Education to develop a program for discharging federal educational loan debts based on the wrongful acts or omissions of the schools attended by borrowers. *Sweet v. Cardona*, No. 23-15049, 2024 WL 4675573, at *38 (9th Cir. Nov. 5, 2024).

[3] No contracted federal student loan servicers were parties to *Sweet*.

## III.    ARGUMENT

### A.    The Action Should Be Dismissed under Rule 12(b)(1) Because MOHELA Is Immune from Suit.

Plaintiffs' action should be dismissed pursuant to Rule 12(b)(1) because the Court lacks subject-matter jurisdiction over Plaintiffs' claims, which infringe upon MOHELA's sovereign immunity as an arm of the State of Missouri and, in the alternative, infringe on its derivative sovereign immunity as a federal contractor acting pursuant to the Department's direction.

Under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject matter jurisdiction over the claims asserted. A sovereign immunity defense is jurisdictional and may be raised under Rule 12(b)(1). *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927, n.2 (9th Cir. 2017). A jurisdictional challenge under Rule 12(b)(1) "may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003). In evaluating a factual attack on jurisdiction, the Court need not presume the truthfulness of the plaintiffs' allegations. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### 1.    MOHELA Shares Missouri's Sovereign Immunity as an Arm of the State.

Plaintiffs' action should be dismissed because MOHELA is entitled to sovereign immunity as an arm of state. "[U]nder long-standing Supreme Court precedent, the Constitution has been interpreted to encompass a principle of state sovereign immunity and to largely shield States from suit without their consent." *P.R. Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 871–72 (D.C. Cir. 2008); *see also Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 236 (2019) ("States retain their sovereign immunity from private suits brought in the courts of other States."). This immunity extends to lawsuits "against an 'arm of the state.'" *Kohn v. State Bar of California*, 87 F.4th 1021, 1026 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1465 (2024), *aff'd*, 2024 WL 4533446 (9th Cir. 2024).

Courts consider three factors to determine whether an entity is an arm of the State entitled to state sovereign immunity: "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn*, 87 F.4th at 1030 (alterations in original).

Here, all three factors establish that MOHELA is entitled to sovereign immunity.

7

### a. Missouri Created MOHELA as a Public Instrumentality Performing Essential Public Functions.

Four factors are relevant to determining Missouri's intent as to MOHELA: whether (1) Missouri law "characterizes" MOHELA "as a governmental instrumentality;" (2) MOHELA "performs functions typically performed by state governments;" (3) MOHELA "is treated as a governmental instrumentality for purposes of other [Missouri] laws;" and (4) Missouri's representations about MOHELA support its arm-of-the-State status. *Kohn*, 87 F.4th at 1032–34 (quoting *P.R. Ports*, 531 F.3d at 874).

First, Missouri established MOHELA as a "body politic and corporate," and characterized MOHELA as a "public instrumentality," which requires compliance with the state's public records laws. Mo. Rev. Stat. § 173.360; *see also Kohn*, 87 F.4th at 1030 (considering how state law characterizes entity as a governmental instrumentality to evaluate intent).

Second, "Missouri established [MOHELA] to perform the 'essential public function' of helping Missourians access student loans needed to pay for college." *Biden v. Nebraska*, 143 S. Ct. 2355, 2366 (2023) (quoting Mo. Rev. Stat. § 173.360). MOHELA has exercised its statutory authority to finance higher education, issue bonds, purchase loans guaranteed by the federal government, transfer assets to a fund of the State treasury, and contribute to financial aid programs that provide grants and scholarships to students, *see* Mo. Rev. Stat. § 173.385.1(6)–(9), (19).

Third, MOHELA's internal operations are governed by Missouri laws that apply generally to public instrumentalities of the State of Missouri. Under its enabling statute, MOHELA must "comply with all statutory requirements respecting the conduct of public business by a public agency." Mo. Rev. Stat. § 173.365. Additionally, MOHELA's property, income, bonds, and activities are exempt from State taxation, *see id.* § 173.415; MOHELA must "annually file" with the Missouri Department of Higher Education a report detailing its income, expenditures, and assets, *id.* § 173.445; and MOHELA has no private owners or shareholders. *Compare with Kohn*, 87 F.4th at 1040 (holding California treated the State Bar "as a governmental instrumentality for the purposes of other [California] laws" where "[t]he State Bar is subject to California public-records and open-meeting laws" and "[i]ts property is tax-exempt.").

8

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION, CASE NO. 3:24-cv-07850 VC

Finally, Missouri has represented that MOHELA is an arm of the State. In *Biden*, Missouri asserted that "MOHELA is part of Missouri" because it "is a state-created and state-controlled public entity that performs essential public functions for the State," and because the State created MOHELA by special law, established MOHELA's powers, made MOHELA report to a State agency, preserved its authority over MOHELA's assets, and retained the right to abolish MOHELA. Brief for Respondents at *12, 17, *Biden*, No. 22-506, 2024 WL 1481073 (U.S. Jan. 27, 2023), *Biden*, 143 S. Ct. at 2366.

### b. Missouri Supervises and Controls MOHELA.

Missouri's supervision and control of MOHELA also supports its arm-of-the-State status.

In *Kohn v. State Bar of California*, the Ninth Circuit considered whether the California State Bar was entitled to sovereign immunity as an arm of the State. 87 F.4th at 1032–38. The Court ruled it was, observing, in part, that the manner in which its directors and officers are appointed cuts in favor of immunity: "[T]he power to appoint the State Bar's governing structure is housed wholly within the state government." *Id.* at 1035. Here, too, numerous provisions of MOHELA's enabling statute establish Missouri's power to appoint MOHELA's directors and officers. MOHELA's board consists of two State officials and five members appointed by the Governor. Mo. Rev. Stat. § 173.360. "Members of the authority … receive no compensation for services …." *Id.* § 173.365. And the Governor may remove any Board member for cause. *Id*. § 173.360.

In *Kohn*, the Ninth Circuit's analysis under the control prong further considered "whether the state can 'directly supervise and control [the entity's] ongoing operations.'" *Kohn*, 87 F.4th at 1030. Numerous Missouri laws demonstrate that MOHELA is "directly answerable to the State." *Biden*, 143 S. Ct. at 2366 (citation omitted). Missouri law limits MOHELA's investments, Mo. Rev. Stat. § 173.385.1(13), Stafford loan originations, *id.* § 173.387, and bond issues, *id.* § 173.390. It places strict limits on how MOHELA can raise capital or make investments, s*ee* Mo. Rev. Stat. § 173.385.1(8), (13), and further requires MOHELA to obtain approval from the Missouri Department of Higher Education to sell certain loans. *See id.* § 173.385.1(8); *compare with Kohn*, 87 F.4th at 1036 ("The legislature's power over the State Bar's fundraising ability and annual budget further illustrates the state's control over the State Bar."). And it requires MOHELA to "provide

9

annual financial reports to the Missouri Department of [Higher] Education, detailing its income, expenditures, and assets." *Biden*, 143 S. Ct. at 2366 (citing Mo. Rev. Stat. § 173.445).

Fundamentally, Missouri law "sets the terms of [MOHELA's] existence, and only the State can abolish MOHELA and set the terms of its dissolution." *Biden*, 143 S. Ct. at 2366 (citation omitted). MOHELA's limited discretionary powers, including its abilities to enter into contracts and issue bonds, cannot properly be construed as undermining its status as an arm of the State; these functions are necessary for MOHELA to effectuate Missouri's objectives. *But see Walker v. Higher Educ. Loan Auth. of the State of Missouri*, No. 1:21-CV-00879-KES-SAB, 2024 WL 3568576, at *6 (E.D. Cal. July 26, 2024) (finding that MOHELA's operational and financial independence—evidenced by its "autonomy to hire its own employees, adopt bylaws, sue and be sued, and enter into contracts"—weighed against sovereign immunity). Indeed, the California State Bar retains similar powers for the same reason. *See generally* Cal. Bus. & Prof. Code § 6001(b)(1)–(7).

### c.  MOHELA Affects the Missouri State Treasury in Multiple Respects.

MOHELA also satisfies the third prong of the test, which examines "[MOHELA's] financial relationship to [the State of Missouri] and its overall effects on [Missouri's] treasury." *Kohn*, 87 F.4th at 1036. MOHELA's revenues contribute to the State's educational initiatives in several ways. As such, a judgment against MOHELA would affect the State treasury.

First, the Supreme Court has recognized that MOHELA's "profits help fund education in Missouri." *Biden*, 143 S. Ct. at 2366. MOHELA has provided over "$230 million for development projects at Missouri colleges and universities and almost $300 million in grants and scholarships for Missouri students*." Id.*; *see* Dkt. No. 1-9, Declaration of Karen Lenk in Support of Defendant Higher Education Loan Authority of the State of Missouri's Notice of Removal of Action under 28 U.S.C. §§ 1441 and 1442 ("Lenk Decl.") ¶¶ 8–9. By providing "assistance to postsecondary students," these expenditures advance what the Missouri legislature has declared a "public purpose of great importance," Mo. Rev. Stat. § 173.095, and an "essential public function," Mo. Rev. Stat. § 173.360.

Second, the Missouri legislature relies on MOHELA for direct contributions to the State treasury to supplement other sources of revenue. Each year, MOHELA is responsible for providing millions of dollars to fund the State's budget for programs like the Academic Scholarship Fund, the

Access Missouri Financial Assistance Fund, and the A+ Schools Fund. *See* Lenk Decl. ¶¶ 4–7 & Exs. A–M (Appropriations Bills reflecting State budget line items for which MOHELA has provided monies); *see also id.* at Ex. N (MOHELA Resolution approving transfer of monies to fund section 3.050 of the 2011 Appropriations Bill). MOHELA's contributions to the State treasury have been important in "mak[ing] up for State funding cuts." *Id.* Ex. N (MOHELA Resolution 061011.03).

Third, MOHELA has an outstanding statutory financial obligation to the State of Missouri. MOHELA is required by law to give $350 million to the Lewis and Clark Discovery Fund, Mo. Rev. Stat. § 173.385.2, which resides in the State treasury, *see id.* § 173.392. MOHELA has yet to satisfy more than $100 million of this obligation. *See* Lenk Decl. ¶ 8; *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022) ("After all, MOHELA contributes to the LCD Fund but has not yet met its statutory obligation.")

While Missouri is not directly liable for judgments against MOHELA, "there is no bright line for determining the point at which a State's responsibility for an entity's funds, debts, or judgments suffices to weigh in favor of arm-of-the-state status," *P.R. Ports*, 531 F.3d at 880 n.9. Missouri, both in law and in practice, relies on MOHELA's revenues as a source of funding both for the State treasury specifically and for State public policy priorities generally such that a judgment against MOHELA would have necessary, cascading effects on the State treasury. "By law and function, MOHELA is an instrumentality of Missouri . . . harm to MOHELA in the performance of its public function is necessarily a direct injury to Missouri itself." *Biden*, 143 S. Ct. at 491.

All three factors favor MOHELA's status as an arm of the State of Missouri, and MOHELA is therefore immune from Plaintiffs' claims.

### 2.    MOHELA Enjoys Derivative Sovereign Immunity As a Federal Contractor.

Were the Court to find that MOHELA is not an arm of the State, Plaintiffs' claims still would fail because MOHELA is a federal contractor entitled to derivative sovereign immunity. Derivative sovereign immunity immunizes a federal contractor where the federal government validly conferred authority on the contractor which, performing at the government's direction, simply performed its duties under the contract. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 19–23 (1940).

MOHELA does not have discretion to discharge federal student loans, authorize refunds, or

make tradeline changes with CRAs—the contractual responsibilities central to Plaintiffs' claims. Farmer Decl. ¶ 15. This discretion rests with the Department by federal contract, along with the timing in which the Department instructs MOHELA to process a discharge. Farmer Decl. ¶ 15. The Department has provided loan servicers like MOHELA lists of loans for discharge on an intermittent and rolling basis since 2022. *Id.* As of the date of the Complaint, MOHELA had not received instruction from the Department, as prescribed under both servicing contracts, to discharge Plaintiffs Plamondon's or Gary's loans. *Id.* at ¶ 18. Consequently, MOHELA also has no discretion in processing refunds or modifying its reporting obligations to CRAs with respect to Plaintiffs Plamondon's or Gary's loan. However, MOHELA has processed full discharges of Plaintiffs Maldonado's and Varela's loans because it received the Department's direction to do so. Farmer Decl. ¶¶ 16, 17.[4] Like the contractor in *Yearsley*, whose challenged work "was done pursuant to a contract with the United States Government, and under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States, ... as authorized by an Act of Congress," 309 U.S. at 19-20, MOHELA's challenged acts—failure to discharge or refund federal student loans, issuance of allegedly inaccurate communications to federal student loan borrowers, and continued reporting on federal student loans to CRAs—were done pursuant to contracts with the Department, under its direction, and as required by federal law. Farmer Decl. ¶¶ 5, 13–15; *e.g.*, 34 CFR § 682.208(a); 34 CFR § 682.208(b)(1)(ii); 34 CFR § 682.205(a)(1), (2); *see also* 20 U.S.C § 1083.[5] Plaintiffs' allegations include a generalized description of a loan discharge process, Compl. ¶¶ 41–43, and the unsupported conclusion "on information and belief" that the Department has already followed such a process for all loans for five different schools. *Id.* ¶ 44. That conclusion is belied by the Motion to Enforce the Settlement Agreement, filed by Plaintiffs' counsel on March 29, 2024 in *Sweet*, which alleged, among other things, that the Department violated the deadline for affording relief—including federal student discharges, refunds, and credit repair—to certain borrowers. No. 3:19-cv-3674-WHA, at *6 (N.D. Cal. Mar. 19, 2024), ECF No. 397.

---

[4] At the Department's direction, Plaintiffs Varela's and Maldonado's federal student loans were fully discharged as of September 10, 2024 and October 24, 2024, respectively, and MOHELA requested refunds for both from the U.S. Treasury. Farmer Decl. ¶¶ 16, 17.

[5] These provisions apply to MOHELA through 20 U.S.C. § 1087e(p).

MOHELA has acted pursuant to the Department's direction by not discharging loans until directed, and it is entitled to derivative sovereign immunity. *See Berman v. PA Higher Educ. Assistance Agency*, No. 23-1414, 2024 WL 1615016, at *2 (4th Cir. Apr. 15, 2024) (finding student loan servicer entitled to derivative sovereign immunity from claims relating to administration of federal student loan program because "the Department authorized [the servicer's] actions by contract"), *cert. denied sub nom. Berman v. PA Higher Educ. Assistance*, No. 24-117, 2024 WL 4427231 (U.S. Oct. 7, 2024)*.

**B.     Plaintiffs Fail to State a Claim Under the CCRAA Because They Do Not Allege an Actual Harm.**

Under Rule 12(b)(6), a party may move to dismiss a complaint for a failure to state a claim upon which relief can be granted. In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that  is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The court is not bound to accept as true legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Plaintiffs Maldonado, Varela, and Plamondon fail to state a claim under the CCRAA because they do not allege they suffered actual damage as a result of the allegedly inaccurate credit reporting. "Actual damage is required to state a claim under the CCRAA." *Levinson v. Transunion LLC*, No. CV1600837-RSWL-PLAX, 2016 WL 3135642, at *6 (C.D. Cal. June 2, 2016); *see also* Cal. Civ. Code § 1785.31(a) ("(a) Any consumer *who suffers damages as a result of a violation of this title* by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following . . . ." (emphasis added)). Conclusory and generalized allegations of harm fail to state a claim upon which relief can be granted. *Levinson*, 2016 WL 3135642, at *6 (finding generalized allegations that plaintiffs suffered "'actual damages, loss of wages, damage to credit reputation, pain and suffering, costs and attorney fees'" insufficient (quoting the plaintiffs' complaint)); *Fierro v.*

*Cap. One, N.A.*, 620 F. Supp. 3d 1105, 1112 (S.D. Cal. 2022) (finding a bare assertion that defendant's conduct caused plaintiff harm insufficient); *cf. Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174-75 (9th Cir. 2009) (evidence that plaintiff "was refused credit or offered higher than advertised interest rates," "had to borrow money at inflated interest rates," and "lost wages from the time spent dealing with his credit problems," among others, was enough to defeat defendant's motion for summary judgment as to CCRAA claim).

Here, only Plaintiff Gary specifically alleges she suffered a harm as a result MOHELA's alleged violation of the CCRAA. *See* Compl. ¶ 109 (alleging actual denial of credit). The remaining Plaintiffs, in contrast, plead generalized and conclusory allegations of harm. *See* Compl. ¶¶ 51, 122, 144. These bare assertions lack factual support and are thus insufficient to state a claim under the CCRAA. *Fierro*, 620 F. Supp. 3d at 1112. The Court should dismiss this claim as to all Plaintiffs except Ms. Gary under Rule 12(b)(6).

### C.  The Proposed Class Definition Should be Stricken under Rule 12(f) Because it is Clearly Overbroad.

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Class allegations can be stricken at the pleading stage." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1043 (N.D. Cal. 2014) (striking as overbroad plaintiffs' proposed class at the motion to dismiss stage); *see also Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010); *Jeong v. Nexo Cap. Inc.*, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022). In *Baton v. Ledger SAS*, the Court struck class allegations at the motion to dismiss stage, rather than at the class certification stage, because it was "facially evident" that they were overbroad and "it makes sense to address the issue early on[.]" 2024 WL 3447511 at *15-16 (N.D. Cal. July 16, 2024).

Here, the proposed class definition does not exclude *Sweet* class members whose claims have been or will be processed pursuant to the *Sweet* Settlement. The failure to exclude these members carries the risk of relitigating issues and allowing class members to recover for the same alleged harm twice. The proposed class definition is overbroad and should be stricken to "make trial less complicated [and] eliminate serious risks of prejudice to the moving party, delay, [and] confusion of the issues." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d 1212, 1216  (E.D. Cal. 2011).

14

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION,
CASE NO. 3:24-cv-07850 VC

## IV. CONCLUSION

For the above stated reasons, MOHELA asks the Court to dismiss the Complaint with prejudice.

Respectfully submitted,

Date:  December 20, 2024                    SIDLEY AUSTIN LLP

By: */s/ Sheila A.G. Armbrust*
     Sheila A.G. Armbrust (SBN 265998)
     sarmbrust@sidley.com
     Laura V. Herrera (SBN 343929)
     laura.herrera@sidley.com
     SIDLEY AUSTIN LLP
     555 California Street
     Suite 2000
     San Francisco, CA 94104
     Telephone: +1 415 772 1200
     Facsimile: +1 415 772 7400

     Amy P. Lally (SBN 198555)
     alally@sidley.com
     SIDLEY AUSTIN LLP
     1999 Avenue of the Stars
     17th Floor
     Los Angeles, CA 90067
     Telephone: +1 310 595 9662
     Facsimile: +1 310 595 9501

     *Attorneys for Defendant*
     *Higher Education Loan Authority of the*
     *State of Missouri*

15

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION,
CASE NO.  3:24-CV-07850 VC