PROJECT ON PREDATORY STUDENT LENDING
NOAH ZINNER Bar No. 247581
REBECCA C. EISENBREY Admitted *pro hac vice*
REBECCA C. ELLIS Admitted *pro hac vice*
769 Centre St.
Jamaica Plain, MA 02130
Telephone: (617) 390-2669
nzinner@ppsl.org

JUBILEE LEGAL
DANIEL "SPARKY" ABRAHAM Bar No. 299193
300 E. Esplanade Dr., Ste. 900
Oxnard, CA 93036
Telephone: (805) 946-0386
sparky@jubilee.legal

KEMNITZER, BARRON & KRIEG, LLP
ADAM J. MCNEILE Bar No. 280296
MALACHI J. HASWELL Bar No. 307729
1120 Mar West St., Ste. C2
Tiburon, CA 94920
Telephone: (415) 632-1900
adam@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAIME MALDONADO, ANNA VARELA, ALMA GARY, and JEFF PLAMONDON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,

Defendants.
_______________________________________/

**Case No. 3:24-cv-07850-VC**

**PLAINTIFFS' OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MOTION TO DISMISS COMPLAINT AND STRIKE CLASS DEFINITION**

Date: March 6, 2025
Time: 10:00 a.m.
Location: Courtroom 4, 17th Floor

Assigned for all purposes to Hon. Vince Chhabria

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 2
A. Allegations in the Complaint ........ 2
B. MOHELA's Statutory Charter ........ 3
III. LEGAL ARGUMENT ........ 4
A. MOHELA'S Rule 12(b)(1) Motion Must Be Denied ........ 4
1. MOHELA Waived Any Eleventh Amendment Argument ........ 4
2. MOHELA is Not an Arm of the State of Missouri ........ 5
3. MOHELA Waived Any Derivative Sovereign Immunity Argument ........ 11
4. The Court Should Permit Jurisdictional Discovery ........ 13
B. Plaintiffs Sufficiently Plead a Claim Under CCRAA ........ 13
C. The Court Should Not Strike Class Allegations at the Pleadings Stage ........ 14
IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases**

*Biden v. Nebraska*, 143 S.Ct. 2355 (2023) .......... 8
*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) .......... 13
*Brady v. Roosevelt S.S. Co.*, 317 U.S. 575 (1943) .......... 11
*Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015) .......... 11
*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .......... 11
*Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092 (9th Cir. 2022) .......... 12
*Childs v. San Diego Fam. Hous., LLC*, 2020 WL 12689448 (S.D. Cal. Sept. 15, 2020) .......... 12
*Clark v. Barnard*, 108 U.S. 436 (1883) .......... 5
*Covillo v. Specialtys Café*, 2011 WL 6748514 (N.D. Cal. Dec. 22, 2011) .......... 14
*Dewi v. Wells Fargo Bank*, 2012 WL 10423239 (C.D. Cal. Aug. 8, 2012) .......... 13
*Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100 (9th Cir. 2012) .......... 13
*Elam Const., Inc. v. Reg'l Transp. Dist.*, 129 F.3d 1343 (10th Cir. 1997) .......... 6
*Embury v. King*, 361 F.3d 562 (9th Cir. 2004) .......... 5
*Erickson v. Pardus*, 551 U.S. 89 (2007) .......... 13
*Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974 (S.D. Cal. 2022) .......... 13
*Good v. Dep't of Education*, 121 F.4th 772 (10th Cir. 2024) .......... passim
*Gorman v. Wolpoff & Abrahamson*, 584 F.3d 1147 (9th Cir. 2009) .......... 13
*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) .......... 10
*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609 (N.D. Cal. 2007) .......... 14
*ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289 (9th Cir. 1993) .......... 5
*Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) .......... passim
*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) .......... 4, 5
*Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) .......... 14
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 14
*Mason v. Ashbritt, Inc.*, 2020 WL 789570 (N.D. Cal. Feb. 17, 2020) .......... 14
*Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73 (Mo. 1979) .......... 7
*Montgomery v. Wells Fargo Bank*, 2012 WL 5497950 (N.D. Cal. Nov. 13, 2012) .......... 13
*Novoa v. GEO Grp., Inc.*, No. 2018 WL 4057814 (C.D. Cal. Aug. 22, 2018) .......... 12
*P.R. Ports Auth. v. Fed. Maritime Comm'n*, 531 F.3d 868 (D.C. Cir. 2008) .......... 5
*Parducci v. Overland Sols., Inc.*, 2019 WL 3220282 (N.D. Cal. July 17, 2019) .......... 14
*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) .......... 13
*Pellegrino v. Equifax Info. Servs., LLC*, 709 F.Supp.3d 206 (E.D. Va. Jan. 2, 2024) .......... 8, 10, 11
*Roberts v. Corrothers*, 812 F.2d, 1173 (9th Cir. 1987) .......... 12
*Salim v. Mitchell*, 183 F.Supp.3d 1121 (E.D. Wash. 2016) .......... 12
*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) .......... 13
*Simmons v. Naphcare Inc.*, 2019 WL 13177046 (C.D. Cal. Nov. 7, 2019) .......... 12
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .......... 4
*Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138 (9th Cir. 1983) .......... 12
*Sweet v. Cardona*, No. 3:19-cv-3674-WHA (N.D. Cal. June 25, 2019) .......... 2, 15
*Takle v. Univ. of Wisconsin Hosp. & Clinics Auth.*, 402 F.3d 768 (7th Cir. 2005) .......... 9
*U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 804 F.3d 646 (4th Cir. 2015) .......... 8
*Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019) .......... 5
*Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024) .......... passim
*Yastrab v. Apple Inc.*, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) .......... 14
*Yearsley v. W.A. Ross. Constr. Co.*, 309 U.S. 18 (1940) .......... 11
*Zakka v. Palladium Int'l, LLC*, 298 A.3d 319 (D.C. 2023) .......... 12

**Statutes**

Cal. Civ. Code §1785.1 .......... 1
Cal. Civ. Code §1785.25 .......... 13
Cal. Civ. Code §1785.31 .......... 13
Mo. Rev. Stat. §173.360 .......... 3, 6, 7
Mo. Rev. Stat. §173.370.1 .......... 3, 8
Mo. Rev. Stat. §173.385.1 .......... 3, 6, 8, 9
Mo. Rev. Stat. §173.410 .......... 4, 10
Mo. Rev. Stat. §173.420 .......... 3, 9
Mo. Rev. Stat. §173.425 .......... 3, 9
Mo. Rev. Stat. §360.020 .......... 7

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 4
Fed. R. Civ. P. 12(b)(6) .......... 1, 13
Fed. R. Civ. P. 12(f) .......... 1, 14, 15

**Constitutional Provisions**

U.S. Const., Amdt. 11 .......... 4

## I. INTRODUCTION

Plaintiffs and putative class representatives are student loan borrowers who are entitled to federal student loan discharges based on the predatory practices of the for-profit educational institutions they attended. Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA"), the servicer of Plaintiffs' loans, refuses to implement the federal student loan discharges announced years ago by the U.S. Department of Education (the "Department"). MOHELA continues to collect and report on Plaintiffs' accounts as if they had never been cancelled, refuses to issue refunds to Plaintiffs, and has demanded payment from Plaintiffs. Plaintiffs bring this putative class action lawsuit to enforce the long overdue discharges.

MOHELA brings the current motion under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim, and 12(f) to strike Plaintiffs' class allegations. MOHELA's shotgun motion fails to hit any of its targets.

First, the Eleventh Amendment only grants a state immunity from suit in *federal* court. A state (or arm thereof) sued in state court waives any entitlement to Eleventh Amendment immunity when it removes the case to federal court, as MOHELA did here. MOHELA cannot invoke the jurisdiction of this Court and then object that it is immune from suit in this forum.

Second, even if MOHELA had not waived any entitlement to assert Eleventh Amendment immunity (it has), it fails to meet its burden to show that it is an arm of the state of Missouri. The Tenth Circuit—the only Circuit court to decide MOHELA's entitlement to sovereign immunity—recently held that MOHELA is not entitled to share in Missouri's Eleventh Amendment immunity. *Good v. Dep't of Educ.*, 121 F.4th 772 (10th Cir. 2024). This Circuit's "arm of the state" test closely tracks the relevant aspects of the test used in *Good*.

Third, MOHELA waived any derivative sovereign immunity argument under one of its contracts with the Department. The argument also raises factual issues going to the merits, such as MOHELA's ability and authority to process Plaintiffs' promised discharges. A jurisdictional challenge that is intertwined with the merits of a case cannot be decided on a motion to dismiss.

Fourth, MOHELA's Rule 12(b)(6) attack on Plaintiffs' claims under the California Consumer Credit Reporting Act ("CCRAA"), Civ. Code §§1785.1, *et seq.* fails. Plaintiffs allege

injury to their credit and time and money spent communicating with MOHELA. Such allegations are more than sufficient to plead a claim under CCRAA.

Finally, MOHELA's barebones Rule 12(f) motion to strike Plaintiffs' class allegations should be denied. The purported overlap between the putative class in this case and the class in *Sweet v. Cardona*, No. 3:19-cv-3674-WHA (N.D. Cal. June 25, 2019), ECF No. 1, does not meet the standard to strike under Rule 12(f). Further, motions to strike class allegations are disfavored in this district, and MOHELA has not shown that relief should be granted here.

For these reasons, as elaborated below, the Court should deny MOHELA's motion in its entirety. However, if the Court is inclined to grant MOHELA's Rule 12(b)(1) motion, it should first permit Plaintiffs to propound targeted and narrow jurisdictional discovery.

## II. FACTUAL BACKGROUND

### A. Allegations in the Complaint

Between April 2022 and May 2024, the Department announced that it would discharge federal student loans for former students of six predatory for-profit institutions (the "Group Discharge" schools). ECF No. 1-25 ("Compl.") ¶2. The Department's announcements referenced findings of widespread consumer fraud by these schools toward their students. *Id.* Plaintiffs and the putative class members attended Group Discharge schools and qualify for the promised discharges. *Id.* ¶¶17–20, 56–107, 115.

The Department contacted affected student borrowers and represented that their loans would be discharged. Compl. ¶3. The notices, and the Department's public statements, informed borrowers that they did "not need to take any further action" to receive the the discharges. *Id.* The notices stated that the borrowers did not have to repay loans from the identified schools, that the remaining balances on the loans would be forgiven, and that the borrower could be eligible for a refund for payments they made on the loans. *Id.* ¶4. The notices stated that the borrowers would not have to resume making payments on the discharged loans. *Id.*

MOHELA is a third-party loan servicer contracting with the Department and services Plaintiffs' federal loans. Compl. ¶¶34–35. The Department notified MOHELA which loans should be discharged and gave instructions for processing the discharges and refunds. *Id.* ¶44.

The Department also instructed MOHELA to identify borrowers who are eligible for student loan discharges and to stop all billing and collection on those loans. *Id.* ¶45. MOHELA knew it was servicing discharge-eligible loans through the Department's public announcements, communications from student borrowers, and MOHELA's access to loan data. *Id.* ¶46.

In late summer 2023, MOHELA placed Plaintiffs' loans back into repayment status, and in many cases started sending bills. Compl. ¶7. MOHELA has continued to tell Plaintiffs that they remain obligated on their cancelled loans. *Id.* ¶9. MOHELA has failed to approve thousands of refund payments borrowers made on their Group Discharge school loans. *Id.* ¶10. MOHELA continues to report obligations on loans from Group Discharge schools to credit reporting agencies ("CRAs") even though Plaintiffs do not owe anything on the loans. *Id.* ¶11.

Despite having the ability, authority, and responsibility to process Department-issued student loan discharges, MOHELA failed to identify borrowers who have loans from Group Discharge schools, to deliver the relief that the Department promised to those borrowers, and to refrain from inaccurate and misleading collection and credit reporting information to borrowers and to CRAs while processing the relief. Compl. ¶49. Plaintiffs bring class claims on behalf of themselves and other California borrowers under California consumer protection laws.

**B. MOHELA's Statutory Charter**

MOHELA retains significant operational and financial independence from Missouri. It can adopt bylaws, sue and be sued, issue bonds, make and execute contracts, invest funds, acquire, hold, and dispose of personal property, and transact with federal and state agencies. *See generally* Mo. Rev. Stat. §173.385.1. MOHELA's board appoints MOHELA's leadership and sets their compensation. Mo. Rev. Stat. §173.370.1. While the governor can remove Board members for cause, Board members are entitled to notice and a public hearing. Mo. Rev. Stat. §173.360. MOHELA generates its own revenue through investments and collection of fees. Mo. Rev. Stat. §§173.385.1(12), (13). MOHELA retains all control over its assets, which are not part of the state revenue. Mo. Rev. Stat. §173.425. Missouri has no financial obligation to MOHELA, as any expenses incurred by MOHELA are "payable solely from funds provided" by the execution of its duties. Mo. Rev. Stat. §173.420. MOHELA cannot create debts of the state.

Mo. Rev. Stat. §173.410. Missouri is not liable for judgments against MOHELA. Motion at 11.

## III. LEGAL ARGUMENT

### A. MOHELA'S Rule 12(b)(1) Motion Must Be Denied

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (cleaned up).

MOHELA argues that it is entitled to sovereign immunity as an arm of the state of Missouri, or alternatively, that it is entitled to derivative sovereign immunity as a federal contractor. MOHELA is incorrect. First, MOHELA waived any Eleventh Amendment immunity it may have had by removing this case to federal court. Second, MOHELA is not entitled to share in Missouri's sovereign immunity because it is not an arm of that state. Third, and finally, MOHELA waived any derivative sovereign immunity argument through language contained in one of its contracts with the Department. The argument also invokes factual issues that go to the merits of this case and cannot be decided on a motion to dismiss.

#### 1. MOHELA Waived Any Eleventh Amendment Argument

The Eleventh Amendment grants a state immunity from suit in federal court. U.S. Const., Amdt. 11; *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002). Eleventh Amendment immunity extends to entities that are considered an "arm of the state." *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1026 (9th Cir. 2023).

However, sovereign immunity may be waived by a defendant's litigation conduct. Relevant here, a state (or arm thereof) waives any entitlement to Eleventh Amendment immunity when it voluntarily submits to the jurisdiction of a federal court, as when it removes a case from state court. The U.S. Supreme Court summarized waiver in the context of removal:

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Lapides*, 535 U.S. at 619 (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)). That maxim applies here. Plaintiffs filed this case in Alameda Superior Court, alleging state law claims against MOHELA. ECF No. 1-25. MOHELA filed a Notice of Removal, asserting federal question and diversity jurisdiction. ECF No. 1. Supreme Court caselaw unequivocally prohibits MOHELA from both relying on and disclaiming federal jurisdiction.[1] *Lapides*, 535 U.S. at 620.

The clear jurisdictional rule, as stated in *Lapides* and subsequent Ninth Circuit caselaw, establishes that MOHELA waived any Eleventh Amendment immunity to which it might otherwise be entitled.[2] Accordingly, MOHELA's Rule 12(b)(1) motion must be denied.

### 2. MOHELA is Not an Arm of the State of Missouri

Because MOHELA waived any sovereign immunity argument it may have had by voluntarily submitting this case to a federal forum, the Court need not reach MOHELA and its amicus's argument that it is an arm of the state of Missouri. However, even if the Court were to consider this argument, MOHELA's motion must still be denied. The Ninth Circuit's three-factor test for the "arm of the state" doctrine analyzes "(1) the [s]tate's intent as to the status of the entity, including the functions performed by the entity; (2) the [s]tate's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn*, 87 F.4th at 1030 (quoting *P.R. Ports Auth. v. Fed. Maritime Comm'n*, 531 F.3d 868 (D.C. Cir. 2008)). The party asserting sovereign immunity bears the burden to establish its applicability. *ITSI T.V. Prods., Inc. v. Agric. Associations*, 3 F.3d 1289, 1291 (9th Cir. 1993).

While district courts have reached different results in deciding whether MOHELA is entitled to share in Missouri's sovereign immunity,[3] MOHELA fails to cite the only Circuit court decision on the issue. *See Good v. Dep't of Educ.*, 121 F.4th 772, 822 (10th Cir. 2024). The Tenth Circuit test used in *Good* closely tracks the relevant portions of the Ninth Circuit

---

[1] While *Lapides* limited its analysis to the context of state law claims, subsequent caselaw affirms that Eleventh Amendment waiver extends to other contexts. *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004) (deciding that *Lapides* also applies to federal claims and claims brought after removal); *Walden v. Nevada*, 945 F.3d 1088, 1095 (9th Cir. 2019) ("[W]e conclude that *Lapides*' reasoning supports our holding that removal means waiver for all federal-law claims in the case.").

[2] To the extent that MOHELA later claims that it is referring to a theory of sovereign immunity not based in the Eleventh Amendment, its argument should still fail because it has not explained any such argument. Further, it only analyzes cases examining Eleventh Amendment immunity. *See* Motion at 7–10.

[3] *See Good*, 121 F.4th at 787–88 (citing cases).

"arm of the state" test, and thus *Good* is highly persuasive in this context. The only California district court to examine the question also found that MOHELA is not an arm of the state under the Ninth Circuit's *Kohn* test. *See Walker v. Higher Educ. Loan Auth. of the State of Mo.*, 2024 WL 3568576, at *9 (E.D. Cal. July 26, 2024). If the Court reaches the sovereign immunity inquiry at all, it should apply the reasoning in *Good* and *Walker*.

**a. Missouri's Intent Vis-à-Vis MOHELA**

Under *Kohn*, the intent factor "turns on whether state law expressly characterizes the entity as a governmental instrumentality rather than as a local governmental or non-governmental entity; whether the entity performs state governmental functions; whether the entity is treated as a governmental instrumentality for purposes of other state law; and state representations about the entity's status." *Kohn*, 87 F.4th at 1030.

MOHELA's enabling statute defines the entity as a "body politic and corporate" that is a "public instrumentality," and states that its exercise of powers "shall be deemed to be the performance of an essential public function." Mo. Rev. Stat. §173.360. However, the Tenth Circuit examined a similarly defined entity in the context of Colorado's Regional Transportation District's ("RTD") claim to Eleventh Amendment immunity and determined that the entity's status as a "public body politic and corporate" was not sufficient to make RTD an arm of the State of Colorado. *See Elam Const., Inc. v. Reg'l Transp. Dist.*, 129 F.3d 1343, 1346 (10th Cir. 1997). Like the RTD in *Elam*, MOHELA can "sue and be sued." *See Elam*, 129 F.3d at 1346; Mo. Rev. Stat. §173.385.1(3). Where RTD had the statutory power to "borrow money and to issue district securities evidencing same," MOHELA likewise can "issue bonds or other forms of indebtedness to obtain funds to purchase student loan notes or finance student loans." *See Elam*, 129 F.3d at 1346; Mo. Rev. Stat. §173.385.1(6). RTD's other extensive statutory powers, like the power to levy taxes, are comparable to MOHELA's authority to transfer assets, accept appropriations, make and execute contracts, invest funds, and issue tax-exempt bonds, among many other powers. *See Elam*, 129 F.3d at 1346; Mo. Rev. Stat. §173.385.1 (generally). The *Elam* court held that RTD's autonomous operations lean against characterizing it as an arm of the state. *See Elam*, 129 F.3d at 1346. Similarly, MOHELA's characterization as a "body

politic and corporate" cannot be sufficient to extend to it Missouri's sovereign immunity.

Moreover, "[t]he state legislature's characterization of an entity is not the only important metric for the intent factor—state court treatment is also relevant." *Kohn*, 87 F.4th at 1032. Missouri's highest court determined that the Health and Educational Facilities Authority of the State of Missouri ("MOHEFA") is "a separate entity from the state [of Missouri]." *See Menorah Med. Ctr. v. Health & Educ. Facilities Auth.*, 584 S.W.2d 73, 82 (Mo. 1979). MOHEFA's enabling statute is nearly identical in relevant respects to MOHELA's. *Compare* Mo. Rev. Stat. §360.020 (MOHEFA) *with* Mo. Rev. Stat. §173.360 (MOHELA). Like MOHELA, MOHEFA is a "body politic and corporate," operates as a "public instrumentality and body corporate," and performs an "essential public function." Mo. Rev. Stat. §360.020; *see* Mo. Rev. Stat. §173.360. Nonetheless, the Supreme Court of Missouri determined that "[MOHEFA] is not the state," MOHEFA's "mere use of the name of the state" did not make it part of the state itself, and that MOHEFA is a "separate entity" from the state of Missouri. *See Menorah*, 584 S.W.2d at 78. The Missouri Supreme Court's reasoning regarding an entity that Missouri established with near identical language is highly relevant to the inquiry as to Missouri's intent regarding MOHELA.

In sum, the "intent" factor is at least neutral with respect to MOHELA's status.

**b. Missouri's Control Over MOHELA**

The second factor of the *Kohn* test "depends on how members of the governing body of the entity are appointed and removed, as well as whether the state can *directly* supervise and control the entity's ongoing operations." *Kohn*, 87 F.4th at 1030 (cleaned up) (emphasis added).

Although MOHELA cites several factors purporting to show the extent of Missouri's control over the entity, MOHELA retains "significant operational independence" from Missouri. *Walker*, 2024 WL 3568576, at *6. While the Missouri governor appoints five of MOHELA's seven-member board and may remove Board members for cause, Mo. Rev. Stat. §173.360, "the power to appoint is not the power to control." *Good*, 121 F.4th at 803 (citation omitted). MOHELA retains significant power not subject to direct state control, such as the ability to adopt bylaws, to sue and be sued, to issue bonds, to make and execute contracts, to invest funds, to acquire, hold, and dispose of personal property, and to transact with federal and

state agencies. *See* Mo. Rev. Stat. §173.385.1(2), (6), (11), (13), (14), (15). While some of these powers have statutory limitations, "the state has no veto power over MOHELA's regular activities." *Walker*, 2024 WL 3568576, at *6; *see also Good*, 121 F.4th at 804 ("[T]he Act does not give the Governor any power to veto or block actions taken by MOHELA." (citing Mo. Rev. Stat. §§173.350-173.445)); *Pellegrino v. Equifax Info. Servs., LLC*, 709 F.Supp.3d 206, 217–218 (E.D. Va. Jan. 2, 2024) ("[T]he State does not have any decision-making authority over MOHELA."). Additionally, it is MOHELA's board and not the governor that appoints MOHELA's leadership and sets their compensation. *See* Mo. Rev. Stat. §173.370.1. Even the governor's removal power is subject to limitations, as Board members can only be removed for cause and after notice and a public hearing. Mo. Rev. Stat. §173.360; *see also Pellegrino*, 709 F.Supp.3d at 216 (noting that MOHELA's Board members are more autonomous than most Missouri state employees, who are usually removable at will). That MOHELA must file annual reports is also not indicative of the kind of direct supervision and control required under *Kohn*. *See Pellegrino*, 709 F.Supp.3d at 217 ("The State requires nothing more than filing annual reports, a requirement that applies to any stock corporation."); *see also U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, 672 (4th Cir. 2015) (reporting requirements are "minor strings" between an entity and a state). Thus, as the *Walker* court concluded, "MOHELA's broad retained powers and its operational and financial independence weigh against a finding of Eleventh Amendment immunity." 2024 WL 3568576, at *7.

MOHELA's reliance on *Biden v. Neb.* for the control prong of the *Kohn* test is misplaced. *See* 143 S.Ct. 2355 (2023). MOHELA was not a party in *Biden*, nor did that case examine MOHELA's entitlement to sovereign immunity under the Eleventh Amendment. Instead, the Court's inquiry focused on whether a harm to MOHELA could constitute a harm to Missouri significant enough to confer standing on the state. *See id.* at 2365. Whether there is a link between MOHELA and Missouri sufficient to share an injury for the purposes of standing does not resolve whether MOHELA is identified enough with the state to be immune from suit in federal court. *See Good*, 121 F.4th at 797; *see also Pellegrino*, 709 F.Supp.3d at 212.

Finally, a state's creation of a private entity, and the resulting ties between the two,

"do[es] not require that privatization be treated as a farce in which the privatized entity enjoys the benefits both of not being the state and so being freed from the regulations that constrain state agencies, and of being the state and so being immune from suit in federal court." *Takle v. Univ. of Wis. Hosp. & Clinics Auth.*, 402 F.3d 768, 771 (7th Cir. 2005). Allowing MOHELA to exercise its "substantial autonomy in its operations, . . . with little, if any guidance or interference from . . . the State," *Good*, 121 F.4th at 808, while permitting it to assert sovereign immunity when those actions are challenged would result in the farce envisioned by *Takle*.

In sum, evaluating the factors cited above as a whole, MOHELA possesses an extensive degree of autonomy that is inconsistent with being an arm of the state of Missouri, which does not "directly supervise and control the entity's ongoing operations." *Kohn*, 87 F.4th at 1030.

**c. MOHELA's Effects on Missouri's Treasury**

The third *Kohn* factor focuses on the "[entity's] financial relationship to [the state] and its overall effects on [the state's] treasury." *Kohn*, 87 F.4th at 1036 (citations omitted). For this factor, "the relevant issue is a state's overall responsibility for funding the entity or paying the entity's debts or judgments, *not* whether the state would be responsible for to pay a judgment *in the particular case at issue*." *Kohn*, 87 F.4th at 1036 (citation omitted) (emphasis in original).

MOHELA's financial independence from Missouri unquestionably weighs against a finding that it is the arm of the state. *See Good*, 121 F.4th at 812 ("[I]t is clear that MOHELA was intended to be a self-sufficient enterprise."). None of MOHELA's assets are part of the state's revenue. Mo. Rev. Stat. §173.425. Such assets are "under the exclusive control and management of the authority," except for the amounts MOHELA contributes to the Lewis and Clark discovery fund.[4] *Id.* MOHELA generates its own revenue, without "any meaningful degree of State oversight." *Good*, 121 F.4th at 810 (citing Mo. Rev. Stat. §§173.385.1(12), (13)). Any expenses incurred by MOHELA are "payable solely from funds provided" by the execution of its statutory duties. Mo. Rev. Stat. §173.420; *see also Good*, 121 F.4th at 809–10

[4] The existence of this fund does not change the analysis of MOHELA's overall financial independence, since the fund "is a discrete exception to the general wall of separation between the finances of MOHELA and the State." *Good*, 121 F.4th at 814 (citing Mo. Rev. Stat. §173.425); *see also Walker*, 2024 WL 3568576, at *8 (noting that the Lewis and Clark discovery funds "are only a fraction of MOHELA's assets.").

("[I]t is clear that MOHELA receives no direct financial assistance from the State."). MOHELA has broad authority to issue bonds, and its ability to do so is not subject to state review "to any meaningful degree." *Good*, 121 F.4th at 811. Missouri has disclaimed responsibility for any debts incurred by MOHELA. *See* Mo. Rev. Stat. §173.410 ("Nothing in this section shall be construed to authorize [MOHELA] to create a debt of the state . . . . The state shall not be liable in any event for the payment of the principal of or interest on any bonds of the authority or for the performance of any pledge, mortgage, obligation, or agreement of any kind whatsoever which may be undertaken by the authority."). MOHELA acknowledges that Missouri is not liable for judgments against MOHELA. *See* Motion at 11. Accordingly, MOHELA's high degree of financial independence from Missouri "weighs strongly against arm-of-the-state status." *Good*, 121 F.4th at 817; *see also Walker*, 2024 WL 3568576, at *8 ("Given MOHELA's financial independence from the State under Missouri law and the lack of any obligation for Missouri to pay MOHELA's debts, this factor weighs against finding MOHELA to be an arm of the state."); *Pellegrino*, 709 F. Supp. 3d at 215 ("Because MOHELA continues to operate as financially segregated from any State funds, the first factor . . . weighs heavily against finding that MOHELA is an arm of the state.").

While MOHELA cites several ways in which it purportedly "affects" the Missouri state treasury, each of the reasons cited are ways in which MOHELA purportedly supports Missouri financially, not the inverse. *See* Motion at 10–11. Under *Kohn*, the relevant inquiry is "a state's overall responsibility for funding the entity or paying the entity's debts or judgments," not whether an entity financially contributes to the state. 87 F.4th at 1036 (cleaned up). None of the reasons given by MOHELA give rise to an inference that Missouri has *any* responsibility for funding it or paying its debts or judgments. In fact, as explained above, Missouri has explicitly disclaimed such responsibility. Eleventh Amendment immunity is not implicated when a state "lack[s] financial responsibility" for an entity. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 45 (1994) (an entity's generation of its own revenue, lack of financial support from any state, and sole ownership of its debts "[p]oint[s] away from Eleventh Amendment immunity.").

In sum, the second and third *Kohn* factors—Missouri's minimal control over MOHELA

and MOHELA's financial independence from Missouri—lean strongly against arm-of-the-state status. While the first factor is more ambiguous, it is at least neutral for the purposes of this inquiry. As a whole, therefore, MOHELA has not met its burden to show that it is entitled to share in Missouri's sovereign immunity as an arm of the state. *See Good*, 121 F.4th at 822; *Walker*, 2024 WL 3568576, at *7; *Pellegrino*, 709 F.Supp.3d at 219.

**3. MOHELA Waived Any Derivative Sovereign Immunity Argument**

The U.S. Supreme Court has recognized that, in limited circumstances, "contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertaking with the United States." *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943) (citing *Yearsley v. W.A. Ross. Constr. Co.*, 309 U.S. 18 (1940)). However, such immunity, "unlike the sovereign's, is not absolute." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016) (holding that a federal contractor was not immune for alleged violations of the Telephone Consumer Protection Act). The defense is not available in cases where the contractor "exceeded his authority" or the authority "was not validly conferred." *Id.* at 167. The Ninth Circuit has held that *Yearsley* immunity "is limited to cases in which a contractor 'had no discretion in the design process and completely followed government specifications.'" *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 732 (9th Cir. 2015) (citation omitted).

Though MOHELA directly cites to its USDS contract with the Department, it fails to highlight that the contract explicitly disclaims any right MOHELA would otherwise have to claim the benefits of the derivative sovereign immunity doctrine:

> Contractor Acknowledgement: USDS Servicer acknowledges that it is not the U.S. Department of Education, and is not acting as the U.S. Government under this Contract. As such the USDS Servicer acknowledges that any claim or defense of Sovereign Immunity or Qualified Immunity is not applicable to work performed under the Contract and any Task Order issued under the Contract.

Declaration of Jennifer Farmer ("Farmer Decl."), Exh. B (USDS Contract), p. 12. Accordingly, MOHELA's argument fails at the outset and its motion should be denied on that basis alone.

Even if MOHELA could make a derivative sovereign argument despite its waiver, that argument cannot be decided on a motion to dismiss. The derivative sovereign immunity doctrine is a fact-dependent inquiry as to the nature and extent of the federal government's

conferral of authority and whether the contractor exceeded that authority. The factual nature of the defense is also apparent from MOHELA's argument. MOHELA asserts, citing its various contracts with the Department, that it lacks discretion to "discharge federal student loans, authorize refunds, or make tradeline changes with CRAs—the contractual responsibilities central to Plaintiffs' claims." *See* Motion at 11–12. MOHELA's assertions directly contradict Plaintiffs' allegations that MOHELA is responsible for processing federal student loan discharges, that the Department notified MOHELA that Plaintiffs' loans should be discharged, that MOHELA could independently verify which loans were eligible for discharge, and that MOHELA continues to report Plaintiffs' loans to CRAs even though the Department has deemed those loans cancelled. *See* Compl. ¶¶35, 44–45, 48, 51, 53.

Numerous courts have decided that the factual inquiries required by the derivative sovereign immunity doctrine cannot be decided at the pleadings stage.[5] Other courts have decided that derivative sovereign immunity is not a jurisdictional question at all. *See Childs v. San Diego Fam. Hous., LLC*, 2020 WL 12689448, at *6 (S.D. Cal. Sept. 15, 2020), appeal dismissed, 22 F.4th 1092 (9th Cir. 2022); *Zakka v. Palladium Int'l, LLC*, 298 A.3d 319, 330 (D.C. 2023) (citing cases). The Ninth Circuit held that the primary interest served by the derivative sovereign immunity doctrine can be vindicated even after a trial on the merits. *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1098 (9th Cir. 2022). More broadly, it is not appropriate to resolve factual issues going to the heart of the merits of a case on a motion to dismiss, even when the motion is based on an alleged issue of jurisdiction. *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983). In such cases, "the district court assumes the truth of allegations in a complaint . . . , unless controverted by undisputed facts in the record." *Roberts v. Corrothers*, 812 F.2d, 1173, 1177 (9th Cir. 1987). Here, the factual record is certainly in dispute. Thus, the Court must assume the truth of Plaintiffs' allegations and allow discovery to proceed. *See id.*

//

---

[5] *See Simmons v. Naphcare Inc.*, 2019 WL 13177046, at *4 (C.D. Cal. Nov. 7, 2019); *Novoa v. GEO Grp., Inc.*, No. 2018 WL 4057814, at *3 (C.D. Cal. Aug. 22, 2018); *Salim v. Mitchell*, 183 F.Supp.3d 1121, 1130 (E.D. Wash. 2016).

**4. The Court Should Permit Jurisdictional Discovery**

The Court should find that MOHELA has not met its burden to show that it is entitled to any kind of immunity. However, if the Court is inclined to grant MOHELA's Rule 12(b)(1) motion, it should first permit Plaintiffs to propound narrow and targeted jurisdictional discovery. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

**B. Plaintiffs Sufficiently Plead a Claim Under CCRAA**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

CCRAA prohibits a furnisher like MOHELA from furnishing credit information to "any credit reporting agency if the person knows or should know the information or inaccurate." Civ. Code §1785.25(a). Plaintiffs allege that MOHELA violates CCRAA by reporting debts that are not due and owing due to the discharges to which Plaintiffs and the putative class members are entitled. Compl. ¶140. MOHELA argues that Plaintiffs Jaime Maldonado, Anna Varela, and Jeff Plamondon have not adequately alleged injury under CCRAA.[6] Motion at 13.

CCRAA awards actual damages, including court costs, lost wages, and attorneys' fees. Civ. Code §1785.31(a)(1). Courts have held that plaintiffs allege injury under CCRAA and its federal analogue FCRA[7] based on harm to credit and time spent disputing inaccurate debts, among other things.[8] Plaintiffs allege that MOHELA inaccurately reports to CRAs balances of tens of thousands of dollars Plaintiffs allegedly owe, even though Plaintiffs' loans cannot be collected on. *See* Compl. ¶¶64, 76, 91, 103. Plaintiffs spent time and money sending certified

---

[6] MOHELA concedes that Plaintiff Alma Gary's allegations of injury are sufficient. Motion at 14.

[7] Opinions analyzing FCRA are relevant to this inquiry as courts have applied a similar standard of review for the two statutes. *See*, *e.g.*, *Dewi v. Wells Fargo Bank*, 2012 WL 10423239, at *8 n.8 (C.D. Cal. Aug. 8, 2012).

[8] *See*, *e.g.*, *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012); *Gorman v. Wolpoff & Abrahamson*, 584 F.3d 1147, 1174 (9th Cir. 2009); *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 993 (S.D. Cal. 2022); *Montgomery v. Wells Fargo Bank*, 2012 WL 5497950, at *6 (N.D. Cal. Nov. 13, 2012); *Dewi*, 2012 WL 10423239, at *6, *8 n.8.

letters to MOHELA challenging MOHELA's unlawful practices,. *See Id.* ¶¶65–67, 78–82, 92–94, 104–106. Plaintiffs spent other time contacting MOHELA about the promised discharges. *Id.* ¶¶112–14. Plaintiffs suffered uncertainty as to when the promised relief would ever be realized. *Id.* ¶111. The reported balances negatively affected Plaintiffs' creditworthiness. *Id.* ¶144. These allegations adequately allege injury under the CCRAA.

However, if the Court finds that Plaintiffs have not adequately alleged injury, the Court should grant Plaintiffs leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**C. The Court Should Not Strike Class Allegations at the Pleadings Stage**

The purpose of Rule 12(f) is to permit a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are rarely permitted to strike class allegations. *See Yastrab v. Apple Inc.*, 2015 WL 1307163, at *8 (N.D. Cal. Mar. 23, 2015) ("[I]n general, class allegations are not tested at the pleading stage and are instead scrutinized after a party has filed a motion for class certification."). "While a court has the authority to grant a motion to strike class claims at the pleading stage, such motions are rarely successful." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 562 (N.D. Cal. 2019). "[A] motion for class certification is a more appropriate vehicle for arguments about class propriety." *Covillo v. Specialtys Café*, 2011 WL 6748514, at *6 (N.D. Cal. Dec. 22, 2011); *see Mason v. Ashbritt, Inc.*, 2020 WL 789570, at *10 (N.D. Cal. Feb. 17, 2020) (citing cases). Such motions are only permitted when the court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Parducci v. Overland Sols., Inc.*, 2019 WL 3220282, at *4 (N.D. Cal. July 17, 2019); *see In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F.Supp.2d 609, 616 (N.D. Cal. 2007).

MOHELA's argument regarding the *Sweet* settlement does not meet the high bar to strike class allegations at the pleadings stage. Plaintiffs' proposed class definition is not "redundant, immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Further, the release in *Sweet* excludes "any claim based on an act or omission or other conduct occurring

after the Effective Date," which is November 16, 2022. *Sweet*, ECF No. 246-1 at 21.[9]

In this case, Plaintiffs allege that the Department announced the Group Discharges at issue between April 2022 and May 2024. Compl. ¶2. Plaintiffs further allege that MOHELA's violations of California's consumer protection laws have been ongoing since the Department's announcements, as MOHELA continues to try to collect debts from Plaintiffs and class members that they do not owe and report those alleged obligations to CRAs. *See* Compl. ¶¶9–12, 49–54. Accordingly, any *Sweet* class members who have claims that arose after November 16, 2022 may be part of this case.[10] Portions of the *Sweet* class are not subject to any release, remaining "free to bring a new action against the Department (including a class action) if evidence arises that their applications are not being lawfully adjudicated." *Sweet*, ECF No. 323 at 19. Deciding which *Sweet* class members (if any) should be excluded at this stage would be premature. Any narrowing of the class definition can occur well before any class is certified.

Thus, MOHELA has not made a showing sufficient to overcome the strong presumption that Rule 12(f) motions should not be used to strike class allegations at the pleadings stage.

## IV. CONCLUSION

Plaintiffs request that the Court deny MOHELA's motion in its entirety. If the Court is inclined to grant MOHELA's Rule 12(b)(1) motion, it should permit Plaintiffs to propound jurisdictional discovery. If the Court grants MOHELA's Rule 12(b)(6) motion, it should grant Plaintiffs leave to amend.

Dated: January 21, 2025 KEMNITZER, BARRON & KRIEG, LLP

By: /s/ *Malachi J. Haswell*
Malachi J. Haswell
Kristin Kemnitzer
Adam J. McNeile

PROJECT ON PREDATORY STUDENT

---

[9] The Effective Date is defined as the date on which the court entered Final Judgment or else the date by which any appeals by class members have been resolved. *Id.* at 3. The court entered Final Judgment on November 16, 2022. *Sweet*, ECF No. 346. There were no appeals by class members. *See*, *generally*, *Sweet*, ECF Nos. 1–457.

[10] MOHELA cannot argue that no further relief could be offered those class members, since the "Full Settlement Relief" awarded in *Sweet* includes federal loan discharges, refunds of amounts paid to the Department, and credit repair. *Sweet*, ECF No. 323 at 1. Here, Plaintiffs and the class are also seeking compensatory damages, punitive damages, statutory damages, and treble damages. *See* Compl., Prayer for Relief ¶3.

LENDING
Noah Zinner
Rebecca C. Eisenbrey
Rebecca C. Ellis

JUBILEE LEGAL
Daniel "Sparky" Abraham

*Attorneys for Plaintiffs and the Proposed Class*