PROJECT ON PREDATORY STUDENT LENDING
NOAH ZINNER Bar No. 247581
REBECCA C. EISENBREY Admitted *pro hac vice*
REBECCA C. ELLIS Admitted *pro hac vice*
769 Centre St.
Jamaica Plain, MA 02130
Telephone: (617) 390-2669
nzinner@ppsl.org

JUBILEE LEGAL
DANIEL "SPARKY" ABRAHAM Bar No. 299193
300 E. Esplanade Dr., Ste. 900
Oxnard, CA 93036
Telephone: (805) 946-0386
sparky@jubilee.legal

KEMNITZER, BARRON & KRIEG, LLP
ADAM J. MCNEILE Bar No. 280296
MALACHI J. HASWELL Bar No. 307729
1120 Mar West St., Ste. C2
Tiburon, CA 94920
Telephone: (415) 632-1900
adam@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAIME MALDONADO, ANNA VARELA, ALMA GARY, and JEFF PLAMONDON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,

Defendants.
______________________________/

**Case No. 3:24-cv-07850-VC**

**PLAINTIFFS' OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: July 10, 2025
Time: 10:00 a.m.
Location: Courtroom 4, 17th Floor

Assigned for all purposes to Hon. Vince Chhabria

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................... 2

III. LEGAL ARGUMENT ....................................................................................... 3

A. Legal Standard ................................................................................................ 3

B. MOHELA's Motion Should Be Denied ........................................................... 5

1. The Department of Education Is Not a Necessary Party ............................... 5

a. The Court Can Accord Complete Relief Among Existing Parties ................ 6

b. The Department's Interests Will Not Be Impaired ....................................... 8

c. MOHELA is Not at Risk of Inconsistent Obligations ................................... 9

2. The Department of Education is Not an Indispensable Party ........................ 10

a. A Judgment Will Not Prejudice the Department ......................................... 10

b. A Judgment Rendered in the Department's Absence Will be Adequate ...... 11

c. Plaintiffs Will Not Have an Adequate Remedy if the Case is Dismissed for Nonjoinder 11

IV. CONCLUSION ............................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 2009 WL 10699035 (C.D. Cal. July 14, 2009) ....... 5

*Consul Grp. Re Dos Mil Veintiuno Sociedad De Responsabilidad Limitada v. Zinchenko*, 2019 WL 13551234 (C.D. Cal. July 30, 2019) ....... 4

*Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477 (7th Cir. 2001) ....... 5

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) ..... 3

*Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188 (9th Cir. 1989) ....... 3

*E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005) ....... 6, 11

*Fleming v. Pickard*, 581 F.3d 922 (9th Cir. 2009) ....... 4

*Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234 (D.C. Cir. 1981) ....... 5

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180 (C.D. Cal. 2011) ....... 4

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ....... 3, 9, 10

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) ....... 4

*Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993 (9th Cir. 2011) ....... 4

*Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915 (4th Cir. 1999) ....... 3

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020) ....... 4

**Statutes**

Fed. R. Civ. P. 12(b) ....... 3

Fed. R. Civ. P. 12(c) ....... 3

Fed. R. Civ. P. 12(h) ....... 3

Fed. R. Civ. P. 19 ....... 3, 5, 10, 11

**Other Authorities**

Advisory Committee Notes, Amendments to Rules of Civil Procedure, 39 F.R.D. 69 (1966) ...... 5

Motion of Petitioners, *Dep't of Educ. v. Career Colleges & Schs. of Tex.*, No. 24-413 (U.S. Jan. 24, 2025) ........ 8

Motion of Petitioners, *Dep't of Educ. v. Career Colleges & Schs. of Tex.*, No. 24-413 (U.S. May 29, 2025) ........ 8

Statement of Interest of the United States of America, *American Federation of Teachers v. Higher Education Loan Authority of the State of Missouri*, 1:24-cv-02460-TSC, Dkt. No. 38 (D.C. Nov. 25, 2024) ........ 8

## I. INTRODUCTION

Plaintiffs and putative class representatives are student loan borrowers who are entitled to federal student loan discharges based on the predatory practices of the for-profit educational institutions they attended. Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA"), the servicer of Plaintiffs' loans, refuses to implement the federal student loan discharges announced years ago by the U.S. Department of Education (the "Department"). MOHELA continues to collect and report on Plaintiffs' accounts as if they had never been cancelled, refuses to issue refunds to Plaintiffs, and has demanded payment from Plaintiffs. Plaintiffs bring this putative class action lawsuit to remedy the harms caused by MOHELA's unnecessary delay.

MOHELA now moves for judgment on the pleadings on the basis that the Department is a required party under Rule 19 but cannot be joined because of its immunity. However, MOHELA's motion suffers from a single, basic defect: Plaintiffs are not seeking an order to discharge active loans; instead, Plaintiffs are seeking to compel MOHELA to *recognize* discharges the Department *already ordered.* As alleged in Plaintiff's complaint, the Department has announced discharges for Plaintiffs and the putative class. The Department has also notified MOHELA of which loans are eligible for discharge and provided instructions to process the discharges and issue refunds. For the purpose of a motion for judgment on the pleadings under Rule 12(c), Plaintiffs' allegations must be taken as true.

MOHELA's voluminous evidentiary submissions do nothing to shore up its shaky premise. The contracts between MOHELA and the Department only further support that MOHELA is responsible for implementing discharges issued by the Department, issuing refunds, and deleting credit tradelines. Moreover, MOHELA admits that the Department has provided lists of loans to be discharged but notably fails to state whether it has, to date, implemented those discharges. MOHELA also does not explain the extent to which the lists provided by the Department include loans for members of the putative class.

For these reasons, as elaborated below, the Court should deny MOHELA's motion.

//

## II. FACTUAL BACKGROUND

Between April 2022 and May 2024, the Department announced that it would discharge federal student loans for former students of six predatory for-profit institutions (the "Group Discharge" schools). ECF No. 1-25 ("Compl.") ¶ 2. The Department's announcements referenced findings of widespread consumer fraud by these schools toward their students. *Id.* Plaintiffs and the putative class members attended Group Discharge schools and qualify for the promised discharges. *Id.* ¶¶ 17–20, 56–107, 115.

The Department contacted affected student borrowers and represented that their loans would be discharged. Compl. ¶ 3. The notices, and the Department's public statements, informed borrowers that they did "not need to take any further action" to receive the discharges. *Id.* The notices stated that the borrowers did not have to repay loans from the identified schools, that the remaining balances on the loans would be forgiven, and that the borrower could be eligible for a refund for payments they made on the loans. *Id.* ¶ 4. The notices stated that the borrowers would not have to resume making payments on the discharged loans. *Id.*

MOHELA is a third-party loan servicer contracting with the Department and services Plaintiffs' federal loans. Compl. ¶¶ 34–35. The Department notified MOHELA which loans should be discharged and gave instructions for processing the discharges and refunds. *Id.* ¶ 44. The Department also instructed MOHELA to identify borrowers who are eligible for student loan discharges and to stop all billing and collection on those loans. *Id.* ¶ 45. MOHELA knew it was servicing discharge-eligible loans through the Department's public announcements, communications from student borrowers, and MOHELA's access to loan data. *Id.* ¶ 46.

In late summer 2023, MOHELA placed Plaintiffs' loans back into repayment status, and in many cases started sending bills. Compl. ¶ 7. MOHELA has continued to tell Plaintiffs that they remain obligated on their cancelled loans. *Id.* ¶ 9. MOHELA has failed to approve thousands of refund payments borrowers made on their Group Discharge school loans. *Id.* ¶ 10. MOHELA continues to report obligations on loans from Group Discharge schools to credit reporting agencies ("CRAs") even though Plaintiffs do not owe anything on the loans. *Id.* ¶ 11.

Despite having the ability, authority, and responsibility to process Department-issued

student loan discharges, MOHELA failed to deliver the Department's promised relief to borrowers who have loans from Group Discharge schools and failed to refrain from inaccurate and misleading collection and credit reporting information to borrowers and to CRAs while processing the relief. Compl. ¶ 49. Plaintiffs bring class claims on behalf of themselves and other California borrowers under California consumer protection laws.

## III. LEGAL ARGUMENT

### A. Legal Standard

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A party may raise an argument for failure to join required parties under Rule 19 as part of a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B). Because motions brought under subsection(b) and subsection(c) are "functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Here, where MOHELA seeks dismissal for failure to join a necessary party under Rule 19, the appropriate analog is Rule 12(b)(7), which incorporates the requirements of Rule 19. *See* Fed. R. Civ. P. 12(b)(7), 19.

Rule 19 sets out a two-prong standard for parties that must be joined "if feasible" (sometimes called "necessary" parties) and those without whom an action should not proceed ("indispensable" parties). *See* Fed. R. Civ. P. 19. A Rule 19 analysis requires the court to determine "(1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in 'equity and good conscience' the suit should be dismissed." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002). "The inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Id.* at 1154. Dismissal of a case for failure to join a required party is a "drastic remedy . . . which should be employed only sparingly." *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999). The moving party bears the burden of persuasion to show a case must be dismissed for nonjoinder. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

It appears settled that a court may consider extrinsic evidence in deciding a motion based on Rule 19. *See WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 663 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021) (citing *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960)). However, the legal standard for evaluating such evidence is not clear in the caselaw. In particular, the introduction of extrinsic evidence for a Rule 12(b) or 12(c) motion seems to contradict the general principle that the allegations in the complaint are taken as true, since Rule 12 motions putatively attack the pleadings and may be filed before any discovery is conducted. *See Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011) (allegations in complaint are accepted as true for a Rule 12(b)(7) motion); *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (same for a Rule 12(c) motion). But if the nonmoving party were required to support every allegation that may be probative of the Rule 19 analysis, the motion would be an evidentiary proceeding similar to a motion for summary judgment. Federal procedure does not allow a summary judgment proceeding to occur before adequate discovery has been conducted. *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("[Rule 56] ensures that adequate discovery will occur before summary judgment is considered." (citation omitted)); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1197 (C.D. Cal. 2011) ("A court may consider extraneous evidence when deciding a Rule 12(b)(7) motion without converting it into a motion for summary judgment.").

Synthesizing these principles, in deciding a Rule 12(c) motion for judgment on the pleadings based on its Rule 12(b)(7) analog, the Court must take the allegations in the complaint as true, except for matters directly contradicted by the extrinsic evidence. *See Fleming*, 581 F.3d at 925; *Consul Grp. Re Dos Mil Veintiuno Sociedad De Responsabilidad Limitada v. Zinchenko*, 2019 WL 13551234, at *3 n.3 (C.D. Cal. July 30, 2019) (under Rule 12(b)(7), "the determination is based on the [complaint], which is accepted as true with all reasonable inferences drawn in favor of Plaintiff"); *In re Toyota*, 826 F. Supp. 2d at 1196 (rejecting allegations that were "not supported by the record" on a Rule 12(b)(7) motion). If the extrinsic evidence offered by the moving party contradicts the allegations in the complaint, the nonmoving party should have the

opportunity to conduct discovery. *See In re Toyota*, 826 F. Supp. 2d at 1196 (noting that the nonmoving party had the opportunity to question the witness whose testimony was offered). Conflicts in the evidence should be resolved in favor of the nonmoving party. *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 483 (7th Cir. 2001). If the Court determines that it has insufficient information to decide an issue of joinder, the decision "may properly be deferred if adequate information is not available at the time." Advisory Committee Notes, Amendments to Rules of Civil Procedure, 39 F.R.D. 69, 93 (1966); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 2009 WL 10699035, at *13 (C.D. Cal. July 14, 2009) ("Th[e] [Advisory Committee] commentary clearly contemplates that resolution of factual issues may be necessary to determine a party's status under Rule 19, and that this may not be possible 'until the action [is] further advanced' than the pleading stage"); *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 241 (D.C. Cir. 1981) (noting that there are cases in which the Rule 19 factors "cannot be properly applied at the pleading stage").

As explained below, none of MOHELA's evidentiary submissions contradict the allegations in the complaint. To the contrary, MOHELA's contracts with the Department only go to show that MOHELA is responsible for processing discharges issued by the Department and required to comply with state and federal law in performing those duties. This is precisely the relief sought by Plaintiffs in the case, which does not impair any of the Department's interests.

## B. MOHELA's Motion Should Be Denied

### 1. The Department of Education Is Not a Necessary Party

A necessary party under Rule 19(a) is (1) one in whose absence "the court cannot accord complete relief among existing parties" or (2) has an "interest relating to the subject of the action" and is so situated that deciding the action in its absence may "impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A), (B). "Necessary" parties, as described by Rule 19(a), are—despite the nomenclature—only desirable, since it is "still possible under Rule 19(b) for the case to proceed

without the joinder of the so-called 'necessary' absentee." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).

**a. The Court Can Accord Complete Relief Among Existing Parties**

MOHELA asserts that complete relief cannot be afforded between existing parties because only the Department has the power to discharge Plaintiffs' loans. This argument relies on the mistaken premise that Plaintiffs are seeking to have MOHELA approve discharge of active loans. *See* Motion at 8 ("Plaintiffs blame MOHELA for not discharging their liability for loans the Department—not MOHELA—owns."). To the contrary, Plaintiffs assert that their loans have *already been approved for discharge*. *See* Compl. ¶¶ 26–31 (explaining the Group Discharges issued by the Department). Plaintiffs further allege that the Department has taken all steps necessary to effect the discharges, and that the unreasonable delay, unlawful collection activity, and illegal credit reporting all now lie at MOHELA's door. *Id.* ¶¶ 41–51. Thus, Plaintiffs are not seeking any order compelling further action from the Department. The injunctive relief sought is purely as to MOHELA, with respect to its legal obligations under California law. *See* Compl., Prayer for Relief, ¶ 4. The Complaint defines the scope of relief relevant to the Rule 19 analysis. *See Peabody*, 610 F.3d at 1080 (construing a complaint to not request relief against sovereign).

Moreover, MOHELA *admits* that the Department has provided MOHELA "lists of loans to be discharged on an intermittent and rolling basis since January 2023." *See* Declaration of Jennifer Farmer ("Farmer Decl.") ¶ 15. MOHELA does not clarify whether any of those "lists" pertain to the discharges for Plaintiffs or members of the putative class.[1] It also nowhere attests that it has processed all the discharges for which the Department has provided information and

---

[1] MOHELA claims that it "has not received documents or communications from the Department stating that Plaintiffs Plamondon's or Gary's loans have been discharged." Motion at 9 (citing Farmer Decl. ¶ 18). Plaintiffs have requested, but not yet received, documents that would allow the Court to evaluate the factual validity of these claims. Furthermore, MOHELA's related assertion that it "has received communications from the Department indicating that Plaintiffs Plamondon and Gary are in forbearance through January 1, 2040, and neither are required to make any payments at this time," Farmer Decl. ¶ 18, suggests that it *has* received notification that Plaintiffs are approved for group discharge.

instructions. Additionally, MOHELA states that "since January 2025, the Department has not provided MOHELA with any list of loans to be discharged pursuant to a group discharge process." *See id.* This assertion raises more questions than answers—for example, whether the Department provided MOHELA with lists of group discharge loans *prior* to January 2025 that MOHELA has still not processed. Thus, MOHELA suggests that there must be further action from the Department to proceed but does not substantiate that claim.

Notably, MOHELA acknowledges that it processed the loan discharges for Plaintiffs Jaime Maldonado and Anna Varela pursuant to the Department's directions. Farmer Decl. ¶¶ 16–17. MOHELA strikingly eschews stating *when* it received those directions or how long it took to process the discharges. Plaintiffs Maldonado and Varela received notice from the Department in November 2022 and March 2023, respectively, that their loans would be discharged. Compl. ¶¶ 61, 71. Yet MOHELA did not process the discharges until late 2024, after the filing of the Complaint.[2] *See* Farmer Decl. ¶¶ 16–17. Such unexplained delays are precisely the motivating force of this lawsuit.

Further, at least one document MOHELA has thus far produced in discovery directly contradicts the central contention of MOHELA's motion: that "MOHELA cannot provide the relief Plaintiffs seek without explicit instruction from the Department." *See* Motion at 8. [redacted] *See* Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed, Exh. A. The document appears to pertain in part to the loans at issue in this case, as it refers to "Group

[2] If permitted to proceed, Plaintiffs would further contend that MOHELA botched even these post-litigation discharges, for example by continuing to report these allegedly discharged loans on Plaintiffs' credit reports and failing to accurately process refunds.

CCI" and "Group ITT," which may refer to loans from Corinthian Colleges Inc. and ITT Technical Institute. *See* Compl. ¶¶ 27–28. This exchange clearly illustrates MOHELA's processing delays, which form the basis of the current lawsuit.

In sum, MOHELA's bare citations to its Servicing Contracts do nothing to prove either that further action is needed from the Department with respect to the loans at issue in this case or that all relevant loans for which MOHELA *has* received instructions have been processed.

**b. The Department's Interests Will Not Be Impaired**

MOHELA asserts that the Department has interests relating to this case for which a disposition would impair its ability to protect those interests. *See* Motion at 9. MOHELA's baseless contentions are addressed in turn.

First, that the Department owns the loans at issue in this case is not relevant. Again, Plaintiffs are not seeking discharges for active loans; they are requesting that MOHELA process the discharges that have already been approved by the Department. *See* Compl. ¶¶ 44–51. Thus, any loans for which Plaintiffs receive relief will be on loans *already cancelled by the Department*. The Department will not lose "federal assets" because of this lawsuit.

Second, the Department's filing in a different, unrelated lawsuit does not establish that its interests will be impaired in this case. In the filing cited by MOHELA, the Department requested to be heard if the court decides the issue of derivative sovereign immunity on the merits. *See* Statement of Interest of the United States of America, *American Federation of Teachers v. Higher Education Loan Authority of the State of Missouri*, 1:24-cv-02460-TSC, Dkt. No. 38, at *3 (D.C. Nov. 25, 2024). That issue does not touch on the issue of whether the Department has interests at risk of being impaired in this lawsuit. In any case, Plaintiffs are not asking the Court to determine the "merits of the rights or obligations" contained in MOHELA's contracts with the Department. Instead, Plaintiffs contend that MOHELA violates California consumer protection statutes by collecting on and reporting debts that are not owed.

Third, MOHELA cites the Department's stated intention to reassess its borrower defense regulations and corresponding request for abeyance in *Dep't of Educ. v. Career Colleges & Schs. of Tex.*, No. 24-413 (U.S. Jan. 24, 2025). However, on May 29, 2025, the Department filed a

motion to resume merits briefing in that case, reaffirming its intention to defend the 2022 BDR Rule and its statutory authority to issue such regulations, an issue it "continues to regard . . . as one of exceptional and lasting importance." *See* Motion of Petitioners, filed May 29, 2025. While MOHELA handwaves at other possible changes in the legal landscape relating to borrower defense regulations, *see* Motion at 4–5, mandatory dismissal under Rule 19 requires "more than speculation about a future event." *Makah*, 910 F.2d at 558. In any case, MOHELA fails to explain how any of the prospective changes will impair the Department's interest in *this* lawsuit, as the loans at issue have already been approved for discharge. MOHELA does not argue, for example, that any future rulemaking or legislation will necessarily invalidate the Department's prior group discharges.

In sum, MOHELA fails to identify how the Department has *any* interest relating to the subject matter of this action, much less an interest that may be impaired by a final resolution.

**c. MOHELA is Not at Risk of Inconsistent Obligations**

MOHELA's assertion that it is at risk of inconsistent obligations because of the Department's interest in this case is unfounded. Again, MOHELA has not shown how the Department has any interest implicated by this case. Moreover, MOHELA's contention is based on the flatly incorrect position that Plaintiffs seek to enjoin MOHELA "from continuing its contractual obligations under its Servicing Contracts with the Department." *See* Motion at 11. The opposite is true: Plaintiffs seek an order for MOHELA to comply with its obligations under California law, which incidentally are *also* its obligations under the Servicing Contracts. *See* Farmer Decl., Exh. I (containing FSA's instructions to servicers on handling large group discharges for borrower defense). For example, under the July 2022 Change Order, servicers are required to discharge eligible loans within 15 or 45 business days (depending on loan type) of receiving the file and "delete all related credit tradelines at the regular next reporting to the credit reporting agencies after the discharge is complete." *Id.* at 1; *see also id.*, Exh. E at 169 (§ 23018.180) ("The contractor shall process borrower defense group approvals and discharges."). The USDS contract explicitly requires MOHELA to "[a]ccurately report the status of borrower accounts to the national Credit Reporting Agencies (CRAs) in compliance with the

Fair Credit Reporting Act (FCRA) and respond timely to borrower disputes" and to "[c]omply with all applicable Federal, and State laws, rules, and regulations applicable to its performance under the Contract (e.g., the Fair Credit Reporting Act, the Fair Debt Collections Practices Act, the Truth in Lending Act, etc.) and shall maintain a sound compliance management system (CMS) that is integrated into the overall framework for product design, delivery, and administration across their entire product and service lifecycle." Farmer Decl., Exh. B, at 15–16.

Thus, MOHELA's assertion that it cannot provide the relief sought by Plaintiffs without breaching its Servicing Contracts is unsupported and illogical.

**2. The Department of Education is Not an Indispensable Party**

"Only if the absent parties are 'necessary' and cannot be joined must the court determine whether in 'equity and good conscience' the case should be dismissed under Fed. R. Civ. P. 19(b)."[3] *Makah*, 910 F.2d at 559. Since MOHELA failed to establish that the Department's presence is necessary under Rule 19(a), it cannot establish that dismissal is required under Rule 19(b). *See id.* (stating that a court "need not inquire further" if the Rule 19(a) analysis is dispositive). In any case, MOHELA's arguments under Rule 19(b) fail for the same reasons.

**a. A Judgment Will Not Prejudice the Department**

The first inquiry under Rule 19(b) is "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Fed. R. Civ. P. 19(b)(1). MOHELA's arguments on this prong mirror its arguments above with respect to the Department's alleged interest in the subject matter of this case and should be rejected for the same reasons. *See supra*, Section III.B.1(b). The Department is no longer reassessing its BDR regulations. Nor has MOHELA explained how any injunctive relief awarded in this case would possibly (much less likely) violate the stay issued in *Career Colleges*, given that the discharges at issue in this case have already been approved.[4] Nor are Plaintiffs seeking any relief that would

---

[3] For the purposes of this motion, Plaintiffs do not dispute that joinder of the Department is not feasible.

[4] Moreover, all but one of the group discharge announcements were made either before the effective date of the 2022 BDR Rule or after its implementation was enjoined. *See* Federal Student Aid, "Borrower Defense Updates," https://studentaid.gov/announcements-

require MOHELA to choose between complying with a court injunction or its Servicing Contracts. To the contrary, the relief sought in this case is fully in line with MOHELA's contractual duties to process discharges as instructed by the Department. As MOHELA has not identified any actual prejudice to either itself or the Department, it is unnecessary to examine the extent to which such prejudice could be avoided under Rule 19(b)(2).

#### b. A Judgment Rendered in the Department's Absence Will be Adequate

The second inquiry under Rule 19(b) is "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). MOHELA again asserts—without support—that the Department's participation is necessary to provide the complete relief Plaintiffs seek. *See* Motion at 15. It is not. As Plaintiffs allege, the Department has approved the discharge of all loans at issue in this case. *See* Compl. ¶¶ 26–31; *Peabody*, 610 F.3d at 1080 (allegations in complaint shape the Rule 19 inquiry). MOHELA is responsible for implementing federal student loan discharge relief. *Id.* ¶¶ 32–43. The Department has taken all necessary steps to notify MOHELA of which loans in its portfolio should be discharged and has provided instructions for discharges and refund calculations. *Id.* ¶¶ 44–45. Therefore, the only action left to take is implement the discharges, issue refunds, and stop collection and reporting activity.

Because a judgment against MOHELA would afford all the relief Plaintiffs seek, MOHELA fails to show how such relief is inadequate.

#### c. Plaintiffs Will Not Have an Adequate Remedy if the Case is Dismissed for Nonjoinder

The final analysis under Rule 19(b) is "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). MOHELA asserts that Plaintiffs will have an adequate remedy under the Administrative Procedures Act ("APA"). However, as MOHELA acknowledges, such a proceeding would be brought only against the Department. Plaintiffs have alleged that the Department has already issued discharges for

---

events/borrower-defense-update (last visited June 6, 2025) (group discharge for students at CollegeAmerica's Colorado campuses was announcement July 23, 2023; all others were announced before July 1, 2023, or after the August 7, 2023, injunction).

Plaintiffs and the putative class. Compl. ¶¶ 26–31. Thus, Plaintiffs have nothing further to request from the Department. It is MOHELA's failure to process the Department-issued discharges that has harmed Plaintiffs and the class.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny MOHELA's motion for judgment on the pleadings.

Dated: June 6, 2025

KEMNITZER, BARRON & KRIEG, LLP

By: /s/ *Malachi J. Haswell*
Malachi J. Haswell
Kristin Kemnitzer
Adam J. McNeile

PROJECT ON PREDATORY STUDENT LENDING
Noah Zinner
Rebecca C. Eisenbrey
Rebecca C. Ellis

JUBILEE LEGAL
Daniel "Sparky" Abraham

*Attorneys for Plaintiffs and the Proposed Class*