Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Tony S. Mekari (SBN 347057)
tony.mekari@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662

Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

Jacquelyn Fradette (*pro hac vice*)
jfradette@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8822

*Attorneys for Defendant Higher Education Loan
Authority of the State of Missouri*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAIME MALDONADO, ANNA VARELA, ALMA GARY and JEFF PLAMONDON, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,<br><br>               Defendants. | Case No. 3:24-CV-07850 VC<br><br>**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 22, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 17th Floor<br><br>Case Removed: November 8, 2024<br>(Superior Court of California for the County of Alameda, Case No. 24CV090146) |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     BACKGROUND ............................................................................................3

        A.      The Named Plaintiffs And Their Loans. ...............................................3

        B.      The Department Announces That Plaintiffs' Loans Would Be Eligible For
                Discharges. .............................................................................................5

        C.      The Department Is Still Processing The Discharges And Ordering
                MOHELA To Effect The Discharges On A Rolling Basis. ...................6

        D.      Plaintiffs' Claims. ..................................................................................8

        E.      Procedural History. ................................................................................9

III.    LEGAL STANDARD ....................................................................................10

IV.     ARGUMENT .................................................................................................10

        A.      MOHELA Is Entitled To Summary Judgment Because It Was Not
                Unlawful For MOHELA To Engage In Routine Servicing Activities On
                Loans That Had Not Yet Been Discharged. .........................................10

                1.      The Department's Announcements And Notices Did Not
                        Discharge Plaintiffs' Loans Or Entitle Them To Immediate Relief.
                        ....................................................................................................10

                2.      MOHELA Is Entitled To Summary Judgment on Plamondon's and
                        Gary's Claims. ...........................................................................12

                        a.      Plaintiffs Plamondon And Gary Cannot Establish A Claim
                                Under The CCRAA Because MOHELA Has Not Reported
                                Inaccurate Information To Credit Reporting Agencies. ....12

                        b.      Plaintiffs Plamondon And Gary Cannot Establish Claims
                                Under The Rosenthal Act Because MOHELA Made No
                                False, Deceptive, Or Misleading Representations About
                                Their Loans. ......................................................................14

                        c.      Plaintiffs' Claims Under The SBBR And UCL Fail
                                Because Those Claims Are Derivative Of The CCRAA
                                And Rosenthal Act Claims. ..............................................18

                3.      MOHELA Is Entitled To Partial Summary Judgment On
                        Maldonado's And Varela's Claims. .............................................18

        B.      MOHELA Also Is Entitled To Summary Judgment On Maldonaldo's
                Rosenthal Act Claims for all Time Periods. ........................................19

V.      CONCLUSION ..............................................................................................20

i

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-cv-07850 VC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................10

*Biggs v. Experian Info. Sols., Inc.*,
209 F. Supp. 3d 1142 (N.D. Cal. 2016) ...............................................................13, 14

*Blakeney v. Experian Info. Sols., Inc.*,
2016 WL 4270244 (N.D. Cal. Aug. 15, 2016) ......................................................13, 14

*Brown v. EdFinancial Servs., LLC*,
2024 WL 3550479 (C.D. Cal. July 9, 2024).................................................................20

*Burris v. HSBC Bank USA, Nat'l Ass'n*,
2014 WL 12772260 (C.D. Cal. Dec. 19, 2014) ...........................................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................................................................................................10

*Contreras v. Portfolio Recovery Assocs., LLC*,
No. 2020 WL 204114 (C.D. Cal. Jan. 10, 2020) .........................................................15

*Cotter v. Movement Mortg., LLC*,
2023 WL 7713594 (S.D. Cal. Nov. 15, 2023) .............................................................19

*Evon v. L. Offs. of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ...............................................................................16, 17

*Freyermuth v. Credit Bureau Servs., Inc.*,
248 F.3d 767 (8th Cir. 2001) ......................................................................................16

*Galette v. New Jersey Transit Corporation*,
No. 24-1021 (U.S.)........................................................................................................9

*Harrold v. Experian Info. Sols., Inc.*,
2012 WL 4097708 (N.D. Cal. Sept. 17, 2012) ...........................................................13

*Mariscal v. Flagstar Bank, FSB*,
2020 WL 4804983 (C.D. Cal. Aug. 4, 2020)..........................................................19, 20

*Medina v. Two Jinn, Inc.*,
2024 WL 4485592 (N.D. Cal. Mar. 28, 2024)............................................................15

*New Jersey Transit Corporation v. Colt*,
No. 24-1114 (U.S.)........................................................................................................9

*Parker v. First Step Grp. of Minnesota LLC (FN)*,
2016 WL 192159 (D. Ariz. Jan. 15, 2016) ...............................................................15

*Sambor v. Omnia Credit Servs., Inc.*,
183 F. Supp. 2d 1234 (D. Haw. 2002) ......................................................................15

*Scott v. Credit Consulting Servs., Inc.*,
No. H049063, 2022 WL 3593899 (Cal. Ct. App. Aug. 23, 2022)..........................14

*Stimpson v. Midland Credit Mgmt., Inc.*,
944 F.3d 1190 (9th Cir. 2019) .................................................................15, 16, 17

**Statutes**

15 U.S.C. § 1692e .............................................................................................14, 16

20 U.S.C. § 1083.4 .....................................................................................................8

20 U.S.C. § 1087e(h) ...............................................................................................11

20 U.S.C. § 1087hh ............................................................................................7, 11

Cal. Business and Professions Code §§ 17200 et seq..................................................8

Cal. Civ. Code § 1785.25 ....................................................................................12, 14

Cal. Civ. Code § 1788.1(b) ......................................................................................19

Cal. Civ. Code § 1788.16 ...........................................................................................14

Cal. Civ. Code § 1788.17 ...........................................................................................14

Cal. Civil Code § 1788.100 (Student Borrower Bill of Rights).................................8

Cal. Civ. Code §§ 1785.1, et seq (California Consumer Credit Reporting Agencies
Act ("CCRAA")). .............................................................................................. *passim*

Cal. Civ. Code §§ 1788, et seq (California Fair Debt Collection Practices Act
("Rosenthal Act")) ............................................................................................ *passim*

Federal Fair Credit Reporting Act ("FCRA").....................................................12, 13

Federal Fair Debt Collection Practices Act ("FDCPA") .................................14, 15, 16

**Rules & Other Authorities**

34 C.F.R. § 682.205 ...................................................................................................8

34 C.F.R. §682.208 ....................................................................................................8

34 C.F.R. § 685.212 ................................................................................................7, 11

Fed. R. Civ. Proc. 56 ...............................................................................................10

Fed. R. Civ. Proc. 19 ............................................................................................9, 10

Office of Attorney General Opinion No. 02-601,
      85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180 (Oct. 29, 2002) .........................19

iv

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S NOTICE OF
MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

All claims pled in the Complaint stand or fall on Plaintiffs' allegation that the Department of Education (the "Department") has discharged Plaintiffs' federal student loans. Through litigation, Plaintiffs have conceded, and the Court has recognized, that "plaintiffs do not seek, nor would this Court grant, any judgment that requires discharge of loans that [the Department of Education] did not authorize." Dkt. 69. It is now a matter of undisputed fact that this condition precedent is unfulfilled.

No Plaintiff has or could prove a claim under any cause of action pleaded in the Complaint unless and until the Department instructs the Higher Education Loan Authority of the State of Missouri ("MOHELA") to discharge that Plaintiff's federal student loans. As a result, summary judgment should be entered in MOHELA's favor as to all Plaintiffs for all time periods before the Department instructed MOHELA to discharge their federal student loans. Based on undisputed material facts, this will result in complete summary judgment of two Plaintiffs' claims and partial summary judgment as to the other two Plaintiffs' claims.

The four named Plaintiffs in this putative class action assert that MOHELA, the servicer of their federal student loans, "refused" to discharge their loans after the Department announced that those loans would be eligible for discharge at some point in the future. Dkt. No. 1-25 ("Compl.") ¶ 1. Although discovery is ongoing, the undisputed factual record today shows:

- The Department has not instructed MOHELA to discharge the loans of Plaintiffs Jeffrey Plamondon and Alma Gary. Accordingly, MOHELA has not discharged their federal student loans.

- The Department instructed MOHELA to discharge the loans for Plaintiffs Jaime Maldonado and Anna Varela, the other two named Plaintiffs, in 2023 and 2024. Accordingly, MOHELA discharged those loans over a year ago. These Plaintiffs have received full refunds of their loan payments.

The Court permits Defendants to move for summary judgment "on liability with respect to

1

the named plaintiffs" while discovery is ongoing and before litigating class certification in recognition of the potential efficiencies of such a process where the undisputed facts doom the Plaintiffs' claims. J. Chhabria Civil Standing Order ¶ 52. Here, the law and undisputed facts developed to date foreclose Plaintiffs' legal theory that MOHELA's routine servicing activities on Plaintiffs' loans became deceptive, misleading, and unlawful the minute the Department announced that those loans would be eligible for discharge at some future point. As a matter of law, the Department's public announcements and notices to Plaintiffs that their loans were eligible for discharge could not extinguish Plaintiffs' loans, entitle Plaintiffs to immediate loan discharges, or authorize MOHELA to discharge and stop servicing the loans. Instead, MOHELA is contractually obligated to continue servicing loans that still exist, and it cannot discharge any federal student loans until after the Department instructs MOHELA to effect the discharges.

The undisputed evidence demonstrates that the Department did not immediately and still has not authorized discharges for all of the named Plaintiffs. Until it does, MOHELA's routine loan servicing cannot be misleading, unfair, or unlawful. Accordingly, MOHELA is entitled to summary judgment for all claims brought by Plaintiffs Jeff Plamondon and Alma Gary. It is entitled to partial summary judgment for all claims brought by Plaintiffs Jaime Maldonado and Anna Varela for the time period before the Department authorized the discharge of Maldonado's and Varela's federal student loans. More specifically:

- <u>Plaintiffs Plamondon and Gary</u>: MOHELA has not yet received orders from the Department to discharge federal student loans for Plamondon and Gary. As a result, their loans remain on the Department's books, and MOHELA is contractually obligated to continue to service them. Doing so—by continuing to report a loan's existence to credit reporting agencies and continuing to reflect that a loan has a balance—does not violate any law.

- <u>Plaintiffs Maldonado and Varela</u>: For the same reasons, Maldonado and Varela cannot maintain causes of action based on the time period before MOHELA received formal instructions from the Department to discharge their loans.

2

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

Additionally, the undisputed facts show that MOHELA is entitled to summary judgment on Maldonado's claims under the California Fair Debt Collection Practices Act, also known as the Rosenthal Act, Cal. Civ. Code §§ 1788, et seq., for all times, including the period after the Department authorized her loan discharge. This law applies only to the collection of debts that are past due or delinquent—and Maldonado's loans were neither during the relevant period. Thus, Maldonado's Rosenthal Act claim cannot survive.[1]

## II.    BACKGROUND

### A.    The Named Plaintiffs And Their Loans.

**Jeff Plamondon.**  Plamondon took out federal student loans to attend ITT in Sylmar, California from 2002 to 2003 and again from 2005 to 2008. Decl. of Sheila A.G. Armbrust, Ex. T at 43:18-23, 48:2-5 (Plamondon deposition).[2] Plamondon's federal student loans were consolidated on October 13, 2022. Ex. Y (MOHELA welcome letter). MOHELA began servicing Plamondon's federal student loans at the time of their consolidation. *Id*.; Ex. T at 49:13-16 (Plamondon deposition). At all times since, Plamondon's loans have been in forbearance and Plamondon has not had to make any payments on his federal student loans. Ex. DD (Plamondon forbearance history) (reflecting COVID-19 forbearance from loan origination to August 31, 2023 and an exceptional discretionary forbearance from September 1, 2023 to January 1, 2040); Ex. T. at 61:10-16 (Plamondon deposition). Plamondon has never made any payments on his consolidated federal student loans serviced by MOHELA, and his loans remain in forbearance until January 1, 2040.  Ex. T at 55:13-18, 59:20-25 (Plamondon deposition); Ex. DD (Plamondon forbearance history).

**Alma Gary.**  Gary took out federal student loans for her sons to attend Westwood College,

---

[1] Although MOHELA moves only for partial summary judgment at this time, MOHELA in no way concedes that a valid claim exists or can be proven as to any Plaintiff, claim, or time period on any grounds, including those set forth herein in part. MOHELA has chosen to move for partial summary judgment at this time in an effort to streamline the case, but this motion is without prejudice to a later motion for summary judgment raising additional arguments or the same arguments as to other Plaintiffs, claims or time periods.

[2] Unless otherwise stated, all exhibit citations are to the Declaration of Sheila A.G. Armbrust.

3

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

Art Institute and SAE Institute of Technology[3] between 2008 and 2013. Ex. P at 50:3-51:3 (Gary deposition). Gary's federal student loans were consolidated in July 2016, and MOHELA began servicing the consolidated loans on December 28, 2021. Ex. P at 50:3-10, 68:18-69:7 (Gary deposition); Ex. EE (MOHELA welcome letter). At all times since, Gary's loans have been in forbearance, and Gary has not made any payments on her federal student loans while MOHELA has serviced them. Ex. FF (Gary forbearance history) (reflecting a series of consecutive forbearances from 3/13/20–8/31/23, 9/1/23–10/31/23, 11/1/23–12/30/23, 12/31/23–1/1/40); Ex. P at 70:4-12 (Gary deposition). Gary's loans remain in forbearance until January 1, 2040. Ex. FF (Gary forbearance history).

**Jaime Maldonado.**  Maldonado attended Heald College, which was owned and operated by Corinthian Colleges, in Hayward, California from 2007 to 2010. Ex. W at 35:25-36:8 (Maldonado deposition). Maldonado took out federal student loans and private loans to attend Heald College. *Id.* at 38:24-39:12. Maldonado's federal loans were consolidated in 2015 and MOHELA began servicing the consolidated loans on December 10, 2021. *Id.*; Ex. KK (MOHELA welcome letter). At all times thereafter, Maldonado's federal student loans were in forbearance, and Maldonado did not have to make any payments on her federal student loans while MOHELA serviced them. Ex. W at 48:14-49:3; 62:2-13 (Maldonado deposition); Ex. II at 4 (reflecting forbearance until January 2040). Maldonado did not make any federal student loan payments while MOHELA was her federal student loan service provider.  Ex. W at 45:12-14 (Maldonado deposition).  Maldonado's loans were discharged over a year ago.  *See infra* Part II.C.

**Anna Varela.**  Varela took out federal student loans to attend Westwood College and California Technical Academy from 2005 to 2008.[4] Ex. O at 35:5-7, 38:19-22, 42:2-24 (Varela deposition). Varela consolidated her Westwood College loans on September 2, 2022, and MOHELA became the servicer of her consolidated loans thereafter. *Id.* at 55:5-11. At all times, Varela's consolidated loans were in forbearance, and she was not required to make payments on

---

[3] The Department has never announced a group discharge for SAE loans.
[4] Varela paid off her California Technical Academy loans in 2022.  Ex. O at 53:6-54:10 (Varela deposition).

those loans. Ex. JJ (Varela forbearance history) (reflecting a series of consecutive forbearances from September 2022 to January 2040). Varela's loans were discharged over a year ago. *See infra* Part II.C.

**B.    The Department Announces That Plaintiffs' Loans Would Be Eligible For Discharges.**

Starting in 2022, the Department announced that it would be approving group loan discharges for borrowers who took out federal student loans to attend certain for-profit educational institutions. That summer, the Department publicly announced on its website that borrowers with federal student loans who attended Corinthian Colleges, Westwood College, and ITT Technical Institute "will receive discharges of their federal student loans." Ex. B (Corinthian Colleges Announcement) (June 2, 2022); Ex. C (ITT Announcement) (Aug. 16, 2022); Ex. D (Westwood College Announcement) (Aug. 30, 2022). Two years later, in May 2024, the Department announced that borrowers who enrolled at the Art Institutes "will receive 100% discharges of their eligible federal student loans." Ex. E (Art Institutes Discharge) (May 1, 2024). The announcement explained that once "discharges are processed, borrowers will see any remaining loan balances adjusted and credit trade lines deleted. . . . **Processing these discharges, refunds, and credit trade line deletions will take some time** . . . but borrowers who receive a notice [from the Department] will receive these benefits." *Id.* (emphasis added).

Because the four named Plaintiffs took out loans for attendance at these colleges, each received a notice from the Department explaining the planned discharge process. Those notices stated that the Department "has determined" that certain of your loans relating to the affected schools "are eligible for full loan discharge. This means the remaining balance on the loan(s) will be forgiven." Ex. A at 1 (Plamondon notice); Ex. F at 1 (Maldonado notice); Ex. G at 1 (Varela notice); Ex. H at 1 (Gary notice for Westwood); Ex. I at 1 (Gary notice for Art Institute). But the Department once again made clear that "[i]t will take the Department some time to process your discharge." Ex. A at 1; Ex. F at 1; Ex. G at 2; Ex. H at 2; Ex. I at 1. The Department nowhere provided a timeline for finalizing the discharges.

Recognizing that its work discharging these loans was indeed taking "some time," the Department sent updated notices to certain borrowers, including Gary and Maldonado, earlier this year. Like the prior statements from the Department, these notices nowhere stated that Plaintiffs' loans had been formally discharged. Instead, the notices further explained the "steps" the Department would be taking "on the loans approved for . . . relief." Ex. J at 1 (Maldonado letter); Ex. K at 1 (Gary letter). First, the Department will "[d]ischarge the entire remaining balance of the loans." *Id.* Only after the discharge is complete will the Department "[r]emove the loans from your credit report if they are fully discharged." *Id.* And finally, the Department will "[r]efund any payments previously made . . . on the loans being discharged." *Id.* These most recent letters reiterated the legal status of the loans, stating the Department's "prior determination was that the loans described above are not enforceable and that you are no longer obligated to repay them." Ex. J at 2 (Maldonado letter); Ex. K at 2 (Gary letter) ("[T]he loans described above and your repayment obligations are not enforceable."). Although the Department reassured borrowers that they "are entitled to, and will receive, a discharge," *id.*, the Department again provided no timeline to complete the discharges.

### C.    The Department Is Still Processing The Discharges And Ordering MOHELA To Effect The Discharges On A Rolling Basis.

Starting in January 2023, the Department began providing MOHELA with lists of loans to be discharged on an intermittent and rolling basis under the procedure known as Borrower Defense Group Discharge. Declaration of LaQuan Anthony ("Anthony Decl.") ¶ 4. Relevant here, the Department instructed MOHELA to discharge loans it was servicing for Maldonado on January 27, 2023, and June 7, 2024,[5] *id.* ¶ 8, and loans it was servicing for Varela on April 18, 2023, and June 11, 2024, *id.* ¶ 9. MOHELA discharged Maldonado's federal student loans as requested in October 2024, Ex. W at 40:10-20 (Maldonado deposition); Anthony Decl. ¶ 8, and Maldonado received a refund check of $8,746.51 in November 2024, Ex. N. MOHELA discharged Varela's

---

[5] The Department instructed MOHELA to discharge certain of Maldonado's loans on December 30, 2022, but the Department notified MOHELA that the December 30, 2022 file contained errors, and that file was ultimately replaced by the January 27, 2023 file. Anthony Decl. ¶ 5; Ex. ZZ.

6

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

federal student loans as requested on September 10, 2024, Anthony Decl. ¶ 9, and Varela received a refund check of $3,886.91 in August 2025, Ex. O at 68:5-17 (Varela deposition).

But, to this day, MOHELA has not received instructions from the Department to discharge any of Plamondon's or Gary's loans. Anthony Decl. ¶ 10; Ex. V. Indeed, as noted above, Gary's consolidated loan includes a loan for attendance at an institution that the Department has not approved for Borrower Defense Group Discharge. *See* Ex. P at 86:23-87:15; 123:10-17 (Gary deposition). As a result, even after Gary's Borrower Defense Group Discharges are processed, Gary's consolidated loan will remain on the Department's books. Consistent with the Department's statements that eligible borrowers would not be required to make payments on their loans while they wait for their Borrower Defense Group Discharges, Plamondon and Gary are not making payments on their loans, and their loans are currently in forbearance. *See supra* Part II.B.

Under federal law and the terms of MOHELA's contracts to service federal loans, MOHELA cannot process any loan discharges under the group discharge procedures, or otherwise suspend its servicing activities under its contracts with the Department, until the Department instructs MOHELA in writing to process those discharges. This is because, under federal law, only the Department has the authority to discharge federal student loans. *See, e.g.*, 20 U.S.C. § 1087hh (authorizing the Secretary to "enforce, pay, compromise, waive, or release any right, title, claim, lien, or demand, however acquired" in relation to federal student loans made under Title IV of the Higher Education Act); 34 C.F.R. § 685.212. MOHELA has no independent authority or discretion to determine how federal law or policy should be applied to the loans it services pursuant to its contracts with the Department. Rather, MOHELA services loans at the Department's direction and pursuant to the Direct Loan Servicing Contract (the "DL Contract") and the subsequent Unified Servicing and Data Solution Contract (the "USDS Contract").

Consistent with federal law, the DL Contract and USDS Contract require the Department's Office of Federal Student Aid ("FSA") to expressly approve any loan discharges, via a specific procedure. *See, e.g.*, Ex. Q (DL Contract) at 36 ln. 4; Ex. R (Attachment 1 to the USDS Contract) at 163 (§§ 23018.002 and 23018.031), 168 (§§ 23018.180, 23018.1810). The Department most

7

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

recently reinforced this directive in a 2022 change request to the DL Contract, the terms of which were codified in the later-issued USDS Contract. Ex. S (Change Request 6346) at 1 (setting forth detailed requirements for MOHELA's processing of borrower defense group discharges under the DL Contract, including terms requiring the Department's express direction); Ex. R (Attachment 1 to USDS Contract) at 168-69 (similar). Those terms require that servicers like MOHELA effect borrower defense group discharges only after receiving "a file containing loans identified by FSA that are eligible for Borrower Defense discharge as part of a group discharge." Ex. S (Change Request 6346) at 1. Consequently, before receiving FSA approval, MOHELA is contractually bound to continue to service those loans, which includes reporting outstanding loan balances to borrowers and credit reporting agencies. *See* 34 C.F.R. §§ 682.205, 682.208.

### D.    Plaintiffs' Claims.

Against this factual and legal backdrop, Plaintiffs brought this suit alleging that MOHELA violated California law by failing to discharge their federal student loans and continuing to service those loans after the Department publicly announced that their loans would be eligible for discharge. Plaintiffs' suit has proceeded on the assumption—unsupported by fact—that MOHELA was "refus[ing]" to discharge and cease servicing their loans immediately upon the Department's announcements. Compl. ¶ 1. Plaintiffs alleged—only "on information and belief"—that the Department had already formally ordered loan servicers like MOHELA to discharge, cease loan reporting and servicing, and issue payment refunds for all loans taken out to attend certain schools, including Plaintiffs' loans. Compl. ¶¶ 44-45. But of course, the evidence does not bear that out. *See supra* Part II.C.

Nevertheless, Plaintiffs claim that MOHELA violated the law when it failed to discharge and cease servicing Plaintiffs' loans immediately after the Department announced that those loans were eligible for discharge. Plaintiffs assert that MOHELA violated (1) the Rosenthal Act; (2) the California Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code §§ 1785.1, et seq.; (3) the Student Borrower Bill of Rights, Cal. Civil Code § 1788.100, and (4) California's Unfair Competition Law ("UCL"), Cal. Business and Professions Code §§ 17200 et seq.

Although the named Plaintiffs have unique borrowing histories, different sets of interactions with MOHELA, and individualized beliefs about how alleged delays in discharging their loans caused them harm, Plaintiffs bring their claims on behalf of themselves and a putative class of other, supposedly similarly situated California residents who took out federal student loans to pay educational expenses at certain schools and whose loans are serviced by MOHELA and included in the Department's group discharges for those schools. Compl. ¶ 115.

Plaintiffs seek actual and statutory damages, and any other monetary relief that may apply. Compl., Prayer for Relief. They also seek injunctive relief prohibiting MOHELA from demanding or collecting payments on the loans; requiring MOHELA to alter credit reporting to reflect that none of the loans have a balance due; and requiring MOHELA to complete the refund process "by a date certain." *Id.*, Compl., Prayer for Relief.

### E. Procedural History.

Plaintiffs brought their case in California state court, and MOHELA removed the case to this Court in November 2024. Soon after removal, MOHELA moved to dismiss, arguing that the Court lacked subject matter jurisdiction because MOHELA was immune from suit as an arm of the State of Missouri. Dkt. 21. The district court denied MOHELA's motion, Dkt. 47, but MOHELA maintains that it is immune from suit and does not consent to the Court's jurisdiction.[6]

MOHELA moved for judgment on the pleadings on the ground that the Department is an indispensable party under Federal Rule of Civil Procedure 19 that cannot be joined due to its sovereign immunity. Dkt. 54. MOHELA's motion explained that, due to MOHELA's limited authority under its federal contracts to service loans owned by the Department, Plaintiffs cannot be accorded the relief they seek without the Department's presence in this action, and the Department's interests in its loans will be impaired if the suit were to proceed without it. In opposing MOHELA's motion, Plaintiffs conceded that MOHELA cannot discharge or stop

---

[6] The U.S. Supreme Court is currently considering a pair of cases that could clarify the legal framework governing MOHELA's claim of immunity and that could ultimately be dispositive here. *See Galette v. New Jersey Transit Corporation*, No. 24-1021 (U.S.); *New Jersey Transit Corporation v. Colt*, No. 24-1114 (U.S.).

9

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

servicing a student loan unless and until the Department directly orders it to do so. Dkt. 62 at 1, 6, 8; *see also* Dkt. 67 at 1, 3-4, 10. Instead, Plaintiffs claimed that their suit covers only loans that the Department has already authorized MOHELA to discharge, although they did not seek to amend their Complaint to narrow its scope consistent with their concession. Dkt. 62 at 8. Adopting this concession, the Court denied MOHELA's motion, stating: "MOHELA's motion is denied. The plaintiffs do not seek, nor would this Court grant, any judgment that requires discharge of loans that DOE did not authorize. So DOE is not a required party under Rule 19." Dkt. 69.

## III.   LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56. A moving party's burden under Rule 56 can be met simply by "showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party shows the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to produce evidence that would support a jury verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986). The nonmovant must show a genuine dispute using actual evidence—such as affidavits or depositions. *Celotex*, 477 U.S. at 324.

## IV.   ARGUMENT

### A.   MOHELA Is Entitled To Summary Judgment Because It Was Not Unlawful For MOHELA To Engage In Routine Servicing Activities On Loans That Had Not Yet Been Discharged.

#### 1.   The Department's Announcements And Notices Did Not Discharge Plaintiffs' Loans Or Entitle Them To Immediate Relief.

The Department's public statements and borrower notices did not extinguish Plaintiffs' debts or confer any right to an immediate discharge. Plaintiffs identify no statute, regulation, or other legal authority supporting that understanding—and none exists. *See Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1100–01 & n.4 (N.D. Cal. 2018) (holding that student borrowers had no protected property interest in the amount of borrower-defense relief, because the statute, the regulations, and the Department's public announcements did not state that borrowers were entitled

10

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

to a particular amount).

The governing federal statute, the Higher Education Act, grants the Department considerable discretion to determine (1) what relief to give borrowers once they establish a defense to repayment, and (2) how to give that relief. *See* 20 U.S.C. § 1087e(h) (providing that the "Secretary shall specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under this part"); *Manriquez*, 345 F. Supp. 3d at 1100 ("[T]he Higher Education Act provides discretion to the Secretary to determine the amount of relief" and other procedural aspects of borrower defense.). Neither the statute nor the Department's implementing regulations state that borrower discharges are effected through a public statement or a notice; nor do the statute and regulations bind the Department to complete announced borrower defense discharges on any particular timeline. *See* 34 C.F.R. § 685.212(k) (outlining the processes for borrower defense discharges).

The Department's public announcements and notices do not purport to wipe out Plaintiffs' loans or to confer a right to an immediate discharge. The documents plainly state that Plaintiffs' loans are "eligible"—i.e., "qualified—for discharge, Merriam-Webster's Collegiate Dict. (11th ed. 2014); *see also, e.g.*, American Heritage Dict. (2d college ed. 1985) ("eligible" means "[q]ualified"); *see* Ex. A; Ex. F; Ex. G; Ex. H; Ex. I. Further, the documents make clear that these discharges "will" occur at an unspecified point in the future—after the Department takes "some time" to finish processing the discharges. *See* Ex. B; Ex. C; Ex. D; Ex. E; Ex. A; Ex. F; Ex. G; Ex. H; Ex. I; Ex. J; Ex. K. Consistent with the text of these documents, Plaintiffs admitted in their depositions that they did not understand the notices they received to entitle them to immediate discharges—or even to offer discharges on any particular timeline. *See* Ex. P at 80:16-20 (Gary deposition); Ex. T at 109:15-25 (Plamondon deposition); Ex. W at 102:24-103:7 (Maldonado deposition); Ex. O at 150:17-151:5 (Varela deposition).

In sum, the Department's public announcements and notices neither extinguished Plaintiffs' loans nor created any right to immediate discharge. The Department merely informed borrowers that they were eligible for relief that would occur at some unspecified time in the future.

11

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

Until that time, Plaintiffs' debts remained (or will remain) on the books.

The federal contracts that govern MOHELA's servicing of the loans confirm the same. MOHELA may not discharge or stop servicing a loan until it receives from the Department "a file containing loans identified by FSA that are eligible for Borrower Defense discharge as part of a group discharge." Ex. S (Change Request 6346) at 1; Ex. R (Attachment 1 to USDS Contract) at 169. Undisputed evidence demonstrates that the Department follows this process: after announcing a group discharge, the Department begins to process those discharges internally, then transmits loan files and discharge instructions to servicers, including MOHELA, on a rolling basis. Once MOHELA receives a discharge file, it effects the discharge and processes refunds, as it did with Maldonado's and Varela's loans. *See supra* Part II.C. Conversely, until MOHELA receives these instructions and has the needed time to professionally complete the activities necessary for discharge and refund, MOHELA is contractually bound to continue to service the loans. *See id*.

### 2. MOHELA Is Entitled To Summary Judgment on Plamondon's and Gary's Claims.

Because the Department has not yet instructed MOHELA to effectuate the discharge of Plamondon's or Gary's loans, those loans still exist, and MOHELA is required by its contract with the Department to continue servicing them. Plamondon and Gary nevertheless assert that MOHELA violated the CCRAA, Rosenthal Act, and the SBBR by engaging in routine servicing activities, including (1) reporting their loan balances to credit reporting agencies; and (2) sending them communications that stated or suggested that their loans had a remaining balance. None of the actions Plamondon and Gary point to violated the alleged laws.

#### a. Plaintiffs Plamondon And Gary Cannot Establish A Claim Under The CCRAA Because MOHELA Has Not Reported Inaccurate Information To Credit Reporting Agencies.

The CCRAA—which is based on the federal Fair Credit Reporting Act (FCRA)—prohibits furnishing information to a credit reporting agency if the furnisher "knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a). The CCRAA further requires certain furnishers of information to "promptly notify the credit reporting agency and

provide corrections" to already-furnished information that is "not complete or accurate." *Id.* § 1785.25(b). Plamondon and Gary claim that MOHELA violated these provisions in reporting their loan balances to credit reporting agencies after the Department announced that their loans would be eligible for discharge. *See* Compl. ¶¶ 91, 101.

That claim fails as a matter of law because it is not inaccurate or misleading for furnishers of credit information to report a balance owed while a debt "still exist[s]"—even if the debt may be discharged in the future. *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1145 (N.D. Cal. 2016) (interpreting FCRA). Here, that is all MOHELA did—report that the debts existed. *See* Ex. M (Credit Bureau History for Plamondon's federal student loan); Ex. L (Credit Bureau History for Gary's federal student loan). And MOHELA noted that the account was current and that no payment was past due. *See* Ex. M; Ex. L.

Courts commonly apply this rule to dismiss FCRA claims brought in an analogous context: by debtors in bankruptcy proceedings. A debtor's filing of a bankruptcy petition and the confirmation of a Chapter 13 bankruptcy plan establish a debtor's eligibility for discharge of debts. *See, e.g.*, *Blakeney v. Experian Info. Sols., Inc.*, 2016 WL 4270244, at *6 (N.D. Cal. Aug. 15, 2016). But those debts remain outstanding and are not officially discharged until later—when the debtor finishes carrying out the bankruptcy plan. *See id.* "[C]ourts in this district have consistently held that" while a debtor's bankruptcy petition is pending, "it is not misleading or inaccurate to report" to credit reporting agencies outstanding debts "that *have not been* discharged" but that *will be* discharged at the end of the bankruptcy proceeding. *Id.* at *5 (emphasis added); *see also, e.g.*, *Biggs*, 209 F. Supp. 3d at 1145; *Harrold v. Experian Info. Sols., Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information."). Further, courts recognize that a furnisher of information "ha[s] no obligation to reference [the debtor's] bankruptcy proceeding" in its reports to credit reporting agencies, at least until the debt is discharged and the "outstanding balance is zero." *Blakeney*, 2016 WL 4270244, at *5–6.

The same reasoning applies here and dooms Plamondon's and Gary's CCRAA claims. The

13

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

Department's announcement and notices, like the confirmation of a bankruptcy plan, established that Plamondon's and Gary's loans would be eligible for discharge. But those departmental communications (again, like a bankruptcy petition or plan) were "not equivalent to discharge of [the] debts." *Id.* at *6. At this point, like a debtor in bankruptcy whose debts have not yet been formally discharged, Plamondon's and Gary's "debt[s] . . . still exist, and it is not inaccurate or misleading" for MOHELA "to report that information to a [credit reporting agency]." *Biggs*, 209 F. Supp. 3d at 1145. Further, MOHELA reported that Plamondon's and Gary's loans were current, defeating any theory that MOHELA reported information about their to credit reporting agencies that was "incomplete." Cal. Civ. Code § 1785.25(a). Plamondon's and Gary's CCRAA claims therefore fails as a matter of law.

> **b.    Plaintiffs Plamondon And Gary Cannot Establish Claims Under The Rosenthal Act Because MOHELA Made No False, Deceptive, Or Misleading Representations About Their Loans.**

The Rosenthal Act—which is based on the federal Fair Debt Collection Practices Act—prohibits "false, deceptive, or misleading representations . . . in connection with the collection of any debt." 15 U.S.C. § 1692e (incorporated in Cal. Civ. Code § 1788.17). More specifically, the Rosenthal Act bars debt collectors from falsely representing "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A) (incorporated in Cal. Civ. Code § 1788.17), and from trying to collect a debt that is not owed, *id. id.* § 1692e(5) (incorporated in Cal. Civ. Code § 1788.17). Plamondon and Gary claim that MOHELA violated these prohibitions when it sent them communications about their loans, and because their online accounts continue to reflect their outstanding loan balances.[7] *See* Compl. ¶¶ 88, 90, 98, 103.

---

[7] The Complaint also alleges in passing that MOHELA violated the Rosenthal Act provision making it a criminal misdemeanor to "send a communication that simulates legal or judicial process or that gives the appearance of being authorized, issued, or approved by a governmental agency or attorney when it is not." Cal. Civ. Code § 1788.16. That provision prohibits "creat[ing] a false impression as to the[] source" of a document, such as by "giv[ing] the appearance" that a collection notice is a summons "coming from the court." *Scott v. Credit Consulting Servs., Inc.*, 2022 WL 3593899, at *7 (Cal. Ct. App. Aug. 23, 2022). No reasonable jury could conclude that MOHELA's communications gave such a false impression simply because those communications identified the loans at issue as federal student loans. And indeed forbidding that would cause more confusion than clarity for federal student loan borrowers.

MOHELA is entitled to summary judgment on the Rosenthal Act claims for the same basic reason as the CCRAA claims: Until Plamondon's and Gary's loans are discharged, their debts remain outstanding, and thus "statements that [they] owed money under [those loans] were not deceptive or misleading as a matter of law." *Medina v. Two Jinn, Inc.*, 2024 WL 4485592, at *2 (N.D. Cal. Mar. 28, 2024) (dismissing FDCPA claim); *Parker v. First Step Grp. of Minnesota LLC (FN)*, 2016 WL 192159, at *2 (D. Ariz. Jan. 15, 2016) (same).

Online accounts. There is nothing false about Plamondon's and Gary's online account pages. Those pages display truthful information: that Plamondon and Gary have loans that are serviced by MOHELA, and that those loans have a remaining balance. *See* Ex. U (screenshot of Plamondon's online account); Ex. X (screenshot of Gary's online account). The webpages also communicate that there are no payments due on either Plamondon's or Gary's loans. Plamondon's clearly states: "No Payment Due." Ex. U. Gary's shows that $0.00 is owed at the time of the next payment. Ex. X. Accurately communicating that there is a debt and its amount does not violate the Rosenthal Act. *See, e.g*, *Sambor v. Omnia Credit Servs., Inc*., 183 F. Supp. 2d 1234, 1243 (D. Haw. 2002) (denying debtor summary judgment under the FDCPA where the debt collector simply accurately communicated the amount of a debt).

There is nothing misleading about the online account pages either. Plamondon's and Gary's view appears to be that the webpages "would prevent the least sophisticated debtors" (who set the standard under the Rosenthal Act) "from realizing 'that they don't have to pay a penny,'" *Stimpson v. Midland Credit Mgmt., Inc*., 944 F.3d 1190, 1199 (9th Cir. 2019), after the Department's announcements. That argument has several problems.

Most obviously, as just discussed, the webpages would make clear to any debtor that they did not owe any payments on the balance. *See, e.g.*, *Contreras v. Portfolio Recovery Assocs., LLC*, 2020 WL 204114, at *4 (C.D. Cal. Jan. 10, 2020) ("Courts have carefully preserved the concept of reasonableness and have presumed that debtors have a basic level of understanding and willingness to read [the relevant documents] with care."). Plamondon's says "No Payment Due"; Gary's shows a $0.00 payment. *See* Ex. U; Ex. X. Especially when read alongside the

Department's communications, which stated that eligible borrowers would not owe payments while their discharges were being processed, all debtors would understand from these webpages that they do not owe money on their loans.[8]

Furthermore, even if the webpages had reflected a balance due (which they did not), the Department's communications did not extinguish Plamondon's and Gary's debt; they merely rendered the loans "not enforceable" in court, *see* Ex. J; Ex. K. As the Ninth Circuit held in *Stimpson*, "there is nothing inherently deceptive or misleading in attempting to collect a valid, outstanding debt, even if it is unenforceable in court." 944 F.3d at 1200 (affirming grant of summary judgment for creditor on FDCPA claim); *see also Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001).

Finally, MOHELA had no legal duty (in its contract or under California law) to "include[] additional clarifying language" about the Department's announcements, and the absence of that language did not violate the law. *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1028 (9th Cir. 2012) (affirming denial of summary judgment on FDCPA claim premised on creditor's failure to include clarifying language). Accurately reflecting Plamondon's and Gary's loan balances on their online accounts—along with information stating that no payments were due on those loans—was not "false, deceptive, or misleading."[9] 15 U.S.C. § 1692e.

<u>Gary's Customer Statements.</u> For multiple reasons, Gary's Rosenthal Act claim also cannot survive based on the Customer Statements she received between September 2023 and January 2024 on her consolidated loan. *See, e.g.*, Ex. Z. That loan still exists—even if parts of it are

---

[8] The same would be true if the webpages or other communications stated that the loans were in "forbearance." Even the least sophisticated debtor would understand that he or she does not owe payments on a loan in forbearance. *See, e.g.*, *Stimpson*, 944 F.3d at 1196 ("[T]he [least sophisticated] debtor has rudimentary knowledge about the financial world." (internal quotation marks omitted). Plamondon and Gary knew as much. *See* Ex. T at 60:22-61:16 (Plamondon "know[s] when you put a loan into forbearance, you're temporarily stopping making payments" and "[w]hen your loans are in forbearance, you don't have to make monthly payments"); Ex. P at 58:19-23 (Gary explaining that forbearance is when "they put a pause on the payments").

[9] For the exact same reasons, Plamondon's Rosenthal Act claim cannot survive based on a notice he received in May 2024 that displayed his current balance, along with other accurate information about his loan, including that the loan is currently in forbearance. *See* Ex. AA.

unenforceable. So MOHELA did not violate the Rosenthal Act by informing Gary about the debt and that it remained unpaid. *See Stimpson*, 944 F.3d at 1200. It does not matter if the Customer Statements go a step further than the online account pages, by "attempting to persuade" Gary "to pay" the debt. *Id.* "[D]ebt collectors may attempt to persuade debtors to make payments," as long as they do not suggest that an unenforceable debt may be enforced in court. *Id.* And the Customer Statements do not do so.

Any other result would unreasonably hamstring federal loan servicers' ability to collect payments on federal student loans. Recall that Gary's loan is a consolidated loan that consists of loans she took out in connection with her sons' attendance at SAE Institute of Technology, Westwood, and the Art Institute. *See supra* Part II.B. But the Department has never announced group discharges for borrowers who took out loans to attend SAE. In addition, at the time of the Customer Statements, the Department had not yet announced the group borrower discharges relating to the Art Institute. *See* Ex. E (announcing the Art Institute group discharges on May 1, 2024). Thus, throughout the period when Gary received Customer Statements, the SAE and Art Institute loans within Gary's consolidated loan were indisputably valid, and MOHELA could collect payments on those loans. Plaintiffs would require MOHELA to stop collection activities on an entire consolidated loan while MOHELA awaits formal instructions from the Department (for a year or more) to discharge a piece of that consolidated loan.

Plamondon's 2023 notice. Finally, the 2023 email Plamondon received about the end of the COVID-19 student loan payment pause cannot prop up his Rosenthal Act claim. *See* Ex. BB. As mentioned above, the email plainly stated: "Student loan interest will resume starting on September 1, 2023. Payments will be due in October 2023 *for most borrowers*." *Id.* (emphasis added). The email also provided details about related communications that borrowers "*may* receive" in the coming days or months. *Id.* And the email included multiple ways to contact MOHELA or the Department with questions. *See id.* No debtor with "a modicum of reasonableness" and a "willingness to read with care," *Evon*, 688 F.3d at 1027, would interpret the email to falsely or misleadingly state that a debtor in Plamondon's shoes would need to begin

repaying his loans. Even the least sophisticated debtor, who "is bound to read . . . notices," would grasp that he should wait for more information or inquire, before presuming that his discharge-eligible loans were coming due. *Campuzano–Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3rd Cir. 2008).

### c. Plaintiffs' Claims Under The SBBR And UCL Fail Because Those Claims Are Derivative Of The CCRAA And Rosenthal Act Claims.

Plamondon's and Gary's claims under the SBBR and UCL fall with their CCRAA and Rosenthal Act claims. The SBBR and unfair-or-fraudulent-practice UCL claims are based on the same underlying theory as the CCRAA and Rosenthal Act claims: that MOHELA deceptively led Plaintiffs "to believe the loans are due with a balance owing when they are not;" sent "collection notices" and reported "derogatory information to credit reporting agencies indicating that" they "owe balances they do not owe;" and communicated inaccurate information to Plaintiffs and "false and derogatory" information to third parties. Compl. ¶¶ 158, 159; 176. Those allegations fail for all the reasons discussed above: Plamondon's and Gary's loans still exist, and nothing MOHELA communicated to Plamondon, Gary, or to third parties about those loans was false or misleading. The remaining UCL claims are expressly premised on the alleged "violations of the Rosenthal Act, the CCRAA, and the [SBBR]," Compl. ¶ 174, and thus fail because those claims fail.

### 3. MOHELA Is Entitled To Partial Summary Judgment On Maldonado's And Varela's Claims.

MOHELA is entitled to partial summary judgment on Maldonado's and Varela's claims, to the extent those claims are based on the period after the relevant group discharges were announced but before the Department officially instructed MOHELA to discharge their loans. The Department instructed MOHELA to discharge Maldonado's loans on January 27, 2023, and June 7, 2024, Anthony Decl. ¶ 8, and Varela's loans on April 18, 2023, and June 11, 2024, *Id.* ¶ 9. As noted above, MOHELA does not seek summary judgment at this time as to Plaintiffs Maldonado's and Varela's claims for any time following MOHELA's receipt of discharge instructions from the Department. However, Maldonado's and Varela's claims about the time *before* MOHELA

received discharge instructions from the Department fail. Before these dates, Maldonado's and Varela's loans still existed, MOHELA was required to service those loans, and it was not unfair, deceptive, or unlawful for MOHELA to do so. Like Plamondon and Gary, Maldonado and Varela allege that MOHELA violated the CCRAA, Rosenthal Act, and SBBR between the Department's discharge announcements and these dates in 2023 by: (1) reporting their loan balances to credit reporting agencies, Compl. ¶¶ 64, 77; and (2) reflecting balances due on their online accounts, *id.* ¶¶ 63, 76. But for the reasons discussed, those actions did not violate the alleged laws—at least before the Department finished processing Maldonado's and Varela's discharges and instructed MOHELA to effect those discharges. *See supra*, Part IV.B. At a minimum, partial summary judgment on Maldonado's and Varela's claims is therefore warranted.

### B.    MOHELA Also Is Entitled To Summary Judgment On Maldonaldo's Rosenthal Act Claims for all Time Periods.

Finally, Maldonado's Rosenthal Act claims cannot survive summary judgment. That law "prohibit[s] debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts," Cal. Civ. Code § 1788.1(b), where a "'debt'" is defined as "money, property or their equivalent *which is due or owing or alleged to be due or owing*," *id.* § 1788.2(d) (emphasis added). As the California Attorney General has explained, "'[d]ue' generally means 'having reached the date at which payment is required' or 'immediately enforceable'" and "'[o]wing' generally means 'due to be paid.'" 85 Ops. Cal. Atty. Gen. 215, 2002 WL 31440180, at *2 (Oct. 29, 2002). Applying this definition, "numerous federal district courts have found that for a debt to be 'due and owing' within the meaning of the Rosenthal Act, the debt must be past due, delinquent, or paid during a grace period." *Cotter v. Movement Mortg.*, *LLC*, 2023 WL 7713594, at *2 (S.D. Cal. Nov. 15, 2023); *see also, e.g.*, *Mariscal v. Flagstar Bank, FSB*, 2020 WL 4804983, at *3 (C.D. Cal. Aug. 4, 2020) (holding "that a plaintiff cannot bring a Rosenthal Act claim unless the debt underlying the complaint is immediately due or past due, or the defendant has taken action to collect the debt as if it was past due."); *Burris v. HSBC Bank USA, Nat'l Ass'n*, 2014 WL 12772260, at *5 (C.D. Cal. Dec. 19, 2014).

This clear textual limitation dooms Maldonado's Rosenthal Act claim. There is zero evidence that her federal student loans were ever "past due" or "delinquent" since the Department announced the relevant group discharges. Nor is there any evidence that MOHELA "has taken action to collect the debt *as if* [it was] past due." *Mariscal*, 2020 WL 4804983, at *3 (emphasis added). Indeed, Maldonado's loans have been in forbearance for nearly the entire time period. *See supra* Part II.B; *see also Brown v. EdFinancial Servs*., *LLC*, 2024 WL 3550479, at *3 (C.D. Cal. July 9, 2024) (dismissing Rosenthal Act claim where student loan servicer "never attempted to collect on the Loans at all" and "was in fact prohibited from collecting on the Loans . . . because of the forbearance period imposed in response to the COVID pandemic"). On this undisputed record, Maldonado's Rosenthal Act claims cannot survive at all.

## V.    CONCLUSION

The Court should grant summary judgment for MOHELA on Plamondon's and Gary's claims. The Court should grant summary judgment for MOHELA on Maldonado's and Varela's claims to the extent premised on the period before MOHELA received instructions to discharge their loans. MOHELA is also entitled to summary judgment on Maldonado's Rosenthal Act claim.

Respectfully submitted,

Date:  November 7, 2025

SIDLEY AUSTIN LLP

Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Jacquelyn Fradette (*pro hac vice*)
jfradette@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (213) 736-8711

By:    */s/ Sheila A.G. Armbrust*
Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Tony S. Mekari (SBN 347057)
tony.mekari@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067

20

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC

*Attorneys for Defendant*                          Telephone: (310) 595-9500
                                                   Facsimile: (310) 595-9501

DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT, CASE NO. 3:24-CV-07850 VC