PROJECT ON PREDATORY STUDENT LENDING
NOAH ZINNER            Bar No. 247581
REBECCA C. EISENBREY   Admitted *pro hac vice*
REBECCA C. ELLIS       Admitted *pro hac vice*
769 Centre St.
Jamaica Plain, MA  02130
Telephone:  (617) 390-2669
nzinner@ppsl.org

JUBILEE LEGAL
DANIEL "SPARKY" ABRAHAM   Bar No. 299193
300 E. Esplanade Dr., Ste. 900
Oxnard, CA  93036
Telephone:  (805) 946-0386
sparky@jubilee.legal

KEMNITZER, BARRON & KRIEG, LLP
ADAM J. MCNEILE        Bar No. 280296
MALACHI J. HASWELL     Bar No. 307729
1120 Mar West St., Ste. C2
Tiburon, CA  94920
Telephone:  (415) 632-1900
adam@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiffs and the Proposed Class


## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME MALDONADO, ANNA VARELA, ALMA GARY, and JEFF PLAMONDON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,<br><br>Defendants. | **Case No. 3:24-cv-07850-VC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: March 5, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 17th Floor<br><br>Assigned for all purposes to Hon. Vince Chhabria |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     EVIDENTIARY OBJECTIONS .......................................................................... 3

III.    FACTUAL BACKGROUND ............................................................................... 3

   A.   The Department Announced Group Discharges and Implemented CR 6346 .................... 3

   B.   MOHELA Failed to Implement CR 6346 ............................................................. 4

   C.   The Plaintiffs Suffer Due to MOHELA's Delays ................................................. 5

IV.     APPLICABLE LAW ........................................................................................... 13

   A.   Student Borrower Bill of Rights ........................................................................ 13

   B.   Rosenthal Act ................................................................................................. 14

   C.   UCL ................................................................................................................ 14

V.      ARGUMENT ....................................................................................................... 14

   A.   Legal Standard for Summary Judgment and Partial Summary Judgment ........................ 14

   B.   MOHELA Is Not Entitled to Partial Summary Judgment ................................. 15

      1.   MOHELA's liability does not depend on receiving specific types of notice. .............. 15

      2.   There are genuine disputes of material fact relating to whether MOHELA received
           official notice of Jeff Plamondon's and Alma Gary's discharges. ...................................... 19

      3.   There are material disputed facts relating to when MOHELA received sufficient notice
           of Ms. Maldonado's and Ms. Varela's discharges. ................................................................ 21

      4.   MOHELA misrepresents facts relating to Ms. Maldonado's past-due status. .............. 22

   C.   Plaintiffs Are Entitled to Partial Summary Judgment ...................................... 22

      1.   Student Borrower Bill of Rights ...................................................................... 22

      2.   Rosenthal Act ................................................................................................ 24

      3.   Unfair Competition Law .................................................................................. 24

VI.     CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................... 15
*Best v. Ocwen Loan Servicing, LLC*, 64 Cal.App.5th 568 (2021) ............................................... 14
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................................................... 15
*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824 (2006) ........................... 24
*Drum v. San Fernando Valley Bar Ass'n*, 106 Cal.Rptr.3d 46 (2010) ........................................ 25
*Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377 (1992) ...................................................... 25
*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ....................................... 16
*In re Tobacco II Cases*, 46 Cal.4th 298 (2009) ........................................................................... 25
*Jagodzinski v. Experian Info. Sols., Inc.*, __ F.Supp.3d __, 2025 WL 2555805 (E.D.N.Y. Sept. 2, 2025) ........................................................................................................................................... 17
*Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310 (2011) ................................................................... 14
*McKell v. Wash. Mutual, Inc.*, 142 Cal.App.4th 1457 (2006) ..................................................... 14
*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal.App.4th 1235 (2009) ....................................... 25
*Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) ......................................................... 3
*Pharm. Rsch. & Manufacturers of Am. v. David*, 510 F.Supp.3d 891 (E.D. Cal. 2021) ............. 15
*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014) ................................. 16
*Serova v. Sony Music Ent.*, 13 Cal.5th 859 (2022) .................................................................... 18
*Tucker v. Pac. Bell Mobile Servs.*, 208 Cal.App.4th 201 (2012) ................................................ 14
*Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758 (9th Cir. 2020) ................................................ 16
*Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024). ...................................................................................................................................... 17
*Young v. Midland Funding LLC*, 91 Cal.App.5th 63 (2023) ....................................................... 16

**Statutes**

15 U.S.C. § 1692 ......................................................................................................................... 14
15 U.S.C. § 1692e ....................................................................................................................... 24
Bus. & Prof. Code § 17200 ......................................................................................................... 14
Civ. Code § 1788.1 ...................................................................................................................... 14
Civ. Code § 1788.103 ...................................................................................................... 14, 18, 23
Civ. Code § 1788.17 .............................................................................................................. 14, 24
Civ. Code § 1770 ......................................................................................................................... 18
Civ. Code § 1782 ......................................................................................................................... 18
Civ. Code § 1784 ......................................................................................................................... 18
Civ. Code § 1788.100 .................................................................................................................. 13
Civ. Code § 1788.101 .................................................................................................................. 13
Civ. Code § 1788.102 .................................................................................................................. 13
Civ. Code § 1785.25 .................................................................................................................... 18

**Other Authorities**

Assembly Floor Analysis, AB 376 (2019–2020 Reg. Sess.) as amended August 20, 2020 ........ 13

**Rules**

Fed. R. Evid. 1006 ......................................................................................................................... 3
Fed. R. Evid. 1002 ......................................................................................................................... 3
Fed. R. Civ. P. 56 ...................................................................................................................... 3, 15

## I.    INTRODUCTION

The named plaintiffs in this case—Jaime Maldonado, Alma Gary, Anna Varela, and Jeff Plamondon ("Plaintiffs")—all previously owed federal student loans directly to the United States Department of Education (the "Department" or "ED") for attendance at various for-profit colleges. Between 2022 and 2024, the Department decided to discharge those loans. The Department—the creditor for the loans—could hardly have been clearer: in public announcements and letters to individual borrowers, it stated that the relevant loans "are eligible for full loan discharge. This means the remaining balance on the loan(s) will be forgiven. **You do not have to make any more payments on the loan(s).**"

There is no question in this case about whether Plaintiffs owe the loan debt. The creditor, a federal agency, has stated unequivocally that they do not. Defendant Higher Education Loan Authority of the State of Missouri ("MOHELA"), the servicer of Plaintiffs' loans, largely ignored the Department's mandate, engaging in a pernicious debt collection campaign, delaying the relief to which Plaintiffs are entitled, and furnishing inaccurate and/or incomplete information to credit reporting agencies, all in violation of California consumer protection laws.

MOHELA now moves for partial summary judgment on Plaintiffs' claims. MOHELA's motion starts from a basic, flawed premise: that compliance with its contracts with the Department absolves it of its legal responsibility to comply with California law. MOHELA is incorrect on several grounds. First, as a loan servicer and debt collector, MOHELA is independently responsible for adhering to consumer protection laws. Second, nothing in its servicing contracts prohibits it from taking the actions it could and should have taken to disseminate accurate information regarding Plaintiffs' loans. Third and finally, MOHELA's conduct even runs afoul of its contracts with the Department. The processing deadlines contemplate at most 45 business days from receipt of an approval list to discharge of the relevant loans. MOHELA took *664 days* to process Plaintiff Maldonado's discharge, and only stopped reporting the discharged loans on her credit *161 days* later. MOHELA's apparent position that it can indefinitely delay processing discharges to "some unspecified time in the future," all the while continuing to attempt to collect

and report the loan to the credit bureaus, is legally and factually untenable. The Court should therefore deny MOHELA's motion for partial summary judgment.

By contrast, MOHELA's liability under the California Fair Debt Collection Practices Act ("Rosenthal Act"), Civ. Code § 1788, *et seq.*, and the California Student Borrower Bill of Rights ("SBBR"), Civ. Code § 1788.100, *et seq.*, is unequivocal. MOHELA violated the Rosenthal Act by falsely representing to Plaintiffs the status of their MOHELA-serviced loans and attempting to collect debts that Plaintiffs do not owe. While the Rosenthal Act imposes strict liability, ample evidence shows that MOHELA engaged in these violations willfully and knowingly. As an example, MOHELA sent Plaintiff Gary billing statements more than 15 months after learning that her loans were subject to discharge, and nearly three months after receiving specific instructions from the Department to put her loans into forbearance.

The SBBR prohibits a wide range of misconduct by student loan servicers. Relevant here, MOHELA violated the SBBR by materially interfering with the ability of Plaintiffs to understand the terms or conditions of their student loans, including by failing to provide accurate information to Plaintiffs about the status of their pending discharges upon specific request. MOHELA also took unreasonable advantage of Plaintiffs' inability to protect their interests regarding their student loans by sending collection notices and reporting derogatory information to credit reporting agencies that Plaintiffs owe balances they do not owe.

The relevant facts in this matter are simple: Plaintiffs do not owe their relevant federal student loan debt. MOHELA has continued billing them on those loans, and has misrepresented and omitted material facts in the process. Some material facts remain in dispute relating to when MOHELA received sufficient notice of Plaintiffs' discharges to require correction of credit reporting. But there is no genuine issue of material fact relating to MOHELA's violation of consumer protection laws by continuing to bill Plaintiffs for loans they do not owe, nor for MOHELA's other material misrepresentations and omissions committed in the process.

For the reasons detailed below, Plaintiffs request that the Court deny MOHELA's motion for partial summary judgment in its entirety and enter judgment for Plaintiffs on their Rosenthal

Act and SBBR claims, as well as their claim under the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*, to the extent that claim relies on the Rosenthal Act and SBBR.

## II.    EVIDENTIARY OBJECTIONS

Plaintiffs object to the Declaration of LaQuan Anthony ("Anthony Decl."), ECF No. 94, on the basis that Mr. Anthony testifies as to the contents of written lists. Anthony Decl. ¶¶ 7–10. Mr. Anthony does not attach those lists pursuant to Federal Rule of Evidence 1002, nor does he attach acceptable summaries pursuant to Rule 1006. Plaintiffs object to the Declaration of Sheila Armbrust, ECF No. 95, on the basis that Ms. Armbrust attaches numerous documents produced by MOHELA in discovery. Ms. Armbrust does not establish personal knowledge as to the contents of those documents as required by Federal Rule of Civil Procedure 56(c)(4), and MOHELA provides no other basis for authentication. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773–80 (9th Cir. 2002) (discussing authentication standard under Rule 56 and excluding documents attached to an attorney's declaration). The "authentication by production" doctrine only applies to documents produced by the party against whom they are offered. *Id.* at 777 n.20 ("[D]ocuments produced by a party [are] deemed authentic when offered by the party-opponent.").

## III.    FACTUAL BACKGROUND

### A.    The Department Announced Group Discharges and Implemented CR 6346

On June 2, 2022, ED publicly announced group discharges for federal student loan borrowers who attended a school owned or operated by Corinthian Colleges, Inc. ("CCI"). Declaration of Malachi J. Haswell ("Haswell Decl."), Exh. 4 at 3. On August 16, 2022, ED announced group discharges for borrowers who attended ITT Technical Institute ("ITT") during a set time period; on August 30, 2022, for borrowers who attended any Westwood College ("Westwood") location during a set time period; and on May 1, 2024, for borrowers who enrolled at The Art Institutes ("AI") during a set time period. *Id.* at 1–2. These announcements were shared with MOHELA on or immediately after they were made. Haswell Decl., Exh. 3, (Rule 30(b)(6) Deposition of Shelley Lester ("Lester Depo.")) at 28:2–29:7, 31:5–9. ED notified Plaintiffs that their federal student loans would be discharged due to school misconduct on the following dates:

- Plaintiff Maldonado, CCI: November 17, 2022, Declaration of Jaime Maldonado ("Maldonado Decl."), Exh. A.

- Plaintiff Varela, Westwood: March 29, 2023, Declaration of Anna Varela ("Varela Decl."), Exh. A.

- Plaintiff Plamondon, ITT: November 17, 2022, Declaration of Jeff Plamondon ("Plamondon Decl."), Exh. A.

- Plaintiff Gary, Westwood and AI: March 29, 2023, and May 1, 2024, respectively, Declaration of Alma Gary ("Gary Decl."), Exhs. A, B.

Months before alerting Plaintiffs of their discharge eligibility, ED provided its loan servicers, including MOHELA, with instructions for processing discharges. These instructions were memorialized in a contract modification, Change Request 6346 ("CR 6346"). Haswell Decl., Exh. 5 (dated July 26, 2022). CR 6346 requires loan servicers to: (1) place all borrowers eligible for group discharge into an immediate forbearance to ensure they would not be billed during processing; and (2) complete processing discharges within 15 business days of receiving group files. *Id.* at 1. For some more complicated loans, CR 6346 allows up to 45 business days for servicers to process the discharges. *Id.* In addition to the group files, ED sent servicers "Do Not Bill" lists to make sure everyone eligible for discharge was in forbearance. *See, e.g., id.*, Exh. 6.

**B.    MOHELA Failed to Implement CR 6346**

Undisputed evidence shows that MOHELA utterly failed in complying with its obligations under CR 6346. MOHELA received the first approval list on December 7, 2022, Haswell Decl., Exh. 1 (Rule 30(b)(6) Deposition of LaQuan Anthony ("Anthony Depo.")) at 123:5–11, and continued to receive approval lists in 2023, 2024, and 2025, *id.*, Exh. 7. On September 12, 2023, ED wrote to MOHELA about its lack of progress: ███████████████████████

███████████████████████████████████████████

███████████████████████ *Id.*, Exh. 8 at 3.[1] ███████████████

---

[1] For documents without internal page numbers, page citations refer to the PDF page number.

████████████████████████████████████████████████████

████████████████████    *Id.* MOHELA's performance did not improve. On December

23, 2024, ED wrote to MOHELA that ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████    *Id.*, Exh. 9 at 2. In February 2025, MOHELA

reported that it had discharged loans for only 8,270 of 15,278 borrowers in a CCI approval file

sent in January 2023, and for only 1,960 of 18,142 borrowers in a CCI approval file sent in June

2024. ECF No. 75-1 at 3. As a result of MOHELA's unexplained delays, MOHELA continued

billing Plaintiffs, and continued reporting on their credit, for *years* after it knew or should have

known they were not obligated to pay their federal student loans.

## C.    The Plaintiffs Suffer Due to MOHELA's Delays

### 1.    Plaintiff Maldonado

MOHELA first received instructions to discharge Ms. Maldonado's federal student loans

on or around December 30, 2022.[2] Anthony Decl. ¶ 8. Under CR 6346, Ms. Maldonado's two

consolidation loans fell under the 45 business day deadline for discharge. *See* Haswell Decl., Exh.

5. On March 20, 2023 (53 business days after December 30, 2022), Ms. Maldonado sent MOHELA

correspondence via MOHELA's online contact portal inquiring as to the status and timeline for

her discharge. *Id.*, Exh. 10 at 3. MOHELA's response simply informed Ms. Maldonado to consult

ED's website. *Id.* On March 24, 2023, Ms. Maldonado again asked MOHELA about the status and

timeline for her discharge. *Id.* at 2. Again, MOHELA failed to provide any substantive information,

and instead directed her back to ED. *Id.*

On August 4, 2023, Ms. Maldonado reached out to MOHELA in writing again. She was

---

[2] Mr. Anthony's declaration suggests that different loans were identified in three different group files; however, Mr. Anthony clarified in his deposition that the information for Ms. Maldonado received in June 2024 was the same information MOHELA received in January 2023, Anthony Depo. 233:3–14, and the December 2022 group file—which was only produced on December 19—appears to contain the same loan information, Haswell Decl. ¶ 6.

getting worried: "With the payment pause ending at the end of August, I need to know what will happen to my account." Haswell Decl., Exh. 10 at 2. This time, MOHELA's response to Ms. Maldonado was straightforwardly false: "Please be advised we have not received any indication as of now from (FSA) Department of Education regarding your loans being discharge [sic]." *Id*. In fact, MOHELA had received approval and instructions to discharge both of Ms. Maldonado's loans more than seven months prior. Anthony Decl. ¶ 8; *see* Haswell Decl. ¶ 5.

On January 23, 2024, Ms. Maldonado reached out yet again. Haswell Decl., Exh. 10 at 1. Rather than providing a substantive written response, MOHELA instead directed Ms. Maldonado to call in for an update. *Id*. When Ms. Maldonado called on February 21, 2024, she was given no information about her discharge status. *Id.*, Exh. 11. Rather, she was told that her forbearance would end in July 2024, after which time she would be required to begin making monthly payments. *Id*. Again, this was false.

The SBBR requires a consumer contemplating an action under that act to provide written notice to a loan servicer prior to filing a lawsuit for damages or injunctive relief. Civ. Code § 1788.103(c). Ms. Maldonado sent MOHELA a SBBR demand letter dated July 6, 2024. Maldonado Decl., Exh. B. The letter notified MOHELA of its violations of the SBBR—including that MOHELA had failed to process her discharge, continued reporting the loans owed on her credit, and provided non-responsive, conflicting, and inaccurate information in response to her inquiries. *Id.* Ms. Maldonado enclosed a copy of the notice she received from ED, and asked that MOHELA confirm her discharge status, remove credit reporting showing a balance due, and confirm her eligibility for a refund. *Id*.

MOHELA responded on August 2, 2024. Maldonado Decl., Exh. C. Despite receiving instructions from ED to process Ms. Maldonado's discharge more than eighteen months prior, MOHELA again falsely indicated it had not yet received approval for her discharge, stating that it was "wait[ing] for . . . final approval" from ED to discharge her loans." *Id.* Once again, MOHELA's response misrepresented the status of Ms. Maldonado's discharge and omitted the very information she sought in her request.

MOHELA completed processing Ms. Maldonado's discharge on October 24, 2024. Anthony Decl. ¶ 8. It took MOHELA 636 days (433 business days) to process Ms. Maldonado's discharge. Notably, it appears that MOHELA processed Ms. Maldonado's discharge only in response to this lawsuit, which was filed September 4, 2024. Haswell Decl., Exhs. 12–13. Further, despite the requirement that MOHELA remove credit reporting concurrently with processing the discharge, *Id.*, Exh. 5, MOHELA continued to report to the credit reporting agencies that Ms. Maldonado owed a large balance on her discharged student loans until April 3, 2025. *Id.*, Exh. 2 (Rule 30(b)(6) Deposition of James Melear ("Melear Depo.")) at 204:13–205:16 ; *Id.*, Exh. 14.

2.    <u>Plaintiff Varela</u>

According to MOHELA, it received instructions from ED to discharge Ms. Varela's student loans on April 18, 2023, at the latest. Anthony Decl. ¶ 9.[3] MOHELA was required to process Ms. Varela's discharge within 45 business days. *See* Haswell Decl., Exh. 5.

On July 17, 2023, Ms. Varela called MOHELA to ask about the status of her discharge. Haswell Decl., Exh. 15 at Row 71. Despite having notice from ED for three months that Ms. Varela's discharge had been approved, the MOHELA representative indicated to Ms. Varela that MOHELA was still waiting for confirmation from ED: "WE WILL NOT SHOW ANYTHING IN OUR SYSTEMS SINCE THAT LETTER IS NOT SENT BY US AND THE DISCHARGE HAS NOT TAKEN PLACE YET." *Id*. This communication misrepresented and omitted material information, namely that ED had already instructed MOHELA to discharge Ms. Varela's loans.

On February 15, 2024, MOHELA sent Ms. Varela a bill indicating that she had a payment of $362.66 due on February 25, 2024. Haswell Decl., Exh. 16. According to ED, Ms. Varela did not owe any further payments on her MOHELA-serviced loans. Varela Decl., Exh. A. CR 6346 required that Ms. Varela's account be placed in forbearance and that she not receive bills. Haswell Decl., Exh. 5. Thus, the February 2024 bill was false and misleading.

---

[3] Mr. Anthony's declaration is again misleading. Although he said that some of Ms. Varela's loans are listed in the group discharge files dated June 11, 2024, a review of the lists shows that Ms. Varela's information on both is the same. Haswell Decl. ¶ 6.

After she received the bill, on February 16, 2024, Ms. Varela placed two calls to MOHELA, but MOHELA again failed to provide accurate information regarding the status of her loans. Haswell Decl., Exh. 15 at Rows 53–54. On February 19, 2024, MOHELA called Ms. Varela in response to her February 16 calls. The MOHELA representative told Ms. Varela that her receipt of the discharge approval letter from ED "DOESNT MEAN [her relevant loan debt] WAS GOING TO AUTOMATICALLY GET DISCHARGED." *Id.* at Row 50. Ms. Varela recalls the representative telling her that her loans would *not* be automatically discharged. Varela Decl. ¶ 9. This statement was false and misleading, and directly contradicted ED's letter, which in fact *did* say that Ms. Varela's loans would be automatically discharged, and that no further action was required from her. *Id.*, Exh. A. In fact, at this time, MOHELA had been instructed by ED to discharge Ms. Varela's loans more than ten months prior, but had failed to do so.

In a letter dated March 21, 2024, MOHELA stated that Ms. Varela's loans had been placed on a "delinquency forbearance" from February 25, 2024, to March 10, 2024, and then on a "processing forbearance" on March 11, 2024, set to end on March 31, 2024. Haswell Decl., Exh. 17. The letter further stated that at the end of the forbearance, "repayment will resume." *Id*. On March 22, 2024, MOHELA sent Ms. Varela another letter, indicating that the current balance of her loans was over $60,000. Varela Decl. ¶ 10, Exh. C. On March 28, 2025, MOHELA sent Ms. Varela an email stating that she had a loan payment due for $62.45. Haswell Decl., Exh. 18. These communications were all false—ED had instructed MOHELA that no further payments were required on Ms. Varela's loans. But, lacking any further information, and worried for her credit, Ms. Varela paid MOHELA $62.45 on April 1, 2025. *Id.*, Exh. 19; Varela Decl. ¶ 11.

Ms. Varela sent MOHELA a SBBR demand letter dated May 6, 2024. Varela Decl., Exh. D. The letter notified MOHELA of its violations of the SBBR and asked that MOHELA confirm her discharge status, remove credit reporting showing a balance due, and confirm her eligibility for a refund. *Id*. MOHELA responded to Ms. Varela's letter on May 14, 2024. *Id.*, Exh. E. MOHELA wrote that it "has not received notification from ED to discharge your loans at this time." *Id.* This statement was false—MOHELA had received notification from ED to discharge

Ms. Varela's loans more than a year prior. Anthony Decl. ¶ 8; *see also* Haswell Decl. ¶ 6.

MOHELA completed Ms. Varela's discharge on September 10, 2024, 511 days after it received a group file with her loans. Anthony Decl. ¶ 8. As with Ms. Maldonado, MOHELA apparently only processed the discharge in response to this lawsuit. *See* Haswell Decl., Exh. 20.

3.    Plaintiff Gary

According to MOHELA, "[Ms.] Gary's federal student loans are not included in any of the Group Discharge Files," Anthony Decl. ¶ 10, and thus it claims it has not yet received instructions from ED to discharge any of Ms. Gary's loans, Motion at 7. This is misleading. In his Rule 30(b)(6) deposition, Mr. Anthony explained that the discharge of certain consolidation loans, like Ms. Gary's, are processed differently than others. Consolidation loans that include FFEL loans that were not held by ED are sent in group approval files to the current servicer, just like for non-consolidation loans; these loans are designated for "T1FP" discharge. Haswell Decl., Exh. 21. This is how MOHELA received notice relating to Ms. Maldonado's and Ms. Varela's loans. *Id.*, Exhs. 22 (Ms. Maldonado's consolidation loan designated T1FP in group file), 23 (Ms. Varela's loans designated T1FP in group file). However, where a consolidation loan contains only Direct Loans and/or FFEL loans held by ED, the *underlying loans* would instead be sent to the *underlying servicer* (i.e., the servicer for the pre-consolidation loans) to process the discharges. *Id.*, Exh. 21. After the underlying servicer discharges the underlying loans, that servicer was then to ████████

████████████████████████████████████    *Id.*; Anthony Depo. at 67:2–8. Specifically, MOHELA's notice to take action on such consolidation loans would *not* come in a group approval file from ED:

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████

Anthony Depo. at 163:10–17. In other words, Mr. Anthony's declaration testimony that Ms. Gary's federal student loans "are not included in any of the Group Discharge Files," Anthony Decl.

¶ 10, is in no way dispositive. Ms. Gary had ED-held FFEL loans that were consolidated. Haswell Decl., Exh. 24. Thus, ED would have sent the group files with her loan information to Aidvantage, the underlying servicer, to discharge the underlying loans, and Aidvantage would then provide an adjustment request to MOHELA to reflect the balance decrease for the MOHELA-serviced consolidation loan. MOHELA's Rule 30(b)(6) witness could not confirm whether it had received an adjustment request for Ms. Gary. *See* Melear Depo. at 102:12–25. Thus, MOHELA *does not know* if it has the information needed to process Ms. Gary's discharge.

MOHELA received notice of the Art Institute group discharges on May 1, 2024, the same day ED publicly announced those discharges. Haswell Decl., Exh. 25 at 6. MOHELA knew of the Westwood group discharges by March 28, 2023, at the latest, since it received the first group file for Westwood on that date. *Id.*, Exh. 7. It likely learned of it through a "heads up" email on or around August 30, 2022. *Id.*, Exh. 4; Lester Depo. at 31:5–9. Thus, MOHELA has been on notice that Ms. Gary's relevant loans are to be discharged. It is and has been aware that Ms. Gary does not owe money on those loans. Despite its knowledge of Ms. Gary's eligibility for group discharge, MOHELA has failed and refused to disseminate correct information to Ms. Gary and the credit bureaus regarding her MOHELA serviced loans. When Ms. Gary called MOHELA on June 21, 2023, MOHELA's representative told her that her payments would resume in October 2023 with monthly payments of $1,074.65. Haswell Decl., Exh. 26 at Row 71. On July 10, 2023, MOHELA again informed Ms. Gary that payments would resume in October 2023. *Id.* at Row 62. Ms. Gary called again on July 31, 2023, and asked about her Westwood discharge notice. *Id.* at Row 57. MOHELA directed her to call ED. *Id.* On August 1, 2023, MOHELA informed Ms. Gary that the current balance of her loans was $154,673.52. *Id.* at Row 51.

Ms. Gary started receiving billing statements from MOHELA in September 2023. A billing statement dated September 18, 2023, informed Ms. Gary that she owed $1,074.65 and indicated that her loan status was "REPAY," i.e. in repayment. Haswell Decl., Exh. 27. MOHELA sent another billing statement to Ms. Gary on October 19, 2023, indicating that she now had a past due balance of $1,074.65 as well as a current due balance of $1,074.65. *Id.*, Exh. 28. Notably, ED sent

MOHELA and other servicers an email on October 26, 2023, with the subject line  *Id.*, Exh. 29. The email acknowledged

*Id.* Ms. Gary's consolidation loan was on that Do Not Bill list. Anthony Depo. at 295:9–23.

In response to the October billing statement she received, Ms. Gary called MOHELA on October 23, 2023, and informed the representative that she was told she did not need to make payments. *Id.*, Exh. 26 at Row 45. The MOHELA representative regurgitated the information shown on the billing statement, including that she had a past due balance. *Id.* The representative again told Ms. Gary to contact ED, and provided no further information regarding Ms. Gary's eligibility for group discharge. *Id.* Egregiously, Ms. Gary received billing statements from MOHELA in December 2023 and January 2024, indicating that she was not placed on a forbearance despite her inclusion on ED's Do Not Bill list. *Id.*, Exhs. 30–31. In fact, a forbearance was not put on Ms. Gary's account until, at the earliest, February 2024. *Id.*, Exh. 32 (stating that a forbearance was placed on Ms. Gary's account but listing the forbearance as ending in 2023).

On May 1, 2024, Ms. Gary received notice from ED that her Art Institute loans would be discharged. Gary Decl., Exh. B. Aidvantage processed the discharge of her underlying Art Institute loan on May 9, 2025. *Id.*, Exh. C; *see also* Anthony Depo at 246:8–16. On May 13, 2024, Ms. Gary sent MOHELA a SBBR demand letter. Gary Decl., Exh. D. The letter notified MOHELA of its violations of the SBBR and asked that MOHELA confirm her discharge status, remove credit reporting showing a balance due, and confirm her eligibility for a refund. *Id.* MOHELA never responded to this letter. *Id.* ¶ 9. Ms. Gary also called MOHELA on July 22, 2024, and stated that her loans should be discharged. Haswell Decl., Exh. 33. MOHELA's representative told her that they were "unable to verify discharge status at this time." *Id.*

To this day, Ms. Gary has received no further information regarding her pending discharge

from MOHELA. Gary Decl. ¶ 9. MOHELA continues to report the full balance of Ms. Gary's loans to the credit reporting agencies. *Id.* ¶ 10.

4.    <u>Plaintiff Plamondon</u>

MOHELA asserts that it has not received instructions from ED to discharge Mr. Plamondon's federal student loans. Motion at 7. This assertion is based on MOHELA's analysis of group files that it did not submit to this Court for analysis and that it only produced to Plaintiffs after they had been filtered, redacted, and otherwise altered—if at all. Haswell Decl. ¶ 7–9. Despite repeated requests from Plaintiffs, MOHELA first produced three group files from December 2022, on Friday, December 19—the last business day before this filing—and a fourth on Saturday, December 20; it is unclear how many remain unproduced. *Id.*

Regardless, MOHELA received notice of the ITT discharge on or around August 16, 2022. Haswell Decl., Exh. 4; Lester Depo. at 31:5–9. Mr. Plamondon received notice of his eligibility for discharge from ED on November 17, 2022. Plamondon Decl., Exh. A. On July 18, 2023, Mr. Plamondon wrote to MOHELA to ask about the status of his discharge: after quoting the discharge notice he received from ED, he asked, "It has now been 8 months and I have heard nothing yet and with student payment starting up again. What is the status of this?" *Id.* ¶ 5, *see also* Haswell Decl., Exh. 34. MOHELA did not provide a substantive response, but only stated on August 1, 2023, that it had "received no updates." *Id.*

Worried that he would be forced to enter repayment despite his discharge approval, Mr. Plamondon submitted a Borrower Defense to Repayment Application on August 23, 2023, and asked to be placed in borrower defense forbearance. Plamondon Decl. ¶ 6, Exh. B. On August 24, 2023, MOHELA placed Mr. Plamondon into a forbearance with an end date of January 1, 2040. Haswell Decl., Exh. 35. But then, less than a week after that forbearance was applied, MOHELA sent Mr. Plamondon a letter stating that he had a payment of $165.81 due on October 18, 2023. Haswell Decl., Exh. 36. Around the same time, MOHELA sent Mr. Plamondon a letter indicating he had to begin making monthly payments of $232.89 on September 18, 2023. *Id.*, Exh. 37 at 3; Plamondon Decl. ¶ 8, Exh. C. Within one month, MOHELA supposedly placed Mr. Plamondon

in forbearance, and also sent him two different letters demanding two different payment amounts due on two different dates. All of this occurred after MOHELA was placed on notice of Mr. Plamondon's eligibility for loan discharge by ED and by Mr. Plamondon himself.

## IV.    <u>APPLICABLE LAW</u>

### A.    Student Borrower Bill of Rights

The California Legislature enacted the Student Borrower Bill of Rights ("SBBR") in part to address "misaligned incentives that may cause [student loan] servicers to behave in a manner contrary to the interests of borrowers." Assembly Floor Analysis, AB 376 (2019–2020 Reg. Sess.) as amended August 20, 2020.

The SBBR regulates conduct of student loan servicers that is directed toward California borrowers. Civ. Code § 1788.100(g), (s). The SBBR specifically prohibits abusive conduct, including practices that that take unreasonable advantage of a borrower's lack of understanding of the student loan; that take unreasonable advantage of a borrower's inability to protect her interests when using a student loan; and that take unreasonable advantage of a borrower's reasonable reliance on a student loan servicer to act in her interests. Civ. Code § 1788.101(a). The SBBR also prohibits unfair and deceptive acts and practices in student loan servicing, and "misrepresent[ing] or omit[ting] material information in connection with the servicing of a student loan, including, but not limited to, misrepresenting the amount, nature, or terms of a fee or payment due or claimed to be due on a student loan . . . or the borrower's obligations under the student loan." Civ. Code § 1788.101(b)(2). The SBBR further requires that servicers "timely process [their] paperwork," Civ. Code § 1788.102(g)(1); timely and substantively respond to borrowers' qualified written requests and requests over the phone, §§ 1788.102(s), (t), (i), (j); and protect borrowers from negative consequences relating to the issues they identify until those issues are resolved, § 1788.102(k). In addition to actual damages, punitive damages, restitution, and injunctive relief, borrowers are entitled to treble actual damages (no less than $1,500 per plaintiff, per violation) where the servicer "has engaged in conduct that substantially interferes with a borrower's right to . . . loan forgiveness, cancellation, or discharge" Civ. Code § 1788.103(b), (c).

**B.      Rosenthal Act**

The California Legislature enacted the Rosenthal Act "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Civ. Code § 1788.1(b). The Rosenthal Act incorporates 15 U.S.C. §§ 1692b to 1692j, inclusive, of the federal Fair Debt Collection Practices Act ("FDCPA") such that "a violation of the FDCPA is per se a violation of the Rosenthal Act." *Best v. Ocwen Loan Servicing, LLC*, 64 Cal.App.5th 568, 576 (2021). The Rosenthal Act, through incorporation of the FDCPA, makes it unlawful to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see* Civ. Code § 1788.17.

**C.      UCL**

The Unfair Competition Law proscribes any unlawful, unfair or fraudulent business act or practice. Bus. & Prof. Code § 17200(a)(1). The purpose of the UCL is to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 320 (2011). Accordingly, the UCL must be construed broadly "to bar all ongoing wrongful business activity." *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal.App.4th 201, 230 (2012). "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition." *McKell v. Wash. Mutual, Inc.*, 142 Cal.App.4th 1457, 1471 (2006).

## V.      ARGUMENT

**A.      Legal Standard for Summary Judgment and Partial Summary Judgment**

A court may grant summary judgment or partial summary judgment only if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion,"

and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist." *Pharm. Rsch. & Manufacturers of Am. v. David*, 510 F.Supp.3d 891, 896 (E.D. Cal. 2021). A genuine issue exists if "a jury could reasonably find for either the plaintiff or defendant" on that issue. *Anderson*, 477 U.S. at 255.

**B.    MOHELA Is Not Entitled to Partial Summary Judgment**

MOHELA argues that even though ED—Plaintiffs' creditor and MOHELA's principal—informed Plaintiffs that their loans would be discharged and that they do not have to make any more payments, MOHELA may nonetheless continue to demand payments on those loans and report them on Plaintiffs' credit as if they are owed. This is simply incorrect. MOHELA is under a legal obligation to communicate truthfully and non-misleadingly about Plaintiffs' student loans to Plaintiffs themselves, as well as to third parties like credit reporting agencies. This obligation is independent of how MOHELA is notified of the correct status for Plaintiffs' loans.

1.    MOHELA's liability does not depend on receiving specific types of notice.

a.    Rosenthal Act

It is undisputed that ED, Plaintiffs' creditor, told each Plaintiff that their loans were eligible for discharge, and that they would not have to make further payments. ED also made public announcements and sent MOHELA notice of the discharges at or about the same time. Lester Depo at 31:5–9. Nevertheless, as described *supra* Section III.C, MOHELA continued billing Plaintiffs for the loans, demanding payments, sometimes marking the loans as delinquent, and reporting the loan balances on Plaintiffs' credit reports as owed. MOHELA's argument, that it may continue collecting and reporting loans for which the creditor has confirmed *no further payments are due* unless and until it receives a specific notice, does not hold water. This argument would write ED's specific and explicit representation to borrowers—that they "**do not have to make any more**

**payments on the loan(s)**"—out of existence.[4] *See, e.g.*, Maldonado Decl., Exh. A.

The Rosenthal Act, and the incorporated FDCPA, are strict liability statutes. *Young v. Midland Funding LLC*, 91 Cal.App.5th 63, 91 (2023) (liability under Rosenthal Act where a defendant "unknowingly" misrepresented status of debt); *Urbina v. Nat'l Bus. Factors Inc.*, 979 F.3d 758, 762 (9th Cir. 2020) ("Debt collectors are strictly liable for FDCPA violations."). Hence the question of whether MOHELA has violated the Rosenthal Act does not turn on what sort of notice it had that Plaintiffs were not required to make further payments when it sent them bills— only on whether Plaintiffs were, in fact, required to make the payments MOHELA demanded. *See, e.g.*, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (collection notices demanding payment on debt no longer due were "so plainly false and misleading" as to justify judgment as a matter of law).

b.   <u>Consumer Credit Reporting Agencies Act</u>

Similarly, MOHELA's credit reporting obligations turn on whether the information it reports is *accurate* and *non-misleading*, not on what specific type of notice MOHELA had. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.").

MOHELA attempts to analogize Plaintiffs to individuals who have filed bankruptcy petitions. Motion at 13–14. This analogy misses a key difference: bankruptcy proceedings are adversarial proceedings between debtors and creditors, wherein the court ultimately decides what is owed. Here there is no adversarial proceeding between debtor and creditor—both the debtors (Plaintiffs) and the creditor (the Department) *agree* that no further payments are required. It is only MOHELA, the Department's agent, that takes a contrary position.

MOHELA ignores a more closely analogous line of cases wherein courts have held that student loan servicers' obligations to credit report only accurate and complete information are

---

[4] MOHELA focuses its discussion on parsing the word "eligible," but neglects to address the clear statement from the Department that no further payments are required. *See* Motion at 11–12.

totally independent of whether ED has directed them to process a discharge. A recent discussion of these cases can be found in *Jagodzinski v. Experian Info. Sols., Inc.*, __ F.Supp.3d __, 2025 WL 2555805, at *3 (E.D.N.Y. Sept. 2, 2025). In *Jagodzinski*, a federal student loan borrower claimed that the loans he allegedly owed were the result of identity theft. *Id*. at *1. ED has a specific type of student loan discharge that applies in cases of identity theft, but the plaintiff had not sought it. *Id*. at *2. Instead, he disputed the loans via the Fair Credit Reporting Act. *Id*. The servicer argued, as MOHELA does here, that it had to report the balance until ED approved a discharge. *Id*. The court rejected this argument: "[T]he plain text of FCRA makes clear that the duty to investigate it places on furnishers . . . operates independently of HEA's discharge requirements." *Id*. at *3.

One of the cases on which *Jagodzinski* relied was a California case involving MOHELA: *Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024). *Walker* also involved credit reporting relating to an allegedly fraudulent federal student loan . In *Walker*, as here, MOHELA argued that it "cannot be held liable for purportedly-inaccurate reporting that was inaccurate based only on future information that MOHELA did not and could not possibly have known." *Id*. at *11. The court in *Walker* rejected MOHELA's argument, holding that "MOHELA fails to establish how [ED's discharge procedure] has any bearing on MOHELA's statutory obligation . . . to provide accurate information to credit reporting agencies." *Id*. at 12 (genuine issues of material fact as to whether MOHELA's credit reporting was accurate).

The facts here are stronger than in *Jagodzinski* and *Walker*. In those cases, for the relevant time periods, the Department had not yet taken a position as to whether the plaintiffs owed their federal student loans. Here, the Department has already confirmed directly to Plaintiffs that their relevant loans are *not owed*. MOHELA is obligated under the CCRAA to report only complete and accurate information. Civ. Code § 1785.25(a). Despite having notice from both the Department and from Plaintiffs themselves that no further loan payments were required, MOHELA continued reporting the loans as balances owed in full. As in the identity theft cases, this conduct can give rise to liability for MOHELA regardless of the Department's position; because the Department's position is clear, summary judgment is certainly not warranted based on the form or timing of

notice from the Department to MOHELA.

   c.  <u>Student Borrower Bill of Rights</u>

   Like the Rosenthal Act and the Consumer Credit Reporting Agencies Act, the SBBR is a remedial statute that imposes obligations on student loan servicers to treat borrowers fairly and to communicate accurate, non-misleading information. The SBBR has a structure similar to the California Consumer Legal Remedies Act ("CLRA"), Civ. Code §§ 1770 *et seq*., where liability does not turn on the Defendant's knowledge or intent, but instead the statute provides an escape hatch in the form of a notice and cure procedure. *See Serova v. Sony Music Ent.,* 13 Cal.5th 859, 888–89 (2022) (analogizing the CLRA to other statutes where liability for deceptive statements "exists regardless of whether . . . the defendant acted willfully or with intent to deceive"); *compare* Civ. Code § 1788.103(d)–(f) *with* Civ. Code §§ 1782, 1784. Here, MOHELA communicated information to each plaintiff that directly contradicted information provided by ED, *i.e.*, MOHELA communicated information indicating that the plaintiffs were obligated on student loans after ED confirmed they would have to make no further payments. Whether these communications were misleading does not turn on MOHELA's knowledge or intent, and so MOHELA is not entitled to summary judgment based on lack of a specific form of notice from the Department.

   All four Plaintiffs provided written notice to MOHELA of its violations of the SBBR and an opportunity to cure. Maldonado Decl., Exh. B; Varela Decl., Exh. D; Gary Decl., Exh. D; Plamondon Decl., Exh. D. Rather than attempting to cure—or even checking with the Department as to Plaintiffs' discharge eligibility, Anthony Depo. at 254:25–255:3 ███████████ ████████████████████████████████████ ███████████ )—MOHELA doubled down on its misrepresentations as described above in Section III.C. As with Plaintiffs' other claims, MOHELA's lack of a specific type of notice does not entitle it to summary judgment on Plaintiffs' SBBR claims. Also, MOHELA's argument fails on its own terms because there are disputes of material fact as to when and how MOHELA received notice of discharge eligibility for each Plaintiff. *See supra*, Section III.C.

   //

2.    <u>There are genuine disputes of material fact relating to whether MOHELA received official notice of Jeff Plamondon's and Alma Gary's discharges.</u>

MOHELA's argument for partial summary judgment as to Ms. Gary rests on the allegation that MOHELA has not received a group discharge file containing her loans. But MOHELA's Rule 30(b)(6) testimony demonstrates that this is not the relevant inquiry, even on MOHELA's own theory. As explained *supra*, Section III.C.3, MOHELA receives notice of discharge in different ways depending on borrowers' underlying loans. For borrowers, like Ms. Gary, whose consolidation loan contains only Direct Loans and/or ED-held FFEL loans, the group discharge file does not go to the current servicer, but to the underlying servicer. *Id.* MOHELA then receives notice of the discharge via an adjustment request from that servicer, which is received and processed separately from the group files. Anthony Depo. at 68:14–5; 161:7–19.

This testimony contradicts Mr. Anthony's declaration in support of the Motion and creates genuine disputes of material fact as to whether and when MOHELA received notice of Ms. Gary's eligibility for discharges. MOHELA could not confirm whether it received adjustment requests related to Ms. Gary's loans. Melear Depo. at 102:12–25. Further, although Plaintiffs have requested them, MOHELA has no produced any adjustment files in discovery, and could not testify as to their contents in its deposition. Haswell Decl. ¶¶ 10–12; Anthony Depo. at 277:7–18.

In addition, there are facts demonstrating that MOHELA knew or should have known that Ms. Gary's loans are subject to discharge via communications from the Department. Ms. Gary's loans were included on a forbearance list sent to all servicers by Department on October 26, 2023. Anthony Depo. at 295:10–23. The cover email identified borrowers whose loans were on the list as being eligible for group discharge. Haswell Decl., Exh. 29. Hence, although MOHELA claims it had no notice from the Department that Ms. Gary's loans were subject to discharge, it has failed to offer sufficient evidence to establish this fact, and the evidence in the record indicates otherwise.

As for Mr. Plamondon, MOHELA cannot demonstrate that none of his loans were included in group files. MOHELA's argument rests on an unsupported declaration that has proven to be inaccurate: after supplementing his declaration once, on November 21, 2025, to add to the list of

dates on which MOHELA received group files from the Department, Mr. Anthony admitted in his 30(b)(6) deposition that an additional group file, from December 7, 2022, ███████████ ██████████████████████████████████ Anthony Depo. at 163:17–25. He supplemented his declaration again on December 19, 2025, to add both December 7 *and* December 21, 2022, to the list of dates. This leads to a plausible inference that other undisclosed and unsearched group files exist and could contain Mr. Plamondon's loans. Further, as described *supra*, Section III.C.4, the files that *have* been produced have been altered in such a way that Plaintiffs cannot verify that Mr. Plamondon's loans are in fact not listed. Haswell Decl. ¶ 9.

Finally, MOHELA ignores the fact that Mr. Plamondon and Ms. Gary put MOHELA on notice of their discharges themselves. In fact, they did so repeatedly. Plamondon Decl. ¶¶ 5, 7–9; Gary Decl. ¶¶ 7–8. MOHELA could not testify as to what specific steps it took to investigate whether Mr. Plamondon and Ms. Gary were correct that their loans should be discharged, Lester Depo. at 144:9–145:9; 242:18–24, but MOHELA confirmed that it did not ask the Department about Plaintiffs' correspondence, although it could have done so, *id.* at 145:7–9.

Because Ms. Gary's discharge notification would have come via "adjustment files," which MOHELA admits it has not checked; because the evidence shows that ED notified MOHELA of Ms. Gary's eligibility for group discharge on, at the latest, October 26, 2023; and because the evidence that MOHELA has not received direct notice of Mr. Plamondon's discharge eligibility is unreliable at best, MOHELA's argument that it is entitled to summary judgment on their claims fails on its own terms.

Further, MOHELA discusses at length representations to Ms. Gary and Mr. Plamondon that it alleges were not false or misleading, while ignoring numerous representations that were false on their face. *See* Motion at 14–18. For example, after placing Mr. Plamondon into a borrower-defense-related forbearance in 2023, MOHELA removed his loans from forbearance and put him into repayment the following month. MOHELA then sent Mr. Plamondon multiple communications stating that he was required to make a payment in September and October 2023. Haswell Decl., Exhs. 36–37; Plamondon Decl. ¶ 8. Per the Department's communications to Mr.

Plamondon, which he relayed to MOHELA, this was false. These communications were deceptive and misleading because Mr. Plamondon was not required to make any payments.

Starting in September 2023, almost seven months after the Department told Ms. Gary she was not be required to make further payments on her eligible loans, MOHELA started sending her bills demanding payments on her discharge-eligible loans, with one listing an "amount past due" of $1,074.65. Haswell Decl., Exhs. 27–28, 30–31. MOHELA sent Ms. Gary billing statements in December 2023 and January 2024, months *after* it was specifically instructed to place her consolidation loan in forbearance because she was approved for discharge. *Id.*, Exh. 29. MOHELA's attempts to collect money Ms. Gary did not owe were false and misleading.

As described herein and in Section III.C.3–4, MOHELA sent Mr. Plamondon and Ms. Gary multiple collection notices demanding payments not actually due according to their creditor, the Department. As a reasonable jury could find that these demands were false and misleading, MOHELA is not entitled to summary judgment as to Mr. Plamondon's and Ms. Gary's claims.

3.    There are material disputed facts relating to when MOHELA received sufficient notice of Ms. Maldonado's and Ms. Varela's discharges.

As discussed above, Plaintiffs' claims turn on their loan status *vis a vis* the Department, not on the timing or form of notice MOHELA received about that status. Nevertheless, even taking MOHELA's position at face value, a reasonable jury could conclude that MOHELA received sufficient notice of plaintiffs Ms. Maldonado's and Ms. Varela's discharges prior to receiving group files in January and April 2023. *See* Anthony Decl. at ¶¶ 8–9.

MOHELA received "heads up" notices from the Department at or near the same time as the Department publicly announced the group discharges. Lester Depo. at 31:5–9. These notices included the school groups and enrollment dates that would be covered by the discharges. *Id.* Using that information, MOHELA could determine which loans it serviced were likely eligible for discharge. Anthony Depo. at 78:5–12; Melear Depo. at 48:4–16. It did not do so.

Further, Ms. Maldonado put MOHELA on notice herself of her eligibility for discharge prior to MOHELA receiving the group file with her information. Ms. Maldonado sent MOHELA

a message on October 26, 2022, telling MOHELA that her loans were covered by the CCI group discharge announced in June 2022. Haswell Decl., Exh. 10. MOHELA took no steps to verify this fact, and continued credit reporting and collection. Lester Depo. at 161:5–163:25.

For the reasons explained above, MOHELA is not entitled to summary judgment as to any time periods for Ms. Maldonado and Ms. Varela.

4.    MOHELA misrepresents facts relating to Ms. Maldonado's past-due status.

MOHELA argues it is entitled to summary judgment as to Ms. Maldonado's Rosenthal Act claim because, it claims, there is no evidence that her loans were "past due" or "delinquent" after ED announced the CCI group discharge and no evidence that MOHELA "has taken action to collect the debt *as if* [it was] past due." Motion at 20. Regardless of the legal merit of MOHELA's argument, which Plaintiffs dispute, MOHELA is wrong on the facts. MOHELA sent Ms. Maldonado a letter about its servicing platform transfer on July 23, 2024—more than 18 months after MOHELA admits receiving approval from the Department to discharge her loans—which stated: "Our records indicate that *your account was past due from 1-59 days* during the transfer process." Haswell Decl., Exh. 38 (emphasis added). Contrary to MOHELA's representation, MOHELA claimed that Ms. Maldonado's loans were past due after the Department announced the relevant discharges. MOHELA is not entitled to summary judgment on this claim.

## C.    Plaintiffs Are Entitled to Partial Summary Judgment

Plaintiffs seek partial summary judgment as to MOHELA's liability under the Student Borrower Bill of Rights, the Rosenthal Act, and the Unfair Competition Law.[5]

1.    Student Borrower Bill of Rights

To establish a violation of the SBBR, a plaintiff must show: (1) that she is a borrower; (2) of a student loan; (3) that the defendant is a student loan servicer; who (4) services student loans in California; (5) that the defendant violated a provision of the SBBR; (6) that the plaintiff suffered damage as a result; (7) that the plaintiff provided written notice of the violations at least 45 days

---

[5] Plaintiffs reserve all claims and arguments not specifically addressed in this Motion for trial.

before bringing the action; and (8) that the defendant did not make an appropriate correction or other remedy within 30 days after receipt of the notice. Civ. Code § 1788.103.

MOHELA's violations of the SBBR are clear cut. The evidence shows that MOHELA substantially interfered with Plaintiffs right to loan discharge, Civ. Code § 1788.103(c), by refusing to process Ms. Maldonado's and Ms. Varela's discharges per the Department's instructions for more than a year, despite numerous inquiries and requests from Ms. Varela and Ms. Maldonado, and only doing so after this lawsuit was filed. *See, e.g.*, Anthony Decl. ¶¶ 8–9; Anthony Depo. at 305:6–11

); Haswell Decl., Exhs. 10, 12–13, 15, 20.

MOHELA also misrepresented and omitted material information in servicing Plaintiffs' loans. Civ. Code § 1788.101(b)(2). Specifically, MOHELA demanded payments from all Plaintiffs when no payments were due according to the Department. *See, e.g.*, Haswell Decl., Exhs. 10 at 1; 11; 16–29; 26 at Rows 51, 62, and 71; 27–28; 30–31, 36–38. MOHELA also misrepresented and/or omitted the true status of Plaintiffs' discharges when the Plaintiffs asked. *See, e.g.* Haswell Decl., Exhs. 10–11; 15 at Rows 50, 53–54, and 71; 26 at Row 45; 33; 36–38; *see also* Maldonado Decl., Exh. C; Varela Decl. ¶ 9, Exh. E.

Finally, MOHELA engaged in unfair and abusive practices toward Plaintiffs. In addition to the discharge delay and misrepresentations described above, MOHELA's continued reporting on Plaintiffs' credit that they owed a large balance on their student loans, when MOHELA knew that the Plaintiffs were not required to pay that balance, was also abusive and unfair: it took unreasonable advantage of Plaintiffs' inability to protect their interests, and also caused the Plaintiffs substantial harm that was not reasonably avoidable by them. *See* Maldonado Decl. ¶ 11; Varela Decl. ¶ 16; Gary Decl. ¶ 10; Plamondon Decl. ¶¶ 11–13.

Plaintiffs each provided written notice to MOHELA regarding its SBBR violations. Maldonado Decl., Exh. B; Varela Decl., Exh. D; Gary Decl., Exh. D; Plamondon Decl., Exh. D. MOHELA did not correct or remedy any of the acts Plaintiffs complained of within 45 days of

receiving the letter. Instead, its responses to Plaintiffs were rote, uninformative, contained false statements, and provided no accurate details at all regarding their loan discharge status. Maldonado Decl., Exh. C; Varela Decl., Exh. E; Gary Decl., Exh. E; Plamondon Decl., Exh. E. None of MOHELA's Rule 30(b)(6) witnesses could identify any actions or investigation that MOHELA took in response to receiving the letters. Anthony Decl. at 254:5–255:3; Melear Depo. at 222:15–223:1; Lester Depo. at 179:8–181:3.

Plaintiffs suffered harm by MOHELA's actions. Each of them suffered tremendous stress and experienced significant disruption to their lives because of MOHELA's failure to implement their loan discharges or even provide accurate information regarding their eligibility for a discharge. Maldonado Decl. ¶¶ 11–12 , Varela Decl. ¶ 16, Gary Decl. ¶¶ 10–11, Plamondon Decl. ¶¶ 11–13. Plaintiffs also expended money attempting to resolve these issues with MOHELA directly, including by paying postage to mail their SBBR letters. Maldonado Decl. ¶ 11, Varela Decl. ¶ 16, Gary Decl. ¶ 10, Plamondon Decl. ¶ 11.

2.    Rosenthal Act

MOHELA's violations of the Rosenthal Act are also inescapable. MOHELA violated the Rosenthal Act by falsely representing the character, amount, or legal status of Plaintiffs' accounts. Civ. Code § 1788.17, 15 U.S.C. § 1692e(2)(A). Maldonado Decl., Exh. C; Varela Decl., Exh. E; Gary Decl., Exh. E; Plamondon Decl., Exh. E. MOHELA also made false, deceptive, and misleading representations in an attempt to collect on Plaintiffs' accounts. Civ. Code § 1788.17, 15 U.S.C. §§ 1692e(10). *See, e.g.*, Haswell Decl., Exhs. 10 at 1; 11; 16–19; 26 at Rows 51, 62, and 71; 27–28, 30–31, 36–38. Simply put, MOHELA attempted to collect debts from Plaintiffs that they do not owe, in clear violation of the law. Civ. Code § 1788.17, 15 U.S.C. §§ 1692e(5), (f).

3.    Unfair Competition Law

Under the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 837 (2006). MOHELA's illegal and deceptive practices constitute all three varieties.

First, the UCL creates an independent action for conduct that also violates other laws.

*Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383 (1992). An "unlawful" business activity is "anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* MOHELA's practices are unlawful because they violated, at minimum, the SBBR and Rosenthal Act, as detailed above. MOHELA's business practices are "unfair" within the meaning of the UCL under any of the three tests used by California courts.[6] MOHELA's conduct is tethered to substantive provisions of law—particularly the SBBR, which the California Legislature enacted to prevent exactly the abuses at issue in this case. MOHELA's conduct is "immoral, unethical, oppressive, unscrupulous [and] substantially injurious" to borrowers and the harm caused by MOHELA is not outweighed by any "utility" to MOHELA. *See Drum*, 106 Cal. Rptr. 3d at 53.

Finally, MOHELA caused substantial injuries to borrowers who are left confused and misdirected about the student loan discharges they were promised. These injuries are not outweighed by "any countervailing benefits to consumers or competition." *Id.* at 54. Borrowers could not have reasonably avoided these injuries given that they have no way of obtaining information about their pending discharges except through MOHELA. MOHELA's practices are "fraudulent" within the meaning of the UCL. The UCL's fraud prong is "distinct from common law fraud." *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009). Under the UCL, a plaintiff only needs to show that the practice is "likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1255 (2009). MOHELA's conduct is likely to deceive members of the public because MOHELA was relaying false and misleading information about consumers' loan status, loan balance, and repayment obligations.

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs requests that the Court deny MOHELA's motion for partial summary judgment in its entirety. Plaintiffs further request that the Court enter judgment for Plaintiffs and against MOHELA on their claims under the SBBR, Rosenthal Act, and UCL.

---

[6] The three tests used by California courts to determine whether a practice is "unfair" are explained in detail in *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal.Rptr.3d 46, 53–54 (2010).

Dated: December 22, 2025                     KEMNITZER, BARRON & KRIEG, LLP

By:     /s/ *Malachi J. Haswell*
                     Malachi J. Haswell
                     Adam McNeile
                     Kristin Kemnitzer

                     PROJECT ON PREDATORY STUDENT
                     LENDING
                     Noah Zinner
                     Rebecca Eisenbray
                     Rebecca Ellis

                     JUBILEE LEGAL
                     Daniel "Sparky" Abraham

                     *Attorneys for Plaintiffs and the Proposed Class*