UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAIME MALDONADO, ANNA VARELA, ALMA GARY and JEFF PLAMONDON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>  vs.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,<br><br>          Defendants. | Case No.  3:24-CV-07850 VC<br><br>Assigned to Hon. Vince Chhabria<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br><u>Case Management Conference</u><br>Date:  March 27, 2026<br>Time:  10:00 a.m.<br>Location:  Zoom |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9. Pursuant to Civil Local Rule 16-9(d), this subsequent case management statement primarily reflects progress or changes since the parties' earlier joint case management statement filed on May 2, 2025. *See* Dkt. 52.

## 1.    Jurisdiction & Service

*Plaintiffs' Statement:* The Court has federal diversity jurisdiction over this case because there is complete diversity of the Parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Venue is proper in this judicial district because Named Plaintiff Maldonado resides in the district, conduct giving rise to Defendant's liability in this action occurred in the district, and no real property is involved in the action. 28 U.S.C. § 1391(e)(1)

*MOHELA's Statement:* As set forth in Defendant Higher Education Loan Authority of the State of Missouri's ("MOHELA") Notice of Removal, Dkt. 1, the Court has jurisdiction under 28

U.S.C. sections 1442(a)(1) (federal officer removal), 1331(a) (federal question), and 1332(a) (diversity). Service has been effectuated on MOHELA.

2.    **Facts**

*Plaintiffs' Statement:*

Beginning in April 2022, the U.S. Department of Education ("the Department") issued findings that for-profit colleges run by Marinello Schools of Beauty, Corinthian Colleges, Inc., ITT Technical Institute, Westwood College, the Art Institutes, and Colorado-based locations of CollegeAmerica (the "Group Discharge" schools) had engaged in consumer fraud. The Department announced that federal loans taken out to attend the Group Discharge schools would be discharged and that relevant borrowers would have no further obligations on their loans, and sent notices to effected borrowers. The notices stated that the "remaining balance on the loan(s) will be forgiven" and that the borrower did "not have to make any more payments on the loan(s)." Each notice also explained to the borrower that they could be eligible for a refund for payments they previously made on the loans, and that the borrower's federal student loan servicer would let the borrower know if they are eligible for a refund, which would then be mailed to the borrower. Finally, each notice explained that it would "take the Department some time" to process the discharges, but that in the meantime the borrowers would not be asked to resume making payments on the relevant loans. The Department has repeated stated on the record in another case, *Hemphill v. McMahon*, that loans covered by the Group Discharges are unenforceable and cannot be legally collected. *Hemphill v. McMahon*, No. 22-cv-1391, Joint Status Report, Dkt. No. 46 at 3 (D.D.C. September 8, 2025) ("The Department's consistent position, across at least three Administrations, is that the Department is obligated to effectuate relief that has been finally approved, even if the steps to effectuate it are incomplete, and that **any amount finally approved for relief reflects unenforceable debt that cannot be legally collected**.") (emphasis added).

MOHELA is one of a handful of third-party "student loan servicers" with which the

Department contracts to service its student loan accounts. MOHELA receives payment from the Department based on the number of student loan accounts it services. As discovery has shown, the Department sent MOHELA notice of the Group Discharges as they were announced. MOHELA could have, but did not, identify all borrowers in its loan portfolio who took out federal loans to attend a Group Discharge school. The Department also gave MOHELA notice of individual borrowers eligible for Group Discharge through "group files"—lists of loans to be that were to be discharged within 15 to 45 days pursuant to the MOHELA's contract with the Department—and "do not bill" lists including the names of eligible borrowers, including those whose loans were included in group files sent to another servicer.

Plaintiffs and members of the proposed class are California borrowers who attended one or more of the Group Discharge schools and have federal loans serviced by MOHELA. After the Group Discharges were publicly announced and directly communicated to Plaintiffs, class members, and MOHELA, MOHELA placed Plaintiffs' and class members' federal loans back into repayment status, sent communications that misrepresented that their loans were owing in full, sent bills and other communications stating monthly payment amounts that were not actually owed, and never acknowledged—and sometimes outright denied—Plaintiffs' and class members' entitlement to Group Discharge.

MOHELA also continues to report obligations on Plaintiffs' and class members' loans from Group Discharge schools to credit reporting agencies ("CRAs") without noting their entitlement to discharge and continues to report to CRAs that the balances of these loans are increasing due to accruing and unpaid interest, even though Plaintiffs and class members are not obligated to make any further payments on the loans. From the point of the Department's Group Discharge announcement forwards, it was inaccurate for MOHELA to report these debts as due and owing, thus suggesting that repayment would be necessary.

Ultimately, once the discharge is effectuated, MOHELA's contracts with the Department

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
CASE NO. 3:24-CV-07850 VC

require it to delete the related credit tradelines. *See* ECF No. 95-15 ¶¶ 5–6. Plaintiffs are not arguing that MOHELA should have done so before it was required to effectuate the discharge. Rather, Plaintiffs are stating that reporting the loans as MOHELA did—as owing in full, whether in forbearance or not—is inaccurate and misleading, and violates California law. MOHELA could have suppressed the relevant tradelines, *i.e.*, voluntarily declined to report them, or at a minimum could have included notation of "discharge pending."

Reporting that Plaintiffs and class members owe a balance that they are not responsible for repaying is materially misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. And this inaccurate credit reporting has already had severe adverse consequences for Plaintiffs and class members. For example, in July 2024—almost a year after MOHELA received her name on a "do not bill" list that identified her as a "borrower[] approved for Group borrower defense discharge," *see* ECF No. 129-29—a credit union denied Plaintiff Alma Gary's application for a personal loan she had sought to reduce her monthly expenses on other household debts. The credit union's denial letter cited her reported unsecured credit balance—largely consisting of her federal student loans—as a basis for the denial.

MOHELA has violated California's Rosenthal Fair Debt Collection Practices Act, Consumer Credit Reporting Agencies Act, Student Borrower Bill of Rights, and Unfair Competition Law. Plaintiffs and class members are owed damages and restitution, and seek an injunction to prevent MOHELA from continuing to violate student borrowers' rights.

*MOHELA's Statement:* MOHELA is a student loan servicer with which the U.S. Department of Education (the "Department") contracts to service its federal student loan accounts. As a student loan servicer, the federal loans are not MOHELA's assets but rather assets of the Department; MOHELA may only properly discharge the loans it services based on the Department's instruction pursuant to servicing contracts between the parties. Under those contracts, the Department's public Group discharge announcements or direct communications to

individual borrowers are not sufficient. Instead, the Department controls if and when to instruct MOHELA to discharge loans under the Group discharge process by transmitting lists of loans to be discharged to individual servicers, including MOHELA. MOHELA received Borrower Defense Group discharge files from the Department intermittently from late-2022 to early-2025. However, the Department has made clear that it has not provided discharge instructions for all borrowers that may be eligible. *See Hemphill*, No. 22-cv-1391, Dkt. No. 46 (Joint Status Report from September 8, 2025), at 3-4. And other priorities, like effectuating relief for *Sweet* borrowers, impact the processing and timing of Group discharges. *Id.*, Dkt. 48 (Joint Status Report from December 11, 2025) at 5-6 ("The Department has limited resources, and it has had to prioritize those resources towards meetings its court-ordered settlement obligations in *Sweet*.)

Plaintiffs allege—on information and belief—that the Department instructed loan servicers like MOHELA to discharge all the named Plaintiffs' loans, cease loan reporting and servicing on those loans, and issue payment refunds for loans taken out to attend the schools listed in the Complaint. Discovery has rebutted this. Certain of Plaintiffs Jaime Maldonado's and Anna Varela's federal student loans were included in discharge files MOHELA received from the Department. MOHELA effectuated their discharges, and they received refunds from the Department of Treasury. However, to date, the Department has not instructed MOHELA to discharge Plaintiffs Alma Gary's or Jeff Plamondon's federal student loans. Their student loans are in forbearance and will remain in forbearance until 2040.

The relevant time period was unprecedented for the federal student loan industry and provides relevant context for the Department's and MOHELA's processing of Borrower Defense Group discharges. In light of the tumultuous landscape in which the Group discharge process arose and took place, to the extent there was any error in MOHELA's communications with borrowers or credit reporting agencies ("CRAs"), such error was bona fide, and MOHELA maintained reasonable procedures to avoid any such errors, including but not limited to the maintenance of manual and automatic processes to ensure that accounts that may be affected by

Group discharge are placed and kept in forbearance and that credit reporting is accurate.

3.      **Legal Issues**

*Plaintiffs' Statement*: This Court has already determined that MOHELA violated the SBBR and the UCL "unlawful" prong with respect to Plaintiffs Maldonado and Varela by continuing to represent to them that they owed money on their loans after it had received their loan information name on group files. Legal questions of whether MOHELA violated the Rosenthal Act, and whether it can substantiate a bona fide error defense; whether MOHELA violated the CCRAA; and whether a class can be certified pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure remain to be resolved.

Also remaining to be resolved are the questions of whether MOHELA violated California law by sending communications to Plaintiffs and the putative class stating payment was due on Group Discharge loans after the Group Discharges were announced (to the extent not already determined by the Court's order granting partial summary judgment under the SBBR and UCL), and by reporting a balance due on Plaintiffs' Group Discharge loans without—at minimum— indicating that Plaintiffs were not required to repay them. These issues, and Plaintiffs' corresponding theories of liability, are laid out in the Complaint. For example, Plaintiffs allege:

- "MOHELA knew or should have known that every federal student loan associated with a Group Discharge school was not due and owing and should not be collected upon or reported as owing to consumer credit reporting agencies," ECF No. 1-25 at ¶ 8;

- "Despite receiving notice of the Group Discharges as early as April 2022, and fielding many complaints from the borrowers, MOHELA has continued to represent to Plaintiffs that they remain obligated on their cancelled loans," *id.* at ¶ 9;

- "MOHELA also continues to report Plaintiffs' loans to CRAs with their cancelled

Group Discharge balances owing, even though the Department of Education has deemed those loans cancelled and stated that borrowers do not need to make any further payments. By inaccurately reporting these balances as outstanding, without any clarification that these balances do not need to be repaid . . . ," *id.* at ¶ 51; and

- "Defendants furnished information indicating that Plaintiffs and class members had payments and/or balances due and owing on their alleged debts, and failed to correct information previously furnished indicating the same, when, in fact, Plaintiffs and class members did not owe payments or balances," *id*. at ¶ 140.

The issues of MOHELA's legal responsibilities regarding communications with putative class members and with credit reporting agencies after the Group Discharge announcements were made are also detailed in Plaintiff's summary judgment briefing. For example, Plaintiffs argued:

- "MOHELA argues that even though ED—Plaintiffs' creditor and MOHELA's principal— informed Plaintiffs that their loans would be discharged and that they do not have to make any more payments, MOHELA may nonetheless continue to demand payments on those loans and report them on Plaintiffs' credit as if they are owed. This is simply incorrect," ECF No. 111 at 15;

- "[T]he question of whether MOHELA has violated the Rosenthal Act does not turn on what sort of notice it had that Plaintiffs were not required to make further payments when it sent them bills— only on whether Plaintiffs were, in fact, required to make the payments MOHELA demanded," *id.* at 16;

- "Both letters incorrectly state that Mr. Plamondon will have to repay his loans . . . and thereby misrepresent his obligations under the loan," ECF No. 120 at 7;

- "[T]he evidence shows that MOHELA did not just furnish inaccurate information on the Plaintiffs' credit reports, it also continued that reporting while misleading the Plaintiffs about their discharge statuses, and in the face of specific requests by

the Plaintiffs to remove the inaccurate reporting," *id.* at 8;

- "MOHELA's reporting on Plaintiffs' credit would give other creditors the impression that Plaintiffs were required to pay large balances that they were not, in fact, required to pay," *id.*; and

- "MOHELA's statements about each Plaintiff's . . . repayment obligations were demonstrably false," *id.* at 12.

*MOHELA's Statement*: The Court partially granted MOHELA's motion for summary judgment, finding that "[n]othing in the Department's announcements suggested that the plaintiffs' loan discharges were immediately effective," and "MOHELA [] had no obligation to treat the plaintiffs' loans as discharged until the Department transmitted the instructions to MOHELA." MSJ Order at 1-2. Therefore, the "issues" Plaintiffs raise in this section above, namely "whether MOHELA violated California law by … after the Group Discharges were *announced*" (emphasis added), and the various excerpts from Plaintiffs' complaint and summary judgment brief that purport to support this now-dismissed theory, are in fact no longer at issue.

At this time, MOHELA identifies several legal issues that are likely to arise in this action:

A. MOHELA would like to brief a renewed motion for summary judgment as to the named Plaintiffs after the close of fact discovery based on two issues that arose during the parties' initial cross-motions for summary judgment:

   i. First, the Court's March 10, 2026 Order on the parties cross-motions for summary judgment acknowledged that Plaintiffs have now advanced a new legal theory that MOHELA "violated the law by failing to explain in its communications with the plaintiffs and credit reporting agencies that the plaintiffs' loans had a discharge pending." Dkt. 124 ("MSJ Order") at 2. Plaintiffs should not be permitted to advance a new legal theory at this stage of the case – they made a choice to litigate on a theory that the Court has now rejected in its partial grant of summary judgment in favor of MOHELA. Had

8

Plaintiffs advanced this theory through pleadings, MOHELA would have argued – and now seeks leave of the Court to brief – that such a theory is futile because it is expressly preempted under the Higher Education Act, Title 20, United States Code, Section 1098g, and preempted by conflict preemption. Under Section 1098g, "[l]oans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 et seq.) shall not be subject to any disclosure requirements of any State law." Section 1098g "applies to, and thus precludes" state law claims based on "allegedly-misleading" communication methods and "improper-disclosure" claims governed by the HEA. *Chae v. SLM Corp.*, 593 F.3d 936, 942-43 (9th Cir. 2010). Additionally, the Ninth Circuit in *Chae* found that state law claims that created an obstacle to the HEA's "clear command for uniformity" were also preempted under conflict preemption. *Id.* at 945-948. In light of Plaintiffs' new theory, MOHELA requests leave to move for summary judgment on preemption grounds. MOHELA anticipates that the issue of preemption will narrow the named Plaintiffs' claims and size of any putative class.

ii.    The Court found that "the record is not yet developed enough to grant summary judgment to MOHELA" on the issue of whether the Department instructed MOHELA to discharge Plaintiffs Plamondon's and Gary's loans. MSJ Order at 2. While MOHELA contends the record is currently developed enough to rule on this issue, MOHELA respectfully requests leave to file a renewed motion for summary judgment on this basis after the close of fact discovery. At that time, the factual record will be complete, and the Court will be able to rule on this issue as a matter of law.

B.  Whether the named Plaintiffs can maintain a claim under the CCRAA absent a

showing of actual harm, as required under the statute. *See* Cal. Civ. Code § 1785.31(a) ("(a) Any consumer *who suffers damages as a result of a violation of this title* by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following . . . ." (emphasis added)); *see also Levinson v. Transunion LLC*, No. CV1600837-RSWL-PLAX, 2016 WL 3135642, at *6 (C.D. Cal. June 2, 2016) ("Actual damage is required to state a claim under the CCRAA."). Whether this action can be maintained as a class action, and whether the proposed class definition is facially overbroad. *See infra* § 9.

C.  The Department withdrew its appeal of the Fifth Circuit's preliminary injunction in *Department of Education, et al. v. Career Colleges and Schools of Texas*, 98 F.4th 220 (5th Cir. 2024). On remand from the Fifth Circuit, the district court entered the preliminary injunction on January 28, 2026, postponing the effective date of the 2022 borrower-defense discharge provision upon which the Group discharge process is based. *See Career Colleges & Schools of Texas v. U.S. Department of Education,* 1:23-cv-00433, No. 116 (W.D. Tex. Jan. 28, 2026)*.* In light of the injunction, the 2019 regulation's more exacting evidentiary standard, requirement of individual applications, and 3-year statute of limitations once again governs borrower defense claims for loans first disbursed after July 1, 2020. The injunction may affect the eligibility of the two putative class representatives with loans disbursed after July 1, 2020—Plaintiffs Anna Varela and Jeff Plamondon.[1] The injunction may also affect the eligibility of certain putative class members.

D.  The One Big Beautiful Bill Act ("OBBBA") promulgated changes to the HEA's borrower defense regulations. Section 85001 of the OBBBA postpones the regulation relating to Group discharges and restores previous regulations that were in effect as of

---

[1] MOHELA is currently considering whether summary judgment is also warranted on this ground. If the Court grants MOHELA leave to file a renewed summary judgment motion, MOHELA respectfully requests to reserve the right to move on this ground as well.

July 1, 2020—which did not allow for Group discharges. Accordingly, Congress' withdrawal of Group discharge authority could further result in the dismissal of certain claims and reduce the size of the class.[2]

**4.    Motions**

The following motions are currently pending in this matter:

A. MOHELA's motion to maintain confidentiality. Dkt. 74. Plaintiffs challenged certain of MOHELA's confidentiality designations as to documents produced in discovery pursuant to the Protective Order entered in this action. Accordingly, MOHELA moved to maintain the confidentiality designations. *Id.* That motion has been fully briefed and heard by Magistrate Judge Kang. Subsequently, the Department filed a declaration in that matter in support of the confidential treatment of documents exchanged in this case. *See* Dkt. 106-1.

The parties expect the following motions will be filed in this action:

A.  As stated above, *supra* § 3, MOHELA respectfully requests the opportunity to brief a renewed motion for summary judgment as to the named Plaintiffs after the close of fact discovery based on two issues that arose during the parties' cross-motions for summary judgment: (1) whether MOHELA's communications with Plaintiffs or CRAs are preempted under Section 1098g of the Higher Education Act and by conflict preemption under *Chae v. SLM Corp.*, 593 F.3d 936, 942-43 (9th Cir. 2010); and (2) whether the Department instructed MOHELA to discharge Plaintiffs Plamondon's and Gary's loans. MOHELA anticipates that a renewed motion for summary judgment on these issues will narrow the named Plaintiffs' claims and size of the putative class.

B. Plaintiffs will file a motion for class certification.

C. There is the potential for future discovery motions. The Parties will meet and confer

---

[2] *Id.*

in good faith regarding any discovery dispute. If counsel remain unable to reach agreement on any discovery disputes, discovery motions may be necessary. This Court previously referred all discovery to Magistrate Judge Kang.

## 5.    Amendment of Pleadings

*Plaintiffs' Statement*: If the Court believes that Plaintiffs must amend their complaint to assert that MOHELA violated California law by failing to explain in its communications with the Plaintiffs, the putative class, and credit reporting agencies that Group Discharge-eligible loans had a discharge pending, they will promptly seek leave to do so.

*MOHELA's Statement*: In light of recent developments, MOHELA identified additional affirmative defenses that may apply here and filed a motion for leave to file a second amended answer on March 4, 2026, to assert those affirmative defenses. Dkt. 121. After Plaintiffs filed a notice of non-objection, Dkt. 130, this Court granted that motion, Dkt. 131.

## 6.    Evidence Preservation

The Parties certified that they reviewed the ESI guidelines and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding the preservation of evidence. Defendant has stated that it has preexisting obligations to preserve all potentially relevant ESI, including information stored in and related to the servicing platform that MOHELA ceased to use in July 2024.

## 7.    Disclosures

Plaintiffs served their initial disclosures on February 20, 2025, and Defendants served their initial disclosures on February 27, 2025.

## 8.    Discovery

Significant discovery has taken place, and discovery is ongoing. Each party served and responded to the other's interrogatories and document requests. MOHELA deposed the named Plaintiffs, and Plaintiffs deposed several of MOHELA's representatives under Rule 30(b)(6). As to future discovery, Plaintiffs recently requested to take a further deposition of MOHELA under Rule 30(b)(6), and the parties are discussing the permissible scope, substance, and timing. Additional interrogatories, depositions, and document requests are likely, as well as third-party

discovery. Certain discovery disputes have arisen, and the parties are meeting and conferring in good faith. On March 19, 2026, the parties met and conferred to discuss a future discovery plan. Defendants propose a targeted, structured approach, with a discovery cutoff before Plaintiffs' motion for class certification. *See infra* § 16. Plaintiffs contend that discovery should be ongoing throughout class certification briefing and should conclude after this Court rules on the motion for class certification.

**9.      Class Actions**

*Plaintiffs' Statement:* Pursuant to Civil L.R. 16-9(b), Plaintiffs state that this class action is maintainable under Fed. R. Civ. P 23(b)(3). The proposed class, as defined in the complaint, consists of:

> All California residents who took out federal student loans (including Direct and/or FFEL loans) to pay educational expenses at Marinello Schools of Beauty, Corinthian Colleges, Inc., ITT Technical Institute, Westwood College, Colorado-based locations of CollegeAmerica, and the Art Institute ("Group Discharge Loans"); who are included in the Department of Education's Group Discharges for these schools; whose Group Discharge Loans are, at the time of filing of this Complaint, being serviced by MOHELA; and who, since the Department of Education's public announcements of their discharges, (i) have received communications from MOHELA that a balance or payment is due and owing on their discharged loans, (ii) have not received a refund of qualifying payments made on their Group Discharge Loans, and/or (iii) have Group Discharge Loans reported by MOHELA on their credit reports with an outstanding balance or payment due.

Plaintiffs anticipate refining the class definition to accord with this Court's summary judgment order and based on further discovery.

Plaintiffs can show that the proposed class satisfies all of the requirements of Fed. R. Civ. P. 23(a) because: (1) given the extent of the Group Discharges, the number of Group Discharge schools in California, the size of MOHELA's federal loan portfolio, and documents produced thus far in discovery, it is reasonable to infer that the class comprises tens of thousands of members; (2) all members of the proposed class assert the same legal theory based on

MOHELA's generally applicable policies and practices and the transmission of identical form letters, tracked in a uniform client contact system; (3) as MOHELA's generally applicable policies and practices caused Named Plaintiffs and members of the proposed class the same harm, Named Plaintiffs' claims are typical of the class; and (4) Named Plaintiffs and class counsel are prepared to, and desire to, vigorously prosecute the case.

Rule 23(b)(3) is similarly satisfied because common issues predominate—including whether MOHELA had actual or constructive notice of which loans in its portfolio were covered by the Group Discharges; whether MOHELA took actions and/or maintained policies or practices that interfered with class members' right to student loan discharges and refunds; whether MOHELA took actions and/or maintained policies or practices that resulted in MOHELA inaccurately representing the repayment status, eligibility for discharge, and/or balance of Group Discharge loans to class members and/or CRAs; whether these actions and/or policies and practices violated California consumer protection laws; and whether MOHELA can sustain a bona fide error defense under the CCRAA or the Rosenthal Act—and because the class method is superior to individual litigation, which would be unduly burdensome to the Parties and the courts and would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for MOHELA and/or substantially impair the ability of the proposed class to protect their interests.

MOHELA's statement that the class definition is overbroad in light of the Court's summary judgment order misreads the order. As the Court recognized, MOHELA's responsibility to effectuate discharges (which it can only do once it receives the instructions for a particular class member) is distinct from its responsibility to communicate accurately with borrowers and report non-misleading information to credit reporting agencies. Thus, while there may be class members for whom MOHELA has not received instructions to process discharges, there are still remaining legal issues as to whether MOHELA violated California law by communicating inaccurate information to such borrowers and reporting their loans without at

minimum some notation that the amounts are not due and owing.

*MOHELA's Statement:* MOHELA reserves all rights to contest class certification at the appropriate time on multiple grounds.

Without limitation to any future arguments, Plaintiffs' proposed class definition is overbroad in light of the Court's MSJ Order that loans are not discharged by the Department's public announcements meaning that, as defined, there are likely a significant number of proposed class members with no claim and for whom this Court could not order and MOHELA could not grant any relief. Moreover, Plaintiffs' class definition fails to exclude individuals whose claims have or will be processed pursuant to terms of the court-approved settlement in *Sweet v. Cardona*, No. 3:19-cv-3674-WHA (N.D. Cal. Nov. 16, 2022), ECF No. 345, for which the Department is still in the process for providing relief. And, certain Plaintiffs and members of the proposed class may be ineligible for Borrower Defense Group discharge in light of the OBBBA's amendments to the borrower defense regulations and the preliminary injunction issued in *Career Colleges & Schools of Texas v. U.S. Department of Education,* 1:23-cv-00433, No. 116 (W.D.Tex. Jan. 28, 2026). *See supra* § 3 (Legal Issues).

Moreover, class certification is particularly inappropriate here given that individualized inquiries predominate. As the Court aptly stated at the hearing on the parties' cross-motions for summary judgment, "different plaintiffs had different statuses at different times, different communications were sent by the Department of Education [] to MOHELA about different plaintiffs at different times, and MOHELA sent different kinds of communications to different plaintiffs at different times." MSJ Hearing Tr. at 44-45.

These individualized factual inquires, each with their own legal implications, include but are not limited to: whether a borrower's loan(s) is included in a discharge file, and if so, on what date; which of the borrower's loan(s) are included in a discharge file and whether the borrower has loans for any non-discharge-eligible school; what communications, if any, MOHELA sent to borrowers and whether they were sent before or after it received discharge authorization from the

Department; whether borrowers called MOHELA to inquire about their loans, what they said, and MOHELA's verbal response; whether each borrower suffered actual damage; if a borrower's loans were discharged, when MOHELA updated the borrower's credit report with the CRAs; if a borrower's loans were discharged, whether and when that borrower received a refund from the Department of Treasury.

This is in addition to the individualized issues relating to whether proposed class members had single loans, consolidated loans, elected to repay loans while on forbearance, or attended schools other than those at issue, among other issues affecting their loans' status. Moreover, how credit reports are interpreted by lenders or other entities and whether, and if so to what degree, a student loan would impact consumers' creditworthiness is also an individualized issue encompassing such factors as the type of credit the person is seeking, whether they have other debt, or defaulted on any type of loan payment in the past.

Additionally, the named Plaintiffs are not typical of the class they purport to represent: only Plaintiffs Maldonado's and Varela's loans appear in Group discharge files; only Plaintiff Gary's loan appeared in a forbearance list; and Plaintiff Plamondon submitted a borrower defense application, which is a different process than the Group discharge process upon which Plaintiffs' claims rely and which may have caused his loan to be treated differently than those who have not submitted an application.

## 10.   **Related Cases**

The Parties agree there are no cases related to the action, as defined under Civil Local Rule 3-12(a).

However, MOHELA takes the view that Plaintiffs' proposed class definition is overbroad such that it overlaps with and includes class members of another action currently pending in this district, *Sweet v. Cardona*, No. 3:19-cv-3674-WHA.

11.    **Relief**

*Plaintiffs' Statement:* Plaintiffs and class members seek actual damages, including costs and attorney's fees, for Defendant's violations of the Rosenthal Act, as well as statutory damages of up to $1,000 each for the named Plaintiffs and an award for the class of up to the lesser of $500,000 or one percent of Defendant's net worth pursuant to California Civil Code § 1788.17 (incorporating 15 U.S.C. § 1692k(a)). Plaintiffs and class members seek actual damages, including costs and attorney's fees, for Defendant's violations of the CCRAA, as well as an award of punitive damages in an amount not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation, pursuant to California Civil Code § 1785.31(a)(2)(B), and an award of punitive damages in an amount that the court may allow, pursuant to California Civil Code § 1785.319(c). Plaintiffs and class members seek actual damages of no less than five hundred dollars ($500) per plaintiff, per violation of the SBBR, pursuant to California Civil Code § 1788.103(b)(1); costs and attorney's fees; an award of punitive damages, pursuant to California Civil Code § 1788.103(b)(4); and an award of treble actual damages, but in no case less than one thousand five hundred dollars ($1,500) per plaintiff, per violation, pursuant to California Civil Code § 1788.103(c). Plaintiffs and class members also seek costs and attorney's fees under California Code of Civil Procedure § 1021.5 for prosecuting their claims under the UCL.

Additionally, Plaintiffs and class members seek an injunction (a) prohibiting MOHELA from demanding and/or collecting payments on any Group Discharge loans, including consolidated loans that consist in whole or in part of Group Discharge loans; (b) requiring MOHELA to correct its credit reporting for all Group Discharge loans within its portfolio to reflect that there is no balance due or owing on any of those loans, and/or that a discharge is pending; (c) requiring MOHELA to complete the refund process for all Group Discharge loans within its portfolio by a date certain; and (d) prohibiting MOHELA from further violating the Rosenthal Act, CCRAA, SBBR, and UCL, including a prohibition on making false and

misleading representations to borrowers, CRAs, and members of the public about the status of Group Discharge loans. Finally, Plaintiffs and class members seek restitution of property pursuant to California Civil Code § 1788.103(b)(3) and California Business and Professions Code § 17203.

*MOHELA's Statement*: MOHELA disputes that there is any basis to calculate damages because Plaintiffs have not suffered any actual harm that can be attributed MOHELA's actions or inactions.

## 12.    Settlement and ADR

The Parties mediated this case on September 17, 2025. Since then, the parties have had some further settlement discussions.

## 13.    Other References

The Parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## 14.    Narrowing of Issues

*Plaintiff's Statement:* MOHELA should not be permitted to file a second motion for summary judgment; the proposed arguments were, or could have been, raised in the first motion.

*MOHELA's Statement:* MOHELA believes that a second summary judgment motion, including but not limited to, the arguments of preemption, *see supra* § 3, and as to Plamondon and Gary on the ground that they do not appear in the Department's discharge instructions to MOHELA, will narrow issues in this case. Additionally, the recent OBBBA legislation affecting the Group discharge regulations and the preliminary injunction issued in *Career Colleges* may narrow the size of the putative class and could result in the dismissal of certain claims in this action.[3]

---

[3] *See supra* n.1.

**15.** **Expedited Trial Procedure**

The Parties do not believe that this case should be handled in accordance with General Order No. 65, Attachment A.

**16.** **Scheduling**

*Plaintiff's Statement:*

As previously stated, MOHELA should not be permitted to file a second motion for summary judgment. Plaintiffs propose proceeding directly to class certification, with Plaintiffs' deadline to file their motion in the fall and fact discovery closing after this Court rules on the motion, and will be prepared to discuss an appropriate briefing schedule at the Case Management Conference.

*MOHELA's Statement:*

MOHELA proposes the following case schedule:

| Event | Proposed Date |
| --- | --- |
| Close of fact discovery | July 15, 2026 |
| Deadline for MOHELA to file second motion for summary judgment | August 14, 2026 |
| Disclosure of class certification and merits expert witness summaries or reports | August 14, 2026 |
| Deadline to file opposition to MOHELA's second motion for summary judgment | September 14, 2026 |
| Disclosure of rebuttal class certification and merits expert witness summaries or reports | October 2, 2026 |
| Deadline to file reply in support of MOHELA's second motion for summary judgment | October 14, 2026 |
| Close of expert discovery | October 23, 2026 |
| Hearing on MOHELA's second motion for summary judgment | October 29, 2026 |
| Deadline to file motion for class certification | November 15, 2026 |
| Deadline to file opposition to motion for class certification | December 15, 2026 |
| Deadline to file reply in support of motion for class certification | January 15, 2027 |

| Hearing on class certification | January 28, 2027 |
|---|---|
| Deadline to file *Daubert* motions | March 1, 2027 |
| Deadline to file oppositions to *Daubert* motions | March 31, 2027 |
| Deadline to file replies in support of *Daubert* motions | April 14, 2027 |
| Hearing on *Daubert* and pre-trial motions | To be set by the Court |
| Trial date | To be set by the Court |

**17.    Trial**

The Parties have demanded a jury trial and anticipate that a trial will take seven to ten days.

**18.    Disclosure of Non-party Interested Entities or Persons**

MOHELA filed its Certification of Interested Entities or Persons Pursuant to Civil Local Rule 3-15 on November 8, 2024. ECF No. 3. Plaintiffs filed on November 20, 2024. ECF No. 16. As of this date, no Parties have any such interest to report.

**19.    Professional Conduct**

Counsel for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: March 20, 2026                     /s/ Rebecca Eisenbrey
                                          Rebecca C. Eisenbrey (Admitted pro hac vice)
                                          Noah Zinner, SBN 247581
                                          Rebecca C. Ellis (Admitted pro hac vice)
                                          PROJECT ON PREDATORY STUDENT LENDING
                                          769 Centre Street
                                          Jamaica Plain, MA 02130
                                          Phone: (617) 322-2808
                                          reisenbrey@ppsl.org
                                          nzinner@ppsl.org
                                          rellis@ppsl.org

                                          Daniel "Sparky" Abrahams, SBN 299193
                                          JUBILEE LEGAL
                                          300 E. Esplanade Drive, Suite 900

Oxnard, CA 93036
Phone: (805) 946-0386
sparky@jubilee.legal

Adam McNeile, SBN 280296
Malachi J. Haswell, SBN 307729
Kristin Kemnitzer, SBN 278946
KEMNITZER, BARRON & KRIEG, LLP
1120 Mar West., Ste. C2
Tiburon, CA 94920
Phone: (415) 632-1900
adam@kbklegal.com
kai@kbklegal.com
kristin@kbklegal.com

*Attorneys for Plaintiffs and the Proposed Class*

Dated: March 20, 2026

/s/ Jacquelyn Fradette
Jacquelyn Fradette (pro hac vice)
jfradette@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8822

Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Tony Mekari (SBN 347057)
tony.mekari@sidley.com
SIDLEY AUSTIN LLP
555 California Street Suite 2000
San Francisco, CA 94104
Telephone: +1 415 772 1200

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars 17th Floor
Los Angeles, CA 90067
Telephone: +1 310 595 9662

Anna Tutundjian (SBN 309969)
atutundjian@sidley.com
SIDLEY AUSTIN LLP

21

350 South Grand Avenue
Los Angeles, CA 90071
Telephone: + 1 213 896 6000
*Attorneys for Defendant Higher Education
Loan Authority of the State of Missouri*

Attorneys for Defendant

JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER
CASE NO.  3:24-CV-07850 VC

## LOCAL RULE 5-1 FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Rebecca Eisenbrey, attest that concurrence in the filing of this document has been obtained.

Date: March 20, 2026                    By:   /s/ Rebecca Eisenbrey


## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the Case Management Order and Schedule for this case, and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]


IT IS SO ORDERED.

 Dated:

_____
                                    VINCE CHHABRIA
                                    UNITED STATES DISTRICT JUDGE