United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JAIME MALDONADO, et al.,

Plaintiffs,

v.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI (MOHELA),

Defendant.

Case No. 24-cv-07850-VC (PHK)

**DISCOVERY ORDER**

Re: Dkts. 143, 144, 146

**INTRODUCTION**

All discovery matters in this case have been referred to the undersigned. [Dkts. 53, 55]. On March 27, 2026, the Court issued an Order resolving discovery disputes regarding the confidentiality of certain documents under the Protective Order. [Dkt. 135]. That Order directed the Parties to file a Joint Status Report regarding the documents impacted by that ruling and the Parties' attempts to reach agreement on de-designating confidentiality designations on the documents at issue. *Id.* The Parties filed that Statement on April 10, 2026. [Dkt. 143]. On the same day, the Parties filed the instant Joint Discovery Letter Brief. [Dkt. 144]. On April 17, 2026, the Court issued a Text Order regarding the de-designated documents disputes which directed the Parties to file a Further Joint Status Report on their ongoing efforts to resolve those disputes. [Dkt. 145]. On May 29, 2026, the Parties filed their Joint Statement in Response to Dkt. 145, which reported further progress in resolving the issues concerning the de-designated documents. [Dkt. 146].

The Court held a Discovery Hearing on this matter on July 2, 2026. [Dkt. 148]. Having considered the Joint Letter Brief and arguments of counsel at the hearing on the Joint Letter Brief,

the Court provided verbal rulings on the disputed issues at the July 2 hearing and directed the Parties to comply with those rulings without waiting for the issuance of this Order. The Court now issues this Order memorializing its verbal directives from the July 2 hearing (which are hereby incorporated by reference).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of

discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to

United States District Court
Northern District of California

consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

Oral argument regarding the Parties' Discovery Letter Brief [Dkt. 144] centered on four primary topics. At the hearing, the Court resolved these disputes by reaching compromises to which the Parties generally agreed, as memorialized below.

**Dispute re Social Security Numbers**

The first dispute centered around the production of data which included the borrowers' Social Security numbers. Plaintiffs sought fully unredacted versions of all Social Security numbers. Defendant opposed producing such personally identifying information, even under the Protective Order. Based on recognized privacy concerns of these third parties, the Court tentatively ruled that Defendant could produce data or materials with partially redacted versions of Social Security numbers. The Parties agreed to this compromise. Accordingly, the Court **ORDERS** that, to the extent Defendant produces data, documents, or materials setting forth borrowers' Social Security numbers, Defendant **SHALL** partially redact the Social Security numbers except for the last five digits.

**Dispute re Scope of Data Production and Process of Data Retrieval**

The second dispute concerned the scope of data to be produced regarding borrowers. Specifically, Plaintiffs seek data and information on borrowers nationwide, on the grounds that there must exist some number of borrowers who are current residents outside of California but were

California residents during the time period relevant for this dispute. Defendant argued that this case only involves California borrowers and thus Defendant should only be required to produce data on borrowers who are current California residents. At the hearing, Plaintiffs narrowed their request to focus on seeking data and information only on prior California residents, because Defendant had already produced data on all current California residents.

Additionally, Plaintiffs raised concerns regarding the transparency of Defendant's process for extracting account data for production. Plaintiffs faulted Defendant's lack of transparency in describing the process Defendant used to match borrower account information to a particular state of residence (which in turn is related to identifying borrowers who are or were California residents during the relevant time period). At the hearing, Defendant's counsel generally described the process by which Defendant manually checked borrower addresses against Social Security numbers and then extracted state residency data based on that process. However, Defendant's counsel admitted that a more fulsome discussion with their client and ESI team would be required to answer some of the questions raised at the hearing.

At the hearing, it became apparent that counsel failed to comply with Section F of the Court's Standing Discovery Order ("E-Discovery and ESI Order") which states in part that counsel "shall review, be familiar with, and, to the extent reasonably feasible, follow the Court's E-Discovery ('ESI') Guidelines." Those ESI Guidelines, in turn, specify that, at the required Fed. R. Civ. P. 26(f) meet and confer of counsel, the Parties should discuss a suggested checklist of issues relating to ESI including "[s]earch and production of ESI, such as any planned methods to identify discoverable ESI and filter out ESI that is not subject to discovery . . . ." *See* ESI Guideline 2.02. The Court's ESI Guidelines include a helpful checklist for counsel to use for the Rule 26(f) meet and confer regarding electronically stored information. *See* https://cand.uscourts.gov/sites/default/files/wp-content/uploads/forms/e-discovery-esi-guidelines/ESI_Checklist-12-1-2015.pdf (last visited July 31, 2026). Among the topics suggested for discussion in that ESI checklist are "[h]ow potentially discoverable information is stored," "[h]ow discoverable information can be collected from systems and media in which it is stored," and "[t]he search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and filter out ESI that is not

subject to discovery." *Id.* at Sections III ("Informal Discovery About Location and Types of Systems") and V ("Search"). The goal of these Guidelines is to avoid or at least reduce the need for formal discovery on ESI systems and search methodologies (which would be a form of discovery on discovery which is generally disfavored, *see Schulte v. LinkedIn Corp.*, 2026 WL 1905851, *3 (N.D. Cal. July 1, 2026)). The Guidelines encourage such informal discussions between counsel to help reduce disputes over assertions of work product, streamline the ESI discovery process, and thereby reduce overall costs for the Parties. *See* Guideline 2.03 ("The Court strongly encourages an informal discussion about the discovery of ESI (rather than deposition) at the earliest reasonable stage of the discovery process. . . . Such a discussion will help the parties be more efficient in framing and responding to ESI discovery issues, reduce costs, and assist the parties and the Court in the event of a dispute involving ESI issues.").

As noted, at the hearing counsel admitted that they did not engage in the types of discussions contemplated by the ESI Guidelines (as incorporated into the Court's Standing Discovery Order). Accordingly, the Court **ORDERED** Defendant's counsel to discuss with their client the process used for data extraction to identify borrowers relevant to this lawsuit and to submit a declaration attesting to this process by **July 24, 2026**. Relatedly, the Court **ORDERED** the Parties to meet and confer reasonably and collaboratively using the ESI Guidelines and Rule 26(f) ESI checklist by **July 24, 2026**. The Court **ORDERED** the Parties to submit a Joint Status Report regarding Defendant's production of data on former California resident borrowers by **July 27, 2026**. The Parties timely filed that Joint Status Report, and Defendant sought until August 13, 2026 for the Parties to meet and confer further to reach agreement on a mutually-agreeable and technically feasible timeline for MOGELA to develop, test, and execute the queries needed to identify borrowers who previously had California addresses on file during the relevant time period. [Dkt. 152]. The Court **GRANTED** that request by Text Order dated July 30, 2026, setting August 13, 2026 as the meet and confer deadline and August 14, 2026 as the deadline for a Further Joint Status Report. [Dkt. 153].

**<u>Dispute re Documents De-Designated as Confidential</u>**

As detailed above, with regard to the issue of de-designated documents, the Parties last reported on May 29, 2026 their progress in resolving the disputes. [Dkt. 146]. At the July 2 hearing,

United States District Court
Northern District of California

the Parties reported that Defendant was continuing its process of re-reviewing its produced documents to identify those documents which could be de-designated as Confidential under the Protective Order.

Based on representations of counsel on the time needed to complete the de-designation process, the Court **ORDERED** Defendant to finish its review of documents and materials previously produced for de-designation by **August 7, 2026** and to submit a Joint Status Report regarding the de-designation and production process by **August 10, 2026**. Counsel are expected to work cooperatively if a reasonable extension of the de-designation deadline is needed.

**Dispute re Subfiles**

As explained in the briefing, the Defendant and the Department of Education have a so-called "master discharge file" regarding borrowers, and also intermittently communicated so-called sub-files of this master file. The final dispute between the Parties concerns Plaintiffs' motion to compel Defendant to produce all subfiles in addition to larger master file already produced.

Based on the representations of counsel in the briefing and at the hearing, it became apparent that the subfiles are subsets of the same data from larger master files, which have already been produced. Accordingly, production of all the sub-files would not be proportional to the needs of the case, because the data contained in the sub-files would be duplicative of the master files from which they were derived. However, Plaintiffs argued that the dates these sub-files were communicated between Defendant and the Department of Education was separately relevant and proportional, because such dates related to the timing and timeliness of communications, including the timeliness of instructions to discharge loans. Defendant admitted that the production of the master files, alone, would not include the dates that the sub-files were subsequently communicated between MOHELA and the Department of Education.

The Parties agreed that rather than reproduce all of the data in the subfiles, Defendant's counsel would obtain from Defendant the dates that the subfiles were communicated between Defendant and the Department of Education as well as the dates that the corresponding larger master files or datasets for each of the sub-files were communicated. The Court **ORDERED** Defendant to provide Plaintiffs these dates of communication of sub-files and their corresponding master files by

United States District Court
Northern District of California

**July 27, 2026**.

**CONCLUSION**

For all the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the various requests for relief as to the discovery disputes raised in the briefing and discussed at the July 2 hearing.

This Order **RESOLVES** Dkts. 143, 144, and 146.

**IT IS SO ORDERED.**

Dated: August 3, 2026



PETER H. KANG
United States Magistrate Judge