PROJECT ON PREDATORY STUDENT LENDING
NOAH ZINNER Bar No. 247581
REBECCA C. EISENBREY Admitted *pro hac vice*
REBECCA C. ELLIS Admitted *pro hac vice*
769 Centre St.
Jamaica Plain, MA 02130
Telephone: (617) 390-2669
nzinner@ppsl.org

JUBILEE LEGAL
DANIEL “SPARKY” ABRAHAM Bar No. 299193
300 E. Esplanade Dr., Ste. 900
Oxnard, CA 93036
Telephone: (805) 946-0386
sparky@jubilee.legal

KEMNITZER, BARRON & KRIEG, LLP
ADAM J. MCNEILE Bar No. 280296
MALACHI J. HASWELL Bar No. 307729
1120 Mar West St., Ste. C2
Tiburon, CA 94920
Telephone: (415) 632-1900
adam@kbklegal.com
kai@kbklegal.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME MALDONADO, ANNA VARELA, ALMA GARY, and JEFF PLAMONDON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,<br><br>Defendants.<br>_______________________/ | **Case No. 3:24-cv-07850-VC**<br><br>**PLAINTIFFS’ OPPOSITION TO DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI’S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 8, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 4, 17th Floor<br><br>Assigned to Hon. Vince Chhabria |

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 1

**II. PRIOR SUMMARY JUDGMENT ORDER** .......... 3

**III. FACTUAL BACKGROUND** .......... 4

**A. MOHELA Received Notice of Ms. Gary and Mr. Plamondon's Discharge Approvals** .......... 4

1. MOHELA Received Notice of Ms. Gary's Group Discharge Approval .......... 5

2. MOHELA Received Notice of Mr. Plamondon's Group Discharge Approval .......... 7

**B. MOHELA Made Affirmative Misrepresentations to Plaintiffs and CRAs** .......... 8

1. Ms. Gary .......... 8

2. Mr. Plamondon .......... 9

3. Ms. Varela and Ms. Maldonado .......... 10

**IV. ARGUMENT** .......... 11

**A. Legal Standard for Summary Judgment and Partial Summary Judgment** .......... 11

**B. MOHELA Is Not Entitled to Summary Judgment on Ms. Gary's and Mr. Plamondon's Claims** .......... 12

1. MOHELA is Not Entitled to Summary Judgment on Ms. Gary's Claims .......... 12

2. MOHELA is Not Entitled to Summary Judgment on Mr. Plamondon's Claims .......... 14

**C. MOHELA Is Not Entitled to Summary Judgment on Preemption** .......... 15

1. Legal Framework for Preemption .......... 15

2. MOHELA Misconstrues Plaintiffs' Theory .......... 16

3. Plaintiffs' Claims Are Not Preempted by the HEA .......... 17

**V. CONCLUSION** .......... 25

# TABLE OF AUTHORITIES

**Cases**

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ... 15
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ... 11, 12
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ... 11
*Chae v. SLM Corp.*, 593 F.3d 936 (2010) ... passim
*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ... 15, 18, 24
*Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212 (E.D. Cal. 2019) ... 13, 14, 15, 17
*Hillsborough Cnty. v. Auto. Med. Labs., Inc.*, 471 U.S. 707 (1985) ... 24
*Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020) ... 18, 19, 20, 23, 24
*Mees v. Equifax Info. Servs., LLC*, 2019 WL 1856411 (N.D. Ga. Mar. 4, 2019) ... 13
*Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019) ... 18, 19, 20. 23, 24
*Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020) ... 18, 20, 23, 24
*Pharm. Rsch. & Manufacturers of Am. v. David*, 510 F.Supp.3d 891 (E.D. Cal. 2021) ... 12
*Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495 (1988) ... 16
*Rodriguez v. LVNV Funding, Inc.*, 106 Cal. App. 5th 717 (2024) ... 10
*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014) ... 13, 14
*Virginia Uranium, Inc. v. Warren*, 587 U.S. 761 (2019) ... 15, 16
*Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024) ... 24
*Zocco v. Nelnet, Inc.*, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ... 20

**Statutes**

15 U.S.C. § 1681, *et seq.* ... 18
15 U.S.C. § 1681s-2 ... 23
15 U.S.C. § 1692, *et seq.* ... 18
15 U.S.C. § 1692e ... 23
20 U.S.C. § 1083 ... 24
20 U.S.C. § 1098g ... 18, 19, 20
Cal. Civ. Code § 1785.1, *et seq.* ... 1
Cal. Civ. Code § 1788, *et seq.* ... 1
Cal. Civ. Code § 1788.100, *et seq.* ... 1
Fed. R. Civ. P. 56(a) ... 11

**Other Authorities**

Dep't of Education, Federal Preemption and Joint Federal-State Regulation and Oversight of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers, 86 Fed. Reg. 44277 (Aug. 12, 2021) ... 25

**Regulations**

34 C.F.R. § 682.208 ... 21

# I. INTRODUCTION

Plaintiffs Jaime Maldonado, Alma Gary, Anna Varela, and Jeff Plamondon ("Plaintiffs") allege that MOHELA violated California consumer protection laws by making inaccurate and misleading statements—to Plaintiffs and to credit reporting agencies—about their student loan obligations, and by unreasonably delaying the discharge of their student loan accounts.

It is undisputed that, years ago, the Department of Education ("the Department" or "ED"), Plaintiffs' creditor, made the final, noncontingent, irrevocable determination that Plaintiffs have no present or future obligation to repay the debts. ED relinquished its right to demand repayment, and extinguished Plaintiffs' legal obligation to repay, when it notified each of them individually that their relevant federal student loans were approved for discharge, that they did not need to take any action, and that they did not need to make further payments on their loans. For clarity, Plaintiffs refer to ED's determination as "approval of discharge" or "Group Discharge approval."

MOHELA has, at various points and in varied ways, acted inconsistently with the creditor's clear and unequivocal action. It is undisputed that MOHELA continued representing to all four Plaintiffs that they owed further payments after they received ED's notice and after MOHELA received general and specific notice that Plaintiffs' loans were approved for discharge. MOHELA also continued reporting on Plaintiffs' credit that they owed the full balance of the loans after ED told them the opposite. MOHELA's misrepresentations in its debt collection and credit reporting actions on Plaintiffs' student loans subject MOHELA to liability under the California Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*; the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1, *et seq.*; and the California Student Borrower Bill of Rights ("SBBR"), Cal. Civ. Code § 1788.100, *et seq.*

MOHELA moves for summary judgment on all of Ms. Gary's and Mr. Plamondon's claims, arguing that because their loans were not included in group files transmitted to MOHELA by the Department, MOHELA could not have "unlawfully refused to discharge [their] loans and unlawfully treated those loans as still on the books."[1] MOHELA's Second Motion for Summary

---

[1] The Court authorized this second round of summary judgment briefing for MOHELA to address two specific points: (1) preemption, and (2) "Plaintiffs' Gary and Plamondon's claims premised

Judgment ("Motion"), ECF No. 156, at 11. However, MOHELA's argument conflates MOHELA's obligation to timely process discharges with MOHELA's obligations to communicate accurate information to Plaintiffs and credit reporting agencies ("CRAs") about Plaintiffs' loans. Having received multiples notices—from both ED and Plaintiffs directly—that Mr. Plamondon and Ms. Gary's loans were approved for discharge, MOHELA violated California consumer protection laws by communicating false or misleading information about those loans to Plaintiffs and CRAs. MOHELA's Motion should therefore be denied as to Ms. Gary and Mr. Plamondon.

MOHELA also moves for summary judgment as to Plaintiffs' theory that MOHELA violated California law by sending them communications, and furnishing information about them to CRAs, that stated or implied that their loans would have to be repaid. MOHELA asserts that any claims premised on this theory are preempted by the Higher Education Act ("HEA"), which states that federal student loans are not subject to any state law disclosure requirements. This argument is also premised on a misstatement of Plaintiffs' claims and thus fails. Plaintiffs do not argue, and have not argued, that MOHELA violated the law by failing to make specific disclosures. Instead, Plaintiffs have consistently argued that MOHELA violated the law by making misrepresentations that payments on Group Discharge loans were or would become due when no further payments were owed—misrepresentations that may have been cured by disclosure that a discharge was processing. *See, e.g.*, Joint Case Management Statement and [Proposed] Order, ECF No. 133, at 6 ("MOHELA violated California law by sending communications to Plaintiffs and the putative class stating payment was due on Group Discharge loans after the Group Discharges were announced . . . and by reporting a balance due on Plaintiffs' Group Discharge loans without—at minimum—indicating that Plaintiffs were not required to repay them."). MOHELA also could have simply refrained from sending any communications that suggested that payment was due on Plaintiffs' loans. Because Plaintiffs' claims are based on MOHELA's misleading statements, not its failure to make any specific disclosures, MOHELA's preemption argument fails.

---

on the discharge files." Joint Case Management Schedule and Order, ECF No. 142, at 2. MOHELA's request for summary judgment as to *all* of Ms. Gary's and Mr. Plamondon's claims goes beyond the authorized scope of the motion.

## II. PRIOR SUMMARY JUDGMENT ORDER

The Court's prior Order on the parties' Cross-Motions for Summary Judgment ("MSJ Order") granted summary judgment to MOHELA "to the extent that the plaintiffs' claims are based on a theory that MOHELA was required to treat the plaintiffs' loans as discharged once the Department of Education publicly announced the discharges." ECF No. 124 at 1. MOHELA now seizes on the Court's language to argue, in essence, that it had *no* legal obligations to Plaintiffs prior to receiving discharge instructions from ED. This argument must be rejected.

At the time of the MSJ Order, Plaintiffs established a genuine dispute as to the factual question of whether ED ever provided MOHELA instructions to discharge Ms. Gary or Mr. Plamondon's loans. *See* MSJ Order at 1. Subsequent discovery shows that ED sent MOHELA instructions for Plaintiff Alma Gary on August 4, 2025, *see* Declaration of Malachi J. Haswell ("Haswell Decl.") Exhs. 7 (MOHELA_017636), 8 (MOHELA_017637),[2] and for Plaintiff Jeff Plamondon on April 22, 2026, *see* Declaration of Mell Brittain-Smith ("ED Decl."), ECF No. 155, at ¶ 62. Plaintiffs concede that MOHELA cannot be liable for failing to timely discharge Ms. Gary and Mr. Plamondon's loans prior to receiving directions from ED.

However, discovery revealed that MOHELA had repeated prior notice—from both ED and Plaintiffs—that Ms. Gary and Mr. Plamondon's federal student loans had been approved for discharge. MOHELA received notice that Ms. Gary's loans had been approved for discharge as early as March 28, 2023, when ED copied MOHELA on emails to other servicers with instructions to discharge. Mr. Plamondon notified MOHELA directly of ED's decision to discharge his loans on July 18, 2023. Further, in October 2023, ED instructed MOHELA *not to bill* Ms. Gary and Mr. Plamondon—because their loans were approved for Group Discharge.

MOHELA continued to send Ms. Gary and Mr. Plamondon communications stating or implying that they would have to make further payments on their Group Discharge loans, including sending billing statements to Ms. Gary *after* receiving her name on a "Do Not Bill" list from ED.

---

[2] Unless otherwise noted, citations to "Exh." refer to the exhibits attached to the Declaration of Malachi J. Haswell.

Whether these communications were unlawful is completely independent of MOHELA's obligations to "treat the loans as discharged." Because MOHELA had notice of Ms. Gary's and Mr. Plamondon's Group Discharge approvals, and because ED had specifically instructed MOHELA not to bill them, a reasonable jury could find MOHELA's communications to Ms. Gary and Mr. Plamondon to be false, misleading, deceptive, unfair, and/or abusive.

Likewise for credit reporting. MOHELA has a separate and independent duty under California law to report only complete, accurate, verifiable, and non-misleading information about Ms. Gary and Mr. Plamondon. Prior to receiving discharge instructions from the Department, MOHELA nonetheless had more than sufficient information to determine that Ms. Gary and Mr. Plamondon had no present or future obligation to repay their student loans. A reasonable jury could conclude that MOHELA's failure to alter its reporting in any way constituted a negligent or willful violation of its duty to report complete and non-misleading information.

In sum, MOHELA's obligations under California law arise independently of its instructions from ED, and it was required at all times to communicate only accurate information about Plaintiffs' federal student loans to Plaintiffs and CRAs.

## III. FACTUAL BACKGROUND

The evidentiary record establishes two issues relevant to the current motion. First, on multiple occasions, MOHELA received notice that Ms. Gary and Mr. Plamondon's student loans were approved for Group Discharge. California law forbids MOHELA from communicating inaccurate or misleading information about those loans, independent of when MOHELA received instructions from ED to process Ms. Gary and Mr. Plamondon's discharges. Second, MOHELA sent inaccurate or misleading information about Plaintiffs' loans to Plaintiffs and to CRAs, in violation of its obligations under California law.

### A. MOHELA Received Notice of Ms. Gary and Mr. Plamondon's Discharge Approvals

The Court is familiar with the Department's Group Discharge announcements and its instructions to federal student loan servicers, including through Change Request 6346 ("CR 6346"). *See* Plaintiffs' Opposition to MOHELA's First Motion for Summary Judgment, ECF No.

111, at 3–5. Plaintiffs therefore focus on facts specific to Ms. Gary and Mr. Plamondon.

1. MOHELA Received Notice of Ms. Gary's Group Discharge Approval

Plaintiff Alma Gary took out federal student loans to help her sons attend Westwood College ("Westwood") and the Art Institutes ("AI"). Declaration of Alma Gary ("Gary Decl") ¶ 2. In 2016, Ms. Gary consolidated all her federal student loans into a Direct Consolidation Loan, which is serviced by MOHELA. Exh. 9 (MOHELA_000045). ED informed Ms. Gary that her Westwood loans were approved for Group Discharge via letter dated March 29, 2023, and that her AI loans were approved for Group Discharge via letter dated May 1, 2024. Gary Decl., Exhs. A (PLS004534), B (PLS004540). At the same time, ED notified MOHELA that loans from Westwood and AI were approved for Group Discharge. *See* Exh. 1, Dec. 12, 2025 30(b)(6) Deposition of Shelley Lester ("Lester (Dec. 2025) Depo.") at 28:24–29:7. The Department told MOHELA that all borrowers with loans from these schools during defined periods would be eligible for the discharge. Exh. 10 (MOHELA_006098) at 2–3. MOHELA can query its database of borrowers by school code and enrollment dates, and so it could have identified borrowers within the scope of the Group Discharges. *See* Exh. 2, 30(b)(6) Deposition of Jim Melear ("Melear Depo.") at 47:9–48:16. If it had done so, it would have learned that Ms. Gary's loan was approved for Group Discharge. MOHELA never ran that query. Exh. 3, 30(b)(6) Deposition of LaQuan Anthony ("Anthony Depo.") at 81:5–9.

On November 30, 2022, the Department explained to MOHELA that, where a Group Discharge-approved borrower (like Ms. Gary) had Direct Loans and/or ED-held FFEL loans[3] that were consolidated into a Direct Consolidation Loan, ED would send Group Discharge instructions to the servicer that originated the consolidation loan, not to the current servicer of the consolidation

[3] Through the Federal Family Education Loan (FFEL) Program, which ended July 1, 2010, ED worked with private lenders to provide student loans guaranteed by the federal government. *See* U.S. Department of Education, Federal Student Aid, "What to Know About Federal Family Education Loan (FFEL) Program Loans," https://studentaid.gov/articles/what-to-know-about-ffel-loans/. While some FFEL loans are held by ED, most are held a commercial lender. *Id.* Under the William D. Ford Federal Direct Loan ("Direct Loan") Program, students and parents borrow directly from ED. *See* U.S. Department of Education, Federal Student Aid Knowledge Center: "Direct Loan," https://fsapartners.ed.gov/knowledge-center/library/program/Direct%20Loan.

loan. Exh. 11 (MOHELA_000003). MOHELA thus knew that instructions to discharge Ms. Gary's loans would be sent to Aidvantage, the originator of her consolidation loan. *See* Anthony Depo. at 163:10–17; Exh. 12, MOHELA's Responses and Objections to Plaintiffs' First Set of Requests for Admission ("MOHELA's RFA Responses"), at 3. Instructions to discharge Ms. Gary's underlying Westwood loans were sent to Aidvantage on March 28, 2023, and instructions to discharge Ms. Gary's underlying AI loan were sent to Aidvantage on May 3, 2024. ED Decl. ¶¶ 56, 58. Crucially, the Department routinely copied all servicers when it transmitted discharge instructions, so that each servicer could access the instructions sent to every other servicer. *See, e.g.*, Exhs. 29 (Aidvantage000001), 13 (MOHELA_000038); *see also* Melear Depo. at 58:1–7. MOHELA was copied on the email transmitting the AI Group Discharge list the Department sent to Aidvantage on May 3, 2024, which contained Ms. Gary's loan information.[4] Exh. 29 (Aidvantage000001). MOHELA could have used the lists sent to other servicers to identify borrowers, including Ms. Gary, whose discharge was in process with a prior servicer though it had not yet reached MOHELA. Indeed, that appears to be the Department's intention in copying all servicers. *See* Exh. 13. Had it done so, MOHELA would have seen that Ms. Gary's loan serviced by MOHELA was approved for discharge and that a discharge was processing. MOHELA did not do so.

On May 9, 2024, Aidvantage processed the Group Discharge of Ms. Gary's AI loan; it refunded her payments on May 5, 2025. Exh. 30 (Aidvantage000015). On May 12, 2025, Aidvantage notified the Department that processing was complete. Exh. 31 (Aidvantage000014). On August 4, 2025, the Department sent an adjustment request to MOHELA, instructing it to reduce the amount of Ms. Gary's consolidation loan accordingly. Exhs. 7 (MOHELA_017636), 8 (MOHELA_017637); *see also* ED Decl. ¶ 58. MOHELA did not connect the adjustment request with Ms. Gary's Group Discharge Approval. *See* Exh. 4, Rule 30(b)(6) Deposition of Korynn Seiss ("Seiss Depo.") at 44:2–8 (Q: "Did your team make any effort to identify post-consolidation adjustments that related to group discharge?" A: "The Department doesn't provide a reason, so

[4] MOHELA has not produced an email containing the March 28, 2023 discharge instructions for Ms. Gary's Westwood loans, but MOHELA has also not certified that its production is complete. *See* Haswell Decl. ¶ 6.

I'm not sure how that could have been accomplished without the reason.").

Ms. Gary also notified MOHELA of her Group Discharge approval multiple times, including on June 21, 2023, on July 10, 2023, and on July 31, 2023. Exh. 14 (MOHELA_001669) at rows 71, 62, 57. MOHELA was aware that some of its borrowers were approved for Group Discharge but not yet included in group lists directed to MOHELA; it could have checked the Westwood Group Discharge lists for other servicers that the Department provided on March 28, 2023, to see if Ms. Gary's loans were approved for discharge. It did not do so. Or MOHELA could have simply asked the Department if Ms. Gary's loans were approved for discharge, or if her loans were included in a Group Discharge list sent to another servicer. Anthony Depo. at 258:7–20, 259:17–260:11. It did not do so. Exh. 6, 30(b)(6) Deposition of Megan Bates ("Bates Depo.") at 129:12-20; Lester (Dec. 2025) Depo. at 145:4-9; Anthony Depo at 258:21–259:6. Indeed, no MOHELA designee could identify *any* investigation MOHELA performed in response to the plaintiffs' SBBR letters. *See* Bates Depo. at 141:4–19; Lester (Dec. 2025) Depo. at 151:19–154:5.

On October 26, 2023, the Department sent MOHELA and other servicers an email with the subject line "Borrower Defense Forbearance on Consolidation Loans (Group)." Exh. 15 (MOHELA_017573). The email stated that "borrowers *approved for Group borrower defense discharge* will . . . need to have their Direct Consolidation loan(s) placed into a forbearance if the underlying loans have not yet been discharged and the consolidation loan adjusted," and attached "a list of all active-balance Consolidation loans that do not have a discharge reported in NSLDS, or whose underlying loan has not yet been reported as discharged in NSLDS." *Id*. (emphasis added). Ms. Gary's consolidation loan was on that "Do Not Bill" list. Anthony Depo. at 295:9–23.

2. <u>MOHELA Received Notice of Mr. Plamondon's Group Discharge Approval</u>

Plaintiff Jeff Plamondon took out federal student loans to attend ITT Technical Institute ("ITT"). Declaration of Jeff Plamondon ("Plamondon Decl.") ¶ 2. All of Mr. Plamondon's loans were FFEL loans, and he consolidated them into two Direct Consolidation Loans in 2022. Exh. 16 (MOHELA_000066). Those consolidation loans are serviced by MOHELA. *Id*. The Department

informed Mr. Plamondon that most of his ITT loans[5] were approved for Group Discharge via letter dated November 17, 2022. Plamondon Decl., Exh. A (PLS000101). MOHELA received notice of the ITT Group Discharge on or around August 16, 2022. *See* Lester (Dec. 2025) Depo. at 28:24–29:7; Exh. 10 (MOHELA_006098) at 3. MOHELA could have, but did not, query its database of borrowers by school code and enrollment dates. Melear Depo. at 47:9–48:16; Anthony Depo. 81:5–9. If it had, it would have learned that Mr. Plamondon was approved for Group Discharge.

On July 18, 2023, Mr. Plamondon wrote to MOHELA that he had received notice his loans were eligible for discharge eight months prior, and asked about the status. Exh. 17 (MOHELA_001823). MOHELA could have asked the Department whether Mr. Plamondon's loans were subject to discharge. Anthony Depo. at 258:7–20, 259:17–260:11. It did not do so. Bates Depo. at 129:12–20; Lester (Dec. 2025) Depo. at 145:4–9; Anthony Depo. at 258:21–259:6.

On October 20, 2023, the Department sent MOHELA a "Do Not Bill" list that included Mr. Plamondon. ED Decl. ¶ 61.[6] MOHELA understood these "Do Not Bill" lists to consist of borrowers whose loans were in the discharge process. Melear Depo. at 118:23–119:6 (Q: "Do you understand the 'Do Not Bill' list referenced in this e-mail to include borrowers who are eligible for discharge, whether that discharge was complete or in process? [Objection omitted] A. "I do. I understand that it references accounts identified in process for discharge.").

**B. MOHELA Made Affirmative Misrepresentations to Plaintiffs and CRAs**

MOHELA has misrepresented to Plaintiffs and to CRAs the status of Plaintiffs' federal student loans, both before and after receiving discharge instructions from the Department.

1. <u>Ms. Gary</u>

Despite having ample constructive and actual notice of Ms. Gary's Group Discharge approval, MOHELA sent her bills in December 2023, Lester (Dec. 2025) Depo. at 235:16–236:4,

---

[5] Mr. Plamondon attended ITT from 2002 to 2004 and again from 2006 to 2008; only the loans from his second period of attendance were covered by the ITT Group Discharge. *See* Plamondon Decl., Exh. A (PLS000101) (ITT Group Discharge covers "all outstanding loans for attendance at ITT Technical Institute that first began from January 1, 2025 through closure in September 2016").

[6] Although MOHELA's Memorandum quotes this paragraph repeatedly, all of its quotations omit the final sentence about the "Do Not Bill" list. *See, e.g.*, Motion at 9, 11.

and January 2024, *id.* at 237:17–238:6. A forbearance was not put on her account until, at the earliest, February 2024. Exh. 18 (MOHELA_001565) at 1, 4 (letter dated February 9, 2024, stating that a forbearance was placed on Ms. Gary's account but listing the forbearance as beginning September 1, 2023, and ending October 31, 2023). The forbearance notice stated, "This message, from a debt collector, is an attempt to collect a debt," *id.* at 1, and included a "Current Principal Balance" of $154,673.52. MOHELA was under no obligation to send the December 2023 or January 2024 billing statements—indeed, the Department had specifically instructed it not to—or to include the "Current Principal Balance" in her forbearance notice. MOHELA sent all three communications without any acknowledgement that her loans were approved for discharge.

In May 2024, Ms. Gary sent MOHELA a letter explaining that her loans were approved for Group Discharge and that its continued communications to her and to credit reporting agencies that she owed the full balance were inaccurate and misleading. Gary Decl., Exh. C (PLS004595). She attached the notices she had gotten from the Department. Gary Decl. ¶ 7. Upon receiving the letter, MOHELA did not check the other servicer discharge lists or check with the Department—indeed, MOHELA could not identify any steps it took to research Ms. Gary's claims. Lester (Dec. 2025) Depo. at 245:11–17. Instead, it simply ignored Ms. Gary's letter. Gary Decl. ¶ 7. To this day, MOHELA continues reporting to credit reporting agencies that Ms. Gary owes over $160,000 on her consolidation loan as if there were no approved discharge. Gary Decl. ¶ 11, Exhs. E, F.

In January 2025, Ms. Gary received correspondence from the Department confirming that its discharge notice meant *no further payments were due*: "ED's prior determination was that the loans described above are not enforceable and that you are *no longer obligated to repay them*. As a result, ED will not seek to enforce them, and any future attempts to collect on or enforce your repayment obligations are without legal basis." Gary Decl., Exh. D (PLS004709). This confirms Plaintiffs' (and ED's) position that Group Discharge loans were not subject to collection from the time ED determined that the loans were unenforceable and informed Plaintiffs of the same.

2. <u>Mr. Plamondon</u>

On August 24, 2023, MOHELA placed Mr. Plamondon into a forbearance with an end date

of January 1, 2040. Exh. 19 (MOHELA_002456). No payments are due during forbearance. *See, e.g.*, Exh. 5, July 22, 2026, 30(b)(6) Deposition of Shelley Lester ("Lester (July 2026) Depo.") at 92:4–7 ("[A] forbearance being placed on the account is the way to indicate that a payment is not due"). Less than a week later, MOHELA sent Mr. Plamondon a letter stating that a payment of $165.81 was due on October 18, 2023.[7] Exh. 20 (MOHELA_001710). Around the same time, MOHELA sent Mr. Plamondon a separate letter saying his monthly payments would be $232.89 and the first one was due on September 18, 2023. Exh. 21 (MOHELA_001730). Notably, this second letter was developed by MOHELA, not by the Department. Lester (July 2026) Depo. at 62:25–63:1. MOHELA has acknowledged that this template, which told borrowers they were required to make a payment of a specific amount on a specific date, was a mass communication that included borrowers on forbearance. *Id.* at 65:24–66:2.

In May 2024, Mr. Plamondon sent MOHELA a letter explaining that his loans were approved by Group Discharge and that its continued communications to him and to CRAs that he owed the full balance was inaccurate and misleading. Plamondon Decl., Exh. C (PLS000518). He attached the notice he received from the Department. *Id.* MOHELA could not confirm that it took reasonable steps to investigate Mr. Plamondon's claim, such as checking with ED or the other servicer discharge lists. Bates Depo. 133:3–141:19. MOHELA did not provide a substantive response, but only stated that it had "not received any notice of discharge from FSA." Plamondon Decl. ¶ 5, Exh. D. Until April 2026, MOHELA continued reporting that Mr. Plamondon owed a balance of approximately $38,000 as if there were no approved discharge. *Id.* ¶ 13, Exh. F.

3. <u>Ms. Varela and Ms. Maldonado</u>

The Court already found that MOHELA made affirmative misrepresentations to Ms. Maldonado and Ms. Varela in violation of the SBBR and the UCL. MSJ Order at 3–4. These

[7] This letter contains an asterisk with the statement, "If you are currently on a deferment or forbearance, repayment of your loan(s) will occur after your deferment or forbearance ends." Exh. 20. However, the entire context of the communication suggests that Mr. Plamondon would have to begin making payments, particularly as it does not confirm that Mr. Plamondon was currently on a forbearance. *See Rodriguez v. LVNV Funding, Inc.*, 106 Cal. App. 5th 717, 727–29 (2024) (applying the "least sophisticated consumer" standard to Rosenthal Act claims).

included sending Ms. Varela demands for payment nearly a year after receiving instructions to discharge her loans and otherwise misrepresenting the status of her loans. *Id.* at 3; *see* Exhs. 22 (MOHELA_002305) (Feb. 15, 2024, billing statement), 23 (MOHELA_001841) (March 21, 2024, letter stating Ms. Varela's loans were placed on a "delinquency forbearance"), 24 (MOHELA_002226) (March 28, 2024, billing statement). The Court also found that MOHELA violated the SBBR and UCL as to Ms. Maldonado "by making misrepresentations about the status of her loans after receiving discharge instructions." MSJ Order at 4. These misrepresentations include MOHELA falsely telling Ms. Maldonado that it had not yet received approval from the Department to discharge Ms. Maldonado's loans, when in fact it had. *Id.*; *see* Exhs. 25 (MOHELA_001451), 26 (MOHELA_001214).

MOHELA also made affirmative misrepresentations to CRAs about Ms. Maldonado and Ms. Varela's loans. MOHELA continued reporting that Ms. Maldonado was liable for the entire balance of her loans for more than two years after receiving instructions to discharge the loans and remove the credit reporting. Exh. 27; *see* Melear Depo. at 204:13–207:11 (the code DA on an AUD form means "delete account"). MOHELA continued reporting that Ms. Varela was liable for the entire balance of her loans for more than a year after receiving instructions to discharge the loans and remove the credit reporting. Exh. 28.

## IV. ARGUMENT

### A. Legal Standard for Summary Judgment and Partial Summary Judgment

A court may grant summary judgment or partial summary judgment only if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its initial

responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist." *Pharm. Rsch. & Manufacturers of Am. v. David*, 510 F.Supp.3d 891, 896 (E.D. Cal. 2021). A genuine issue exists if "a jury could reasonably find for either the plaintiff or defendant" on that issue. *Anderson*, 477 U.S. at 255.

### B. MOHELA Is Not Entitled to Summary Judgment on Ms. Gary's and Mr. Plamondon's Claims

The Court previously held that MOHELA "had no obligation to treat the plaintiffs' loans as discharged" prior to receiving notice from the Department that the loans should be discharged. MSJ Order at 1–2. As Plaintiffs understand the Court's language, that means that until MOHELA received discharge instructions for Plaintiffs, MOHELA was not required to reduce the loan balances within its internal system or permanently delete associated credit reporting, and cannot be liable for failing to do so or for unreasonable delay in doing so. *See id*. Plaintiffs concede that MOHELA did not have an obligation to discharge their loans or delete Plaintiffs' credit tradelines prior to receiving explicit discharge instructions from the Department.

However, even before MOHELA received specific instructions to discharge or reduce the balance of Ms. Gary's and Mr. Plamondon's loans, it was obligated to, at minimum, communicate accurate information about Ms. Gary's and Mr. Plamondon's loans to Plaintiffs and to CRAs. MOHELA had ample notice—from ED and from Plaintiffs themselves—that Plaintiffs' loans were approved for discharge. Thus, by continuing to represent that Ms. Gary and Mr. Plamondon did or would owe money on those loans, MOHELA violated the Rosenthal Act, CCRAA, and SBBR, as well as the UCL's prohibition on unlawful, unfair, and fraudulent practices.

#### 1. MOHELA is Not Entitled to Summary Judgment on Ms. Gary's Claims

As explained in detail above, the Department repeatedly sent MOHELA information regarding Ms. Gary's Group Discharge approval. On October 26, 2023, the Department sent MOHELA a "Do Not Bill" list that consisted of borrowers whose Group Discharges had not processed, including Ms. Gary. Exh. 15 (MOHELA_017573); Anthony Depo. at 295:9–23. The Department sent servicers a Group Discharge list containing Ms. Gary's Westwood loans on March 29, 2023, and a Group Discharge list containing Ms. Gary's AI loan on May 3, 2024;

MOHELA had access to at least the second of these, if not both. *See* Exh. 29 (Aidvantage000001); *see also supra* n.4. Ms. Gary also informed MOHELA of her Group Discharge approval multiple times, beginning in June 2023. Exh. 14 (MOHELA_001669) at rows 71, 62, 57.

Nonetheless, MOHELA sent Ms. Gary correspondence demanding payments in December 2023 and January 2024. Lester (Dec. 2025) Depo. at 235:16–236:4; 237:17–238:6. A reasonable jury could conclude that those notices violated the Rosenthal Act and/or the SBBR as false, deceptive, misleading, unfair, and/or abusive acts. *See, e.g.*, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (collection notices demanding payment on debt no longer due were "so plainly false and misleading" as to justify judgment as a matter of law).

Whether those notices were unlawful is separate from, and independent of, MOHELA's obligation to process Ms. Gary's discharge pursuant to CR 6346. That is, while Plaintiffs concede that MOHELA was not obligated to reduce Ms. Gary's balance pursuant to the Group Discharge process prior to receiving discharge instructions from the Department, MOHELA's communications to Ms. Gary still misrepresented her obligations in direct contravention of directions MOHELA *did* receive from the Department relating to Ms. Gary.

The same goes for credit reporting. Plaintiffs concede that MOHELA was under no obligation to delete its tradelines from Ms. Gary's credit reports pursuant to the Group Discharge process in CR 6346 before receiving explicit discharge instructions. That does not mean it was lawful for MOHELA to report the entire balance as if it were a complete, accurate, verifiable, and non-misleading statement of Ms. Gary's actual obligation after it was put on notice that her loans were approved for Group Discharge.[8] ED informed MOHELA that Ms. Gary's loans were approved for Group Discharge. Exh. 15 (MOHELA_017573); Anthony Depo. at 295:9–23; Exh. 29 (Aidvantage000001). Despite MOHELA's awareness that the outstanding loan balance it was

[8] *See, e.g.*, *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212, 1216 (E.D. Cal. 2019) (holding inclusion of historical payment information after bankruptcy discharge, while not patently inaccurate, could create the misleading impression that further payments would be due; *cf. Mees v. Equifax Info. Servs., LLC*, 2019 WL 1856411, at *6 (N.D. Ga. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019) (holding historical payment information did not create misleading impression where account reported as closed with $0 balance).

reporting to credit reporting agencies was uncertain at best, and inaccurate at worst, MOHELA did nothing to investigate, and continued reporting Ms. Gary's loans as if it had no idea that her Group Discharge was processing. Gary Decl. ¶ 11; Exh. E (PLS004759) at 28, F. A reasonable jury could conclude that MOHELA's continued reporting of the full balance due on loans approved for Group Discharge was inaccurate and/or misleading, and that MOHELA's continuing that reporting in the face of multiple notices that discharge was still processing, without taking a single step to investigate, constitutes negligence or willfulness. *See Galea*, 388 F. Supp. 3d at 1216.

2. MOHELA is Not Entitled to Summary Judgment on Mr. Plamondon's Claims

The Department, the entity to whom the loans are owed, told Mr. Plamondon on November 17, 2022, that he did not have to repay the loans that were approved for Group Discharge. Plamondon Decl., Exh. A (PLS000101); *id.*, Exh. E (PLS005260) ("ED's prior determination was that the loans described above are not enforceable and that you are no longer obligated to repay them. As a result, ED will not seek to enforce them, and *any future attempts to collect on or enforce your repayment obligations are without legal basis*.") (emphasis added).

MOHELA then placed Mr. Plamondon into a forbearance, meaning no payments were required, and then almost immediately sent him two communications announcing that two different monthly payment amounts would come due on two different dates. Exh. 20 (MOHELA_001710); Exh. 21 (MOHELA_001730). Although MOHELA cannot be liable for failing to discharge Mr. Plamondon's loans prior to receiving instructions to do so, a reasonable jury could still find that MOHELA violated the Rosenthal Act and the SBBR by sending him communications seeking payments he had no obligation to pay. *See Russell*, 763 F.3d at 395.

Further, although MOHELA claims that the April 22, 2026, discharge instructions are the only instructions it received from the Department regarding Mr. Plamondon's Group Discharge approval, Motion at 11, it is wrong: on October 20, 2023, the Department sent MOHELA a "Do Not Bill" list that included Mr. Plamondon, ED Decl. ¶ 61, which MOHELA understood to mean that his loans were in the discharge process, Melear Depo. at 118:23–119:6. At least from date, MOHELA had received clear information from the Department confirming that Mr. Plamondon

was approved for Group Discharge and that his discharge was processing, and thus that the balance it was reporting to credit reporting agencies as outstanding was not complete or accurate.

Thus, even before MOHELA received explicit discharge instructions from ED, it was not lawful for MOHELA to report the entire balance as if it was a complete, accurate, verifiable, and non-misleading statement of Mr. Plamondon's actual status reflecting his creditworthiness after it was put on notice that Mr. Plamondon's loans were approved for Group Discharge. Yet MOHELA continued reporting Mr. Plamondon's loans as if it had no idea that his Group Discharge was processing. Plamondon Decl. ¶ 13; Exh. F (PLS000786) at 21. A reasonable jury could conclude that MOHELA's continued reporting of the full balance due on loans approved for Group Discharge was inaccurate and/or misleading, and that MOHELA's continuing that reporting in the face of multiple notices that discharge was still processing, without taking a single step to investigate, constitutes negligence or willfulness. *See Galea*, 388 F. Supp. 3d at 1216.

**C. MOHELA Is Not Entitled to Summary Judgment on Preemption**

1. Legal Framework for Preemption

Federal preemption arises under the Supremacy Clause of the U.S. Constitution. *See* U.S. Const. Art. VI, cl. 2. A preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by [federal law] unless that is the clear and manifest purpose of Congress." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (cleaned up) (citation omitted). "Contract and consumer protection laws have traditionally been in state law enforcement hands." *Chae v. SLM Corp.*, 593 F.3d 936, 944 (2010). Where Congress legislates in fields traditionally regulated by state power, the presumption against preemption "applies with particular force." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008).

Although these categories are not "rigidly distinct," courts have generally recognized three categories of preemption: (1) express preemption, (2) conflict preemption, and (3) field preemption.[9] *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). To prevail on a

[9] Field preemption is not at issue in this motion as it is well-established that "field preemption does not apply to the HEA." *Chae*, 593 F.3d at 941–42.

preemption argument, a litigant must identify the particular "constitutional text or a federal statute" that supports preemption; "[t]here is no federal pre-emption *in vacuo*." *Puerto Rico Dep't of Consumer Affs. v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988). A party may not prevail on a preemption argument merely by "[i]nvoking some brooding federal interest or appealing to a judicial policy preference." *Virginia Uranium*, 587 U.S. at 767.

2. <u>MOHELA Misconstrues Plaintiffs' Theory</u>

MOHELA asserts that Plaintiffs raised a new theory for the first time at the first summary judgment hearing: namely, that MOHELA was required to make specific disclosures in its communications with borrowers and CRAs. *See* Motion at 13. That is not and has never been Plaintiffs' theory. Instead, Plaintiffs allege that MOHELA sent misleading communications to Group Discharge borrowers that misrepresented that their loans were due and owing. *See, e.g.*, Compl. ¶¶8–9, 52, 63, 74, 76, 79, 88, 90, 98, 103, 113, 130, 158–59. Plaintiffs further allege that MOHELA continued to report Plaintiffs' and class members' Group Discharge loans to CRAs as if they were due and owing, even though class members were not obligated to make any further payments on the loans. *See, e.g.*, Compl. ¶¶ 8, 11–12, 51, 64, 77, 91, 101, 140–141, 158–59. Thus, Plaintiffs assert that MOHELA affirmatively misrepresented the status of loans subject to Group Discharge in its communications with class members and CRAs. Plaintiffs do not contend that MOHELA was required to make any specific disclosures, only that MOHELA's communications with borrowers and CRAs were misleading and inaccurate to the extent they stated or implied Group Discharge borrowers would have to make further payments on their Group Discharge loans.

MOHELA points to examples Plaintiffs have provided explaining potential ways MOHELA could have accurately communicated with Group Discharge borrowers and CRAs regarding Group Discharge loans. *See* March 5, 2026, Hearing Transcript ("Tr.") at 11:11–23 (raising the possibility of MOHELA making some kind of notation on reports to CRAs), 12:17–13:5 (noting that billing statements sent to Plaintiffs did not clarify that no payments are due). However, as Plaintiffs explained, the crux of their claim is *not* that MOHELA failed to make specific disclosures in its communications, but rather that the communications MOHELA did

make were misleading and/or inaccurate. *See, e.g.*, Tr. at 17:2–20 (MOHELA's continued billing and credit reporting of loans subject to discharge is misleading and inaccurate); 18:3–7 ("[O]nce the Department confirmed that the borrowers [no] longer had an obligation to make payments, any representation to the contrary was a misrepresentation under the relevant statutes."). Thus, Plaintiffs' acknowledgment that there were "many things [MOHELA] could have done" does not imply that MOHELA was required to make any specific disclosure. *See id*. at 21:25–22:4.

In sum, Plaintiffs contend that MOHELA's communications with Group Discharge borrowers and CRAs were inaccurate and/or misleading to the extent those communications stated or implied that the borrowers would have to pay loans that had been approved for Group Discharge. *See* Tr. at 19:9–18 (THE COURT: "You're also arguing that, even if the debts had not already been discharged, what was clear is that they couldn't be collected on, and so any communications that MOHELA made suggesting that the debts could be collected on were misleading and improper debt collection [practices]." MS. EISENBREY: "Right."). Whether MOHELA could have made different affirmative representations to borrowers and CRAs that would have rendered those communications accurate is not an element of Plaintiffs' debt collection and credit reporting claims. What is clear is that MOHELA's communications at least created a misleading impression that Group Discharge borrowers would have to make further payments on debts that ED had announced would be discharged in full. A reasonable juror could conclude that, given the information MOHELA had available at the time, those misleading communications to the CRAs were made negligently or willfully. *See Galea*, 388 F. Supp. 3d at 1216.

3. Plaintiffs' Claims Are Not Preempted by the HEA

MOHELA's preemption argument relies on its mistaken premise that Plaintiffs assert that MOHELA was required to make specific disclosures to Group Discharge borrowers and CRAs. For the reasons explained in detail above, that is not Plaintiffs' theory. Instead, Plaintiffs contend that California law prohibits MOHELA from communicating false or misleading information about Plaintiffs' and class members' accounts.

Affirmative misrepresentation claims are not expressly preempted by the HEA. *See Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639 (7th Cir. 2019); *Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908 (11th Cir. 2020) ("*Lawson*"); *Pennsylvania v. Navient Corp.*, 967 F.3d 273 (3d Cir. 2020) ("*Navient*"). The Ninth Circuit's decision in *Chae* is not to the contrary. *Chae* stands for the unremarkable proposition that state law cannot require disclosures that are at odds with the HEA's disclosure requirements. However, where a loan servicer makes affirmative misrepresentations about information that the servicer was not required to disclose in the first place, state law may prohibit such false and misleading statements. A prohibition on false and misleading communications does not conflict with any of MOHELA's obligations under federal law, and in fact such communications are independently prohibited by the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

Nor are Plaintiffs' claims preempted under the conflict preemption doctrine. The HEA expressly identifies which areas of state law are preempted—none of which is implicated here—and courts should not presume a broader preemptive effect than that which is explicitly stated by Congress. *Cipollone*, 505 U.S. at 517 ("Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.").

a. <u>There is No Express Preemption Because the HEA Does Not Preempt State Laws Prohibiting Affirmative Misrepresentations</u>

As laid out above and in the Complaint, Plaintiffs allege that MOHELA violated the Rosenthal Act, SBBR, and CCRAA by communicating inaccurate information to Group Discharge borrowers and CRAs about loans subject to Group Discharge. Specifically, MOHELA's communications represented that borrowers would have to make further payments on such loans when in fact no further payments were owed. MOHELA also reported balances to CRAs as outstanding even though Plaintiffs and class members did not owe a balance. MOHELA asserts that Plaintiffs' claims expressly conflict with 20 U.S.C. § 1098g, which states that covered loans "shall not be subject to any disclosure requirements of any State law." MOHELA's argument fails.

In deciding whether a federal statute expressly preempts state law, a court must "determine

the proper scope of an express preemption provision." *Chae*, 593 F.3d at 942. Section 1098g does not define the scope of "disclosure requirements." *See* 20 U.S.C. § 1098g. However, courts have interpreted that section in tandem with the HEA's express disclosure requirements. *See, e.g.*, *Nelson*, 928 F.3d at 647–48, *Lawson*, 955 F.3d at 917. Thus, Section 1098g "expressly preempts state laws requiring federal student loan servicers to make additional disclosures beyond what the HEA requires." *Lawson*, 955 F.3d at 916. However, it is another matter when a servicer affirmatively misrepresents information that it was not required to provide in the first place.

In *Nelson*, the Seventh Circuit distinguished between "failure to disclose" claims and "affirmative misrepresentation" claims to find that the HEA does not preempt the latter. *See* 928 F.3d at 649. There, the plaintiff alleged that a student loan servicer (Great Lakes) violated Illinois law by making false or misleading statements in advising borrowers who were struggling to make payments. *Id.* at 641–42. Specifically, Great Lakes allegedly steered borrowers into forbearance rather than advising them about the availability of income-driven repayment plans, which may increase the overall amount of money that borrowers pay over the life of the loan. *Id.* at 644. The Seventh Circuit noted that while the HEA requires servicers to make specific disclosures, including disclosures relevant to borrowers struggling to repay their loans, the HEA does not require a servicer to hold itself out as an expert on repayment options or to advise borrowers to enter forbearance. *See id.* at 648–49. The court accordingly decided that "[i]mposing liability for those voluntary but deceptive statements does not impose additional 'disclosure requirements' on Great Lakes." *Id.* at 648–49. Because the plaintiff's complaint challenged "deceptive statements that Great Lakes chose to make voluntarily, not because federal law required them," *id.* at 649, the court held the plaintiff's state law claims were not expressly preempted by the HEA. *Id.* at 650.

Similarly, in *Lawson*, the plaintiffs alleged that Great Lakes affirmatively misrepresented to borrowers that they were on track to have their loans forgiven under the Public Service Loan Forgiveness ("PSLF") program, when in fact the plaintiffs' loans were not eligible for PSLF. *See* 955 F.3d at 911. In deciding that the plaintiffs' claims were not expressly preempted by the HEA, the Eleventh Circuit noted that the servicer's "voluntary, personalized, affirmative

misrepresentations in the form of advice about whether an individual borrower was on track to qualify for the PSLF Program was different in kind from any disclosure required by [the HEA]." *Id.* at 917. Thus, while state law could not require Great Lakes to make specific disclosures not already required by the HEA, it could prohibit Great Lakes from providing false information when it chose to provide borrowers with information that it was not required to provide. *Id.* at 917–18; *see also id.* at 917 ("[T]he precise language Congress used in § 1098g preempts only state law that imposes disclosure requirements; state law causes of action arising out of affirmative misrepresentations a servicer voluntarily made that did not concern the subject matter of required disclosures impose no 'disclosure requirements.'"). Following *Nelson* and *Lawson*, the Third Circuit also held that a servicer exceeded the HEA's disclosure requirements in "affirmatively representing that it would help borrowers make the 'right' decisions and 'minimize' their interest payments," which—if false—may violate state law. *See Navient*, 967 F.3d at 290–92.

Plaintiffs' allegations in the current case fall squarely in line with the allegations of affirmative misrepresentations found not preempted in *Nelson*, *Lawson*, and *Navient*. For example, MOHELA sent Ms. Varela and Ms. Gary billing statements after receiving notice from ED that those loans would not have to be repaid. As the Court recognized in the first summary judgment hearing, "If you send somebody a bill, that is inherently telling them that they have an obligation to make a payment." Tr. at 21:15–18. MOHELA also expressly misrepresented the status of Plaintiffs' loans in other communications, including by informing Plaintiffs that MOHELA had not received discharge instructions from ED when it had and stating that Plaintiffs would have to make further payments that they did not owe. MOHELA has not (and cannot) identify any HEA provisions that required MOHELA to make these voluntary and affirmative statements to Plaintiffs. Thus, the HEA does not preempt these affirmative misrepresentations. *See Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *7 (N.D. Cal. Jan. 29, 2026) (rejecting the theory that the defendant was required to use disclosures to comply with the plaintiffs' rights of privacy under the California Constitution, stating that disclosure is only "one avenue to comply" and the defendant's theory was "too attenuated to invoke express preemption").

MOHELA's position rests heavily on the reasoning in *Chae*, but MOHELA misconstrues the scope and analysis of that decision. In *Chae*, the plaintiffs challenged various practices by Sallie Mae as a loan servicer, including Sallie Mae's (1) method of calculating interest; (2) charging of late fees; and (3) setting an initial repayment date. *See* 593 F.3d at 940–41. Notably, the plaintiffs "[did] not contend that California law prevents Sallie Mae from employing any of the three loan-servicing practices at issue"; instead, the crux of the plaintiffs' claims was that Sallie Mae communicated with the plaintiffs in a misleading way about its practices. *See id.* at 942–43. In evaluating the specific claims at issue, the Ninth Circuit determined that the HEA required Sallie Mae to disclose its loan servicing practices and that the HEA already prohibited making misleading disclosures. *See id.* at 942–43. Thus, the court reasoned that a properly-disclosed practice "cannot simultaneously be misleading under state law, for state disclosure law is preempted by the federal statutory and regulatory scheme." *Id.* at 943. The court accordingly held that the challenged statements were subject to express preemption. *Id.*

In this case, unlike in *Chae*, Plaintiffs are challenging statements MOHELA made to borrowers and CRAs that MOHELA was not required to make under the HEA or any other authority. The HEA did not require MOHELA to send billing statements to Ms. Varela and Ms. Gary, and in fact, doing so violated ED's directions under CR 6346 and ED's explicit direction to cease billing Ms. Gary. MOHELA has identified nothing in the HEA that required MOHELA to make the other challenged statements at issue, such as informing Plaintiffs that they owed outstanding balances and would have to resume making payments. Nor has MOHELA identified any authority preventing it, for example, from suppressing credit tradelines altogether.[10] Bates Depo. at 63:15–64:21 (MOHELA has the technical ability to suppress credit tradelines); 64:5–

[10] MOHELA cites 34 C.F.R. § 682.208(b) for the proposition that it was required to continue reporting Plaintiffs' Group Discharge loans. However, that regulation specifically requires reporting the "outstanding balance" of federal student loans and "[i]nformation concerning the repayment status of the loan." *See* 34 C.F.R. § 682.208(b)(1)(ii). Plaintiffs are not required to make further payments on their loans. Thus, that regulation arguably does not require MOHELA to report outstanding balances for their Group Discharge loans. If anything, that section confirms that MOHELA should have accurately reported the "repayment status" of the loans—namely, that they would not have to be repaid.

64:10 (MOHELA suppresses tradelines in certain circumstances, such as upon receiving complaints of identity theft); 69:15–71:9, 250:9–18 (corporate designee unaware of any prohibition from ED on suppressing credit tradelines). Indeed, MOHELA has testified that reporting accurate, complete, and verifiable loan information on borrowers' credit is its own independent function, which the Department relies on MOHELA to complete. Melear Depo. at 264:7 – 265:11.[11] Further, though MOHELA relies on the 2025 Credit Reporting Resource Guide ("CRRG") to argue that it could not have at least added notations to Plaintiffs' credit tradelines, MOHELA's own evidence shows that federal student loan servicers may use the Special Comment Code "AU" when reporting a loan that is "paid in full for less than the full balance." *See* Bates Decl., Exh. AA. While Ms. Bates states that MOHELA "does not have the discretion to use special comment codes without the Department's instruction," she does not cite any authority supporting that statement. *See id.* ¶7. In any case, it is not Plaintiffs' or the Court's responsibility to determine how MOHELA *should* have communicated with CRAs, only that MOHELA's continued credit reporting on loans that had been approved for Group Discharge created the misleading impression that Plaintiffs would be required to pay loan balances that they, in fact, were not required to pay.

In sum, MOHELA has not identified any HEA provisions that required MOHELA to make the statements Plaintiffs now challenge. Thus, there is no conflict between the HEA and

---

[11] A: "After the appropriate investigation and research and account updates were done, yes, then we would update the credit report."
Q: "Would MOHELA need to communicate with the Department of Education [regarding] that change?" [Objection]
A: "No. That's an administrative function that the department expects its servicers to [perform] on its behalf."
Q: "The department expects the servicers to ensure that the balance is correctly portrayed on credit reports?"
A: "Absolutely, yes."
Q: "And that includes, by investigating borrower disputes and making sure the results of those investigations are reflected in the credit reports?" [Objection]
A: "Yes. FSA expects servicers to do that and MOHELA expects — requires that's what we do. I mean, FCRA requires that servicers perform updates, credit — credit dispute reviews, evaluations and make corrections for borrowers timely."
Q: "Right. I think the FCRA thing is accurate, complete and verifiable, right?"
A: "Yes."

MOHELA's obligations under California law. *Chae* is therefore inapplicable. *See Nelson*, 928 F.3d at 650 (distinguishing *Chae* on the basis that the *Chae* defendant "was required to disclose th[e] [challenged] information by federal law and had disclosed it in ways permitted by federal law"); *Lawson*, 955 F.3d at 919 (distinguishing *Chae* on the basis that it addressed challenges to "how the servicer communicated information that the HEA required it to disclose").

Moreover, *Chae* raised the concern that imposing state law disclosure requirements on federal student loan servicers risked undermining the regulatory uniformity intended by Congress.[12] *See* 593 F.3d at 945 ("One need not have an advanced degree in risk management and financial practices to believe, as we have previously suggested, that exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." (cleaned up) (citation omitted)). However, prohibitions on false and misleading statements raise no such concerns. *See Navient*, 967 F.3d at 293 ("Allegations of affirmative misrepresentations and misconduct stand in stark contrast" to conflicting disclosure requirements). In fact, the federal FDCPA prohibits the use of false and misleading representations in connection with debt collection. *See* 15 U.S.C. § 1692e. The FCRA prohibits a furnisher from reporting credit information that it knows or has reasonable cause to believe is inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1)(A). Thus, to the extent that the HEA has a purpose of promoting uniformity in federal student loan servicing, enforcing California's prohibitions on false and misleading debt collection communications and credit reports advances, rather than undermines, that goal.

Finally, ED approved the analysis in *Nelson*, *Lawson*, and *Navient*, stating that the HEA does not preempt state law claims based on affirmative misrepresentations. *See* 86 Fed. Reg. 44277, 44279 (Aug. 12, 2021) ("[T]he findings in Chae do not preclude State regulation of affirmative misrepresentation about information that the servicer was not required to disclose.").

---

[12] The more recent Circuit decisions have stated that uniformity as a goal of the HEA makes more sense in the context of the claims in *Chae* (setting late fees, repayment start dates, and interest calculations) than for claims based on affirmative misrepresentations. *See Nelson*, 928 F.3d at 651; *Lawson*, 955 F.3d at 922–23; *Navient*, 967 F.3d at 293. Thus, even if uniformity is a purpose of the HEA, Plaintiffs' claims do not conflict with that purpose. *See Lawson*, 955 F.3d at 922 ("Congress's interest in ensuring uniform disclosures would not be harmed by a prohibition on voluntary affirmative misrepresentations.").

ED found that, "except in the limited and specific instances set forth in the HEA itself, State measures to engage in oversight of Federal student loan servicers are not expressly preempted by the HEA." *Id.* Notably, the *Chae* court relied heavily on ED's interpretations and arguments in reaching its conclusions. *See* 593 F.3d at 947–48. ED's 2021 position statement is thus persuasive.

For these reasons, the HEA does not expressly preempt Plaintiffs' claims based on MOHELA's affirmative misrepresentations to Group Discharge borrowers and CRAs.

b. <u>There Is No Conflict Preemption Because Plaintiffs' Claims Fully Align with Federal Law Governing Debt Collection and Credit Reporting</u>

In addition to express preemption, a state law may be preempted "to the extent that it *actually* conflicts with federal law." *See Hillsborough Cnty. v. Auto. Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (emphasis added). An actual conflict arises either when (1) compliance with both the state and federal law is a "physical impossibility" or when (2) state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted). For the reasons laid out above, the HEA does not expressly preempt any of Plaintiffs' claims. Nor is there an actual conflict between Plaintiffs' claims and the HEA.

Conflict preemption does not apply in this case because the HEA expressly lists preempted activities, none of which is implicated here. *See* 20 U.S.C. § 1083. Under the doctrine of *expressio unius est exclusion alterius*, the inclusion of explicit requirements (such as the HEA's explicit disclosure requirements) implies the exclusion of other requirements. *See Nelson*, 928 F.3d at 650 ("Courts should enforce [the HEA's explicit preemption] provisions, but we should not add to them . . . ."); *Lawson*, 955 F.3d at 920 ("When Congress has explicitly addressed preemption in a statute, an implication arises that it did not intend to preempt other areas of state law."); *Navient*, 967 F.3d at 293 (same); *Cipollone*, 505 U.S. at 517 (same).

Indeed, courts have held that MOHELA can be liable for, e.g., reporting on an individual's credit a federal student loan balance that the person contends was the result of identity theft, notwithstanding the Department's position. *Walker v. Higher Educ. Loan Auth. of the State of Missouri*, 2024 WL 3568576 (E.D. Cal. July 26, 2024). Because the HEA neither requires nor permits MOHELA to report inaccurate or misleading information on credit reports, Plaintiffs'

counsel has not located any case that found that credit reporting claims are preempted by the HEA.

Again, *Chae* does not conflict with these decisions. The Ninth Circuit decided that conflict preemption applied in that case, largely based on its evaluation that the loan servicer's challenged practices were in fact allowed or required by federal law and regulations. *See* 593 F.3d at 947–49. The court found persuasive ED's arguments that conflicting state law about those practices would create an obstacle to the uniform administration of federal student loans. *See id.* As explained above, no such concerns arise for state laws prohibiting affirmative misrepresentations, which are already uniformly prohibited by federal law. Further, ED's most recent position statement on HEA preemption urges courts to implement their duty to "harmonize Federal and State power to the greatest extent they can do so." 86 Fed. Reg. 44277, 44279. ED also noted that "[t]he most recent courts to consider these issues under the rubric of conflict preemption have consistently determined that the HEA places no emphasis on maintaining uniformity in Federal student loan servicing and thus they have upheld State authority to root out fraud and affirmative misrepresentations in the Federal student aid program." *Id.* Thus, prohibiting MOHELA from making false or misleading statements in connection with its debt collection and credit reporting activities fully aligns with the purposes of the HEA. There is no actual conflict between Plaintiffs' claims and the HEA, and thus no conflict preemption.

For these reasons, the Court should deny MOHELA's motion for summary judgment on its preemption defense.

## V. CONCLUSION

For the reasons stated above, Plaintiffs request that the Court deny MOHELA's motion for partial summary judgment in its entirety.

Dated: August 21, 2026 KEMNITZER, BARRON & KRIEG, LLP

By: /s/ *Malachi J. Haswell*
Malachi J. Haswell
Adam McNeile
Kristin Kemnitzer

PROJECT ON PREDATORY STUDENT LENDING
Noah Zinner
Rebecca Eisenbrey
Rebecca Ellis

JUBILEE LEGAL
Daniel “Sparky” Abraham

*Attorneys for Plaintiffs and the Proposed Class*