# EXHIBIT 1

**In the Matter Of:**

*Maldonado v*

*Higher Education Loan Authority of the State of Missouri*

---

*Confidential - 30(b)(6)*

*SHELLEY LESTER*

*December 12, 2025*

---

LEXITAS™

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

-----------------------------------------

JAIME MALDONADO, ANNA VARELA, ALMA GARY and JEFF PLAMONDON, individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 3:24-CV-07850-VC

vs.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,

Defendants.

-----------------------------------------

* * *

*** CONFIDENTIAL ***

* * *

REMOTE 30(b)(6) VIDEO DEPOSITION OF

SHELLEY LESTER

Friday, December 12, 2025

10:04 a.m. (EST)

Reported by:

Jaclyn Urzia, RPR, CRR

Job No. 2025-1007245

December 12, 2025

10:04 a.m. (EST)

Remote Video 30(b)(6) Deposition of SHELLEY LESTER, held remotely via Zoom, before Jaclyn Urzia, a Registered Professional Reporter, Certified Stenographic Realtime Reporter and Notary Public.

REMOTE APPEARANCES:

Attorneys for Plaintiffs:
PROJECT ON PREDATORY STUDENT LENDING
769 Centre Street
Jamaica Plain, Massachusetts 02130
BY: REBECCA C. EISENBREY, ESQ.
-and-
JUBILEE LEGAL
300 East Esplanade Drive
Suite 900
Oxnard, California 93036
BY: DANIEL ABRAHAM, ESQ.
-and-
KEMNITZER BARRON & KREIG, LLP
1120 Mar West
Suite C2
Tiburon, California 94920
BY: MALACHI HASWELL, ESQ.

(Continued)

REMOTE APPEARANCES: (Continued)

Attorneys for Defendants:
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, California 90071
BY: ANNA TUTUNDJIAN, ESQ.
TONY S. MEKARI, ESQ.
JAZMYNE DENMAN, ESQ.

A L S O P R E S E N T:
JOHN VEAL, Lexitas Videographer
MANDY TISDALE, Lexitas Videographer
MARK RASCHESS, MOHELA In-house Counsel

---------------- I N D E X ----------------


| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| SHELLEY LESTER | MS. HASWELL | 11 |


----------------- EXHIBITS -----------------


| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 204 | Notice of 30(b)(6) Deposition, Attachment A | 21 |
| Exhibit 98 | Specialty Claims and Discharge Process Flows, Bates MOHELA_005115 | 72 |
| Exhibit 101 | Borrower Defense, April 3, 2023, Bates MOHELA_005832 | 81 |
| Exhibit 105 | Document & Disposition a Call, beginning Bates MOHELA_005872 | 83 |
| Exhibit 108 | Borrower Defense to Repayment, beginning Bates MOHELA_006098 | 87 |
| Exhibit 124 | Screenshots, beginning Bates MOHELA_015560 | 88 |


(Continued)

---------------- EXHIBITS ----------------


| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 121 | CLX-Deferment & Forbearance History, beginning Bates MOHELA_002454 | 94 |
| Exhibit 122 | CLX-IDQ, Bates MOHELA_002456 | 97 |
| Exhibit 126 | Query, beginning Bates PLS000019 | 99 |
| Exhibit 117 | Notification, beginning Bates MOHELA_001710 | 110 |
| Exhibit 127 | September 4, 2023 email, beginning Bates PLS000124 | 118 |
| Exhibit 118 | Repayment Schedule Disclosure Statement, beginning Bates MOHELA_001730 | 122 |
| Exhibit 116 | Notification, beginning Bates MOHELA_001705 | 126 |
| Exhibit 128 | Loan Verification, Bates PLS000403 | 136 |
| Exhibit 130 | Response, beginning Bates PLS000417 | 148 |


(Continued)

---------------- EXHIBITS ----------------

| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 119 | Cover sheet, Bates MOHELA_001800 | 154 |
| Exhibit 140 | Screenshot, Bates MOHELA_001459 | 171 |
| Exhibit 132 | Log, Bates MOHELA_001343 | 173 |
| Exhibit 133 | Call log, Bates MOHELA_001344 | 177 |
| Exhibit 150 | Response, beginning Bates PLS001309 | 181 |
| Exhibit 86 | Notification, beginning Bates MOHELA_001460 | 183 |
| Exhibit 151 | Notification, beginning Bates PLA001381 | 187 |
| Exhibit 152 | Letter, beginning Bates PLS001390 | 189 |
| Exhibit 167 | Excel Spreadsheet, Bates MOHELA_002075 | 192 |
| Exhibit 156 | CORR History, Bates MOHELA_002010 | 198 |
| Exhibit 161 | Bill, beginning Bates MOHELA_002305 | 199 |

(Continued)

---------------- EXHIBITS ----------------


| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 157 | Notification, Bates MOHELA_002225 | 203 |
| Exhibit 158 | Notification, Bates MOHELA_002226 | 203 |
| Exhibit 52 | May 6, 2024 letter, beginning Bates PLS002026 | 210 |
| Exhibit 94 | Communication, beginning Bates PLS002030 | 201 |
| Exhibit 166 | Notification, beginning Bates MOHELA_002360 | 217 |
| Exhibit 109 | Notification, beginning Bates MOHELA_006179 | 220 |
| Exhibit 170 | Call transaction | 224 |
| Exhibit 180 | Bill, beginning Bates MOHELA_001605 | 230 |
| Exhibit 177 | Bill, Bates MOHELA_001593 | 233 |
| Exhibit 176 | Bill, beginning Bates MOHELA_001591 | 234 |
| Exhibit 175 | Bill, beginning Bates MOHELA_001585 | 235 |


(Continued)

---------------- EXHIBITS ----------------

| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 174 | Bill, beginning Bates MOHELA_001574 | 237 |
| Exhibit 171 | Call notations, Bates MOHELA_001560 | 239 |
| Exhibit 54 | May 13, 2024 letter, beginning Bates PLS004595 | 243 |
| Exhibit 205 | Email chain, Bates MOHELA_017581 | 246 |
| Exhibit 206 | Email, Bates MOHELA_017583 | 249 |
| Exhibit 207 | May 6, 2024 letter, beginning Bates MOHELA_017584 | 250 |
| Exhibit 208 | Correspondence, beginning Bates MOHELA_017596 | 251 |
| Exhibit 209 | Email chain, Bates MOHELA_017608 | 258 |
| Exhibit 210 | Email chain, Bates MOHELA_017609 | 261 |
| Exhibit 211 | Email chain, beginning Bates MOHELA_017611 | 264 |

(Continued)

---------------- EXHIBITS ----------------

| EXHIBIT | | FOR ID. |
|---|---|---|
| (PROVIDED ELECTRONICALLY TO REPORTER) | | |
| Exhibit 212 | Email chain, beginning Bates MOHELA_017613 | 265 |

- - -

(REPORTER'S NOTE: All quotations from exhibits are reflected in the manner in which they were read into the record and do not necessarily denote an exact quote from the document.)

THE VIDEOGRAPHER: We're now on the record. My name is John Veal. I'm the remote videographer with Lexitas.

Today's date is December 12, 2025, and the time is 10:04 a.m. Eastern.

This deposition is being held remotely in the matter of Jaime Maldonado, Anna Varela, Alma Gary and Jeff Plamondon v. Higher Education Loan Authority of State of Missouri.

The deponent is Shelley Lester.

And the court reporter is Jackie Urzia. She will now swear in the witness.

SHELLEY LESTER,

called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MS. HASWELL:

Q. Good morning, Ms. Lester.

Could you please state and spell your name for the record?

A. Shelley Lester. S-H-E-L-L-E-Y, L-E-S-T-E-R.

Q. Thank you.

Have you ever had your deposition taken before?

A. No.

Q. Are you familiar with how a deposition works?

A. Yes.

Q. As you were just sworn in, do you understand that your responses are made under penalty of perjury, just as if you were testifying in court?

A. Yes.

Q. This particular deposition is a deposition taken pursuant to Federal Rule of Civil Procedure 30(b)(6).

Are you familiar with what that means?

A. Yes.

Q. So you understand that this is a deposition of the Higher Education Loan Authority of Missouri, all known as MOHELA, and that the answers you give on the subjects that were noticed will be

be discharged from?

A. FSA notified MOHELA about various schools that would be receiving borrower defense group discharge and typically that came in the form of, you know, heads-up notifications from FSA to our Contact Center or -- it wasn't embedded within the change request what schools would be applied. It was -- the requirements were really that, as FSA had group discharges, that these requirements would be applied and FSA would provide that information at the time in future processing.

Q. Okay. Thank you.

Was MOHELA aware that the Department of Education made public announcements regarding group discharges?

A. Yes.

Q. Were there discussions in MOHELA at that time relating to those public announcements?

MS. TUTUNDJIAN: Objection. Form.

A. FSA would send heads-up notifications to our contact centers that

they were e-mailing groups of borrowers, and those heads-up e-mails would be shared with our Contact Center and others to inform them about the e-mails that FSA was sending to the various group space on what FSA had provided in the heads-up notifications.

Q. What is the Contact Center?

A. That is the group that receives inbound calls from borrowers. They also do make outbound calls as needed and -- but primarily is responding to inbound phone calls from borrowers.

Q. Okay. FSA would send the heads-up notification directly through the Call Center rather than, for example, the federal contracts team?

A. FSA would send it to -- in general, FSA sends it through the federal contracting team which is then distributed to our Contact Center management for further distribution and guidance to our Call Center agents.

Q. Okay. Is the purpose of FSA providing that heads-up notification to

was performed?

A. I have no reason not to believe that it was not performed.

Q. Did MOHELA contact the Department of Education regarding this correspondence?

A. It is not normal practice for MOHELA to November FSA of this type of a correspondence.

Q. Are there types of correspondence that MOHELA does notify the department about?

MS. TUTUNDJIAN: Objection.

A. MOHELA notifies FSA of litigation.

Q. But does MOHELA notify the department of correspondence that could be considered prelitigation?

MS. TUTUNDJIAN: Objection. Calls for legal conclusion and beyond the scope of the 30(b)(6) deposition.

A. That is not a requirement by FSA to notify them.

Q. Does MOHELA notify them regardless of whether there's a

paragraph starting: It is important to note -- do you see that?

A. Yes.

Q. The next sentence reads: After reviewing your account, we have not received any notice of discharge from FSA.

When the letter discusses reviewing your account, what would that have entailed -- sorry, let me rephrase that.

What did that entail?

MS. TUTUNDJIAN: Objection. Scope.

A. Could you please repeat the question?

Q. What did it mean to review Mr. Plamondon's account?

MS. TUTUNDJIAN: Scope.

A. I'm not aware what the ombudsman specialist would have -- what they did to review this particular account in response to this -- for this letter.

Q. At this point had -- by which I mean June 17, 2024 -- at this point, had MOHELA received notice from FSA that

Mr. Plamondon's loans were eligible for a group discharge?

MS. TUTUNDJIAN: Objection. Scope.

A. Based on the response to the borrower, we had not -- have not received a discharge file from FSA for this borrower.

Q. I'm asking more broadly, not just based on this document. By June 17, 2024, had MOHELA received notice from FSA Mr. Plamondon's loans were subject to a group discharge?

MS. TUTUNDJIAN: Objection. Asked and answered. And scope.

A. That's out of the scope of my deposition topic.

Q. That's not an answer. If you don't know, you can say you don't know?

MS. TUTUNDJIAN: Objection. The witness is free to respond with the words of her choosing. And asked and answered. And beyond the scope of this 30(b)(6) deposition.

Q. To your knowledge, is all of the

information presented to Mr. Plamondon in this letter accurate?

MS. TUTUNDJIAN: Objection. Scope.

A. I have no reason to believe that the information in here -- I have no reason to believe that the information in here would not be accurate.

Q. On what basis do you believe that the information in this response is accurate?

A. As noted by the ombudsman specialist, they are responding to the borrower's inquiry based on their analysis.

Q. But you don't know what the analysis entailed?

A. As noted, I don't know what the specific review of their account entailed.

Q. So you don't have knowledge of whether MOHELA did in fact have notice of Mr. Plamondon's eligibility for group discharge, is that right?

MS. TUTUNDJIAN: Objection. Misstates prior testimony, the

document, and scope.

A. Specific to this document, the agent had done a review and, based on their review, the borrower's loans had not been received in the file.

MS. HASWELL: Okay. Are the exhibits that we sent over lunch printed?

MS. TUTUNDJIAN: Yes.

(Exhibit 119, Cover sheet, Bates MOHELA_001800, remotely introduced and provided electronically to the reporter.)

BY MS. HASWELL:

Q. Can I have you look at Exhibit 119, please?

MR. MEKARI: There's no cover sheets on these or Bates stamps for some of them.

MS. HASWELL: It is -- this one is MOHELA 1800. Although it's a spreadsheet, so I don't see a Bates stamp printed on it. It's the one with the e-mail address J-A-R-B-O-S@gmail.com.

Q. And it's from MOHELA to Alma Gary?
A. Yes.
Q. And the date of the notice is December 5, 2023?
A. Yes, that's correct.
Q. And does this document also indicate that Ms. Gary's loans were in forbearance at this time?
A. Yes.
Q. Thank you.
(Exhibit 175, Bill, beginning Bates MOHELA_001585, remotely introduced and provided electronically to the reporter.)
Q. Could you open Exhibit 175, please? This is a one-page document beginning with MOHELA 1585.
A. Okay.
Q. What is this document?
A. This is a bill.
Q. And is it from MOHELA to Alma Gary?
A. Yes.
Q. And the date of the bill is

December 19, 2023?
A. That's correct.
Q. With a current due of $1,074.65?
A. Yes.
Q. Is it possible to tell from this document what the status of Ms. Gary's loan was as of December 19, 2023?
A. It appears that based on the status indicator that it is a repayment status.
Q. Why is --
A. Which is formal servicing -- bills are generated during normal servicing when there's no forbearance on the account.
Q. Why was Ms. Gary not in a forbearance at this time?
MS. TUTUNDJIAN: Objection. Scope.
You can answer, if you know.
A. I don't know.
Q. Does this document accurately reflect that Ms. Gary had a balance due to MOHELA of the amount of $1,074.65?
MS. TUTUNDJIAN: Objection.

Scope.

A. Yeah, I don't know. I have no reason to believe that the amount due is not accurate based on the servicing and the status of the account.

Q. Do you have any reason to believe it is accurate?

MS. TUTUNDJIAN: Objection. Form. Asked and answered. And scope.

A. I have no reason to believe that it's not accurate based on the status of this borrower's account at the time.

(Exhibit 174, Bill, beginning Bates MOHELA_001574, remotely introduced and provided electronically to the reporter.)

Q. Could you open Exhibit 174. This is a two-page document Bates No. MOHELA 1574.

A. Okay. I have it in front of me.

Q. What is this document?

A. This is a bill.

Q. From MOHELA to Alma Gary?

A. Yes.

Q. And this is dated January 16,

2024, is that right?
A. Yes.
Q. And this lists an amount past due of $1,074.65, and a current due of the same amount, is that right?
A. Yes, that's what it says.
Q. And in the lower right-hand corner it reflect as total amount due of 2,149.30, is that right?
A. Yes.
Q. And does this bill also indicate that Ms. Gary's loans were in repayment status as of January 16, 2024?
A. Yes. Based on this status indicator it does appear that this borrower was in repayment as of the bill.
Q. Is it your understanding that this statement reflects that MOHELA was claiming that Ms. Gary has a balance due to MOHELA as of that date?
MS. TUTUNDJIAN: Objection. Scope.
A. This bill indicates the total amount due for payments that were current and amount past due as of the date of the

outbound correspondence that we looked at through the CLX screenshots earlier.

Q. Did MOHELA perform any investigation of Ms. Gary's account in response to this communication?

MS. TUTUNDJIAN: Objection. Scope.

A. MOHELA reviews inquiries like these and does research to respond to the borrower's inquiry.

Q. Did MOHELA research whether Ms. Gary was entitled to a group discharge in response to this communication?

MS. TUTUNDJIAN: Scope.

A. I'm not aware of the specific research that occurred for the response specific to this inquiry.

(Reporter seeks clarification.)

MS. TUTUNDJIAN: Objection. Scope. You can answer in your individual capacity, if you know.

MS. HASWELL: I think we got the answer before you restated the objection.

Q. Okay. Thank you. I'd now like

REPORTER CERTIFICATE

I, JACLYN URZIA, do hereby certify:

That said proceedings were taken at the time and place herein named; and that the transcript is a true record of the testimony as reported by me, a disinterested person, and was thereafter transcribed.

I further certify that I am not interested in the outcome of the said action, nor connected with, nor related to any of the parties in said action, nor to their respective counsel.

IN WITNESS WHEREOF, I have hereunto set my hand this 19th day of December, 2025.



JACLYN URZIA, RPR, CRR