# EXHIBIT 5

**In the Matter Of:**

*Maldonado, et al. vs*

*Higher Education Loan Auth. of the State of MO, et al.*

---

*SHELLEY LESTER*

*July 22, 2026*

---

LEXITAS™

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME MALDONADO, et al.,<br>Plaintiffs,<br>vs.<br>HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, et al.,<br>Defendants. | Case No. 3:24-CV-07850-VC |

VIDEOCONFERENCE DEPOSITION OF SHELLEY LESTER

TAKEN ON BEHALF OF THE PLAINTIFFS

July 22, 2026

I N D E X


| WITNESS: | PAGE: |
|---|---|
| SHELLEY LESTER | |
| Examination by Ms. Haswell | 6 |
| Examination by Ms. Fradette | 92 |
| Examination by Ms. Haswell | 99 |


REPORTER'S NOTE: There were no exhibits marked.

E X H I B I T S R E F E R E N C E D


| NUMBER: | DESCRIPTION: | PAGE: |
|---|---|---|
| Exhibit Defense 1 | Business Operations Servicing Requirements Attachment 01 | 48 |
| Exhibit 86 | July 23, 2024, Letter to Jaime Maldonado | 72 |
| Exhibit 116 | Forbearance Letter | 66 |
| Exhibit 118 | Repayment Disclosure Statement | 62 |
| Exhibit 127 | E-mail Correspondence | 59 |
| Exhibit 151 | September 10, 2024, Letter to Jaime Maldonado | 80 |
| Exhibit 152 | September 11, 2024, Letter to Jaime Maldonado | 83 |
| Exhibit 216 | E-mail Correspondence | 43 |
| Exhibit 217 | Document Entitled "Role of a Servicer and Actions to Prepare for Repayment" | 45 |
| Exhibit 218 | Return to Repayment, Student Debt Relief, and Income Driven Repayment New Communications Playbook | 26 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAIME MALDONADO, et al., )
)
Plaintiffs, )
) Case No.
vs. ) 3:24-CV-07850-VC
)
HIGHER EDUCATION LOAN )
AUTHORITY OF THE STATE )
OF MISSOURI, et al., )
)
Defendants. )

VIDEOCONFERENCE DEPOSITION OF SHELLEY LESTER, produced, sworn, and examined remotely on July 22, 2026, before Kelsie E. Kaufman, CCR, within and for the State of Missouri, in a certain cause now pending in the United States District Court for the Northern District of California, between JAIME MALDONADO, et al., Plaintiffs, vs. HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, et al., Defendants; on behalf of the Plaintiffs.

A P P E A R A N C E S

APPEARING FOR THE PLAINTIFFS:

Ms. Malachi J. Haswell
KEMNITZER, BARRON & KRIEG, LLP
1120 Mar West
Suite C2
Tiburon, California 94920
415.632.1900
kai@kbklegal.com

and

Ms. Rebecca C. Eisenbrey
Mr. Malik Jarvis
PROJECT ON PREDATORY STUDENT LENDING
769 Centre Street
Jamaica Plain, Massachusetts 02130
617.322.2808
reisenbrey@ppsl.org
mjarvis@ppsl.org

APPEARING FOR THE DEFENDANTS:

Ms. Jacquelyn E. Fradette
Ms. Jazmyne Denman
SIDLEY AUSTIN, LLP
1505 K Street Northwest
Suite 600
Washington , DC 20005
202.736.8822
jfradette@sidley.com
jazmyn.denman@sidley.com

and

Ms. Julie Becker
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, Illinois 60603
312.853.3604
julie.becker@sidley.com

A P P E A R A N C E S (Cont.)

ALSO PRESENT:

Mr. Mark Raschess
Vice President
Associate General Counsel
MOHELA

Court Reporter:
Kelsie E. Kaufman, CCR
Lexitas Legal
1608 Locust Street
Kansas City, Missouri 64108
816.221.1160
1.800.280.3376

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the Plaintiffs and counsel for the Defendants that this deposition may be taken remotely in shorthand by Kelsie E. Kaufman, a Certified Court Reporter and Missouri Notary Public, and afterwards transcribed into typewriting; and the signature of the witness is expressly reserved.

* * * * *

(Deposition commenced at 10:03 a.m.)

SHELLEY LESTER,

being first duly sworn, testified under oath as follows:

MS. HASWELL: Hey, good morning. This is the 30(b)(6) deposition in Maldonado versus MOHELA, Docket No. 24-CV-07850-VC.

EXAMINATION

BY MS. HASWELL:

Q. Ms. Lester, please state your name for the record.

A. Shelley Lester.

Q. And can you please spell that out.

A. S-H-E-L-L-E-Y L-E-S-T-E-R.

Q. Thank you. And since we had a deposition together in December, I know you're familiar with the general process, but I'm going to go through some

should not have received this communication if that was their status at the time the query was run?

MS. FRADETTE: Same objections. Go ahead.

A. Yes, they should have been excluded from the query.

Q. (By Ms. Haswell) Okay. Thank you. Could you open Exhibit 118, please. This is Bates No. MOHELA001730.

A. Okay. Yes, I have it.

Q. Do you recognize this document?

A. Yes.

Q. What is it?

A. This is a repayment disclosure statement that informs the borrower about their loans and terms that are established for a payment schedule related to those loans.

Q. And is this document based on a template prepared by MOHELA?

MS. FRADETTE: Object to form.

A. This is a template letter that is sent by MOHELA.

Q. (By Ms. Haswell) Did MOHELA develop the template for this letter for approval by FSA or did FSA develop this template?

A. This is not an FSA developed template.

This is a MOHELA developed template.

Q. And what was the context for this template communication?

MS. FRADETTE: Object to form. Go ahead.

A. Can you repeat the question, please?

Q. (By Ms. Haswell) Yeah. What was the context in which this communication was developed and sent to borrowers?

A. The -- are you talking about the context of when it was originally created? Can you clarify?

Q. Yeah, the time in which it was created, what is MOHELA conveying to borrowers by this communication?

MS. FRADETTE: Object to form. Go ahead.

A. Yeah, I'm not sure I was with the company at the time that this document was initially created. It's a disclosure document that's required by FSA to send to borrowers and has a lot of information that is required to communicate to borrowers when their loans are, you know, first initially entering repayment.

Q. (By Ms. Haswell) Okay. Thank you. I think I was looking for that piece. So the context for this template communication is borrowers entering repayment?

A. They -- it can be both repayment, you know,

Q. (By Ms. Haswell) I'm going to repeat that question. Ms. Lester, could you explain that answer a little bit?

A. Yeah, so here on, I think it's page 3, it's not labeled here, but, you know, it references the repayment start date, which as I mentioned for consolidation loans, it's the date of disbursement. So that's October of 2022. You can see on the following page that the actual payment start date was not expected to be until September of 2023. During the COVID period, all borrowers were on forbearances, so nothing would have been expected until -- you know, based on the system, we didn't have any payments schedule during that until September of 2023. So although this is outlining the system repayment schedule for the borrower, the forbearance would actually cover any potential payments that might be due and the borrowers could, you know, watch for bills for when payments would actually be due. This is really providing the repayment schedule and disclosure information to let them know about repayment options and different things that they might need to know about their account.

Q. Okay. Thank you. So would a borrower receive this communication regardless of whether they

were on a forbearance at this time?

A. Yes.

Q. Did all of MOHELA's customers receive this notice around this time?

A. Not all customers would have received this.

Q. Which borrowers would have been excluded from this communication?

MS. FRADETTE: Object to form. Go ahead.

A. That would be a systematic logic to determine which borrowers needed to be notified of this repayment obligation and schedule. So I don't have more details information about exactly which borrowers would have received it.

Q. (By Ms. Haswell) Could you open Exhibit 116, please, and this is Bates No. MOHELA001705.

A. Yes, I have this.

Q. Do you recognize this document?

A. Yes, I do.

Q. What is it?

A. This is a letter informing the borrower that their account is currently in forbearance.

Q. Is this communication based on a template prepared by MOHELA?

MS. FRADETTE: Object to form. Go ahead.

about various aspects of this, but I just want to make sure I understand broadly. What policies and procedures did your team have in place to prevent sending communications to borrowers that stated that they would have payments due in the future when those borrowers had no further obligations to make further payments?

MS. FRADETTE: Object to form.

A. Can you please repeat the question?

Q. (By Ms. Haswell) Yeah. What policies and procedures did your team have in place to prevent sending communications to borrowers stating they had future payments due when they did not have future payments due?

MS. FRADETTE: Object to form to form and potentially outside the scope.

A. That is not a procedure that my team has. We have, you know, a system to identify based on the status of borrowers' accounts whether bills, notifications should be sent to borrowers based on that -- their account status at the time that the system is looking for that.

Q. (By Ms. Haswell) Okay. And in that system, there's no specific designation identifying borrowers who would not have to make payments in the

future?

MS. FRADETTE: Object to form, outside the scope.

A. The way that the system -- my understanding of the system, it would recognize that a forbearance being placed on the account is the way to indicate that a payment is not due.

MS. HASWELL: Thank you. That's helpful, and that concludes my questioning. Jackie, did you have anything today?

MS. FRADETTE: I've got just a few.

EXAMINATION

BY MS. FRADETTE:

Q. Ms. Lester, do you recall when counsel asked you about a scenario where if a borrower were to contact MOHELA and say, I received a bill, but I don't believe I need to pay it?

A. Uh-huh, yes.

Q. What department handles those types of inquiries?

A. If a borrower contacted MOHELA, the inquiry would come through the contact center department, and if there was a question about an account status or needing a forbearance applied to an account, that would be requested through our loan servicing

CERTIFICATE OF REPORTER

I, Kelsie E. Kaufman, a Certified Court Reporter, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me; that the testimony of said witness was taken remotely by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.



Kelsie E. Kaufman, CCR