Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Tony S. Mekari (SBN 347057)
tony.mekari@sidley.com
SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, CA 94111
Telephone: (415) 772-1200

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662

Jacquelyn Fradette (*pro hac vice*)
jfradette@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8822

*Attorneys for Defendant Higher Education Loan Authority of the State of Missouri*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JAIME MALDONADO, ANNA VARELA, ALMA GARY and JEFF PLAMONDON, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, and DOES 1-30,

Defendants.

Case No. 3:24-CV-07850 VC

Assigned to Hon. Vince Chhabria

**DEFENDANT HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI'S REPLY BRIEF IN SUPPORT OF ITS SECOND MOTION FOR SUMMARY JUDGMENT**

Date: October 8, 2026
Time: 10:00 a.m.
Location: Courtroom 4, 17th Floor

Case Removed: November 8, 2024

(Superior Court of California for the County of Alameda, Case No. 24CV090146)

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Concede that MOHELA is Entitled to Summary Judgment on Gary's and Plamondon's Claims as Pleaded in the Complaint. ..... 2

B. MOHELA Is Entitled to Summary Judgment on Plamondon's and Gary's Claims Under Plaintiffs' New Theory. ..... 3

1. MOHELA Could not Treat Plaintiffs' Loans as Discharged Based on Approvals or "Do Not Bill" Lists. ..... 4

2. MOHELA's Credit Reporting and Communications Were Not False, Inaccurate, or Misleading ..... 6

C. MOHELA Is Entitled to Summary Judgment Because Plaintiffs' New Theory Is Preempted by the HEA. ..... 10

1. Plaintiffs' New Theory Is Expressly Preempted. ..... 10

2. Even If Not Expressly Preempted, Plaintiffs' New Theory Is Conflict Preempted. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aulbach v. Experian Info. Sols., Inc.*,
251 F. Supp. 3d 1281 (N.D. Cal. 2017) ....................8

*Basconcello v. Experian Info. Sols., Inc.*,
No. 16-cv-06307-PJH, 2017 WL 1046969 (N.D. Cal. Mar. 20, 2017) ....................7

*Biggs v. Experian Info. Sols., Inc.*,
209 F. Supp. 3d 1142 (N.D. Cal. 2016) ....................6, 7

*Blakeney v. Experian Info. Sols., Inc.*,
No. 15-CV-05544-LHK, 2016 WL 4270244 (N.D. Cal. Aug. 15, 2016)....................6, 7

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) .................... *passim*

*Coleman v. Quaker Oats Co.*,
232 F.3d 1271 (9th Cir. 2000) ....................3

*Evon v. L. Offs. Of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ....................9

*Galea v. Wells Fargo Bank, N.A.*,
388 F. Supp. 3d 1212 (E.D. Cal. 2019)....................6, 8

*Harrold v. Experian Info. Sols., Inc.*,
No. C 12-02987 WHA, 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012)....................7

*Hemphill v. McMahon*,
1:22-cv-01391 (D.D.C. Sept. 8, 2025)....................5

*Jugoz v. Experian Info. Sols., Inc.*,
No. 16-CV-05687-MMC, 2017 WL 2720184 (N.D. Cal. June 23, 2017)....................7

*Lawson-Ross v. Great Lakes Higher Education Corp.*,
955 F.3d 908 (11th Cir. 2020) .................... *passim*

*McClellan v. I-Flow Corp.*,
776 F.3d 1035 (9th Cir. 2015) ....................15

*Medina v. Two Jinn, Inc.*,
No. 22-cv-02540-RFL, 2024 WL 4485592 (N.D. Cal. Mar. 28, 2024)....................9

*Pennsylvania v. Navient Corp.*,
967 F.3d 273 (3d Cir. 2020)....................11, 13, 14

*Nelson v. Great Lakes Education Loan Services, Inc.*,
928 F.3d 639 (7th Cir. 2019) ........................................ *passim*

*Russell v. Absolute Collection Servs., Inc.*,
763 F.3d 385 (4th Cir. 2014) ........................................ 9

*Sambor v. Omnia Credit Servs., Inc.*,
183 F. Supp. 2d 1234 (D. Haw. 2002) ........................................ 6

*Stimpson v. Midland Credit Mgmt., Inc.*,
944 F.3d 1190 (9th Cir. 2019) ........................................ 10

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006) ........................................ 3

**Statutes**

20 U.S.C. § 1098g (Higher Education Act) ........................................ 10, 14

15 U.S.C. § 1681 et seq. (Federal Fair Credit Reporting Act ("FCRA")) ........................................ 6, 7

15 U.S.C. § 1681s-2(a)(1)(A) ........................................ 11

15 U.S.C. § 1692 et seq. (Federal Fair Debt Collection Practices Act ("FDCPA")) ........................................ 6

Cal. Civ. Code § 1788.2 et seq. (California Fair Debt Collection Practices Act
"Rosenthal Act") ........................................ 8, 10

**Other Authorities**

34 C.F.R. § 682.205 ........................................ 5, 9, 13

34 C.F.R. § 682.208 ........................................ 5, 11, 12

34 C.F.R. § 685.209(l)(5) ........................................ 13

86 Fed. Reg. 44,277, 44,279 (Aug. 12, 2021) ........................................ 13

Fed. R. Civ. P. 19 ........................................ 12

# I. INTRODUCTION

Plaintiffs' Opposition confirms that the theory they pleaded in the Complaint cannot survive. The Court ruled that MOHELA "had no obligation to treat the plaintiffs' loans as discharged until the Department transmitted [discharge] instructions to MOHELA." Dkt. 124, MSJ Ord. at 1-2. Plaintiffs now "concede that MOHELA did not have an obligation to discharge their loans or delete Plaintiffs' credit tradelines prior to receiving explicit discharge instructions from the Department." Dkt. 164, Plaintiffs' Opp. ("Opp.") at 12. The Court's prior summary judgment order disposed of Varela's and Maldonado's claims based on this theory, *e.g.*, MSJ Ord. at 3 ("what's left of the case after MOHELA's summary judgment motion are the issues of whether MOHELA violated the law as to Maldonado and Varela *after MOHELA received their names on the discharge lists*." (emphasis added)), and undisputed evidence compels the same result on Gary's and Plamondon's claims as pleaded.

Plaintiffs try to resuscitate their case by newly arguing that MOHELA "creat[ed] a misleading impression that Group Discharge borrowers would have to make further payments on debts that ED had announced would be discharged in full." Opp. at 17. They challenge MOHELA's continued reporting of outstanding loan balances to credit reporting agencies ("CRAs") and a handful of standard servicing communications to Plamondon and Gary. Plaintiffs say MOHELA should have "suppress[ed]" their credit tradelines, stopped certain communications about their federal loans, or changed those communications to indicate, "at minimum," that Plaintiffs "were not required to repay" the loans. *Id.* at 2. Plaintiffs' latest theory is fatally flawed.

First, many of Plaintiffs' proposed fixes—including suppressing tradelines and stopping communications—are tantamount to arguing that MOHELA should have treated Plaintiffs' loans as discharged before the Department sent instructions to do so. The Court's prior summary judgment order already foreclosed this theory.

Second, Plaintiffs' Opposition confirms that the HEA preempts their new theory. They now insist that they are not bringing disclosure claims but, rather, "affirmative misrepresentation" claims. Plaintiffs complain that MOHELA's federally regulated credit reporting and standardized

servicing communications created a "misleading impression" that could have been cured by different or additional information about the anticipated Group Discharges. Opp. at 17, 22. Yet, that is precisely the kind of disclosure claim *Chae* holds expressly preempted. *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010). And, even if not expressly preempted, Plaintiffs' claims conflict with federal law. Federal regulations require MOHELA to report credit information on existing federal loans, yet Plaintiffs say California law required MOHELA to suppress that reporting or report it in ways that federal law and contracts make impossible. Plaintiffs' borrower-communication theory likewise would allow California to prescribe different servicing requirements for federal loans governed by a nationwide regulatory regime designed to be uniform.

Finally, Plaintiffs' new theory also fails on the merits, at least as to Plamondon and Gary. MOHELA accurately reported Plaintiffs' existing loan balances while noting that payments were deferred and $0 was past due, and the borrower communications Plaintiffs identify were not misleading. Plamondon's notices acknowledged forbearance, while Gary's statements concerned a consolidated loan that included non-discharge-eligible debt.

The Court should enter summary judgment on Gary's and Plamondon's claims, and the Court should hold that Plaintiffs' new legal theory is barred because it is preempted.

## II. ARGUMENT

### A. Plaintiffs Concede that MOHELA is Entitled to Summary Judgment on Gary's and Plamondon's Claims as Pleaded in the Complaint.

Plaintiffs now admit that "MOHELA did not have an obligation to discharge their loans or delete Plaintiffs' credit tradelines prior to receiving explicit discharge instructions from the Department." *E.g.*, Opp. at 12. Accordingly, the record compels summary judgment as to Gary and Plamondon on the theory pleaded in the Complaint. It is undisputed that MOHELA promptly discharged Plamondon's loans once instructed by the Department to do so. *See* Dkt. 156, MOHELA's MSJ-2 ("Mot.") at 11-12. It is undisputed that the Department never instructed MOHELA to discharge Gary's consolidated loan.[1] Mot. at 12-13. Plaintiffs thus cannot establish

[1] The parties also agree that on August 4, 2025, the Department sent MOHELA a downward adjustment request to partially reduce Gary's outstanding consolidation loan balance. *See* Mot. at 12; Opp. at 6. Adjustment requests are not discharge instructions; they are requests independent of

that MOHELA was required to treat Plamondon's loans as discharged before April 2026, or that MOHELA was ever required to treat Gary's consolidated loan as discharged. Summary judgment should be entered on this theory.

### B. MOHELA Is Entitled to Summary Judgment on Plamondon's and Gary's Claims Under Plaintiffs' New Theory.

Knowing their theory cannot survive summary judgment, Plaintiffs have resorted to championing a new, equally-flawed concept to support their continued litigation. Yet, without a complaint to define the contours of this theory, MOHELA pieces the following together from Plaintiffs' statements at the prior hearing, discovery responses, and now their Opposition: Upon receiving "notice" that Gary's and Plamondon's loans were eligible for discharge, Plaintiffs believe that MOHELA was required to cease or change its routine servicing activities because continuing those activities "created a misleading impression that Group Discharge borrowers would have to make further payments on debts that ED had announced would be discharged in full." Opp. at 17. Although the Department never told MOHELA to depart from federal servicing requirements for Plaintiffs' loans, Plaintiffs feel that MOHELA should have "quer[ied] its database of borrowers by school code and enrollment dates" to "identif[y] borrowers within the scope of Group Discharges," *id*. at 5, in order to "suppress[]" those borrowers' "credit tradelines" and stop communicating with those borrowers—in other words, cease reporting pursuant to its contractual requirements even though the Department had not confirmed accounts were to be discharged and develop bespoke communications that departed from federal templates, *id*. at 21.

MOHELA is entitled to summary judgment on the Opposition's theory. At the threshold, the Court need not reach the merits of the theory because Plaintiffs never pleaded it. *See generally* Compl. It is well-settled that a party cannot amend its complaint through opposition briefing. *See, e.g.*, *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."). The Court should

Group Discharge to increase or decrease a consolidation loan. Dkt. 159-4, Armbrust Decl. Ex. D (Siess Dep. Tr. at 30:9–25). Plaintiffs do not appear to assert that any liability on the theory pleaded in the Complaint arises from this adjustment request, and MOHELA processed the request the same day it arrived. *Id.* at 117:8–121:2.

grant summary judgment to MOHELA on this ground alone.

Notwithstanding the above, to the extent Plaintiffs suggest that MOHELA was required to stop servicing the loans before they were discharged, that theory is foreclosed by the prior summary judgment order, as well as the law and facts. To the extent Plaintiffs argue that MOHELA should have communicated differently with borrowers and CRAs, that theory is preempted—for the reasons discussed in Part C. And it independently fails because, as a matter of law, nothing MOHELA said was false, inaccurate, or misleading.

#### 1. MOHELA Could not Treat Plaintiffs' Loans as Discharged Based on Approvals or "Do Not Bill" Lists.

Plaintiffs devote pages (at 4-11) to showing that MOHELA had "notice" that certain loans might be discharged. But as this Court has already recognized, none of those other communications (which were not discharge instructions) permitted MOHELA to discharge Plaintiffs' loans or to "treat" them "as discharged." MSJ Ord. at 1-2.

Yet at times Plaintiffs appear to argue that California law required MOHELA to "suppress[] credit tradelines" for their loans to avoid reporting outstanding balances to CRAs, Opp. at 21, even though the Department's instructions and the USDS contract required reporting those loans as in forbearance/deferred status. Plaintiffs assert (wrongly, *see infra* II.C.) that it was "voluntary" for MOHELA to communicate with them and other Group Discharge borrowers on their outstanding loan balances after the Department's discharge announcements. *See* Opp. at 20-21. Of course, that contention is wide of the mark. That is how MOHELA treats loans that are discharged—it either deletes the credit tradelines if the entire loan balance is discharged or it reduces the tradeline by the amount discharged for consolidated loans, and it either ceases or adjusts its communications with borrowers—only when instructed to do so by the Department. Plaintiffs cannot maintain claims based on the premise that MOHELA should have stopped servicing their loans before receiving discharge instructions. That is the very argument the prior order forecloses.

The law and facts likewise foreclose this theory. The legal premise of the Court's prior

order is that unless and until the Department's discharge process and all of its steps are complete, a discharge-eligible loan remains on the books. *See* Dkt. 93, MOHELA's MSJ-1 at 10-11. The HEA's implementing regulations and MOHELA's servicing contracts with the Department require MOHELA to service existing loans, and Plaintiffs point to nothing that carves out Group Discharge–eligible loans from those servicing obligations, or authorizes MOHELA to take any of the steps Plaintiffs desire. *See* 34 C.F.R. §§ 682.205, 682.208; USDS Contract §§ 23018.1820, 23018.1860, 30006.000.

Moreover, approval is merely the first step in the Department's multi-step discharge process. *See* Dkt. 155, Dep't Decl. ¶ 28. For consolidated loans in which only some underlying loans are eligible for discharge—true for both Plamondon and Gary—that process is quite "complex" and "requires more steps and a greater amount of time," because the Department must carefully sequence the actions of the original loan's servicer, the Department, and the servicer of the consolidation loan. *See id.* ¶¶ 16, 27, 31-36;[2] *see also* Reply Declaration of Sheila A.G. Armbrust ("Reply Armbrust Decl."), Ex. L,[3] *Hemphill v. McMahon*, 1:22-cv-01391 (D.D.C. Sept. 8, 2025), Joint Status Report, Dkt. 46 at 4. The Department's letters to Gary and Plamondon communicated that some or all of their loans might be discharged *in the future*—and only after the Department completes its discharge process. Dkt. 164-2, Gary Decl. at Ex. A; Dkt. 164-9, Plamondon Decl. at Ex. A. And Plaintiffs admitted at their depositions that they understood as much. *See* Ex. M, Gary Dep. Tr. at 94:25–95:25 ("What I understood was it was going to take some time to—the loans to be discharged"); Ex. N, Plamondon Dep. Tr. at 113:1–114:17 ("Q. The

[2] For an eligible loan that has been consolidated, the Department sends its discharge request to the "servicer of the eligible original loan." Dkt. 155, Dep't Decl. ¶¶ 28, 29. MOHELA was not the servicer for Plamondon's or Gary's eligible original loan. The "discharge" applied to the original loan is a paper transaction, although a necessary one because it "trigger[s] [the] additional steps" required for "the adjustment to be applied to the borrower['s] current consolidation loan[.]" *Id.* ¶ 31. If the servicer of the original loan does not complete processing the Department's discharge request, then it does not "trigger" the adjustment to the current, active consolidation loan, *see id.* ¶¶ 28-31—as was the case with Gary's loan, *see id.* ¶¶ 56–57. Contrary to Plaintiffs' suggestion in citing emails to other servicers on which MOHELA was copied or allegedly copied, Opp. at 6 & n. 4, MOHELA could not leapfrog that sequence by intercepting instructions the Department sends to other servicers and then implementing those instructions on the loans that it services.

[3] Citations to "Ex." herein are to the exhibits attached to the declaration of Sheila A.G. Armbrust filed concurrently with this reply, unless otherwise noted.

Department, again, is communicating to you that it's going to take some time to process your discharge; correct? A. Yeah, that's what it's saying.").

The Department's "do not bill" lists also did not permit MOHELA to treat loans as discharged before they were discharged. As the Department's declaration explains, those lists direct servicers to keep "certain consolidation loans in forbearance or another approved stopped collection status" while "required processing tasks . . . are incomplete." Dkt. 155, Dep't Decl. ¶¶ 65-66. In other words, the "do not bill" lists concern, among other things, reporting forbearance status to CRAs. They are not instructions to suppress a tradeline or change standard communications. And Plaintiffs told this Court that they "are not making an argument that MOHELA violated the law by not treating debts as being in forbearance[.]" Ex. O, MSJ Hr'g Tr. at 12:7-10 (Plaintiffs' counsel: "Correct."). As the Court already recognized, "it actually would have been very problematic if MOHELA had treated the debts as discharged before getting the names from the Department of Education." *Id.* at 4-5. Plaintiffs should not be permitted to continue to argue that MOHELA should have done so.

**2. MOHELA's Credit Reporting and Communications Were Not False, Inaccurate, or Misleading.**

If Plaintiffs' new theory is limited to challenging the content of MOHELA's communications with CRAs and Gary and Plamondon, the theory is preempted. *See infra* Part C. Preemption aside, the theory fails for the reasons outlined in MOHELA's prior summary judgment motion. *See* Dkt. 93, MOHELA's MSJ-1 at 12-18; Dkt. 115, MOHELA's MSJ-1 Reply at 4-14. Plaintiffs' opposition does not address those arguments, which remain dispositive.

<u>Credit reporting</u>. Plaintiffs' Consumer Credit Reporting Agencies Act claims fail because it is not inaccurate or misleading for furnishers of credit information to report a balance owed while a debt "still exist[s]"—even if the debt may be discharged. *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1145 (N.D. Cal. 2016) (interpreting FCRA); *Sambor v. Omnia Credit Servs., Inc.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. 2002) (denying debtor summary judgment under the FDCPA where the debt collector accurately communicated the amount of debt). For example, in the bankruptcy setting—which Plaintiffs themselves now invoke, *see* Opp. at 13-15 (citing

*Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d 1212 (E.D. Cal. 2019))—courts routinely hold that while a bankruptcy is pending, "it is not misleading or inaccurate to report" delinquent debts "that have not been discharged" but that will be discharged when the proceeding concludes, *Blakeney v. Experian Info. Sols., Inc.*, No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal. Aug. 15, 2016); *see also Biggs*, 209 F. Supp. 3d at 1145; *Harrold v. Experian Info. Sols., Inc.*, No. C 12-02987 WHA, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceeding are still ongoing is not 'incomplete or inaccurate' information.").

So too here. MOHELA accurately reported that Plamondon and Gary had "deferred" balances on their loans and $0 in past due payments. *See* Dkt. 95-13, Armbrust MSJ-1 Decl. Ex. M (Credit Bureau History for Plamondon's federal student loan); Dkt. 95-12, Armbrust MSJ-1 Decl., Ex. L (Credit Bureau History for Gary's federal student loan). The Department's announcements may have led Plaintiffs to expect that portions of their loans would be discharged at some point in the future, but—as this Court has already held—those announcements did not discharge their loans in the present or alter their legal status. MSJ Ord. at 1-2. Until the Department completed the discharge process, the debts "still exist[ed], and it [wa]s not inaccurate or misleading" for MOHELA to report them. *Biggs*, 209 F. Supp. 3d at 1145.

Recognizing this, Plaintiffs instead argue that MOHELA's reporting became inaccurate because it did not add that the loans were discharge eligible. *See* Opp. at 13-15. That theory is preempted twice over. *See infra* Part C. But preemption aside, the omission of a pending-discharge notation did not make the information MOHELA reported inaccurate.[4] Again, courts in the bankruptcy context have held that a furnisher "ha[s] no obligation to reference [the debtor's] bankruptcy proceeding" in its credit reporting, at least until the debt is discharged. *Blakeney*, 2016 WL 4270244, at *5-6; *see also, e.g.*, *Jugoz v. Experian Info. Sols., Inc.*, No. 16-CV-05687-MMC, 2017 WL 2720184, at *4 (N.D. Cal. June 23, 2017) ("[A]t least prior to discharge, reporting a loan

[4] Plaintiffs have not identified any way that MOHELA could have made such a notation. In fact, it was a technical impossibility for MOHELA to provide a free-form notation in its credit reporting, and MOHELA was not permitted to use special comment codes for this circumstance. *See infra* II.C.2; *see also* Mot. at 19 (citing Ex. J., Bates Dep. Tr. at 54:12-56:25; Bates Decl. ¶¶ 5, 7).

balance and delinquent status per the original terms—as opposed to the modified terms of the confirmed Chapter 13 plan—is neither inaccurate nor misleading under the FCRA." (quoting *Basconcello v. Experian Info. Sols., Inc.*, No. 16-cv-06307-PJH, 2017 WL 1046969, at *6 (N.D. Cal. Mar. 20, 2017)). This Court's decision in *Aulbach* does not suggest otherwise. There, the Court held that CRAs could not ignore a change in the nature of a debt resulting from confirmation of a Chapter 13 plan. *See Aulbach v. Experian Info. Sols., Inc.*, 251 F. Supp. 3d 1281, 1287 (N.D. Cal. 2017). Here, this Court has already held that the Department's announcements did not change the legal status of Plaintiffs' loans; MOHELA had no obligation to treat them as discharged until the Department sent discharge instructions. MSJ Ord. at 1–2.

Plaintiffs' own case, *Galea v. Wells Fargo Bank, N.A.*, 388 F. Supp. 3d at 1216, underscores MOHELA's point. There, the plaintiff completed her Chapter 13 plan and obtained a discharge, but the defendant continued reporting the debt. *Id*. *Galea* thus concerned reporting *after* discharge; it did not hold that reporting a debt while discharge remained pending was inaccurate or misleading.

<u>Notices to Plamondon</u>. Plamondon's remaining claims center on two notices. *See* Opp. at 14 (citing Haswell Decl., Exs. 20 & 21). But MOHELA already explained why neither notice was false, deceptive, or misleading under the California Fair Debt Collection Practices Act (also known as the "Rosenthal Act"), Cal. Civ. Code §§ 1788 et seq. *See* Dkt. 115, MOHELA's MSJ-1 Reply at 12-13. Plaintiffs' Opposition supplies no reason to reach a different conclusion.

As to the first notice, two weeks after Plamondon applied for the SAVE income-driven repayment plan (IDR), MOHELA sent a standardized, FSA-approved notice confirming that his eligible loans had been placed on that plan and identifying a scheduled payment date. Dkt. 164-36, Haswell Decl. Ex. 20 at 1; Dkt. 115-7, Fradette Decl., Ex. QQ; *see also* Dkt. 115-8, Ex. RR at 80:22–81:25 (Plamondon confirming that he sent this request); Dkt. 164-28, Haswell Decl. Ex. 12, RFA 56 (stating that this was a standardized template). But immediately next to that date is an asterisk, followed by the sentence: "*If you are currently on a deferment or forbearance, repayment of your loan(s) will occur after your deferment or forbearance ends*." Dkt. 164-36, Haswell Decl.

Ex. 20 (emphasis added). Plamondon's loans were then in forbearance, and he knew it. Dkt. 95-30, Armbrust MSJ-1 Decl., Ex. DD (Plamondon forbearance history); Dkt. 115-8, Fradette Decl. Ex. RR (Plamondon Dep. Tr. at 67:7–68:6). No debtor with "a modicum of reasonableness" and a "willingness to read with care," *Evon v. L. Offs. Of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012), could understand this notice as saying that Plamondon was required to make a payment on discharge-eligible loans in forbearance.

The second notice was "required by FSA" and contained information FSA required MOHELA to communicate to certain borrowers. Dkt. 115-4, Fradette MSJ-1 Reply Decl., Ex. NN (Lester Dep. 63:16–64:7); *see also* 34 C.F.R. § 682.205(a). And it followed an email explaining that the COVID-19 payment pause was ending, and that payments would resume "for most borrowers." Dkt. 95-28, Armbrust Decl., Ex. BB. It even expressly explains the notice about which Plamondon complains, stating: "You may receive a repayment correspondence called a 'disclosure' in early September . . . *[i]f you are entering repayment for the first time . . . Your disclosure will let you know what your monthly payment will be*." *Id.* (emphasis added). Read in that context, the later disclosure did not tell Plamondon that payment was presently due; it provided standardized repayment information about his still-existing loans if repayment resumed. That is not false or misleading. *See, e.g.*, *Medina v. Two Jinn, Inc.*, No. 22-cv-02540-RFL, 2024 WL 4485592, at *2 (N.D. Cal. Mar. 28, 2024).

Plaintiffs' sole, inapposite case, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014), involved a debt collector demanding payment and threatening to report nonpayment to the CRAs after the plaintiff satisfied a debt in full. *Id.* Here, Plaintiffs concede that Plamondon's loans remained outstanding when he received notices. *See* Opp. at 14.

Customer Statements to Gary. All that remains of Gary's claims are the Customer Statements. Plaintiffs emphasize that MOHELA sent those statements while Gary's consolidation loan was supposed to be in "do not bill" status (forbearance). *See id.* at 11-12. But Plaintiffs previously told this Court that they "are not making an argument that MOHELA violated the law by not treating debts as being in forbearance." Ex. O, MSJ Hr'g Tr. at 12:7–10. What Plaintiffs

really argue is that the statements were misleading because they suggested Gary would have to repay loans that had been approved for Group Discharge. *See* Opp. at 17. Plaintiffs ignore that Gary's consolidation loan still contained debt that was *not* then covered by any Group Discharge: the Department had not yet announced the Art Institutes discharge, and the consolidation loan also included a non-discharge-eligible SAE Institute loan. *See* Dkt. 115, MOHELA's MSJ-1 Reply at 14. Thus, Gary indisputably continued to owe money on the consolidated loan when the Statements were sent. The Statements therefore did not mislead Gary into believing she would need to make payments on a loan that would be discharged—they only informed her that she would eventually need to make payments on loans that have never been discharge eligible.[5] Those statements were not false or misleading.

### C. MOHELA Is Entitled to Summary Judgment Because Plaintiffs' New Theory Is Preempted by the HEA.

#### 1. Plaintiffs' New Theory Is Expressly Preempted.

The HEA expressly preempts state law claims that would impose disclosure requirements on servicers of federally insured student loans. Dkt. 156, Mot. at 16-18. Plaintiffs' new theory would do just that: as the Opposition concedes (at 16-17), Plaintiffs articulated their theory as a disclosure theory, telling the Court that MOHELA's failure to clarify to borrowers and credit reporting agencies that discharges were pending on Plaintiffs' loans violated California law, Opp. at 16-17; *see also id.* at 2. Section 1098g of the Higher Education Act preempts that theory.

Realizing the problem, Plaintiffs yet again attempt to recast their claims—this time arguing that MOHELA made "affirmative misrepresentations." *See, e.g.*, Opp. at 23. But the crux of Plaintiffs' theory is that MOHELA should have provided additional information about future discharges. To see this, contrast Plaintiffs' key cases and this one. In *Nelson v. Great Lakes Education Loan Services, Inc.*, the servicer-defendant fraudulently steered borrowers into forbearance by making false statements, including about the servicer's "expertise and its devotion

[5] MOHELA's communications also cannot support a Rosenthal Act violation because they contained no threat of court action. *See Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190, 1200 (9th Cir. 2019) ("debt collectors may attempt to persuade debtors to make payments" as long as they do not suggest that unenforceable debts may be collected in court).

to borrowers' best interests." 928 F.3d 639, 649 (7th Cir. 2019). And in *Lawson-Ross v. Great Lakes Higher Education Corp.*, the core claim was that the servicer-defendant gave the plaintiffs personalized "false information" about their eligibility for a loan-forgiveness program. 955 F.3d 908, 918 (11th Cir. 2020). In both, the servicer induced action based on affirmative falsehoods. Plaintiffs concede that the tradelines and loans at issue here existed until discharge, which forecloses any theory that MOHELA's statements about the loans' existence and outstanding balances were incorrect. Plaintiffs say the crux of their case is that MOHELA "*created a misleading impression*" that Plaintiffs "would have to make further payments on debts that ED had announced would be discharged in full" in the future. Opp. at 17 (emphasis added); *see also id.* at 2. Plaintiffs maintain that this misleading impression could have been cured with additional disclosures "indicating that Plaintiffs were not required to repay" the loans. *Id.* at 2; *see also id.* at 17. But that is the hallmark of a disclosure theory: the alleged defect is not an incorrect statement but the absence of more information needed to cure a supposedly "misleading impression."[6]

*Chae* explains that a plaintiff "implicitly seek[s] to impose additional disclosure requirements under state law" where "the defendant was required to disclose th[e] information by federal law and had disclosed it in ways permitted by federal law." *Nelson*, 928 F.3d at 650; *see also Lawson-Ross*, 955 F.3d at 919. That perfectly encapsulates Plaintiffs' credit reporting claims. Federal law required MOHELA to report outstanding balances and repayment statuses to the CRAs. *See* Opp. at 21 n.10 (discussing 34 C.F.R. § 682.208(b)); *see also* Mot. at 15, 18 (discussing this regulation). And that is what MOHELA did: it is undisputed that MOHELA reported that balances remained on the loans, while also reporting that payment on the loans was "deferred" and that no payments were past due. *See, e.g.*, Dkt. 95-13, Armbrust MSJ-1 Decl. Ex. M; Dkt. 95-12, *id.* Ex. L. Plaintiffs nowhere expressly dispute that these disclosures were made "in ways permitted by federal law."[7] *Nelson*, 928 F.3d at 650. Instead, their proposed cure is that MOHELA should

[6] *Pennsylvania v. Navient Corp.* left open whether a claim based on a "material omission" is expressly preempted. 967 F.3d 273, 292 n.12 (3d Cir. 2020). But Plaintiffs style their claims as "affirmative misrepresentations." Opp. at 23.

[7] Elsewhere in the preemption section, they allude to the FCRA's prohibition on "reporting credit information that [a furnisher] knows or has reasonable cause to believe is inaccurate," Opp. at 23 (citing 15 U.S.C. § 1681s-2(a)(1)(A)), but they identify no factual inaccuracy in any of the reported

have "at least *added notations* to Plaintiffs' credit tradelines" indicating that the loans would not ultimately need to be repaid. Opp. at 22 (emphasis added) (discussing the "Special Comment Code" field); *see also id.* at 21 n. 10. But such additional disclosures, beyond what the federal regulations required (or allowed), are preempted claims that a servicer "disclosed in a misleading manner information it was required to disclose." *Lawson-Ross*, 955 F.3d at 919.

Invoking *Nelson* and *Lawson-Ross*, Plaintiffs argue MOHELA "could have avoided [Plaintiffs'] claims by remaining silent." Opp. at 21 (*Nelson*, 928 F.3d at 649; *see also Lawson-Ross*, 955 F.3d at 918). Silence was not an option here. The HEA regulations state that MOHELA "*shall* report" student loan balances and repayment status to the CRAs. 34 C.F.R. § 682.208(b) (emphasis added). Federal law therefore did not permit MOHELA simply to "suppress" tradelines for federal loans with balances because the Department had announced that the loans, or some portion of the loans, would be discharged in the future.[8] Plaintiffs' deposition citations do not establish otherwise. Opp. at 21-22. Although MOHELA's corporate witness testified that its system has the "technical ability" to suppress a tradeline, she also testified—consistent with the regulations—that FSA "requires MOHELA to report tradelines under the USDS contract" and that MOHELA suppresses reporting only "when outlined by . . . FSA." Dkt. 164-22, Haswell Decl. Ex. 6 (Bates Dep. 63:21–64:10, 69:1–14). Plaintiffs also suggest that their balances "arguably" were not "outstanding balances" required to be reported under the regulation because "Plaintiffs are not required to make further payments on their loans." Opp. at 21 n.10. But that argument conflates the balance on the loan with whether payments would be due. Plaintiffs concede that the loans had balances, *see id*. at 12, and MOHELA accurately distinguished the existence of the balances from whether payment was then due.[9]

---

facts: the loans had outstanding balances to report, the loan payments were deferred, and nothing was past due. The defect they identify is the absence of additional information about an anticipated future discharge.

[8] The same regulation expressly directs servicers to "suspend" reporting in only one particular circumstance—upon receipt of a valid identity-theft report. 34 C.F.R. § 682.208(b)(3). No comparable instruction applies to loans awaiting Group Discharge.

[9] Moreover, the Department's interest in its assets—the federal student loans it owns—would be affected if MOHELA suppressed the tradeline of a consolidated loan that is only partially eligible for discharge, as with Gary's and Plamondon's loans. Suppression would hide the borrower's remaining federal student loan debt from existing and potential creditors, who might

This leaves Plaintiffs' allegations—based on Plamondon's notices and Gary's Customer Statements—that MOHELA misleadingly "inform[ed] Plaintiffs that they owed outstanding balances and would have to resume making payments." *Id. at* 21. Plaintiffs characterize those communications as "voluntary and affirmative statements" like those in *Nelson*, *Lawson-Ross*, and *Navient*. *Id.* at 20. But those cases involved servicers that went beyond federal requirements—by offering advice, making promises, or providing gratuitous information—and so could have avoided the claims by remaining silent. *See Nelson*, 928 F.3d at 649; *Lawson-Ross*, 955 F.3d at 918–19; *Navient*, 967 F.3d at 291–92. Here, by contrast, Plaintiffs challenge required and standardized servicing communications about repayment—a subject governed in detail by federal regulations, *see* 34 C.F.R. § 682.205; *see also* 34 C.F.R. § 685.209(l)(5), which Plaintiffs nowhere acknowledge, *see* Mot. at 17 & n.6, and which contain no exception for Group Discharge borrowers. The challenged communications were not MOHELA's voluntary statements but instead standardized repayment disclosures, often drafted or approved by FSA, used to communicate information that federal law expressly regulates. *See supra* II.B.2. (discussing Plamondon's Notices); *see also* Dkt. 164-28, Haswell Decl. at Ex. 12, RFA 53 (explaining that Customer Statements were standardized communications generated from a template); *see also* Ex. P, Lester (July 2026) Dep. Tr. at 12:25–13:3 ("We use a variety of templates that we either receive from FSA or that we create that are approved from FSA."). Plaintiffs' theory is that California law required those communications to convey different or additional information about an anticipated future discharge. That is precisely the kind of "restyled improper-disclosure claim" *Chae* holds preempted.[10] 593 F.3d at 942-43.

---

then overextend credit to the borrower and diminish the Department's ability to collect on the non-eligible loans. To the extent Plaintiffs' suppression theory survives summary judgment, MOHELA renews the argument asserted in its motion for judgment on the pleadings that the Department is a required party under Rule 19 that cannot be joined and whose interests would be impaired if this action proceeds without it. *See* Dkt. 54, Mot. Judgment on Pleadings.

[10] Plaintiffs repeatedly invoke the Department's 2021 preemption statement, which explains that *Chae* does not preclude state regulation of "affirmative misrepresentation about information that the servicer was not required to disclose." 86 Fed. Reg. 44,277, 44,279 (Aug. 12, 2021); Opp. at 25. MOHELA does not disagree with the preemption statement; it disagrees with Plaintiffs' attempt to cast their claims as affirmative misrepresentations of information MOHELA was not required to disclose.

Even if the Court determines that Plaintiffs' claims based on one or more of the challenged communications are not preempted, the Court must "conduct a closer, allegation-by-allegation, assessment of which claims . . . are based on affirmative misrepresentations and which are possibly based on failures of disclosure." *Navient*, 967 F.3d at 292. Careful policing is especially important because Plaintiffs never pleaded this theory and raise different communications to different Plaintiffs. At minimum, any argument premised on MOHELA's failure to provide information beyond what federal law required is expressly preempted.

**2. Even If Not Expressly Preempted, Plaintiffs' New Theory Is Conflict Preempted.**

Plaintiffs' threshold response conflicts with binding Ninth Circuit precedent. Citing *Nelson* and *Lawson-Ross*, they insist that the HEA's express preemption provisions foreclose conflict preemption. Opp. at 24. But *Lawson-Ross* acknowledges that *Chae* "concluded otherwise when it determined that although some of the borrowers' claims were not expressly preempted by § 1098g, they nonetheless were implicitly preempted." 955 F.3d at 922. *Chae*'s conclusion controls.

Plaintiffs claim that California law required MOHELA to either suspend credit reporting or alter the coding to CRAs to somehow indicate that discharges were pending. But as discussed, federal regulations require MOHELA to credit report, and the USDS Contract requires MOHELA to do so following the industry-standard Metro 2 format, which does not have a code for "discharge pending" or otherwise permit free-form reporting. *See* Mot. at 18. Nonetheless, Plaintiffs suggest that MOHELA should use a code stating that the loan has been "paid in full for less than the full balance." Opp. at 22. That comment code does not accurately capture the statuses of Plaintiffs' loans, but even if it did, it would be impossible for MOHELA to add such a code consistent with federal law: MOHELA lacks "discretion to simply report a special comment code if it is not outlined by FSA."[11] Dkt. 159-10, Armbrust MSJ-2 Decl. Ex. J (Bates Dep. 54:16–19); *see also* Armbrust MSJ-2 Reply Decl. Ex. Q, Bates Dep. Tr. at 63:21–64:10, 68:25–69:14. And FSA did not instruct MOHELA to use that—or any—special comment code for this circumstance. Dkt.

[11] Plaintiffs fault the deponent for not "cit[ing] any authority," Opp. at 21, but Plaintiffs cannot rebut sworn testimony with nothing.

159-10, Armbrust MSJ-2 Decl. Ex. J (Bates Dep. Tr. at 54:12-56:25); Dkt. 158, Bates Decl. ¶ 7. Thus, it would be impossible for MOHELA to comply both with federal law and with Plaintiffs' view of what California law required. Where compliance with federal law and state claims is "a physical impossibility," the state claims are preempted. *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015).

Plaintiffs' Opposition fares no better under obstacle preemption. Their effort to dismiss the uniformity interest (at 23) ignores *Chae*'s holding that the HEA reflects a federal objective to have rules governing federal loans that "apply across the board." 593 F.3d at 945. Even *Lawson-Ross* and *Nelson* acknowledge that uniformity is a more compelling interest in cases involving "core administrative aspects" of the federal program, rather than, for example, "personalized advice about loan forgiveness." *Lawson-Ross*, 955 F.3d at 922–23; *see also Nelson*, 928 F.3d at 651.

This point defeats Plaintiffs' challenge to MOHELA's borrower communications. The challenged communications were standardized repayment disclosures operating within a federally regulated servicing regime—not free-standing promises or personalized borrower counseling. *See supra* II.C.1. Plaintiffs' theory would nevertheless require MOHELA to use different communications for California borrowers awaiting Group Discharge, leaving courts applying California law to decide when an anticipated discharge triggers a different communication, which borrowers qualify, and what MOHELA must say. Other States could then prescribe different answers for borrowers with the same federal loans, subject to the same federal servicing rules. Thus, Plaintiffs are wrong when they assert that they simply seek a generally applicable prohibition on false statements. *Chae* forecloses the result Plaintiffs seek: the HEA does not permit "varying state law challenges across the country" to displace rules designed to "apply across the board." 593 F.3d at 945–46.

## III. CONCLUSION

For the reasons stated above and in MOHELA's motions for summary judgment, the Court should grant MOHELA summary judgment on Gary's and Plamondon's claims. The Court should also grant MOHELA summary judgment on Plaintiffs' new, belatedly raised theory.

Respectfully submitted,

SIDLEY AUSTIN LLP

Date: September 4, 2026

By: */s/ Sheila A.G. Armbrust*

Sheila A.G. Armbrust (SBN 265998)
sarmbrust@sidley.com
Tony S. Mekari (SBN 347057)
tony.mekari@sidley.com
SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, CA 94111
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9662
Facsimile: (310) 595-9501

Jacquelyn Fradette (pro hac vice)
jfradette@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8822

*Attorneys for Defendant*
*Higher Education Loan Authority of the*
*State of Missouri*