# EXHIBIT O

**Pages 1 - 47**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| JAMIE MALDONADO, individually and on behalf of all others similarly situated, et al., | ) |
| Plaintiffs, | ) |
| v. | ) **No. 3:24-cv-07850-VC** |
| Higher Education Loan Authority of the State of Missouri, | ) |
| Defendant. | ) |

San Francisco, California

Thursday, March 5, 2026

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:

PROJECT ON PREDATORY STUDENT LENDING
769 Centre Street
Jamaica Plain, MA 02130
**BY: REBECCA C. EISENBREY, ATTORNEY AT LAW**
**NOAH ZINNER, ATTORNEY AT LAW**

KEMNITZER, BARRON & KRIEG
1120 Mar West Street, Suite C2
Tiburon, CA 94920
**BY: MALACHI J. HASWELL, ATTORNEY AT LAW**

(Appearances continued on following page.)

REPORTED BY: April Wood Brott, CSR No. 13782
Official United States Reporter

**APPEARANCES (continued):**

For Defendant:

SIDLEY AUSTIN LLP
101 California Street, Suite 3500
San Francisco, CA 94111

**BY: SHEILA A. ARMBRUST, ATTORNEY AT LAW**
**TONY S. MEKARI, ATTORNEY AT LAW**

**Thursday - March 4, 2026 10:21 A.M.**

**P R O C E E D I N G S**

**---o0o---**

**THE COURTROOM DEPUTY:** Now calling Civil Case 24-7850, Maldonado, et al. versus Higher Education Loan Authority of the State of Missouri.

Would counsel please state their appearances for the record, starting with the plaintiff.

**MS. EISENBRAY:** Yes. Rebecca Eisenbray from the Project on Predatory Student Lending for the plaintiffs. With me is Noah Zinner from the Project on Predatory Student Lending and Kai Haswell from Kemnitzer, Barron & Krieg.

**THE COURT:** Hi.

**MS. ARMBRUST:** And good morning. Sheila Armbrust from Sidley Austin on behalf of MOHELA. Along with me is Tony Mekari.

**THE COURT:** Okay. Let me start with the plaintiffs. I guess -- I think the best way to start would be to just get some clarification from you on what claims you're pursuing and what claims you're not pursuing and what arguments you're pursuing and what arguments you're not pursuing.

Part of it is that your briefing was vague on it, and part of it is that, you know, you make a number of arguments in your briefs that are different from the story that was told in the complaint, or seemed different from the story that was told in

the complaint.

I mean, my understanding after, you know, when we -- there was a motion to dismiss, I think.

**MS. EISENBRAY:** Yes.

**THE COURT:** Right? I think for failure to state a claim, and I also think -- and there was a motion to dismiss based on arm-of-the-state immunity, right?

And back then, my understanding of this lawsuit was that it was about the Department of Education's announcement that all these people's loans would be discharged and that MOHELA, as a result of that announcement, had an obligation not to report the debts to credit agencies and had an obligation not to send communications to the plaintiffs saying that there was a balance on the loans, right?

And it turns out that seems clearly wrong, right, that, you know, it was not until the names were transmitted by the Department of Education to MOHELA that MOHELA had an obligation to treat the debts as discharged, right? MOHELA was not obligated to treat the debts as discharged until it got the names from the Department of Education.

And it actually would have been very problematic if MOHELA had treated the debts as discharged before getting the names from the Department of Education, and so it seems to me that your argument, your assertions in the complaint were -- your allegations in the complaint were simply wrong as a matter of

law.

And I guess -- and you make a number of different arguments in your summary judgment papers. But I guess my first question to you is: Do you still argue that MOHELA was obligated to treat the debts as having been discharged upon the Department of Education's announcement that they would be discharged?

**MS. EISENBRAY:** Yes, Your Honor.

**THE COURT:** You still contend that?

**MS. EISENBRAY:** Yes, and I think there is some confusion about the word "discharge," and this is a problem that I think we did not really -- we may not have clarified entirely in our briefing. But basically, debt is an obligation to repay. As soon as the Department made these announcements, the borrowers no longer had an obligation to repay. So the creditor --

**THE COURT:** I know. Once the Department made these -- the announcement, the borrowers still had an obligation to repay but were told that that obligation to repay was going to be extinguished.

**MS. EISENBRAY:** Well, this is actually -- we dispute that. It is our understanding, and it is our argument, that because these student loans are contracts, they are governed by contract law, and in California and in general, an obligation is extinguished by a release therefrom given by the debtor --

given to the debtor by the creditor upon a new consideration or in writing with or without consideration.

**THE COURT:** So your argument is that as soon as the Department of Education made its announcement that debts, student loans for people who went to these various institutions were going to be discharged, eventually going to be discharged, that MOHELA was obligated to treat them as having been discharged?

**MS. EISENBRAY:** For purposes of consumer protection laws, for purposes of reporting to credit reporting agencies and ceasing collection activities.

**THE COURT:** Okay.

**MS. EISENBRAY:** Yes.

**THE COURT:** I don't see how -- I don't see how that could be right. I don't think that -- I don't see how MOHELA was obligated to treat the debts as having already been discharged when they weren't yet discharged. In fact, MOHELA was the agency that was responsible for discharging the debts, right?

**MS. EISENBRAY:** MOHELA was responsible for effectuating the discharge --

**THE COURT:** Right, and they --

**MS. EISENBRAY:** -- from getting the loans --

**THE COURT:** And MOHELA was instructed by the Department of Education, "Don't effectuate any discharge until

you get a list of names from us."

**MS. EISENBRAY:** MOHELA was informed by the Department of Education also to comply with all state credit reporting laws and other --

**THE COURT:** Okay.

**MS. EISENBRAY:** -- related laws.

**THE COURT:** Let us assume for the sake of argument that I'm never going to agree with you that MOHELA was obligated to treat the debts as having been discharged when the Department of Education made its announcement.

Let's assume for the sake of argument, this discussion, that I am going to agree with MOHELA that it was not obligated to treat them as having been discharged until the Department of Education sent lists over to -- under state law or federal law or any law, right, that it was not obligated to actually treat them as having been discharged until it got the lists. My question is: Is there anything left in your case -- I know that -- well, scratch that question.

I know that you have -- that what -- at a minimum, what's left of your case, right, is that MOHELA did receive the names of two of your clients and still didn't effectuate the discharges.

**MS. EISENBRAY:** Correct.

**THE COURT:** Right? And obviously, that is left in your case, right?

And it seems to me you have a rather strong claim that MOHELA violated the various consumer protection laws by failing to discharge the debts at that point and to continue to treat them as not having been discharged, right?

But aside from that, there's -- in your briefing, there's all this talk about, like, the debts being in forbearance and communications that MOHELA sent to credit agencies and to Plaintiffs while the debts were in forbearance, and I just don't remember any of that from the complaint. I don't remember any of that being part of the case, but you're, at least as a factual matter, describing a bunch of that stuff in your summary judgment briefing.

Are you -- do you have separate claims? Like, do you have separate claims about even assuming that MOHELA was not obligated to treat the debts as having been discharged when the Department of Education made its announcement? Do you have some other claims about forbearance status of the loans and what MOHELA could or couldn't do or should or shouldn't have said in light of the fact that they were in forbearance status?

I just couldn't -- I couldn't pin your briefs down on that issue.

**MS. EISENBRAY:** Well, I think with respect to forbearance for Ms. Gary, one of the named plaintiffs for whom MOHELA says that they did not receive her name on a group file, they did receive her name on a "do not bill" list, which was

instructions to place borrowers on forbearance because their loans had been sent to a different servicer.

**THE COURT:** And when did MOHELA receive her name on a "do not bill" notice?

**MS. EISENBRAY:** That was in October 2023.

**THE COURT:** October 2023.

**MS. EISENBRAY:** I believe it was October 6th, 2023. And that, the email which we have in the record, does state, "These are borrowers who have been approved for discharge. The discharge instructions were sent pursuant to instructions based on the type of loans that she had to a different servicer to initiate the process, but her loans are being discharged," and so that was where forbearance came in there.

In other cases, the issue of --

**THE COURT:** But could I ask you a question --

**MS. EISENBRAY:** Yes, of course.

**THE COURT:** -- about Gary?

So MOHELA received that communication about her in October 2023?

**MS. EISENBRAY:** Yes.

**THE COURT:** And is Gary the one who they sent repeated communications to that you have -- you know, you have -- "You have an amount due of X, and in fact, you have an amount past due"?

**MS. EISENBRAY:** Yes.

**THE COURT:** From the previous month?

**MS. EISENBRAY:** Yes.

**THE COURT:** That was Gary?

**MS. EISENBRAY:** That was Gary.

**THE COURT:** Okay.

**MS. EISENBRAY:** And they continued to send her those statements until at least January of 2024.

**THE COURT:** Okay. So where is the -- where in the record is this communication between the Department of Education and MOHELA about the "do not bill" list?

**MS. EISENBRAY:** The October 26th email is Exhibit, to the Haswell declaration, Number 29.

**THE COURT:** Okay. Thank you.

**MS. EISENBRAY:** And then we cite to an excerpt from the deposition testimony of Laquan Anthony, in which he confirms that she was indeed on that list.

**THE COURT:** And what claim, what claims, do you have based on that, and when did they become part of the case?

**MS. EISENBRAY:** It is our understanding -- or, you know, of course, we believe, based on statements that the Department made in other cases that once the announcement has been made, this debt can no longer legally be collected on. That was in the Hemphill case in the District of Columbia.

It relates to a specific different group discharged, but the Department has said in repeated joint status reports

that the purpose of these announcements was to cancel the debt, and any attempts to collect would be unlawful. We cite that in the briefing.

But for the credit reporting claims, for example, once the creditor -- or rather, once the servicer, once MOHELA -- actually, it doesn't even matter to the specific type of notice, but if they had any reason to believe that the information that they were reporting to credit reporting agencies was inaccurate or incomplete, they had an obligation to change their reporting, and they did not do that.

So we believe that that obligation came into effect as soon as the announcements were made. We have in the briefing evidence that MOHELA was informed the day that each of these group announcements was made that all affected borrowers would be having their loans discharged.

At that point, they had an obligation to, at minimum, make a notation on the reports that they were submitting to credit reporting agencies, to say, if nothing else, "Borrower approved for discharge" or "Discharge Pending" or "Discharge forthcoming," because if a borrower, MOHELA -- I believe it's MOHELA that puts a lot of stock in this forbearance, saying, "There was no harm. They weren't expected to make any payments."

But specifically in the credit reporting context, if you have a $145,000 student loan balance, as Ms. Gary did, and that

student loan balance is being reported as due but in forbearance with no payments due, your average creditor is going to see forbearance and think, "Not only is this a large balance, but this person can't pay it. This is in forbearance because of hardship. This is in forbearance for some reason."

It doesn't say, "Forbearance, discharge processing."

**THE COURT:** Okay. So you are not making an argument that MOHELA violated the law by not treating debts as being in forbearance?

**MS. EISENBRAY:** Correct.

**THE COURT:** You're making an argument that MOHELA violated the law -- even if I disagree with you that they were obligated to treat them as having already been discharged, right, your argument is that MOHELA needed to do something to treat them as discharge pending?

**MS. EISENBRAY:** At minimum, yes.

**THE COURT:** And treating them as discharge pending would involve, as it relates to reporting to the credit agencies, just making a notation that discharge is pending. And as it relates to communications with the borrowers, it would mean what?

**MS. EISENBRAY:** They're sending bills to borrowers that state -- in some cases, it is a statement that an amount will soon be due and a balance that will soon be due. Nowhere does it state, "This will be discharged. You will not have to

pay this."

This is, you know, potentially coercive, trying to get borrowers to make payments they do not owe. In Ms. Varela's case, she did, in fact, make a payment, and that payment was made after --

**THE COURT:** But could --

**MS. EISENBRAY:** -- the instructions --

**THE COURT:** -- I ask you --

**MS. EISENBRAY:** -- were received.

**THE COURT:** -- a question about that?

**MS. EISENBRAY:** Yes.

**THE COURT:** Putting aside the forbearance issue, because it seems like you're not making any claims based on the fact that the debts were in forbearance and MOHELA didn't treat them as being in forbearance, and I thought that's -- I thought you were making arguments about that in your brief, but you're saying now you're not making arguments about that.

You're making arguments about how MOHELA needed to change its conduct because the Department of Education had announced that debts would be discharged in the -- at some point in the future.

But if you owe me money and I announce that your debt to me is going to be discharged at some point in the future, presumably, you still have to pay me the monthly payments until the debt gets discharged, right?

**MS. EISENBRAY:** Well, not if you say, as the government did here, "No further payments will be due." The borrower does not have to take any further action, and particularly not if you go into a different court and say any attempts to collect on that amount are unlawful.

**THE COURT:** Okay. So they said no further payments will be due when they made the announcement?

**MS. EISENBRAY:** Yes. The letter included a statement that no further payments are due.

**THE COURT:** Okay. And what's this case where they we went into court and said that it would be illegal to collect on these debts?

**MS. EISENBRAY:** That is Hemphill versus McMahon, in the District of -- in DDC.

**THE COURT:** Okay.

**MS. EISENBRAY:** And we have a citation in the brief to the specific docket. They've made the same statement any number of times in the Hemphill case.

**THE COURT:** And so what you are saying is that, given that the Department of Education announced that the debts would be discharged, and given that the Department of Education announced that "Because your debts are being discharged, starting today, you will no longer have to make any payments on these loans" --

**MS. EISENBRAY:** Correct.

**THE COURT:** -- that MOHELA, starting then, needed to treat it that way?

**MS. EISENBRAY:** Yes.

**THE COURT:** Like, even if MOHELA didn't have the obligation to actually effectuate the discharge until it got the go-ahead from the Department of Education, it needed to -- all of its communications with credit agencies and all of its communications with the borrowers needed to reflect the fact that the borrowers did not need to make another payment --

**MS. EISENBRAY:** Correct, Your Honor. Once --

**THE COURT:** -- while the process for discharging the debt was pending.

**MS. EISENBRAY:** Correct.

**THE COURT:** Okay. Where is that in your -- in the complaint or in your briefs?

I mean, that argument sounds -- you know, intuitively sounds sensible to me --

**MS. EISENBRAY:** Yes.

**THE COURT:** -- but it's -- to me, as I sit here, it's a new argument. I don't recall reading it anywhere in the complaint or in the briefs.

**MS. EISENBRAY:** I know that we highlight the language "No further payments are due" in the complaint. I don't have the exact paragraph in front of me.

But we also do make the argument in our response and

opposition to the Department's motion and in our reply in support of our --

**THE COURT:** Well, could you show me where?

**MS. EISENBRAY:** -- cross-motion. Yes.

**THE COURT:** It's possible that I was just reading the briefs too quickly and I didn't catch it, but --

**MS. EISENBRAY:** I mean, that can happen.

It is in our response in Docket 111 at page 15, "It is undisputed that" --

**THE COURT:** Your opposition and cross-motion?

**MS. EISENBRAY:** Yes.

**THE COURT:** Okay. At page what?

**MS. EISENBRAY:** At page 15, ECF 18, "It is undisputed that if Plaintiffs' creditor told each plaintiff that they were eligible for discharge, they would not have to make further payments."

**THE COURT:** Right.

**MS. EISENBRAY:** "No further payments were due."

**THE COURT:** Right.

**MS. EISENBRAY:** "They do not have to make any further payments on the loans."

**THE COURT:** Right.

**MS. EISENBRAY:** And then we go into that point in more detail in our...

**THE COURT:** And where --

**MS. EISENBRAY:** Reply.

**THE COURT:** Where do you argue that that -- that the -- MOHELA was obligated to make that clear in its communications to the debtors and then to the credit reporting agencies, and its failure to do so violated these various statutes?

**MS. EISENBRAY:** Well, we argue that the failure to note that -- or rather, the failure to act as though that had not happened was misleading.

**THE COURT:** Okay. Can you just show me where?

**MS. EISENBRAY:** Yes. I mean, we say, also on 15 [as read], "MOHELA continued billing Plaintiffs, demanding payments. MOHELA's argument that it may continue reporting loans for which the creditor has confirmed no further payments are due unless and until it receives a specific notice," that is the group files itself, "does not hold water. This argument would write MOHELA specific and explicit representation to borrowers that they do not have to make further payments on the loans out of existence."

Also, in the introduction to our cross --

**THE COURT:** But in terms of, like, what MOHELA was supposed to do, I know that you argued that MOHELA was supposed to treat these as having been discharged, but beyond that, just in terms of saying, "Here's what MOHELA should have done to prevent its communications from being misleading or to avoid

engaging in improper debt collection," I just -- I don't recall seeing any argument along those lines.

**MS. EISENBRAY:** Well, I think that our argument would be that once the Department confirmed that the borrowers to longer had an obligation to make payments, any representation to the contrary was a misrepresentation under the relevant statutes.

You know, we were responding and so might not have made that as perfectly explicit as possible.

**THE COURT:** No. I mean, it might have been -- maybe it was just me not getting it, but, I mean, that's why I'm asking you to --

**MS. EISENBRAY:** Yes, and then I believe that in our reply -- and I'm sorry. I have so many papers here.

**THE COURT:** Yep.

**MS. EISENBRAY:** In our reply, we say, "After the group discharge" -- sorry. On page 10 -- or page 14, ECF page 14 --

**THE COURT:** Yeah.

**MS. EISENBRAY:** "After the group discharge" -- sic.

"After the group discharges were" --

**THE COURT:** Wait.

**MS. EISENBRAY:** -- "announced, Plaintiffs" --

**THE COURT:** Hold on. What part of page 10 are you looking at?

**MS. EISENBRAY:** I'm at the beginning.

**THE COURT:** Okay.

**MS. EISENBRAY:** Yeah. So, "After the group discharges were announced, Plaintiffs' relevant loan debt was unenforceable debt that cannot be legally collected."

That's citing to Hemphill, the Department statement, and the joint status report.

"And the communications sent to each plaintiff stating otherwise were false and misleading as a matter of law."

**THE COURT:** Okay. The nuance that I was -- I guess I was not understanding is that you're saying that you're not merely arguing that these communications were legally inappropriate because the debts had already been discharged. You're also arguing that, even if the debts had not already been discharged, what was clear is that they couldn't be collected on, and so any communications that MOHELA made suggesting that the debts could be collected on were misleading and improper debt collection --

**MS. EISENBRAY:** Right.

**THE COURT:** -- practices?

**MS. EISENBRAY:** And this is where I was trying to sort of tease out the difficulty of the word "discharge" in this context.

So at the time that the announcements were made, the debt had not technically been discharged, which is a complicated process that is effectuated by MOHELA, but the obligation on

the debt had been extinguished.

The Department had said -- had foresworn any collection, any attempts to get repayment had said, "You no longer owe us this money."

**THE COURT:** Right, but you seemed to be saying in your briefs -- and again, maybe it's just that I misunderstood, but it seemed like you were arguing that MOHELA was obligated to not report this debt to credit agencies.

**MS. EISENBRAY:** Either that --

**THE COURT:** I don't see how that could be --

**MS. EISENBRAY:** Well --

**THE COURT:** -- right, if the debt hadn't been discharged yet. How -- I understand your argument that you're making now --

**MS. EISENBRAY:** Yes.

**THE COURT:** -- that it needed to be reported it in a way that, like, the discharge was pending and that these people were never going to have to pay anything on these loans. I get that.

**MS. EISENBRAY:** Yes.

**THE COURT:** But it seemed to me that -- what I understood you to be arguing in the complaint and in your briefs is MOHELA violated the law by reporting this debt to credit agencies, full stop. And I guess I just don't understand how that could be.

**MS. EISENBRAY:** Well, the standard set in Gorman is inaccurate or misleading and that technically accurate information can still be misleading.

**THE COURT:** Right.

**MS. EISENBRAY:** So even if the debt was technically still outstanding because MOHELA had not actually yet cleared it from its books, it was misleading to not, at minimum, put a notation on it stating that discharge was processing.

Also --

**THE COURT:** That makes sense.

**MS. EISENBRAY:** Yes.

**THE COURT:** I just -- I'm trying to figure out where that is in the brief. I don't remember seeing that. But anyway, go ahead.

**MS. EISENBRAY:** Well, but --

**THE COURT:** Say what you were going to say.

**MS. EISENBRAY:** Also, MOHELA doesn't -- they can suppress reporting, and in fact, they're obligated to not report information that they know could be inaccurate or misleading.

So they could not -- arguably could not, under their contract with the Department, delete the credit tradelines, but that doesn't mean that they had to report the full balance is due and owing.

They could have suppressed reporting. They could have,

you know, added a comment. There were many things that they could have done. And instead, what they did was report misleading information about huge outstanding balances that would have seriously adversely affected the borrowers.

**THE COURT:** Okay. All right. Do you want to respond to that?

**MS. ARMBRUST:** Sure. Thank you, Your Honor.

I think that Your Honor well understands the reason we're moving for partial summary judgment, which is that this complaint started from the premise, on information and belief, that MOHELA had received instructions from the Department to discharge all of the putative class member student loans, and discovery has made clear that's just not true.

Two of the named plaintiffs, they've never appeared on a file, and two have. And that shows that that is the contracted process from the Department. The contracts, the change requests, CR 6346 -- they make clear the files are the means to effectuate the discharges.

I don't think that there is any confusion about the world "discharge." It's the means to extinguish the loan. I think what we're talking about here is confusion about what "forbearance" means and what the obligation is for MOHELA when it comes to this forbearance period.

Now, not a plaintiff in this case has paid down his or her federal student loans. Ms. Varela did make a payment, but she

withdrew the payment. So all of these plaintiffs are ones for whom there's evidence they haven't made a single payment.

**THE COURT:** Right, but what they're saying now is they're not pursuing any claims based on the failure to treat the loans as being in forbearance, which I thought they were from reading their briefs, but they're pursuing claims based on the failure -- they're persisting in their argument that MOHELA was required -- upon hearing the announcement from the Department of Education, MOHELA was required to treat the debts as already having been discharged.

And they are arguing that MOHELA violated -- even if that's not right, that MOHELA violated the laws by not making clear that discharge was pending and there was nothing further owing on the loan, or whatever.

I don't know exactly what MOHELA was required to say, but that MOHELA was required to treat the loans in that way and that any communications it made that were misleading in that regard violated these laws.

And so what's your answer to that?

**MS. ARMBRUST:** A few things, Your Honor.

First, we do not agree that notice equals discharge.

Second, I think Your Honor's struggling with the same thing MOHELA is struggling with, which is what is the complaint? What are the allegations in this case? Because where we are right now is far removed from what was filed.

But with respect to this idea that MOHELA had some affirmative obligation to do something unique with reporting a future discharge -- and I'll note the Hemphill government statements of interest say repeatedly, "The government hasn't finished effectuating this discharge process. It's still ongoing."

But there's nothing in the FCRA that says there's some annotation, and there's no expert testimony at this point. There's no evidence to say there's something MOHELA could have done with the credit reporting agencies to say "discharge pending."

Now, we submitted --

**THE COURT:** Why couldn't it?

**MS. EISENBRAY:** It's not clear what that code would have even been, Your Honor. There's no testimony about that.

What we have submitted for you is what the credit reports looked like, for example for Jeff Plamondon and Alma Gary, and that's in Exhibits L and M. And those show that their loans were always current, not in a delinquency. And for the period of exceptional forbearance, beyond the COVID period, they say "defer."

So a credit reporting agency -- these credit reports don't establish that there's something negative that the credit reporting agencies are inferring.

**THE COURT:** Well, but --

**MS. ARMBRUST:** Your Honor, we also --

**THE COURT:** -- if I were a creditor, wouldn't it be important for me to know that this person is never going to have to pay another dime on this loan?

**MS. ARMBRUST:** Your Honor, the loans show that these individuals were in current status, that they --

**THE COURT:** Right, but that's --

**MS. ARMBRUST:** -- were making payments.

**THE COURT:** -- not my question. My question is if I were a creditor, wouldn't it be very important information that this person who I'm considering lending money to is never going to have to pay another dime on this $200,000 debt that they have?

**MS. ARMBRUST:** It may be a question a creditor would have, Your Honor. I hear you. But there's no evidence in the record that that's what the creditors were asking.

**THE COURT:** Why -- there doesn't need to be any evidence in the record that's what the creditors are asking. It's the obligation of the debt collector to make sure that they're reporting stuff in a way that is not going to create a misimpression about the debtor.

**MS. ARMBRUST:** The --

**THE COURT:** And the obligation to -- their obligation to communicate with the debtor in a way that is not going to create a misimpression about what they owe and when they owe

it.

**MS. ARMBRUST:** Your Honor, the credit reporting shows that these individuals aren't delinquent on their loans.

**THE COURT:** I know. You keep saying that --

**MS. ARMBRUST:** And --

**THE COURT:** -- but that's not the point, I think, as it relates to these credit reports.

**MS. ARMBRUST:** Your Honor, that's just not what Plaintiffs have pled. It's not the argument that they've advanced. It's something we're hearing here for the first time --

**THE COURT:** Okay. But --

**MS. ARMBRUST:** -- right now.

**THE COURT:** -- what's your response to it? I mean, if the Department of Education -- if MOHELA has reason to believe that these people are never going to have to make a payment again because their debts are going to be discharged, doesn't MOHELA have an obligation to acknowledge that in its communications with debtors and indicate that in some way when it's reporting to credit agencies?

**MS. ARMBRUST:** It's --

**THE COURT:** I mean, it's very -- seems like very important information.

**MS. ARMBRUST:** It's not in the contracts, Your Honor. It's not in any of the credit reporting requirements, and

MOHELA did cite in its briefing at pages 15 and 16 --

**THE COURT:** When you say it's not in the contracts and it's not in the credit reporting requirements, is a debt collector limited to doing what is in the credit reporting requirements, or do they have a more general obligation to make sure that they're not communicating in a way that's misleading about the status of the debt?

**MS. ARMBRUST:** Your Honor, I don't think it's misleading about the status of the debt.

And in part, we cite in our briefing the line of bankruptcy cases where people have a future entitlement, which is what they have here.

**THE COURT:** But we don't -- in bankruptcy cases, we don't know whether the debt is going to be discharged. We don't know whether this person is going to be obligated to pay anything.

And by the way, in bankruptcy cases, isn't there -- aren't -- isn't there, by the way, an obligation to indicate that the debt is in bankruptcy proceedings?

**MS. ARMBRUST:** I'm not sure if there's that obligation, Your Honor. But in those cases, even though there's some future obligation, it's not the time to change the credit reporting.

The contracts say that MOHELA will effectuate the discharge, then update the credit reporting, then update the

tradelines. Those are the steps laid out in MOHELA's contracts --

**THE COURT:** Can I ask --

**MS. ARMBRUST:** -- with the Department and in the change request at issue here.

**THE COURT:** I guess I don't understand the bankruptcy thing, because the debt is still disputed, right? And in this case, as the plaintiffs tell it, like, there's no chance these plaintiffs -- they were going to have to wait to get their debts discharged, but they were not going to be required to make another payment in the interim, and the debts were going to be discharged.

Now, maybe there's some small chance that, you know, the government changes its mind or whatever, right? And so that -- and that's --

**MS. ARMBRUST:** Well --

**THE COURT:** -- part of why I think you're right, you know, that MOHELA was not obligated to treat the debts as having been discharged, right?

**MS. ARMBRUST:** And Your Honor, you're right. In the One Big Beautiful Bill Act, the government has changed the group discharge requirement. So it is the future statement of intent.

**THE COURT:** Right.

**MS. ARMBRUST:** To discharge these loans.

**THE COURT:** Right.

**MS. ARMBRUST:** But at this point in time, for two of these plaintiffs and probably others, their loans have not actually been discharged. So it's not clear that -- MOHELA is sort of stuck between a difficult position of what it should do based on the Department's instructions, or lack thereof, and what is a new idea of reporting, you know, "discharge pending" to credit reporting agencies.

**THE COURT:** Right, but what's -- I guess I don't understand what's wrong with -- I mean, in communications, let's -- number one, what's wrong with reporting something along the lines of "discharge pending" to reporting agencies?

And then number two, why isn't MOHELA obligated to make abundantly clear in any communication with a debtor they don't have to pay?

Like, "You do not have to pay." You know, "Technically, you have a balance due of $1,100, but you don't have to pay it because the Department of Education has made clear that your debt is going to be discharged and that while that process is pending, you don't have to make any payments".

Why doesn't MOHELA have the obligation under these laws to do that?

**MS. ARMBRUST:** Your Honor, MOHELA has not attempted to collect from any of these individuals. The billing notices went out, but they didn't -- MOHELA hasn't taken them to --

**THE COURT:** Well, what's a billing notice if not an attempt to collect?

**MS. ARMBRUST:** It's not -- there's no, you know, threat of enforcement. There's no delinquency notices.

**THE COURT:** But they got bills.

**MS. ARMBRUST:** They got bills --

**THE COURT:** I mean --

**MS. ARMBRUST:** -- at a point --

**THE COURT:** -- when you get a bill --

**MS. ARMBRUST:** -- in the past.

**THE COURT:** -- that is an attempt --

**MS. ARMBRUST:** That's right.

**THE COURT:** -- to collect, right?

**MS. ARMBRUST:** But there's case law under the Rosenthal Act, Your Honor, that it's not -- seeking payment -- and we cite these at pages 15 and 16 of our brief -- is not in violation of the FDCPA.

**THE COURT:** Seeking payment when somebody has no obligation to pay?

**MS. ARMBRUST:** If the debt is still owing, trying to collect -- or issuing a bill but not forcing someone to pay is not a violation of the law.

**THE COURT:** What case is that?

**MS. ARMBRUST:** Your Honor, it's -- just give me a moment, Your Honor.

**THE COURT:** Take your time. I can't wait to read this case.

**MS. ARMBRUST:** Your Honor, it's the Ninth Circuit's Stimpson opinion, Stimpson v. Midland Credit.

We quote it at page 16 of our brief: "There's nothing inherently deceptive or misleading in attempting to collect a valid, outstanding debt, even if it's unenforceable in court."

**THE COURT:** Well, but what if the person trying to collect the debt knows that the person doesn't owe the money or has reason to know the person doesn't owe the money?

**MS. ARMBRUST:** Your Honor, at the point of -- without the discharge notice, the debt is still valid and on the books.

**THE COURT:** But it's not due.

**MS. ARMBRUST:** It's --

**THE COURT:** The money's not due. They don't have an obligation to make a payment. If you send somebody a bill, that inherently is telling them that they have an obligation to make a payment. And if the debt collector knows or has reason to know that they are not obligated to make the payment, how could that not be a violation of the law?

**MS. ARMBRUST:** Your Honor, here -- I mean, these end up being -- they could be questions of fact, but the point is, Your Honor, none of these plaintiffs actually did make payments, so they didn't believe that their bills were due.

**THE COURT:** But that's not --

**MS. ARMBRUST:** Or paid down --

**THE COURT:** I don't think that's relevant. It's an objective standard, right? And it's the least sophisticated debtor standard.

**MS. ARMBRUST:** You're right, Your Honor. But these plaintiffs --

**THE COURT:** And so --

**MS. ARMBRUST:** -- did not pay down their debts.

**THE COURT:** So what -- so I guess what I'm wondering, as we -- you know, now that we've been talking about this for a while, is what is it that you're asking me for right now? Is it -- are you simply asking for a ruling that MOHELA was not required to treat the debts as having been discharged until they got the lists -- until they got the names from the Department of Education?

If that is what you're asking for, I think that's fine, right? I don't -- I'm not -- I think that that's -- you know, I think you're right about that, but where does it get us in this case? I mean, it doesn't seem to advance the ball in this case, given all of this other stuff that we've been talking about.

**MS. ARMBRUST:** Your Honor, I think it does advance the ball, because it means that individuals who have received -- who have never been on a discharge file don't have causes of action in this matter, and it means that individuals for the

time --

**THE COURT:** Well, but --

**MS. ARMBRUST:** -- period before --

**THE COURT:** -- why isn't there a cause of action based on the stuff that we were just talking about?

**MS. ARMBRUST:** That's not what the complaint is about, Your Honor. That's a different case.

**THE COURT:** So you're saying that they've forfeited any claim based on the theory that you and I were just discussing?

**MS. ARMBRUST:** Your Honor, I don't see it in the complaint.

**THE COURT:** Okay.

**MS. ARMBRUST:** It's elucidated here for the first time.

**THE COURT:** Well, it's one thing -- and I don't remember seeing it in the complaint either. I didn't go back and read the complaint in preparation for this hearing, but from our prior stuff, I don't remember seeing that.

But it's not -- it seems to me that it's not just about whether it's in the complaint, right? It's about whether MOHELA was on notice of this theory of liability, and at -- and if MOHELA was put on notice of this theory of liability, when was it put on notice of this theory of liability, and has it had a chance -- did it have a chance to do discovery related to

that and all of that?

I mean, I think that's a more important question than whether it's in the complaint because there are -- you know, there are -- what is in the complaint is MOHELA's conduct and the communications that it made to the plaintiffs and the communications that it made to the reporting agencies and the credit agencies, and, you know, an assertion that it violates the Rosenthal Act and that it violates the student loan statute and all that other stuff, right?

And so if it wasn't specifically spelled out in the complaint, I'm not sure that matters as long as MOHELA was, at some point, put on notice of the theory in a discovery response or something along those lines.

**MS. ARMBRUST:** Your Honor, I think I'd have to confer with my team to see if there's anyone who had notice before, you know, crystallizing it here, but I think the colloquy makes clear that we've all been confused. The case started with an idea that on information and belief, all of these plaintiffs appeared on discharge lists.

That's where we focused the discovery. It's why we asked to bring a motion of summary judgment, according to the Court's standing order, before class certification because we knew two of the plaintiffs had never appeared on discharge lists. We submitted declarations, but now we've submitted the lists themselves filtered for California residents that show that no

one's ever appeared on a discharge -- that two of the plaintiffs have not appeared.

**THE COURT:** Okay. I mean, maybe the answer is I grant a -- treat your motion for summary judgment as a motion to dismiss any claims that are premised on the idea that MOHELA was required to treat the debts as having been discharged once the Department of Education made its announcement, and we could argue about the rest later about what's left in the case.

Let me ask you one other question though: Why shouldn't I grant summary judgment to them on MOHELA's failure to effectuate the discharges after -- in a remotely timely fashion after receiving the notices?

**MS. ARMBRUST:** Your Honor, I think their -- the question of delay -- and it's different for Ms. Maldonado and Ms. Varela -- is a question for the jury to decide.

**THE COURT:** Why?

**MS. ARMBRUST:** It's a question -- the question --

**THE COURT:** I mean, is there --

**MS. ARMBRUST:** -- of undue delay.

**THE COURT:** Could any reasonable jury conclude that MOHELA did not violate the law by failing to timely effectuate the discharges?

**MS. ARMBRUST:** Your Honor, I think so, given the --

**THE COURT:** And, I mean, more to the point --

**MS. ARMBRUST:** Yes.

**THE COURT:** -- right, could any reasonable jury conclude that MOHELA -- that MOHELA, in the months and months and months following the Department of Education's transmission of the names to MOHELA -- could any reasonable jury conclude that MOHELA's communications regarding the loans during those months to credit agencies and to the clients, to the plaintiffs, were not a violation of the law? How could a jury conclude that?

**MS. ARMBRUST:** Your Honor, I think the jury could conclude that when it sees evidence that -- for example, the Department asked MOHELA to prioritize discharges for a different class action, the Sweet class action. The Department says, "Please prioritize Sweet."

The Department today still has not finished its process to identify loans for discharge.

And this was an unprecedented time. Student loan discharge at this volume and for a servicer like MOHELA that handles consolidation loans, inherited a bunch of loans, I think a jury could think that the time period was reasonable in light of all those contextual facts.

**THE COURT:** Okay. Do you want to have the last word on any of this stuff?

**MS. EISENBRAY:** Well, on the initial point about the -- a potential ruling limiting the case to individuals or to the two named plaintiffs whose names were on group file

lists, there are still serious questions about who was actually on those lists.

Because of this slightly different process, depending on the underlying loans, all of the named plaintiffs had consolidation loans. I don't know if Your Honor is familiar with the loan consolidation process, but --

**THE COURT:** Vaguely.

**MS. EISENBRAY:** So loans were serviced by one servicer while they were separate loans. After consolidation, they were moved to another servicer, sometimes another servicer. Ultimately, they're serviced by MOHELA.

Depending on the nature of those underlying loans pre-consolidation, discharge instructions would be sent to either the current servicer, MOHELA, or the underlying servicer to discharge and then send MOHELA adjustment requests. We know that that is what happened for something. We do not know if the adjustment requests were sent. We've asked for them in discovery. They have not been produced.

**THE COURT:** So you're making, like, a Rule 56(d) argument as to Ms. Gary, that you haven't had -- that summary judgment isn't -- I can't remember if it's 56(d) or 56(f), but "We haven't had a chance to do discovery on this factual issue, and so summary judgment is premature and you should deny it for" --

**MS. EISENBRAY:** We have --

**THE COURT:** -- "that reason"?

**MS. EISENBRAY:** -- evidence in the record here with MOHELA's 30(b)(6) representative saying they're not sure, so essentially, yes.

And for Mr. Plamondon, we're not sure which process he went through. We've asked for adjustment files on him also. We've also asked for -- another twist is that all of the loan servicers were sent certain lists for the other servicers.

So MOHELA, in fact, received the full list for all of the loans it was supposed to discharge but also all of the loans that Aidvantage was supposed to discharge, Nelnet was supposed to discharge, et cetera. So if --

**THE COURT:** Why?

**MS. EISENBRAY:** Why?

**THE COURT:** Who knows. Okay.

**MS. EISENBRAY:** If Mr. Plamondon was on a list sent to his prior servicer, Aidvantage, that means MOHELA would have actually had that list, could have identified him, and could have treated him differently.

You know, they could have gone through the list sent to every servicer knowing, as they did because this was an instruction sent to them in November of 2022, that the initial instruction would be sent to a different servicer, and they could have then identified affected borrowers whose original loans were sent to a different servicer but were currently with

them and sequester their loans in some way, treated them as they would have treated for loan reporting, for collections, for all of that, the people who they actually had received the direct instruction to discharge.

**THE COURT:** Okay. So just to be clear -- and we'll wrap up shortly because we've been going for almost two hours, but -- not in this case, but in both of them.

**MS. EISENBRAY:** I don't feel like I've been up here for that long.

**THE COURT:** You are not arguing that a reasonable jury could conclude that MOHELA received Gary and Plamondon's names. You're just arguing that you haven't had the opportunity to complete discovery on that, adequately on that question?

**MS. EISENBRAY:** With Ms. Gary, because she was on the "do not bill" list, we think that that sets her even further apart.

MOHELA did get the specific instruction for her that her loans were discharged and that the other servicer was processing it, so this puts her a step further along.

**THE COURT:** You're saying the "do not bill" list was the equivalent of the list that MOHELA was waiting for before --

**MS. EISENBRAY:** The "do not bill" list would not inform MOHELA to discharge her loans, but it would inform MOHELA clearly and categorically that her loans were being

discharged, that another servicer was in the process of discharging the loans.

So any argument that MOHELA is making about this being in some way conditional, that this might happen at some point in the future, for Ms. Gary at least, this is a definitive "It is in process. It is happening."

**THE COURT:** Okay.

**MS. EISENBRAY:** Further, for the student borrower bill of rights, all of the named plaintiffs did submit their group discharge notices to MOHELA, did give MOHELA specific information regarding their entitlement to discharge.

But just -- I do think that this would be an issue of there has not been discovery. Plaintiffs are not -- have not had the opportunity to actually dig into this question because, despite having asked for it, we have not received the information for the lists, and that is something that we highlighted in our briefing.

Also, I have been informed that at paragraph 108 of the complaint, we do talk about the misleading nature of the notices sent by MOHELA to the plaintiffs because they do contradict the information that was in the discharge notices.

**THE COURT:** Let's take a look at that.

**MS. EISENBRAY:** I believe it's -- and 130.

**THE COURT:** Yeah. I mean, that -- 108 is not -- 108 is what we all thought this case was about, MOHELA's unending

delay and failure to implement discharge on Plaintiffs' loans, all while it inaccurately represented through collection and credit reporting that the full balances, balance of their accounts was still due. This caused Plaintiffs significant harm.

That doesn't really reveal the theory that we've been talking about today, right? That's about failure to implement the discharges.

So what other paragraph are you pointing to?

**MS. EISENBRAY:** 130.

And I do think at 108, the "all while still" was attempting to do the work of explaining that until the discharges were processed, continuing to --

**THE COURT:** Yeah.

**MS. EISENBRAY:** -- report the --

**THE COURT:** I mean --

**MS. EISENBRAY:** -- full balance as due.

**THE COURT:** -- all of this is against the backdrop of your complaint that the loans should have been treated as discharged, and they should have -- and MOHELA should have discharged them.

So -- okay. Let me see.

Is there anything else that you want -- anything else that you want to make sure to say?

**MS. EISENBRAY:** Not at this time.

**THE COURT:** Okay.

**MS. ARMBRUST:** Your Honor, if I may, I think it's wrong to say that the discovery isn't complete on the question of whether Ms. Gary or Mr. Plamondon appear on files. We -- and I'll just tell you, Your Honor, we put into our briefing -- it's Docket 115, footnote 3 -- a 30(b)(6) witness who said that he couldn't testify as to the contents of the adjustment files, but he wasn't the witness on this topic.

And he said there was a group that did look and said that these plaintiffs didn't appear on these other files, these adjustment files. And I just want to make sure the Court has Exhibit 29, which is this "do not bill" communication, because it doesn't say that Ms. Gary has had a discharge. It says simply that these are people who should be in a forbearance status.

And so I can hand it to the Court, but it's -- I think it's important --

**THE COURT:** Just tell me where the exhibit --

**MS. ARMBRUST:** It's Exhibit 29. It's a short email, but it's, again --

**THE COURT:** Exhibit 29 to Haswell?

**MS. ARMBRUST:** To the Haswell --

**THE COURT:** Yeah.

**MS. ARMBRUST:** -- declaration. It just -- I think it's an overstatement to say that this somehow puts MOHELA on

notice that there's a discharge for Ms. Gary.

**THE COURT:** It says that they're in forbearance?

**MS. ARMBRUST:** It asks -- it's a communication from the Department asking servicers to put certain individuals on the list into forbearance.

**MS. EISENBRAY:** Because the discharge instructions have been sent to a different servicer.

**THE COURT:** Right, and but the point, the main point, is that even after receiving that, MOHELA sent bills to Gary.

**MS. ARMBRUST:** She was in a -- but she was in a forbearance. She was put into the forbearance. That was the intent of the communication.

**MS. EISENBRAY:** She received bills.

**THE COURT:** I think I understand.

**MS. ARMBRUST:** Yes. Thank you, Your Honor.

**THE COURT:** I think I understand.

Okay. So I'll go back and think about this a little more and then issue a ruling.

So what do we have next?

**MS. ARMBRUST:** Yeah.

**THE COURT:** Like, what's the schedule in this case?

**MS. EISENBRAY:** We don't have anything scheduled --

**MS. ARMBRUST:** Well --

**MS. EISENBRAY:** -- after this.

**MS. ARMBRUST:** -- we do have --

**THE COURT:** Okay.

**MS. ARMBRUST:** -- a case management. The next date's in the case -- I think in three weeks, we have a case management statement due to Your Honor, and then --

**THE COURT:** Okay.

**MS. ARMBRUST:** -- we have a case management conference before Your Honor. But if we should continue those or if we should advance those --

**THE COURT:** Yeah.

**MS. ARMBRUST:** Happy to --

**THE COURT:** I mean --

**MS. ARMBRUST:** -- work with Plaintiffs.

**THE COURT:** And obviously, I mean, presumably, the next step would be class certification.

**MS. EISENBRAY:** Yes.

**THE COURT:** And we know that -- you know, we know that there is something left of this case, right? And we need to think about how much is left and what claims MOHELA was on notice of and all that kind of stuff.

But I do -- I am wondering, given this discussion, how realistic class certification is, right? I mean, it seems like different plaintiffs had different statuses at different times, different communications were sent by the Department of Education to different plaintiffs -- to MOHELA about different plaintiffs at different times, and MOHELA sent different kinds

of communications to different plaintiffs at different times.

And I'm just -- I haven't thought a lot about this, so take what I'm saying with a grain of salt, but it's -- I'm having a hard time understanding how class certification would go.

Do you have any sort of initial thoughts about what the class would be and what the -- you know, how we could achieve class certification?

**MS. EISENBRAY:** Yes. I think it would depend on how Your Honor rules on the pending motions.

If Your Honor adopts the theory that Plaintiffs have been advocating that the group discharge notices have a legal effect and change MOHELA's legal obligations, then that changed MOHELA's legal obligation as to everyone who qualified for those group discharges, which is an absolutely knowable group of individuals, and the Rosenthal Act is a strict liability statute, we have understood -- we have not really gotten into class discovery, but we have understood from discovery so far that MOHELA does these same things for everyone in these situations.

In fact, many of the communications, they said, "These are just" -- I think they even said in their brief with respect to the notice that Mr. Plamondon received, "This is just something that went out to everyone. It can't be misleading as to you because if you'd read the fine print, you would see that

really, we'd covered all of our bases."

So, you know, these are things that --

**THE COURT:** Well, that strikes me as applying the least sophisticated debtor standard. That strikes me as a pretty weak argument.

**MS. EISENBRAY:** On --

**THE COURT:** For them.

**MS. EISENBRAY:** For them.

**THE COURT:** Yeah.

**MS. EISENBRAY:** Yes, agreed. But just to say that they were admitting that these are really form communications that would have gone out to every class member.

**THE COURT:** I see.

**MS. EISENBRAY:** And the misrepresentations were misrepresentations as to all who fell into these categories whether, again, Your Honor buys into our theory and it's the any individual who was eligible for group discharge or anyone who was on the list, because that is an entirely knowable population of individuals. They have a list.

**THE COURT:** Well, obviously we'll have more time to talk about that.

But, you know, obviously the next step will be to put together a schedule for certification, and we'll do that, and meanwhile, I'll go back and think about what I can rule on and what I can't really rule on right now.

Okay. Thank you.

**MS. ARMBRUST:** Thank you, Your Honor.

**MS. EISENBRAY:** Thank you, Your Honor.

**THE COURTROOM DEPUTY:** Court is adjourned.

(The proceedings concluded at 11:19 A.M.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, March 12, 2025

_______________________________________

April Wood Brott, CSR No. 13782